No.



# UNITED STATES DISTRICT COURT
## DISTRICT of MASSACHUSETTS

### PETER GAKUBA (SORNA Registrant)[1],

*Petitioner,*

vs.

### ANDREA J. CAMPBELL (MA AG),

*Respondent.*

---

United States District Court
District of Massachusetts

Judge

Magistrate

---

### 2nd-in-Time (**NOT** 2nd/Successive)
PETITION FOR §2254  HABEAS CORPUS WRIT
FOR IMMEDIATE RELEASE – EVIDENTARY HEARING REQUESTED

---

Peter Gakuba – *pro se*
SORNA Registrant
c/o  Law Offices of David B. Shapiro
58 W. Biddle St.
Baltimore, MD 21201
(202) 630-1774
courts.usdc.all@gmail.com

---

[1] *Piasecki v. Court of Common Pleas*, 917 F.3d 161 (3d Cir. 2019) (SORNA registrants qualify as "in-custody" for purposes of habeas law). Piasecki v. Court of Common Pleas, Bucks Cnty., PA, 917 F.3d 161 (C.A.3 (Pa.), 2019) (cited sites 11/01/2025)

[1] *Sparks v. Dorethy*, 17-2135 (USCA7) (cites *Rhines v. Weber*, 544 US 269 (2005) & *Rose v. Lundy*, 455 US 509 (1982)).   Sparks v. Dorethy, 2018 U.S. App. LEXIS 32265 ; Rhines v. Weber, 544 U.S. 269 (U.S.,2005)

**On-point (dispositive to Gakuba)** *Trump v. J.G.G.*, **24A931, 145 S.Ct. 1003 (2025)** (venue is where the habeas petitioner is "in custody"; reversing the rulings of DC federal district and circuit courts). Trump v. J. G. G., 604 U.S. 670 (U.S.Dist.Col., 2025)

# Case No.

## IN RE: PETER GAKUBA

## TABLE OF AUTHORITIES

*Allen v. Vannoy,* 659 Fed. Appx. 792 \*\*17-21 (5th Cir. 2016)…………..…………………………..82

*Amazon.com LLC v. Lay,* 758 F. Supp. 2d 1154 (W.D. Wash. 2010)……………………………….38

*Brady v. Maryland,*373 US 83 (1983)…………………………..…..50, 76-77, 80-82, 85, 89-90, 105

*Brown v. Illinois,* 422 US 590 (1975)…..………………………………………………………………

…9-11, 14, 19, 24-25, 31-33, 35-36, 39, 41, 44, 46, 48-49, 53, 55, 57, 62-65, 74-75, 83, 105, 108

*Bennett v. Sterling,* 842 F.3d 319, 324-27 (4th Cir. 2016)……………………………………………..82

*Burritt v. Ditlefson,* 807 F.3d 239, 254-57 (7th Cir. 2015)………………………………………41, 63

*Camfield v. City of Oklahoma City,* 248 F.3d 1214 (10th Cir. 2001)……………………………….38, 49

*Carver v. Lehman,* 552 F.3d 869, 872, 874-75 (9th Cir. 2009)………………………………70, 101

*Dahlstrom v. Sun-Times Media, LLC,* 777 F.3d 937, 939-43 (7th Cir. 2015)…………………….38

*Davis v. Mississippi,* 394 US 721 (1969)………………………………………………………...…41

*Dunaway v. New York,* 442 US 200, 218-19 (1979)…………………………………………passim

*Estelle v. Williams,* 465 US 501, 503 (1976)……………………………………………………43, 57

*Faretta v. California.* 422 US 806, 835 (1975)…………..…………………………………18, 94, 96, 128

*Franks v. Delaware,* 438 US 154 (1978).8-9, 12, 16-19, 22, 25, 31-32, 35-37, 41-42, 44-45, 47,

…………………………………………….49-53, 55, 58, 60, 62, 64, 65-70, 72-73, 81, 105-106, 128

*Gakuba v. Karner,* 3:13-cv-50218-FJK (USDC-ND IL, W. Div.)………………………………….2, 7

*Gakuba v. Kurtz,* 523 Fed. Appx. 402 (7th Cir. 2013)…………………………………………….103

*Gakuba v. Kurtz,* 120174 (IL S. Ct.) (cert. denied)…………………………………………….. 2, 35

*Gakuba v. O'Brien,* 711 F.3d 751, 753 (7th Cir. 2013)……………..2, 7, 85, 99, 105, 114, 122, 129

Case No.

IN RE: PETER GAKUBA

TABLE OF AUTHORITIES -- CONTINUED

*Gardner v. Holland,* 218 F.Supp. 3d 1048, 1056-58, 1063 (ND. CA 2016)..................................79, 88

*Hamilton v. Vill. of Oak Lawn,* 735 F.3d 967, 970 (7th Cir. 2013)...........................67, 69, 72

*Hayes v. Florida,* 490 US 811 (1985)................................................................41

*Heien v. North Carolina,* 135 S.Ct. 530, 534-35, 539-40 (2014)................................30

*Hicks v. Oklahoma,* 477 US 343, 346 (1980)................................................70, 101

*Hill v. Mitchell,* 842 F.3d 910, 919 (9th Cir. 2016)..........................................24

*Holbrook v. Flynn,* 475 US 560, 567 (1986)................................................43, 56

*Holley v. Yarborough,* 568 F.3d 1091, 1098-99 (9th Cir. 2009)..................................88

*Horton v. California,* 496 US 128, 137 n.7 (1990)..............................................88

*Hudson v. Lashbrook,* 863 F.3d 652 (7th Cir. 2017)............................................109

*Illinois v. Krull,* 480 US 340, 347 (1987)................................................47, 63, 83

*Imani v. Pollard,* 826 F.3d 939, 947 (7th Cir. 2016)................................18, 94, 96, 127-128

*Knowles v. Muniz,* 228 F.Supp.3d 1009, 1020 (CD. CA 2017)..................................70, 101

*Kubsch v. Neal,* 838 F.3d 845 (7th Cir. 2016) (en banc)........................................101

*Jordan v. Hepp,* 831 F.3d 839, 847 (7th Cir. 2016)............................................106

*Liteky v. USA,* 510 US 540, 556 (1994)........................................................107

*Long v. Butler,* 874 F.3d 544, 546 (7th Cir. 2017)..............................................57

*Mapp v. Ohio,* 367 US 643 (1961)..............................................................31

*Maryland v. Buie,* 494 US 325, 335 (1990)......................................................73

*Maryland v. Garrison,* 480 US 79, 85 (1987........................................................72

Case No.

IN RE: PETER GAKUBA

**TABLE OF AUTHORITIES** – CONTINUED

*Maryland v. King,* 569 U.S. 435 (2013)...............................................................41

*Mayberry v. Pennsylvania,* 400 US 455, 460-62 (1971)......................................73

*McKernan v. Superintendent Smithfield Sci,* 849 F.3d 557 (3d Cir. 2017)...............109-110

*McShane v. Cate,* 636 Fed. Appx. 410, 412 (9th Cir. 2016)..................................24

*Milke v. Ryan,* 711 F.3d 999, 1008 (9th Cir. 2013)............................................24

*Miller-El v. Cockrell,* 537 US 322, 346 (2003).................................................127

*Napue v. Illinois,* 360 US 264 (1955)....17, 22, 31-33, 35-37, 42, 44-48, 51, 57-60, 79, 71, 85, 128

*Nasby v. McDaniel,* 853 F.3d 1049, 1050 (9th Cir. 2017).................................2, 126

*New York v. Harris,* 445 US 14 (1990)...............................................32, 65, 86, 108, 113

*Nix v. Williams,* 467 US 431, 443-44 (1984).....................................39, 44, 57

*Owens v. Duncan,* 781 F.3d 360, 362 (7th Cir. 2015...........................43, 56, 68, 73

*Pennsylvania v. Muniz,* 496 US 582 (1990)..........................39, 70, 96, 101, 129

*People v. Aguilar,* 2 N.E.3d 321 (Ill. 2013).....................................................129

*People v. Marissa Brown,* 2010-cf-0543 (17th Cir. Ct.)......................................107

*People v. Buckner,* 2013 IL App (2d) 130033 ¶¶38-40........................................20, 116

*People v. Burton,* 184 Ill.2d 1, 21-24 (IL S. Ct.)..............................................18, 30

*People v. Busse,* 2016 IL App (1st) 142941......................................................113-114

*People v. Cameron,* 2012 IL App (3d) 110020....................................................115, 120

*People v. Eubanks,* 2014 IL App (1st) 123247-U...................................................75

Case No.

IN RE: PETER GAKUBA

TABLE OF AUTHORITIES – CONTINUED

*People v. Gakuba,* 122289 (IL S. Ct. 2017) (cert. denied)…………….............................................4

*People v. Gakuba, 2017 IL App (2d) 150744-U* (heretofore ***"Gakuba-2017"***)......................................

……2-4, 13-17, 20, 22-23, 30-34, 39, 42-50, 56, 59-63, 65-68, 71, 75-77, 84-85, 91-99, 102-107,

……………………………………………………………………………….....111-117, 120, 124

*People v. Griggs,* 2011-cf-3518 (17th Cir. Ct.)…………………………………………………....70

*People v. Harris,* 314 Ill.App.3d 409, 416 (2000)…………………………………………………..52

*People v. Harris,* 2016 IL App (1st) 141744 ¶40………………...………………………….…113

*People v. Horta,* 2016 IL App (2d) 140714 ¶34 n.1………………………………………………..115

*People v. Hunt,* 2016 IL App (1st) 132979 ¶¶27-28)………………………………………………..76

*People v. Johnson,* 87 N.E. 3d 1073, 2017 IL App (4th) 160920…………….…………….…68, 121

*People v. Jones,* 2016 IL App (1st) 141008 ¶38…………………………………………….…..74

*People v. Lang,* 346 Ill.App. 3d 677, 684-86 (2004)…………………………………………19, 100

*People v. Lara,* 2012 112370 (IL S. Ct.) ¶59..............................................................................17

*People v. Lawlor,* 291 Ill.App.3d 97, 101 (1997)…………………………………….……69, 72

*People v. Lezine,* 2012 IL App (2d) 10078-U...........................................................116, 120

*People v. Little,* 51 N.E.3d 1001, 2016 IL App (3d) 140124 ¶47………………………………10, 40

*People v. Manuel M. (In re Manuel M.),* 71 N.E.3d 1131 (Ill. App. Ct. 2017)……….42-43, 50, 79

*People v. Merritt,* 2017 IL App (2d) 150219 ¶¶1, 26-30, 30-31………………………….…92, 97-98

*People v. M.H.,* 2014 IL App (3d) 130083-U………………………………………….…115-116, 120

*People v. Mpulamaska,* 2016 IL App (2d) 130703…………………………....………………78-79

Case No.

IN RE: PETER GAKUBA

TABLE OF AUTHORITIES – CONTINUED

*People v. Ostrowski,* 394 Ill.App. 3d 82, 83 (2009)..............................................20, 114

*People v. Outlaw,* 388 Ill. App. 3d 1072, 1077 (2009).............................................40

*People v. Pace,* 2015 IL App (1st) 110415 ¶103.....................................................115

*People v. Pendleton,* 75 Ill.App. 3d 536 (1979).....................................................42, 60

*People v. Peterson,* 2013 IL App (1st) 103126-U ¶¶38-42..............................................18

*People v. Potter,* 384 Ill.App.3d 1051, 1079 (2008)....................................................44

*People v. Rivera,* 212 Ill.App. 3d 519, 527 (1991)...........................................19, 62, 113

*People v. Sargent,* 239 Ill.2d 166 (2010)................................................................17

*People v. Shaw,* 2015 IL App (1st) 123157 ¶21..........................................................58

*People v. Span,* 387 Ill.App.3d 239, 241 (2003).................................................116, 126

*People v. Stacey,* 190 Ill.2d 203, 210-11 (2000)......................................................114

*People v. Struck,* 29 Ill.2d 310, 313-15 (1963)........................................................47

*People v. Thompson,* 2016 WL 280716.....................................................................42

*People v. Trotter,* 2013 IL App (2d) 120363 ¶37........................................................89

*People v. Turner,* 367 Ill.App. 3d 490, 491-93 (2006)...........................................16, 67-72

*People v. Walsh,* 12-cr-2514 (17th Cir. Ct.).......................................................107, 111

*People v. Washington,* 2016 IL App (1st) 131198 ¶18....................................................95

*People v. Wiggins,* 2015 IL App (1st) 133033 ¶¶4, 8, 13-14, 43-44, 49.....................19, 100, 112

*People v. Wilson,* 2016 IL App (1st) 140163 ¶15...................................................20, 119

*People v. Woodall,* 333 Ill.App. 3d 1146, 1153-56 (2002).............................18, 98-99, 102-103

Case No.

IN RE: PETER GAKUBA

TABLE OF AUTHORITIES – CONTINUED

*People v. Woodson,* 2011 IL App (4th) 10023 ¶ 24...............................................18, 92, 97

*Pouncy v. Palmer,* 846 F.3d 144 (6th Cir. 2017).......................................................72

*Rompilla v. Beard,* 545 US 374, 390 (2005)...........................................................24

*Scott v. Harris,* 350 US 372, 380-81 (2007)...........................................................109

*Sibron v. NY,* 392 US 40, 62-63 (1968)............................................................68-69-72

*Smith v. Burge,* 222 F.Supp.3d 669, 681 (USDC-ND IL 2016)..............................76, 130

*Sutton v. Pfister,* 834 F.3d 816, 821-22 (7th Cir. 2016).............................................39

*Taylor v. Kentucky,* 436 US 478, 485 (1978)........................................................43, 56

*Timbs v. Indiana,* 139 S.Ct. 682, 203 L. Ed. 2d 11 (2018)............................................35

*Underwood v. Barrett,* 924 F.3d 19, 20 (1st Cir. 2019)..............................................109

*USA v. Bowling,* 770 F.3d 1168 (7th Cir. 2014).................................................82, 101

*USA v. Bradley,* 628 F.3d 394, 400 (7th Cir. 2010)............................................21, 117

*USA v. Brown,* 631 F.3d 638, 650 (3rd Cir. 2011)..............................................69, 72

*USA v. Cordero-Rosario,* 252 F.Supp. 3d 79 (D. PA 2017)...........................................47

*USA v. Daoud,* 755 F.3d 479 (7th Cir. 2014)...........................................................16

*USA v. Disla,* 805 F.2d 1340, 1347 (9th Cir. 1986)............................................40, 52

*USA v. England,* 555 F.3d 616, 622 (7th Cir. 2009)............................................21, 117

*USA v. Garcia-Garcia,* 633 F.3d 608, 613-616.........................................................30

*USA v. Gould,* 364 F.3d 578, 587 (5th Cir. 2004) (en banc)........................................30

# Case No.

## IN RE: PETER GAKUBA

### TABLE OF AUTHORITIES – CONTINUED

*USA v. Hernandez,* 670 F.3d 616 (5th Cir. 2012)..............................................30-31

*USA v. Ienco*, 182 F.3d 517, 525-532 (7th Cir. 1999)........................11, 41, 46, 61

*USA v. Jerez,* 108 F.3d 684, 692 (7th Cir. 1997)...................................................30

*USA v. Johnson,* 610 F.3d 1138, 1147 (9th Cir. 2010)..........................................95

*USA v. Jones,* 844 F.3d 636 (7th Cir. 2016)..........................................................95

*USA v. Makasin,* 442 F.3d 687, 691 (8th Cir. 2006)..............................................95

*USA v. Moore,* 572 F.3d 334, 341 (7th Cir. 2009)............................................43, 57

*USA v. Onyeabor,* 649 Fed. Appx. 442, 445 (9th Cir. 2016)...............................108

*USA v. Oscar-Torres,* 507 F.3d 224, 225 (4th Cir. 2007)......................................40

*USA v. Pacheo-Lopez,* 531 F.3d 420, 424-25 (6th Cir. 2008)...............................40

*USA v. Reyes,* 225 F.3d 71, 76-77 (1st Cir. 2000)..................................................61

*USA v. Robinson, ,* 829 F.3d 878, 881 (7th Cir. 2016)........................................122

*USA v. Ryals,* 512 F.3d 416, 419 (7th Cir. 2008)...................................................96

*USA v. Salgado,* 292 F.3d 1169, 1174 (9th Cir. 2002)......................................52, 96

*USA v. Sanchez,* 817 F.3d 38, 46 (1st Cir. 2016)...............................................40, 61

*USA v. Smith,* 830 F.3d 803, 810 (8th Cir. 2016)..............................................91, 95

*USA v. Spiker,* 649 Fed. Appx. 770, 773 (11th Cir. 2016)....................95, 103-104

*USA v. Taylor,* 833 F.3d 795, 796 (7th Cir. 2016)...............................................115

# Case No.

## IN RE: PETER GAKUBA

### TABLE OF AUTHORITIES – CONTINUED

*USA v. Vastis,* 1:14-cr-00486 (USDC-ND IL)..........................................................122

*USA v. Ware,* 890 F.3d 1008, 1010 (8th Cir. 1989).............................................92, 98

*USA v. Wright,* 682 F.3d 1088 (8th Cir. 2012).....................................................92, 98

*USA v. Zapien,* 861 F.3d 971 (9th Cir. 2017)............................40, 45-46, 57-58, 61

*USA v. Zillges,* 978 F.2d 369, 372 (7th Cir. 1992)....................................................95

*Waller v. Georgia,* 467 US 39, 49 n. 9 (1984).............................................42, 52, 60

*Wong-Son v. USA,* 371 US 471 (1963)....................................................................31

*Young v. USA ex rel. Vuitton SA,* 481 US 787, 807 (1987)..........................100, 103-104

**Statutes and Rules**

18 USC §2710 et seq. (Video Privacy Protection Act ("VPPA"))..............................passim

18 USC §2722(a) (Driver's Privacy Protection Act ("DPPA")).................................passim

18 USC §3553(a) (federal judge conduct) .......................................................117-118, 122

28 USC §1404(a) (venue)...............................................................................................88

28 USC §§2710(a), (d)(1)-(2) (AEDPA)......................................................................passim

50 USC §1806e (Foreign Intelligence Surveillance Act ("FISA"))...........................passim

720 ILCS 5/12-16(d) (statutory rape / agg. crim. sex. abuse)....................................passim

725 ILCS 5/103-2-1(b) ((Westlaw 2010)—Audio video recordings of custodial interrogations)...10

....................................................................................................................36, 40

725 ILCS 5/115-7(a) (Illinois Rape Shield)...............................................................46

UNITED STATES DISTRICT COURT
DISTRICT of MASSACHUSETTS

PETER GAKUBA (SORNA Registrant),[1]  )
              )
     Petitioner,     )
 vs.           ) Case No.
              )
ANDREA J. CAMPBELL (MA AG),  ) Judge
              ) Magistrate
     Respondent.    )

## SECOND-IN-TIME PETITION FOR WRIT OF HABEAS CORPUS[2]
## 28 USC §2254(D)(1)-(2) – INDICTMENT *VOID AB INITIO*

NOW COMES *pro se* Petitioner PETER GAKUBA ("Gakuba") in this Second-in-Time

Petition for Writ of Habeas Corpus 28 USC §2254(d)(1)-(2).

**DECLARATORY STATEMENT IN SUPPORT OF SECOND-IN-TIME PETITION FOR WRIT OF HABEAS CORPUS 28 USC §2254(D)(1)-(2)**

This declaratory statement incorporated herein is in compliance with 28 U.S.C. § 1746 and is consistent with the Fed. R. Civ. Procedures.

DECLARATION UNDER PENALTY OF PERJURY[3]

Peter Gakuba declares:

## I. Overview

1. This is a **second-in-time** 28 USC §2254 et seq. federal habeas petition.

2. The original one is *void ab initio*. Habeas due process violations occurred:

---

[1] *Piasecki v. Court of Common Pleas*, 917 F.3d 161 (3d Cir. 2019) (SORNA registrants qualify as "in-custody" for purposes of habeas law)
[2] *Sparks v. Dorethy*, 17-2135 (USCA7) (cites *Rhines v. Weber*, 544 US 269 (2005) & *Rose v. Lundy*, 455 US 509 (1982)). Sparks v. Dorethy, 2018 U.S. App. LEXIS 32265 ; Rhines v. Weber, 544 U.S. 269 (U.S.,2005) **See Attachment(s).**
[3] The majority of this habeas petition merely scissor pastes from the original habeas petition (verbatim) its contents word-for-word—and is delineated as such, accordingly. Likewise for Gakuba's post-conviction petition pointing the blame for all the clear, plain, structural errors as 6th Amendment ineffective assistance of counsel violations—versus blame casted at the police and court officers (prosecutors, judges). Gakuba wants to ensure no "failure to exhaust" or "procedural default" invocations are made.

**(1) "Mixed" habeas petitions mandate their dismissal outright or a stay and abeyance of unexhausted claims by the petitioner** – *Rose v. Lundy*, 455 US 509 (1982);

**(2) The state court record requires an *independent* review by the habeas district court** – *Nasby v. McDaniel*, 853 F.3d 1049, 1052 (9th Cir. 2017); and

**(3) Objectively unreasonable factual assessments render objectively unreasonable any legal determinations** – *Lee v. Kink*, 922 F.3d 772, 774-75 (7th Cir. 2019).

3.       Habeas due process violations are 14th Amendment due process and equal protection violations, U.S. Constitution.

4.       And because these habeas due process violations were affirmed by federal courts of review (U.S. 7th Circuit and U.S. Supreme Court), it was no mere error—but calculated judicial overreach by **irrationally biased and prejudiced judges** against Gakuba whose wrongful convictions have served as a *Heck[4]* affirmative defense by Illinois federal and state malfeasors in Gakuba's pending *pro se* federal lawsuit for violations of the Video Privacy Protection Act (VPPA), 18 USC §2710 et seq. and the Driver Privacy Protection Act (DPPA) 18 USC §2721 et seq. See *Gakuba v. O'Brien,* 711 F.3d 751 (7th Cir. 2013); *Gakuba v. O'Brien*, 12-cv-7296 and *Gakuba v. Karner,* 13-cv-50218 (USDC-ND IL).

5.       Biased and prejudiced judges violates the 5th and 14th Amendments, U.S. Constitution.

6.       **Structural error.**

## II.     Introduction

7.       In *Gakuba v. Kurtz,* 39 N.E.3d 589 (Ill. App. Ct. 2015) the IL Appellate Court published an opinion that was a crazy quilt of irrelevant legal doctrines stitched to pointless case laws. As this undisputed criminal case cites to the published opinion of *Gakuba v. Kurtz*, they're

---

[4] *Heck v. Humphrey*, 512 US 477 (1994) (civil suits against federal or state malfeasors for constitutional violations are barred unless or until underlying criminal conviction or prosecution ends in Heck's favor)

inextricably linked now.    See *People v. Gakuba*, 2017 IL App (2d) 150744-U (heretofore *"Gakuba-2017"*) Id. at ¶¶118-120.

8.    Judicial notice (FRE 201) must be taken as it illustrates conclusively how Illinois state courts were irrationally biased and prejudiced against Gakuba as publishing *Gakuba v. Kurtz*, 39 N.E.3d 589 (Ill. App. Ct. 2015) one (1) month before Gakuba's criminal jury trial effectively green-lighted / blessed with drag-racer ferocity a near 9 year's long malicious prosecution onto a now 12-years false imprisonment of "discretionary consecutive" sentences (730 ILCS 5/5-8-4(b) (Westlaw 2006)) when probation was the guideline sentence per the "presentence investigative" report ("PSIR") for first offenders with no criminal history and who was punctiliously compliant with all pretrial bail conditions tantamount to house arrest for those near 9 years.

## III.    Procedural History

9.    **Pretrial and Direct Appeal Proceedings:** Peter Gakuba ("Gakuba") was charged by criminal complaint/information with two (2) counts of aggravated criminal sexual abuse on Saturday, November 4, 2006—filed Monday, November 6, 2006.   720 ILCS 5/12-16(d) (C3-5) Gakuba was issued $250,000 bail on November 4, 2006—filed November 6, 2006. (C6-7)   A superseding indictment was filed December 20, 2006 charging Gakuba with three (3) counts, 720 ILCS 5/12-16(d).[5]  (C48-49)

10.    Gakuba was convicted on April 9, 2015 by jury of three (3) counts of aggravated criminal sexual abuse, 720 ILCS 5/12-16(d). (C3290)

11.    Gakuba's motion for new trial was denied June 29, 2015. (C3358-59, C3363)

---

[5] The indictment is *void ab initio* as the grand jury was in receipt of **Gakuba's name and birthdate illegally obtained** in violation of **the Video Privacy Protection Act ("VPPA"), 18 USC §2710(b)(2)(C), §2710(d), and now in perpetuity §2710(e).**

12.     A sentence of 12-years imprisonment (3-counts x 4-years) "discretionary consecutive" (730 ILCS 5/5-8-4(b) (Westlaw 2006)) in the Illinois Department of Corrections ("IDOC") was imposed on June 29, 2015. (C3358-59, C3363)

13.     Gakuba's motion to reconsider sentence was denied on July 22, 2015. (C3372)

14.     Gakuba's notice of appeal was filed July 22, 2015. (C3366-67)

15.     *Pro se* on appeal (after unlawfully denied being *pro se* at trial as a "delay tactic") Gakuba filed his opening brief in the allotted 35-days in November 2015. Three extensions allowed to the state over Gakuba's objections, and, 1-3 days from their due date, the state filed their response brief in September 2016—some nine (9) months after their December 2015 due date. Gakuba's reply brief was mailed on September 20, 2016.

16.     On March 31, 2017 *People v. Gakuba*, 2017 IL App (2d) 150744-U (heretofore "***Gakuba-2017***") affirmed the trial court's plain reversible and structural errors in all respects in a 60-page unpublished opinion. No petition for rehearing was sought.

17.     On May 22, 2017 the Illinois Supreme Court filed/docketed Gakuba's state certiorari: *People v. Gakuba,* 122289 (IL S. Ct.). On or about June 6, 2017 Gakuba's *emergency* motion for Rule 609 state of imprisonment was denied. On September 27, 2017 the IL S. Ct. certiorari was denied. *People v. Gakuba*, 2017 WL 4385407.

18.     **Post Conviction Petition History:** On June 30, 2017 Gakuba 's first (and only) IL post-conviction petition was filed. 90-days are allowed for a ruling. See Post-Conviction Act) (725 ILCS 5/122-1 et seq. (West 2010)). *People v. Gakuba*, 2006-cf-4324 (17th Cir. Ct., Winnebago Co., IL) (docket entry: 06/30/2017).

19.     On September 19, 2017 dismissal occurred: "the petition is frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2012).

20.     On January 18, 2019 *People v. Gakuba*, 2019 IL App (2d) 170794-U (heretofore "***Gakuba-2019***") affirmed the very same issues raised on direct appeal.  Only this time, as is the common practice of post-conviction petitions, Gakuba asserted ineffective assistance of counsel 6th Amendment violation(s) to blame for all the clear, plain, structural errors which occurred by the police and court officers in this case (prosecutors and judges).

21.     *Gakuba-2019* affirmed the (wrongful) convictions and sentence citing to **res judicata.**

22.     This is an important fact: Gakuba's pending petition for a certificate of appealability ("COA") was pending still before the U.S. Court of Appeals – 7th ("USCA7"). *Gakuba v. Brannon* (then *Neese*), 18-3398 (USCA7).

23.     In that COA petition, Gakuba argued that his federal habeas petition per §2254 was fully exhausted.  It was not a "mixed" habeas petition.  *Gakuba*, 18-3398 (USCA7) (ECF 1).

24.     Gakuba stressed this fact: res judicata in the post-conviction appeal ruling conclusively proves that his federal habeas petition was fully exhausted; and was not a "mixed" petition.

25.     He did so in a petition for rehearing, hearing *en banc*.  *Gakuba*, 18-3398 (USCA7) (ECF 31-34).

26.     All Gakuba's clear, plain, structural errors arguments fell on deaf ears.  Gakuba was being blackballed by malfunctional IL and federal courts.

27.     On March 30, 2019 *People v. Gakuba*, 2019 IL LEXIS 340 (03/20/19 IL S. Ct. (124481) (cert. denied).

28.     On June 30, 2019 *Gakuba v. Illinois*, 139 S. Ct. 2680-2019, 18-9041 (US S. Ct.) (cert. denied).

29.     **Federal Habeas Proceedings:** On September 8, 2017 *Gakuba v. Rains*, 17-cv-6719 (USDC-ND IL) (ECF 1) was filed in the Chicago division.  Gakuba vociferously argued in his "jurisdiction statement" that USDC-ND IL Rockford div. Judge Kapala was irrationally biased and prejudiced against Gakuba (implicit to that was Judge Kapala also presiding over Gakuba's pending federal *pro se* §1983 suit against Judge Kapala's hometown of Rockford where he is owing his entire career as a Rockford lawyer, prosecutor, appt'd/elected judge, appeals judge, federal judge).

30.     On October 23, 2017 it was transferred to Rockford from Chicago anyway; deliberately ignoring Gakuba's well pled arguments of bias and prejudice. See *Bowers v. DeVito*, 686 F.2d 616, 618 (7th Cir. 1982) (**"throwing someone into a snake pit would violate the due process clause"**).[6]

31.     On November 7, 2017 *Gakuba v. Neese*, 17-cv-50337 (USDC-ND IL) (ECF 1: federal habeas §2254(d)(1)-(2)).

32.     On October 25, 2018 *Gakuba v. Neese*, 17-cv-50337 (USDC-ND IL) (ECF 39: habeas was DENIED; COA was DENIED).

33.     On June 24, 2019 *Gakuba v. Neese*, 18-3398 (USCA7) (ECF 30: petition for certificate of appealability was DENIED).

34.     On August 05, 2019 *Gakuba v. Neese*, 18-3398 (USCA7) (ECF 34: petition for rehearing, hearing *en banc* was DENIED).

---

[6] It was dismissed upon transfer by USDC-ND IL Judge Kapala citing Gakuba's completion of a court clerk provided §2255 indigent prisoner form when the §2254 was required.  Review occurred within 2-3 weeks, versus 2-3 months by USDC-ND IL Judge Blakey.

35.    On September 03, 2019 Gakuba filed his **Fed. R. Civ. P. Rule 60(b)(4)** motion citing ***Sparks v. Dorethy*, 2018 US APP LEXIS 32265 (01/09/2018 USCA7).** *Gakuba v. Neese*, 17-cv-50337 (USDC-ND IL) (ECF 52: Rule 60(b) motion … ECF 62, 64: Memorandum of Law)

36.    On January 8, 2020 the Rule 60(b) motion was DENIED. *Gakuba*, 17-cv-50337 (USDC-ND IL) (ECF 66).

37.    On October 22, 2020 *Gakuba v. Grissom*, 20-1137 (USCA7) (ECF 16: petition for COA was DENIED of Rule 60(b) motion per *Gonzalez v. Crosby*, *Rose*, *Rhines*, and *Sparks*).

38.    On November 02, 2020 *Gakuba v. Grissom*, 20-1137 (USCA7) (ECF 16: petition for COA was DENIED of Rule 60(b) motion per *Gonzalez v. Crosby*, *Rose*, *Rhines*, and *Sparks*).

39.    On May 24, 2021 *Gakuba v. Grissom*, 20-7506 (US S. Ct.) (cert. denied).

## IV.    Jurisdiction Absence Argument – 28 USC §2254(d)(1)-(2)

### A. <u>Issue/Error 1-1:</u>    Complete Absence of Jurisdiction—Void Indictment

40.    It is well established that a court's jurisdiction is a threshold non-waivable issue. It can be raised or invoked at any time. Gakuba invokes it now, here, before this court.

41.    Pre-trial and post-trial Gakuba has stated the undisputed fact: that IL and USA police and prosecutors violated the Video Privacy Protection Act's legal process to illegally obtain Gakuba's "personally identifiable information." 18 USC §2710(a), §2710(b)(2)(C).[7]

42.    The remedy: an exclusion of evidence mandated by statute—18 USC §2710(d).

43.    The exclusion mandate by statute, when Googled, compares to the FISA's: 50 USC §1806(e). However, the VPPA's goes further and farther—indeed it's the most comprehensive

---

[7] Pending are two (2) lawsuits stayed. *Gakuba v. O'Brien*, 711 F.3d 751 (7th Cir. 2013) (viols. by state actors); *Gakuba v. Karner*, 13-cv-50337 (USDC-ND IL) (viols. by federal actors (see *Bivens*)).

omnipotent exclusion mandate in American jurisprudence—it explicitly bars receipt of "illegally obtained" personally identifiable information before a **"grand jury."**

44.     Consequently, the undisputed record shows that the sole grand jury witness to indict Gakuba was adjudged *Franks* perjurer IL police Charles O'Brien. The suborner of *Franks* perjury who "helped" prepare false affidavits supporting bogus search warrants—ASA Kate Kurtz—posed leading questions to O'Brien during the grand jury proceedings indicting Gakuba.

45.     **The indictment is void.** O'Brien's and Kurtz's receipt of Gakuba's "personally identifiable information" (i.e. name and birthdate) was barred by federal law as the crime investigation was an "other proceeding ... in or before [an] other authority of the United States, [and] a State." 18 USC §2710(d). **See Volume 7 - Attachment(s) 1.**

46.     On-point case law undisputedly proves this matter of fact and law. See cf *In re B.A*, 562 S.E.2d 605 (N.C. Ct. App. 2002) (juvenile delinquency petition void where element of the crime—age / birthdate—are not in the petition resulting in trial court's lack of jurisdiction) In re B.A., 149 N.C.App. 667 (N.C.App.,2002) ; See also *In re Griffin*, 162 N.C. App. 487 (N.C. Ct. App. 2004) (same) In re Griffin, 162 N.C.App. 487 (N.C.App.,2004)

47.     Gakuba argued this in pre-trial *pro se* motions deliberately ignored by the appointed trial judge. **See Volume 7 - Attachment(s) 1.**

48.     Gakuba argued this on direct appeal and all throughout the state and federal courts per (state and federal) certioraris, mandamuses, post-conviction petitions, and, now, a pending IL state habeas petition. **See Volume 7 - Attachment(s) 2.** *Gakuba v. Illinois Prisoner Review Board*, 2021-MR-1206 (7th Cir. Ct., Sangamon, IL).

49.     Now, the preceding police and prosecutors (state and federal) malignly contrive a fantasy in lieu of the truth: that after IL and USA police and prosecutors illegally obtained

Gakuba's biographical/identity information, carefully handwrote it in police notes and reports (least they forget), that an appointed trial judge ordered its suppression (from their memory).

50. This was only so upon Gakuba seeking suppression per the VPPA's 18 USC §2710(d) in a June 13, 2011 "Motion to Suppress" at the conclusion of a *Brown / Franks* evidentiary and argument hearing. The judge branded this federal privacy law "bizarre"; abstained from ruling on it until Gakuba insisted he do so—some 28 months later in October 2013—then granted the suppression motion per the VPPA only to recklessly disregard the law-of-the-case and allowed all that evidence *back into the case*. Calculated judicial overreach—thumb-on-the-scale injustice.

51. Thereafter, the trial judge (as advocate) *sua sponte* promoted the fantastic theory that these police and prosecutors had "independently" obtained Gakuba's name and birthdate through a false/fabricated "booking process – version" Q&A and Gakuba's fabricated hearsay response.

52. A response never recorded nor memorialized in anyway because it simply never happened.

53. Thus, the theory goes, IL and USA police's and prosecutors' memories were ordered suppressed of Gakuba's "personally identifiable information" that they committed to memory (in writing no less), only for these very same police and prosecutors to then remember some 9-years later that a "booking process – version" took its place which they had forgotten to memorialize or handwrite in any police notes or reports.

54. This is an incredible delusion and fantasy; rising to the level of the absurd.

55. Comparable to the 2020 election fraud theorists who find the truth inconvenient to their enterprise of mendacity.

56.     Likewise, here, facing a $52 million pending federal *pro se* lawsuit for damages, these confederates are using Gakuba's wrongful convictions now as a *Heck* affirmative defense from liability.  And have witting abettors—IL and federal courts—as insidious complicitors. See *Gakuba v. O'Brien*, 12-cv-07296 (USDC-ND IL) (ECF 279, ID #1476—"*Heck*" dismissal argument).

57.     At the time of Gakuba's 2006 false arrest, Gakuba's audited tax returns reveal he was a 36-year old energy trader with income of about $177,000 and $300,000 variable compensation. Actual damages for lost past income alone are $7-9 million. See *Gakuba v. O'Brien*, 12-cv-07296 (USDC-ND IL) (ECF 279, ID #1476—"*Heck*" dismissal argument).

58.     As a matter of fact, the false/fabricated "booking process – version" is barred from admittance at trial by state law barring any un-recorded/un-memorialized statements by a criminal defendant from admittance at trial.  14th Amendment due process / equal protection violation. Accord *People v. Little,* 51 N.E.3d 1001, 2016 IL App (3d) 140124 ¶47 (all purported inculpatory statements / admissions not audio video recorded are inadmissible[.] "Similarly, the statutory language does not limit the videotaping requirements to investigations solely related to murder cases." 725 ILCS 5/103-2.1(f) (Westlaw 2010)— Audio video recordings of custodial interrogations).

59.     As a matter of fact, it is inapposite to the principle tenet for mistrials: illegal evidence before a jury for which "unringing a ringing bell" is a metaphysical impossibility.

60.     As a matter of law, it fails too. As Gakuba has repeatedly and futilely argued before preceding **irrationally biased and prejudiced state and federal courts,** the "booking process" is only an exception to 5th Amendment / *Miranda* protections.  It is not an exception to illegal 4th Amendment / *Brown* / *Dunaway* home invasions. See accord *USA v. Hastings,* 246 F.Supp.3d

1163, 1167-68, 1178, 1181-83 (ED. TX 2017) (*Brown* controls); *USA v. Ienco,* 182 F.3d 517, 525-29 (7th Cir. 1999) (same) (a formal arrest is not an intervening event to an illegal 4th Amendment violation; co-defendant's identity would not have been discovered but for the 4th Amendment violation; there was no *ongoing independent* investigation from the one tainted by police misconduct).

61.    See on-point (dispositive to Gakuba) *State v. Locklear*, **138 N.C. App. 549, 550 (N.C. Ct. App. 2000)** (held: The trial court erred in a first-degree statutory rape case under N.C.G.S. § 14-27.7A(a) by admitting the investigating officer's testimony of defendant's statement of his date of birth during the booking process without the benefit of the *Miranda* warnings.) (cites *Rhode Island v. Innis,* **446 U.S. 291, 301, 64 L.Ed.2d 297, 308 (1980)** (interrogation under *Miranda* consist of questions "the police should know are reasonably likely to elicit an incriminating response")) State v. Locklear, 138 N.C.App. 549 (N.C.App.,2000)

62.    Consequently, IL and USA police and prosecutors compelled the illegal disclosure of all Gakuba's "personally identifiable information" such that they, as **"[police] departments,**

> **officers, [prosecutorial] agenc[ies,] or other authorit[ies] of the United States, a State ... [could] receive in evidence [at] trial, hearing[s], or other proceedings in or before [all] courts, grand jur[ies] ..." 18 USC § 2710(d).**

63.    When not deliberately ignorant / recklessly disregarding these plain statutory proscriptions, they falsely assert that the "exclusionary rule" for 4th Amendment violations supersedes this statute's exclusionary mandate.

64.    They are flatly wrong. Objectively unreasonable as a matter of fact and law. 28 USC §2254(d)(1)-(2).

65.    See *USA v. Wilson,* 633 Fed.Appx. 750, 753 (11th Cir. 2015) ("The availability of the suppression remedy for ... statutory, as opposed to constitutional violations ... turns on the

provisions of [the statute] rather than the judicially fashioned exclusionary rule aimed at deferring violations of 4th Amendment rights. *USA v. Donovan,* 424 US 413, 432 n. 22 (1977)").

66. The exclusionary rule merely fortifies, but never replaces, the statute's exclusionary mandate. See id.

67. **Gakuba's indictment is void as a result.** The sole grand jury witness—adjudged *Franks* perjurer IL police Charles O'Brien—and sole prosecutor (suborner of *Franks* perjury ASA Kate Kurtz) violated the VPPA's exclusionary mandate, flagrantly and egregiously. **See Volume 7 - Attachment(s) 1.**

68. And because Gakuba's name and birthdate are "not to be received in evidence in any trial, hearing … grand jury ... or other proceeding ... in or before any court, grand jury, department, officer, agency … or other authority of the United States, a State" the will of the legislature must be upheld by a competent and impartial court of law. 18 USC §2710(d).

69. Like with *Franks* analysis and procedures, once the poisoned fruit—name and birthdate—are stricken from the record, the element of Gakuba's age is stricken and, with it, the charges are voided. Likewise, once Gakuba's name/identity are stricken, there is nobody to indict.

70. See accord *In re B.A,* 562 S.E.2d 605 (N.C. Ct. App. 2002) (juvenile delinquency petition void where element of the crime—age / birthdate—are not in the petition resulting in trial court's lack of jurisdiction) In re B.A., 149 N.C.App. 667 (N.C.App.,2002) ; See also *In re Griffin,* 162 N.C. App. 487 (N.C. Ct. App. 2004) (same) In re Griffin, 162 N.C.App. 487 (N.C.App.,2004)

71. **The lack of jurisdiction is plainly obvious—just as the 2020 election President Joe Biden plainly won.**

72. The preceding malfunctional courts were entitled to their own opinions, but, not their own facts.

73.     For these reasons, Gakuba's wrongful convictions must be vacated per 18 USC §2710(b)(2)(C), §2710(d) and for perpetuity per 18 USC §2710(e).

74.     Habeas relief must occur promptly: the unconditional vacatur of these wrongful convictions and Gakuba's immediate release from "in custody."

## V. Summary of Issues (scissor pasted verbatim from first-in-time habeas)[8]

75.     There were seven (7) plain reversible errors—including three (3) structural errors: Gakuba's right to a public trial; right to be *pro se*; right to an impartial trial judge. (6th, 5th & 14th Amendments)  Three were especially flagrant.

76.     **One,** the de facto invalidation of the VPPA/18 USC §2710 et seq. by reversing mendaciously the chronology of the fact narrative. *Gakuba-2017* at ¶49: "We disagree and conclude that defendant's name and age were derived from sources independent of any illegal police conduct." *Id* at ¶50: "[State police] O'Brien testified that [] the hotel advised O'Brien that the room was registered to 'Peter Gakuba.'  This occurred prior to O'Brien contacting the video store, entering defendant's hotel room, or interviewing him at the police station."

77.     This is patently false; and was scissor pasted right from the state's response brief at p.23: "Further, this information was gathered prior to contact with the video store or entry into the hotel room."

78.     The problem: the state's false conclusion of fact cites nowhere to the "R"eport of proceedings because it simply did not occur.  The truth, instead, is disregarded/omitted.

---

[8] The majority of this habeas petition merely scissor pastes from the original habeas petition (verbatim) its contents word-for-word—and is delineated as such, accordingly.  Likewise for Gakuba's post-conviction petition pointing the blame for all the clear, plain, structural errors as 6th Amendment ineffective assistance of counsel violations—versus blame casted at the police and court officers (prosecutors, judges).  Gakuba wants to ensure no "failure to exhaust" or "procedural default" invocations are made.

79.    March 13, 2009 state prosecutor ("ASA") Kurtz proclaimed the true fact chronology:

KURTZ:    "Oh Hollywood Video. They [(state police)] went to Hollywood Video. They find out Peter Gakuba rented videos. The same videos that [(complainant)] Matthew S. [("MS")] told them he rented. They went to the hotel. **Hey, do you have a guy here by this name[?]  Ge, we sure do[.]  At that point they absolutely 100% had probable cause."** (R484) (emphasis)

80.    June 13, 2009 (pretrial hearing):

KURTZ:    "Just briefly, the defense [] says his detention and arrest was without probable cause. [] O'Brien went through the details [] after meeting with the victim what he did to confirm. He even went to Hollywood Video, where—" (R286-87)

THE COURT:"Uh-huh" (R286-87)

KURTZ:    "—Somebody by the same name as the person renting the hotel room where MS had said this 'Phil" was, had rented the same exact name in Hollywood Video had rented these videos[.]  So there was, in fact, probable cause."

81.    On July 11, 2011 Kurtz reiterates the "100%" absolute probable cause by adding O'Brien met with MW who said nothing happened. (R761)  O'Brien does things to verify MS's story "which is good police work. He goes to where Matt says. [] He goes to Hollywood Video.

He does at this point have probable cause. That's an issue that's been argued before at the previous hearing as far as I can recall." (R761)

82.    June 13, 2011 (pretrial hearing—*Franks* / *Brown* violations):

O'BRIEN:    "MS had told us that they [(MS & Phil)] had gone several places; one being a Hollywood Video store[.]  One of those videos matched up exactly as the one Scary Movies 1, 2, & 3[.]  This was done by phone. When I talked to the person working at the time checked their information, their records upon learning that the movies that they represented which matched up also gave me the person that rented them, **Peter Gakuba.**" (R700)

83.    The undisputed plain record shows **"Peter Gakuba"** came from the illegal disclosure of Gakuba's video customer records, then, compared to the Marriott hotel guest registry

to obtain more "personally identifiable information" ("PII")—"Room 101"—the first room (feet from) behind the front desk. 18 USC §§2710(a), (b)(2)(C), (d).

84.     The undisputed plain record shows Gakuba's birthdate of "11/21/1969" was first and foremost obtained illegally when O'Brien wrote Gakuba's "PII" in carefully handwritten police notes least O'Brien forget. (C2804-05)

85.     **Two.** Gakuba's reinvocation of his *pro se* right (after being *pro se* for 19 months) was denied 3-6 weeks before trial as a "delay tactic." *Gakuba-2017* ¶¶85-88.  If the IL App. Court cannot be trusted to reverse plain structural error, it renders the whole of their opinion suspect and unreliable.

86.     **Three.** Gakuba was sentenced to a 12-years (3-counts x 4-years) "discretionary consecutive" sentence.  No Class 2 (720 ILCS 5/12-16(d)) aggravated criminal sexual abuse case has ever survived appellate review for consecutive sentencing per 730 ILCS 5/5-8-4(b) (Westlaw 2006) for one instance ("lasting less than 30-minutes") (R2187-88); one victim; no criminal history; probation was the PSI report's finding, and the state's plea offer was probation for the near nine (9) year pendency of this case.  In fact, Gakuba was fully complaint, punctiliously so, with all pretrial probation terms for nearly nine years.

87.     The sentence was unlawful as there are no facts to support the need to protect the public.  If true, then Gakuba should not have been allowed bail/bond as Gakuba's danger would have been extant for the near nine (9) year pendency of this case.  Accordingly, the sentence was "cruel and unusual punishment" disregarding Gakuba's rehabilitation potential.  8th Amendment, U.S. Constitution; Art. 1 §11, Illinois Constitution 1970.  Concurrent terms are lawful.

88.     **April 27, 2017 should be Gakuba's release date.**

89.    This is a case of first impression requiring a high court of review to issue a landmark decision on when can an aggrieved party seek an interlocutory appeal after their identity evidence ("PII") was illegally disclosed; illegally received before every "authority" of the United States and/or a state in every "proceeding"—including a "grand jury"—as "100% absolute probable cause" to charge and convict Gakuba of an age-dependent crime, "statutory rape," 720 ILCS 5/12-16(d)?  See 18 USC §2710(d).

90.    The VPPA's exclusion authority—18 USC §2710(d)—is a near carbon copy of the Foreign Intelligence Surveillance Act of 1978 ("FISA"): 50 USC §1806(e).  In turn, Illinois' wiretap law is similar to the FISA: 725 ILCS 5/108A-8(c) (from ch. 38, ¶108A-8).  Federal and state wiretap laws limit interlocutory appeals to the state only; not so with the VPPA as the aggrieved party is a private person versus a public entity.  See e.g. *USA v. Daoud*, 761 F.3d 678 (7th Cir. 2014) (interlocutory appeal by state; FRE 201—Jurisdictional Statement (ECF 2)).

91.    The Illinois appeals and trial courts evaded enforcing the VPPA through a mendacious fact narrative used to support a sophistic analysis of law.

92.    Federal habeas corpus relief is required as a result.  **Issue/Error 1-2, 1-3.**

93.    **Issue/Error 2-1, 2-2** involves a conflict of how warrants issued after criminal charges were filed, are resolved once quashed per *Franks* perjury violations rendering them probable cause-less. IL S. Ct. Rule 411; *People v. Turner*, 367 Ill.App.3d 490, 491-93 (2006) had the trial court deny a second Rule 411/412 motion after quashing a prior Rule 413 motion miscaptioned a warrant on estoppel grounds.  Here, the trial court did just the opposite:  Allowing the state to use/"bootstrap" the illegal evidence in a quashed warrant to reclaim the identical identity evidence (Gakuba's DNA) legally.  A habeas corpus grant will set the bright line

parameters and bring this issue in-line with federal courts. *USA v. Brown,* 613 F.3d 638, 650 (3rd Cir. 2011) (buccal warrant quashed per *Franks*; no reclamation of DNA per 42 USC §14135a).

94.     **Issue/Error 3-1, 3-2** the IL App. Court errs in not addressing the *Napue* violations at trial by the same state actors in the preceding *Franks* perjury violations: perjurer O'Brien, suborner Kurtz. Gakuba argued that the individual and cumulative evidentiary errors rendered the evidence legally and manifestly insufficient for retrial: Double Jeopardy.

95.     In *People v. Lara,* the IL Supreme Court discusses its decision in *People v. Sargent,* 239 Ill.2d 166 (2010). *Lara,* 2012 IL 112370 (IL S. Ct. 2012). Evidence of sexual penetration cannot support counts of sexual conduct. *Lara* at ¶59. Here, the inverse occurred:

KURTZ:      **"There is no testimony as to where the swabs were taken from.** [] The People submit a different version than counsel submits that Dr. Escarza explained **swabbing around the anus[.]** There is physical evidence[.] The anal swabs were taken from MS's anus[.]" (R2453) (emphasis)

96.     *Gakuba-2017* at ¶81 argues no physical evidence corroboration is required. Yet, the state did argue corroborative physical evidence; placing Gakuba in a lose-lose situation. The physical evidence contradicts the sworn statements of MS and do not support sexual penetration; per *Lara* and *Sargent.*

97.     **Issue/Error 4-1, 4-2** the IL App. Court affirms plain structural error: the denial of Gakuba's reinvocation to proceed *pro se* 3-6 weeks before trial. *Gakuba-2017* at ¶88: "Given the history of this case, we cannot say the trial court's conclusion is arbitrary, fanciful, or unreasonable[.]" Omitted/disregarded from this sophistic analysis of law is the undisputed plain record that Gakuba sought no continuance.

98.     December 9, 2014 (pretrial hearing):

GAKUBA:     "But at this stage, with a trial date set **and a trial date set that I believe we all can meet,** I'm finding myself in the position where it may be a problem to meet the issue and the burden of having the witnesses show up[.]" (R1631) (emphasis)

99.     Further, Gakuba filed *pro se* "Defendant's Motion to Introduce Evidence Pursuant to 720 ILCS 5/111-7(a)(2)" (required to be filed at least 14-days before trial) on April 8, 2015 (trial date: April 27, 2015) simultaneous to Gakuba's reinvocation; and on the trial date itself, asst. public defender ("APD") Gustafson filed herself a continuance motion citing Gustafson's ill-preparedness. (C3262-64)  Heard and denied.  Thus assuming arguendo, a *pro se* Gakuba's continuance would have been denied too. (R1683-40)

100.    Consequently, this was an unreasonable and contrary application of law.  See *Imani v. Pollard,* 826 F.3d 939, 947 (7th Cir. 2016) (federal habeas relief granted: denial of 6th Amendment *pro se* right four weeks before trial, cites *Faretta v. California,* 422 US 806, 835 (1975) ("weeks before trial" denial of *pro se* right a constitutional error)); see accord *People v. Peterson,* 2013 IL App (1st) 103126-U ¶¶38-42 ("three weeks is hardly 'just before the commencement of trial' that our Supreme Court contemplated would allow a trial court the discretion to deny a motion for self-representation. [*People v. Burton,* 184 Ill.2d 1, 21-24]; see *People v. Woodson,* 2011 IL App (4th) 10023 ¶ 24 (citing to *W.LaFave & J.Israel, Criminal Procedure §11.5(d) at 47-48 (1984)* (a request to proceed *pro se* made before trial commences is generally viewed as timely if it is not accompanied by a request for additional time to prepare)").

101.    Federal habeas relief is needed as *Burton* and *Faretta* are binding precedent, as a matter of law.

102.    **Issue/Error 5-1, 5-2** requires federal habeas relief as Macon Co. ASA Kurtz was illegally appointed as a "special assistant state's attorney" in Winnebago Co. per 55 ILCS 5/4-2003. (C2984; R1647-63)  This case is now in conflict with *People v. Woodall,* 333 Ill.App.3d 1146, 1153-56 (2002)

103.    *Woodall* at 1154-55: "The use of special prosecutors is limited by statute.  They

can be appointed by circuit court order only [in accordance with] 55 ILCS 5/3-4008 (Westlaw 1998)  Furthermore, state's attorneys are not at liberty, as a matter of course, to create ASA positions.  The counties code provides as follows: 'Where ASAs are required in any county, the number of such assistants shall be determined by the county board[,] 55 ILCS 5/4-2003 (West 1998)'."

104.    Further, this was the only case Kurtz was prosecuting as a former Winnebago Co. ASA among the +100 cases involving sexual assaults (Class X & 1 felonies). (C2984-89; R1647-63)  See *People v. Lang,* 346 Ill.App.3d 677, 684-86 (2004).

105.    **Issue/Error 6-1, 6-2** requires federal habeas relief as Gakuba was tried before a judge as advocate.  See *People v. Wiggins,* 2015 IL App (1st) 133033, ¶¶44-46.  Reversible structural error.

106.    On June 5, 2013 the trial court impermissibly vouches for the credibility of Kurtz and state police. (R1110-17)  This in spite of the systemic police and prosecutorial misconduct: the VPPA violation; the illegal 4th Amendment / *Brown* home invasion; proceeded by another surreptitious one the next day at Gakuba's Alpine Inn room; whereby *Franks* violations were adjudged a cover-up. (C198-201, C146-91, C205-28, C237-50, C255-64, C2290-2314, C2908-42)

THE COURT: "What's your theory that [] **Ms. Kurtz** has targeted you as the one who she **is willing to risk her law license and her entire career over?**  I just have a hard time wrapping my head around that.  And every, **why every police officer would be willing to risk their career to get you[?]**" (R1116-17) (emphasis)

107.    **Issue/Error 7-1, 7-2** finally requires federal habeas relief.  As discussed earlier supra, Gakuba was illegally sentenced to discretionary consecutive sentences: 12-years (3-counts x 4-years) on a Class 2 felony, aggravated criminal sexual abuse (720 ILCS 5/12-16(d)).  See 730 ILCS 5/5-8-4(b) (West 2006).  This was "cruel and unusual punishment" 8th Amendment, U.S. Const.; and disregarded Gakuba's rehabilitation potential was high. Art. 1§11, IL Const. 1970.

108.    *People v. Rivera,* 212 Ill.App.3d 519, 527 (1991) ("A trial court can properly consider defendant's conduct while on probation to assess 'rehabilitation potential.'") See *USA v.*

*Natal,* 549 F.3d 530, 534-35 (2nd Cir. 2017) (A trial court has abused its discretion on an erroneous view of the law, error of evidence, facts, or rendered a decision that cannot be located within a range of permissible decisions) (at 538: procedural reasonableness of sentence reviewed for abuse of discretion; application of sentencing law reviewed de novo).

109.    *Natal* at 538-39:  Defendant's conviction of three (3) counts of being accomplice based on assistance to son who started arson fire resulting in deaths of three (3) victims involved essentially the same harm—should be grouped together.  Cf *People v. Ostrowski,* 394 Ill.App.3d 82-83 (2009) (counts of aggravated criminal sexual abuse merged/grouped for sentence of 36 months' probation).

110.    *Gakuba-2017* at ¶116 cites for support *People v. Buckner,* 2013 IL App (2d) 130083, ¶¶38-40 (consecutive sentences by record "conduct was ongoing, extensive, and not likely to end").

111.    *Buckner* at ¶38-39: The defendant's "behavior was 'not evidence to any great potential for rehabilitation, [having] provided false information in the [] presentence report [and] attempting to evade custody.'" *Buckner* is inapposite to the instant case.

112.    Finally, *Gakuba-2017* at ¶117 affirms solely on the basis that "in exercising its discretion to impose consecutive sentences, the trial court considered the character of the defendant." This is unreasonable, and a contrary application of law.  See *People v. Wilson,* 2016 IL App (1st) 140163 ¶ 15 (affirm 15-year sentence for Class X sentence—drug trafficking).

113.    *Wilson* at ¶15: "**The trial court could not discern** whether defendant's **'character and attitude'** indicated he was likely to commit another crime, but noted that his 'past behavior' suggested that his conduct 'will likely recur.' Moreover, the trial court stated that defendant had

a **'very significant history of prior delinquency'** ... defendant's 14 prior felony convictions **'weighed very, very significantly[.]'"** (emphasis)

114.    The factual findings here were that Gakuba self-diagnosed his "Asperger's Syndrome [but] was vague and evasive [] about his erectile dysfunction and being 'asexual'." (R2570-71)  In sum, the trial court did not align the factors of 730 ILCS 5/5-8-4(b) with Gakuba's situation.  Indeed, based it on shear speculation.  See *USA v. Bradley,* 628 F.3d 394, 400 (7th Cir. 2010) ("due process requires the sentencing determinations be based on reliable evidence, not speculation or unfounded allegations." Quoting *USA v. England,* 555 F.3d 616, 622 (7th Cir. 2007)).

115.    **Gakuba's concurrent 4-year sentence (at 50%) = April 27, 2017 as his out date.**

## VI.    Summary of Issues (scissor pasted verbatim from post-conviction opening brief)[9]

116.    The bases for dismissal of Gakuba's *pro se* 33-page post-conviction petition are essentially two (2) fold: (1) res judicata, and (2) asst. public defender (APD) Gustafson's perfunctory "representation" fails the 2nd prong of *Strickland's* "but for" prejudice standard. *People v. Gakuba,* 2006-cf-4324 (17th Cir. Ct., Winnebago Co.) (post-conviction petition ORDER heretofore ***"Gakuba-PC"***).  Id at ¶¶5, 11

117.    **First,** Gakuba can find no case law precedence barring a collateral attack on a wrongful conviction resting on material misrepresentations and omissions of fact that resulted in

---

[9] The majority of this habeas petition merely scissor pastes from the original habeas petition (verbatim) its contents word-for-word—and is delineated as such, accordingly.  Likewise for Gakuba's post-conviction petition pointing the blame for all the clear, plain, structural errors as 6th Amendment ineffective assistance of counsel violations—versus blame casted at the police and court officers (prosecutors, judges).  Gakuba wants to ensure no "failure to exhaust" or "procedural default" invocations are made.

a reviewing court's objectively unreasonable determination of the evidence. Indeed, a pending federal habeas corpus petition on 4 of the 7 issues raised in *Gakuba-2017* rebuts the doctrine of res judicata. Judicial notice FRE/IRE 201: *Gakuba v. Brannon*, 17-cv-50337 (USDC-ND IL) . Cf 28 USC §2254(d)(1)-(2).

118.    Moreover, *Gakuba-2017* neglected to address several constitutional issues by citing to IL S. Ct. Rule 341, or, invoked "forfeiture." However, those issues should have been reviewed under plain error had Gustafson been effective in preserving these errors which Gustafson did not do.

119.    **Second**, "but for" APD Gustafson's failure to raise both federal and state constitutional and statutory law violations, *Gakuba-2017* pretermitted a reasonable review of the case.

120.    Specifically, *Gakuba-2017* deliberately ignores Gakuba's "booking process" denial "affidavit," while **Gakuba-PC at Fn#1** deceitfully labels it a "13-page document." (C2366-78; **Attachment #1**).

121.    It's axiomatic that adjudge *Franks* perjurer O'Brien committed *Napue* perjury at the leading questioning of suborner state prosecutor (ASA) Kate Kurtz when testifying to a false "booking process – version" and fabricated hearsay response. Gakuba's affidavit was substantive evidence and APD Gustafson should have cross-examined O'Brien outside the presence of the jury but not allow Kurtz's direct examination of O'Brien to occur "off the record, outside the well of the court," (R2254-57) as to the "million dollar question": Gakuba's birthdate. (R2267)

122.    In conclusion, "but for" Gustafson's non-representation Gakuba would not have been wrongly convicted and, even worse, wrongly sentenced to 12-years consecutive prison sentences solely on Gakuba's "character"; the racist dog whistle of a racially biased IL state justice

system. See *Strickland,* 466 US at 691; *Cronic,* 466 US at 658-60; *Avery,* 308 US at 446; *Powell,* 287 US at 58.

## VII. Statement of Facts (scissor pasted verbatim from post-conviction appeal opening brief)[10]

123.     **Preface:** *People v. Gakuba,* 2017 IL App (2d) 150744-U (heretofore "***Gakuba-2017***") contained numerous material misrepresentations and omissions in reckless disregard for the truth. In turn, this unreasonable assessment of the manifest record resulted in an unreasonable, contrary application of law. See e.g. 28 USC §§2254(d)(1)-(2); "End Note" of this brief; *Gakuba v. Brannon,* 17-cv-50337 (USDC-ND IL)

124.     At Gakuba's April 28, 2015 jury trial, complainant Matthew S. ("MS") testified he was a 23-year old homosexual whose devout Catholic parents believe "homosexuality is a sin, and can lead to hell." (R2209)  They grounded MS for being gay, but they still loved MS. (R2203)

125.     At 2:40 PM on November 4, 2006 MS was reported a 14-year old runaway by MS's parents to the Rockton police. (C169-76; R2134)  "MS started crying and said he was having problems with his parents" at 1:48 PM to Rockton police. (C169-76)  In riposte, MS's parents complained that months earlier they noticed a "gay website on their computer" and MS had been sending "naked photos" of himself to unknown recipients on the internet. (C172; R483-84)  State police Charles O'Brien, Michael Easton, Dan Balsley, and state prosecutor (ASA) Kate Kurtz took

---

[10] The majority of this habeas petition merely scissor pastes from the original habeas petition (verbatim) its contents word-for-word—and is delineated as such, accordingly.  Likewise for Gakuba's post-conviction petition pointing the blame for all the clear, plain, structural errors as 6th Amendment ineffective assistance of counsel violations—versus blame casted at the police and court officers (prosecutors, judges).  Gakuba wants to ensure no "failure to exhaust" or "procedural default" invocations are made.

over the investigation. (C169-76; R483-84)  Balsley prepared a detailed report on November 6, 2006 of MS's account of events from November 4, 2006. (C169-76)

126.    On November 4, 2006 between 5:15 and 6:50 PM O'Brien telephoned Merlin Peacey, store manager, Hollywood Video from the hotel lobby of the Courtyard by Marriott in Rockford, IL as MS stated he spent the night there with an 18-year old white male named "Phil" where the alleged sexual activity occurred.  (Gakuba was 36-years old, black male)  O'Brien compelled the illegal disclosure of the "person [] that rented [] Scary Movies 1, 2 & 3" (R700) such that O'Brien, state police and prosecutors, could be illegally in receipt of Gakuba's "personally identifiable information." (PII) (i.e. name, birthdate, and driver's license information) See 18 USC §2710(a) (C169-76, C2804-05; R286-87, R484, R700)  O'Brien wrote Gakuba's "PII" in carefully handwritten police notes least O'Brien forget. (C2804-05)

127.    After "they went to Hollywood Video[,] they find out Peter Gakuba rented videos. The same videos MS told them he rented.  They went to the hotel.  Hey, do you have a guy here by this name[?]  Gee, we sure do," (R484) was proceeded by a 6:50 PM "Consent to Search" form O'Brien had Marriott hotelier's Ronald Rodriguez sign resulting in the illegal search, seizure of Gakuba and his wallet, specifically driver's license, to corroborate Gakuba was "the person that rented Scary Movies 1, 2 & 3." (C175, C2369, C278; R222-328, R329-432, R696-741)

128.    From 7:55 to 8:55 PM Gakuba's coerced custodial *Brown* interrogation was not objectively memorialized in writing nor audio visually, whereas MS's were. (C175-76; R265-66)

129.    Balsley's police report gave 9:20 PM as Gakuba's formal arrest, and "11:52 PM" when Gakuba was jailed (some three hours after Balsley's report purports to be written). (C2370-72; Trial Exhs. ##19-20)  At 11:34 PM state police ran Gakuba's rental car tag. (C1095, C1105) The registrant: "PV Holdings." (C44)

130.    On November 5, 2006 O'Brien obtained two search warrants: (1) for the Marriott room (C23-32), and (2) for the rental car. (C42-45)  Meanwhile, Gakuba posted the $250,000 bail and was lodged at the Rockford Alpine Inn which, according to police notes, ASA Kurtz obtained "Room 427's keys" from "Brenda Adams, general manager." (R2290-2314)

131.    More "PII" was illegally obtained including, Gakuba believes, Gakuba's DNA as no DNA of Gakuba's or MS's were ever found anywhere else. (C2290-2314, C2908-42)  Later at trial, the state produced a Sexual Assault Evaluation Kit ("SAEK") with Gakuba's DNA on anal swabs; not the oral swabs which MS stated Gakuba had ejaculated moments before anal sex. (C169-76; R2184-90; Trial Exh. #18)

132.    On November 6, 2006 O'Brien obtained a buccal "seizure warrant" for Gakuba's DNA. (C33-38)

133.    On December 8, 2008 continued to January 13, 2009 the first of two evidentiary hearings were held.  They both sought to quash the three warrants.  This hearing was on $5^{th}/6^{th}$ Amendment violations. (R222-432)  The second hearing on June 13, 2011 was on 4th Amendment / *Brown* / *Franks* violations. (R693-741)  Both hearings, O'Brien was the key material witness. (R226-288; R696-741)

134.    Hearing one, the trial court found state police credible.  Gakuba "incredible." (SR2632-39)  Further, because Gakuba was not heard invoking his 5th Amendment right while on the telephone with his lawyer, Gakuba's 6th Amendment right was not violated. (SR 2635-36)

135.    The second hearing resulted in the hotel search and buccal seizure warrants being quashed. (R693-741)

136.    On July 11, 2011 a 4th Amendment violation per *Brown* was ruled to have occurred. (R742-92)  September 15, 2011 a *Franks* violation was adjudged: O'Brien made "material

misrepresentations [and] reckless disregard for the truth" in both warrants Kurtz "helped" produce. (R803-08, R415-16) Further, Kurtz argued the buccal warrant functionally was a Rule 413(a)(vii) discovery motion and shouldn't be quashed or Kurtz will file a duplicitous Rule 413 motion thereafter. (C253; R801) Heard and denied. (R803-08) Kurtz filed the Rule 413 motion, affidavit, and exhibits: crime lab reports evincing Gakuba's DNA profile by the lab and contradicting the motion asserting instead a "suspect" DNA profile. (C266-71; R811) The trial court grants the motion on September 29, 2011 rejecting Gakuba's estoppel arguments by concluding "there is a different basis[,] that being the [SAEK] kit." (R822)

137.    On September 20, 2010 at the start of three jury trial dates set in this case, Gakuba moved to substitute Gakuba's Rockford-based lawyers.  Heard and denied.  These lawyers instanter moved to withdraw.  Heard and granted over Gakuba's objections. (C123-132; R573-639) Gakuba instanter invokes *pro se* status. Denied: "Once you go *pro se*, you're going *pro se*." (R635)  Gakuba **did** go *pro se* after dismissing his Chicago-based lawyers on April 30, 2013. (C361-87, C656-58; R1008-52)

138.    All but one of the many *pro se* motions Gakuba filed were denied: the VPPA suppression motion.  (C203-08, C1038-60, C1072-1140; R1236-62)

THE COURT:"Any personally identifiable information received from the video store is suppressed." (R1238)

139.    Thereafter, the trial court returns Gakuba's "PII" back into these proceedings:

THE COURT:"The video information was simply corroborating [] movies rented by **the defendant**." (R1239)

140.    As all Gakuba's motions and offers of proof were denied on the pleadings (R1620); ruled untimely (R1429-34); and thereby subjectively ignored, resulted in Gakuba seeking an asst. public defender ("APD") which the trial court granted on November 25, 2004. (C2977-78, C2980)

141.    However, on December 9, 2014 the trial court admonished Gakuba on the "record." R1596-98, R1664-69) "If the public defender were removed at your request close to the trial date, you would proceed to trial *pro se* [] because I will absolutely find that [] to be a delay tactic." (R1598-99)

142.    On March 31, 2015 Gakuba filed "Defendant's Motion to Substitute Counsel." (C2999-3151)  It was heard and denied after a *Krankel* hearing on April 8, 2015. (R1664-68) Gakuba moved instanter to be *pro se* which the trial court denied having "anticipated" it. (R1668-69)  Gakuba responds, "Well, your honor" before the trial court cuts off Gakuba, "You know what [] I've ruled.  You're not going to be allowed to go *pro se*.  It's yet another delay tactic. I saw this motion coming.  In fact, I believe I even made a record on December 9[, 2014.]" (C3179; R1669)

143.    On April 8, 2015 expecting to proceed *pro se* as a matter of right and consistent with that "record" (R1596-99) Gakuba filed "Defendant's Motion to Introduce Evidence Pursuant to 725 ILCS 5/111-7(a)(2)." (C3155-78, Trial Exhs. SEALED)  On April 17, 2015 APD Gustafson had it stricken, Kurtz didn't object. (C3254-55)

144.    Gakuba's April 28, 2015 jury trial had nine (9) witnesses testifying for the state; one under state subpoena for the defense.  MS's father Jeff S. began by identifying People's Exhibits ##1-2: "Matt's 2006 Photo" and "Photo given to Rockton [police]." (R2133-35)  The photos were not from MS's "MySpace" despite testimony of it. (R2136)  Jeff S. then testified to "reprinting" the last fax that had "a number" indicating its use by MS. (R2137)  The next day, Jeff S. obtained his wife's mobile phone records with a number that "matched the fax number" before giving these documents to the police. (R2138)

145.    Next, MS testified by affirming the photos in People's Exhibits ##1-2 as himself; that MS had a "MySpace" page; and that People's Exhibits #6 was "Phil's Myspace page" (R2152-

54) MS then testified to chatting with Phil using "AOL Instant Messenger"; Phil was 18 but believed MS was a "40-year old woman" and Phil wanted proof contrarily. (R2156-59) MS "sent him a fax of my school ID" then is shown People's Exhibit #7: "Copy of Matt's school ID," answering "It's a copy of—or it's a fax of my school ID." (R2160-61)

146.    Kurtz: "And then after you faxed that to Phil, did you chat with him to make sure he received it?" MS answers the leading question—"Yes"—they chatted and Phil confirmed receipt prompting an objection: "hearsay." Overruled. (R2164)

147.    After dinner and watching movies in the Marriott hotel room, "that's when the sexual acts began." (R2188)  Phil took both their clothes off, pushed MS's head towards Phil's penis telling MS to give him a blow job and MS would receive oral sex. (R2182-83)  MS did not ejaculate, but that Phil ejaculated on MS's mouth. (R2184-85)  After Phil climaxed during oral sex, moments later, Phil put his penis "in my butt." MS testified lube was used but no condom. (R2186)  MS didn't know if Phil ejaculated a second time moments after ejaculating on MS's mouth. (R2186-87)  On cross-exam, MS "didn't know" if Phil was still "erect." (R2217) But the sequence of sex was now reversed: Phil performed oral sex on MS; MS performed oral sex on Phil who ejaculated; followed momentarily by anal sex. (R2217)  People's Exhibit #18 (MS's November 4, 2006 (audio recorded) interview) refreshed MS's memory that Phil was still erect during anal sex. (R2225)

148.    "In less than ½ hour" all three (3) sex acts occurred.  Phil went to sleep and no further sex acts occurred despite being in a hotel room together all night.  Both slept clothed. (R2187-88) MS didn't shower or change clothes when returned home the next morning before going to the hospital with police in the evening where a "rape kit" was completed. (R2189-90)

149.    Finally, both on cross and re-direct, MS admitted to having lied to Phil: to being abused by his parents, to being beaten. (R2209, R2222) MS also admitted to lying to Phil when showing Phil an "email" (People's Exhibit #15) MS fabricated falsely posing as the father of a friend in an email addressed to Jeff S. The email falsely claimed MS would be at a sleep over. Jeff S. never received it because MS lied to Phil when claiming it had been sent. (R2210-12)

150.    Sarah Bowen testified to the specimen collection procedure for the SAEK explaining that swabbing both sides of MS's mouth was done by E.R. Dr. Escarza in Bowen's presence. (R2232, 2239) Escarza "selected" the anal swabs which were sealed in an envelope with the SAEK given then to state police Balsley. People's Exhs. ##12a 12b, 12c were the SAEK. (R2240-42)

151.    State police O'Brien testified to MS's age/birthdate. (R2246) An objection and lengthy side bar, at times off the record, resulted in O'Brien allowed to testify to Gakuba's age/birthdate. (R2269) In response to Kurtz's leading questioning,

| | |
|---|---|
| KURTZ: | "As part of the Illinois state police arrest and booking process that began [] at 9:20 PM on November 4, 2006 did you ask him his date of birth?" |
| O'BRIEN: | "Yes, I did." (R2269) |
| KURTZ: | "Did he tell you?" |
| O'BRIEN: | "Yes, he did." |
| KURTZ: | "What was it?" |
| O'BRIEN: | "November 21, 1969." (R2269) |
| KURTZ: | "And I may have asked you this, [] so I want to be sure, the [] Marriott that's in Rockford which is in Winnebago Co., is that correct?" |
| O'BRIEN: | "Yes, it is." (R2269) |

152.    Dr. Escarza next testified to the samples collected in the SAEK; confirming he took the "oral swabs" from MS each individual K-tip "is swabbed around the area" before dried and packaged. Escarza performed "the same technique" with the anal swabs where "each individual one is swabbed in the area in question," packaged and sealed. (R2282-83) On cross-exam, Escarza confirmed "there was no trauma present" (R2285) prompting Kurt's leading question on re-direct:

KURTZ:    "And is the anus, I mean is designed to expand, is that correct?"

ESCARZA:    "Correct." (R2286)

153.    Daniel Balsley (R2289-97), Cynthia Cale (R2298-2308), and Charles Davidson (R2309-2318) were not cross-examined and mostly testified to chain of custody issues of evidence/exhibits.

154.    Blake Aper testified last to the DNA forensic testing Aper performed establishing Gakuba's DNA profile from "anal swabs." (R2319-2334) Aper stated to doing "nothing with the oral specimens." (R2336) On cross-exam, Aper acknowledged no personal knowledge of how or where the swabs were collected besides their packaging and labeling. (R2354-55)

155.    Before the state formally rested, the trial court wanted "to deal with the admission of Exhibits 19 and 20." (R2357)

THE COURT: "Ok, 19 &20, again, that was the subject of the objection to trooper Balsley testifying as to the defendant's age. It was information supplied to the court in order to allow the objection. And again, it was not substantive evidence [], but I think that there should probably be some record[.]" (R2362-63)

KURTZ:    "I agree."

GUSTAFSON    "I agree, Judge, not to be too nit-picky, but it was Sgt. O'Brien not ..."

THE COURT: "I'm sorry, no, you're right [] it was, it was O'Brien. Nineteen and 20 are offered and admitted for that limited purpose as to what the court examined prior to making its ruling on the objection made by the defense to---what was his name again— O'Brien? [(responses omitted)] Testifying to defendant's age and how he learned of it." (R2363)

156.    Closing argument reiterated that "Sgt. O'Brien testified to his date of birth[.]" (R2375, R2434) And after jury instructions, Gakuba was convicted of all three (3) counts, 720 ILCS 5/12-16(d). (R2493-94)

I.    **End Note—28 USC §2254(d)(2):** *Gakuba-2017* **contains numerous material misrepresentations and omissions in a reckless disregard for the truth.**

157.    **End Note:** *Gakuba-2017* contains numerous material misrepresentations and omissions in a reckless disregard for the truth.

158.    The state police took over the investigation not assisted. (C169-76; R483-84) *Gakuba-2017* at ¶5.

159.    The license check of the rental car occurred at 11:34 PM—almost five (5) hours after the 7:00 PM illegal 4th Amendment / *Brown* home invasion. (C1095, C1105) *Gakuba-2017* at ¶7.

160.    Police never obtained Gakuba's telephone number. (C121) *Gakuba-2017* at ¶6 n.1

161.    Omitted is the "Consent to Search" form that O'Brien had the Marriott hotelier sign, all the while claiming exigency. (C175, C2369, C2781; R693-741) *Gakuba-2017* at ¶8.

162.    In sum, *Gakuba-2017* ¶¶4-10 were scissor pasted from *Franks* and *Napue* perjurer O'Brien's police reports. Untrustworthy, unreliable.

163.    On September 20, 2010 the trial court allowed Gakuba's Rockford-based retained lawyers to withdraw over Gakuba's objections that he go to trial that day with them. (C123-132; R575-639) This fact is omitted/disregarded. *Gakuba-2017* at ¶¶13-15.

164.    In September 2011 Kurtz filed a second Rule 413 motion with a second false affidavit showing in exhibits that the state crime lab already tested Gakuba's DNA with the prior illegal biological sample, rendering the "**suspect**" DNA claim in the affidavit itself—false (perjury). (C266-71; R811) This fact is omitted/disregarded. *Gakuba-2017* at ¶19.

165.    On October 29, 2013 the trial court granted the VPPA suppression motion after evading doing so for 2.5 years (filed June 2011), only to return all Gakuba's "PII" back into the case. (C205-08, C1058-60, C1072-1140; R1238-39) *Gakuba-2017* at ¶20.

166.    In January 2014, Gakuba filed a "Motion to Abbreviate or Shorten" the time to rule on a pending motion to substitute judge for cause which was being inexplicably delayed. (C1416-18) This fact is omitted/disregarded; instead a *sua sponte* continuance motion of a February 2014 trial is stated. *Gakuba-2017* at ¶23.

167.    On December 9, 2014 prior to appointing *pro se* Gakuba an asst. public defender, the trial court made a "record" that it would give the "option" that "if the PD were removed at [Gakuba's] request close to trial, you would proceed *pro se*[.]" (R1597-99)   This fact is omitted/disregarded in favor of an errant mistake of law. *Gakuba-2017* at ¶25.

168.    On April 8, 2015 Gakuba stated he "will" not "would" proceed *pro se* when the trial court denied Gakuba's motion to discharge Gustafson.  This is a material misrepresentation. *Gakuba-2017* at ¶27.

169.    At the April 28, 2015 jury trial side bar concerning *Franks* and *Napue* perjurer O'Brien's illegal obtainment of Gakuba's birthdate, Kurtz and the trial court suborn O'Brien's *Napue* perjury (having already been adjudged a *Franks* perjurer). (R2254-67)

THE COURT: "Let's take a short break, and you [(Kurtz)] talk to him [(O'Brien)] about how he [(O'Brien)] obtained that information [(Gakuba's birthdate)], the two of you talk … we're gonna do this off the record out of the well of the court … share that information … and then we'd be done." (R2254-55)

KURTZ:     "[O'Brien] asked the defendant and he confirmed on his ID or looked at his ID [(driver's license)], so the answer is both."

**O'BRIEN:    "YEAH." (R2256-57; Trial Exhibit #19 p. 3)**

THE COURT: "He can't testify to [that. (R2226)] The stuff from the hotel room was suppressed [per *Brown v. Illinois*, 422 US 390 (1975) not *New York v. Harris*, 495 US 14 (1990)] but not the driver's license[. (C291;R2258)] **He can't testify to [the truth:** that Gakuba's birthdate was illegally obtained in violation of 18 USC §§2710(b)(2)(C), (d) carefully handwritten by O'Brien in police notes, least O'Brien forget (C2804-05); then corroborated by the illegal seizure of Gakuba's driver's license photocopied for investigatory purposes as Trial Exhibit #19 p.3] if

it was obtained [] **during the booking process,** whatever, [] independently … **that's the million-dollar question."**

KURTZ:    "May I step out? [(R2267) **And share that information?]**"

THE COURT: "Sure." (R2267)

KURTZ:    **"Sgt. O'Brien would testify [as to the court's dictates.]"** (R2267)

170.    These facts are omitted/disregarded. *Gakuba-2017* at ¶37.

171.    "Designed to expand" was never "noted" by Dr. Escarza of the anus, not "rectum." *Gakuba-2017* at ¶38.    Rather, Kurtz impermissibly solicited expert opinion through a leading question. (R2286, R2453)

KURTZ:    "And is the anus, I mean is designed to expand, is that correct?"
ESCARZA:    "Correct." (R2286)

172.    This fact is a material misrepresentation attributing the direct quote to Escarza when it was a leading question from Kurtz.

173.    As a final note, *Gakuba-2017* falsely uses "rectum" in place of "anus." This is objectionable and would be like using "throat" in place of "lips."    It gives the false impression the anal swabs were from within—though the undisputed plain record shows **"swabbing around the anus."** (R2453)

## VIII. Argument

A. <u>ISSUE/ERROR 1-2:</u> The 6th Amendment ineffective assistance of counsel ("IAC") violation let to—
The trial court erred when "assum[ing] (R1075-76) on June 5, 2013 Gakuba's name and birthdate came from a "routine booking" Q&A resulting in *Napue* violations at Gakuba's jury trial; this identity evidence, illegally obtained in violation of 18 USC

**§2710(b)(d) corroborated by the illegal seizure of Gakuba's driver's license, also was violative of the 4ᵗʰ Amendment as a *Brown* claim too.[11]**

**1. Asst. public defender (APD) Shauna Gustafson's failure to investigate, be prepared led to clear errors of facts—see cf. 28 USC §2254(d)(2)**

174.    Several material facts were omitted/disregarded which led to the de facto invalidation of the VPPA, 18 USC §2710 et seq.  By reversing mendaciously the chronology of the fact narrative.

> See *Gakuba-2017* at ¶49: "We disagree and conclude that defendant's name and age were derived from sources independent of any illegal police conduct."

> *Id* at ¶50: "[IL state police] O'Brien testified that [] the hotel advised O'Brien that the room was registered to 'Peter Gakuba.'  This occurred prior to O'Brien contacting the video store, entering defendant's hotel room, or interviewing hm at the police station."

175.    This is patently false; and was merely scissor-pasted right from the state's appellee's brief at p.23: "Further, this information was gathered prior to contact with the video store or entry into the hotel room."

176.    The problem: the state's false conclusions of fact cites nowhere to the "R"eport of Proceedings (transcripts) because it simply did not occur.  The truth, instead, is disregarded/omitted.

177.    On March 13, 2009 at a pretrial hearing, asst. state's attorney (ASA) Kate Kurtz proclaimed the true fact chronology:

KURTZ:    "Oh Hollywood Video. They [(state police)] went to Hollywood Video.  They find out Peter Gakuba rented videos.  The same videos that [(complainant)] Matthew S. [("MS")] told them he rented.  They went to the hotel.  Hey, do you have a guy here by this name[?]  Gee, we sure do[.]  At that point they absolutely 100% had probable cause." (R484)

---

[11] Scissor pasted from *People v. Gakuba*, 2019 IL App (2d) 170794-U (post-conviction petition appeal opening brief)

178. June 13, 2009—

KURTZ: "Just briefly, the defendant [] says his detention and arrest was without probable cause[.] O'Brien went through the details [] after meeting with the victim what he did to confirm. He even went to Hollywood Video, where—" (R286-87)

THE COURT: "Uh-huh." (R286-87)

KURTZ: "Somebody by the same name as the person renting the hotel room where Matt said this 'Phil' was, had rented the same exact name in Hollywood Video, had rented these videos[.] So there was, in fact, probable cause."

179. On July 11, 2011 Kurtz reiterates the "100%" absolute probable cause by adding O'Brien met MS who said nothing happened. (R761) O'Brien does things to verity MS's story "which is good police work. He goes to where Matt says[.] He goes to Hollywood Video. He does at this point have probable cause. That's an issue that's been argued before at the previous hearing as far as I can recall." (R761)

180. June 15, 2011 (*Brown / Dunaway / Franks*) pretrial hearing (R700) —

O'BRIEN: "MS had told us that they [(MS & Phil)] had gone several places; one being a Hollywood Video store[.] One of the videos matched up exactly as the one Scary Movies 1, 2, & 3[.] This was done by phone. When I talked to the [] person working at that time checked their information [sic], their records upon learning that the movies that they represented which matched up also gave me the person that rented them, **Peter Gakuba.**" (R700)

181. The undisputed plain record shows "Peter Gakuba" came from the illegal disclosure of Gakuba's video customer records, then, compared to the Marriott hotel guest registry to obtain more "personally identifiable information" ("PII"): "Room 101" the first room (feet from) behind the front desk. 18 USC §2710(a); 18 USC §2710(b)(2)(C); §2710(d).

182. The undisputed plain record shows Gakuba's birthdate of "11/21/1969" was first and foremost illegally obtained when O'Brien wrote Gakuba's "PII" in carefully handwritten police notes least O'Brien forget. (C2804-05)

183.     Second, On June 5, 2014 the **"Affidavit of Peter Gakuba Stating That He Gave No Testimonial Evidence or Statements During His November 2006 'Booking Process'"** was announced and filed in open court; hand tendered to both state prosecutor(s) and the state associate judge; and subjectively, deliberately ignored now by all the state actors participating or presiding over this case. It conclusively proves that O'Brien's perjury in *Franks* affidavits by putting the words "Peter Gakuba" and "Room 101" in MS's mouth was perpetuated as *Napue* perjury by putting the words "November 21, 1969" in Gakuba's mouth as false/fabricated hearsay. (C2366-72; R1448 (06/05/2014)) (R2269 (04/28/2015)) (R803-08 (07/11/2011)) (R415-16 (12/08/2018)). Gakuba's post-conviction petition Attachment #1; *Gakuba-PC* Fn#1.

184.     Third, on November 4, 2006 at 8:00 PM (Gakuba's *Brown* interrogation began at "7:55 PM," never memorialized in violation of 725 ILCS 5/103-2-1(b)) O'Brien's superior, Master Sgt. Easton, "contacted STIC [(Statewide Terrorism Intelligence Center)] to request information on Peter Gakuba, male, D.O.B. 11/21/1969 reference a criminal sexual assault investigation[.]" Easton believed Gakuba had a criminal history in Indiana and New Jersey. The criminal history from Indiana and New Jersey are not positive hits, "only hits on the date of birth." Gakuba's post-conviction petition **Attachment #2**; *Gakuba-PC* Fn#1.

185.     Fourth, O'Brien's excited utterance at a jury trial sidebar O'Brien was impermissibly a party to that **"YEAH"** O'Brien used Gakuba's "ID [(driver's license)]" was omitted/disregarded. (R2256-57) (Trial Exhibit #19 p.3). The trial court suborns perjury: "He can't testify to [that. (R2266)] The stuff from the hotel room was suppressed but not the driver's license." (C291; R2258)

186.     Fifth, adjudged *Franks* perjurer O'Brien "helped" in the *Franks* perjury by suborner ASA Kurtz (R415-16), committed *Napue* perjury by falsely testifying in response to the leading

questioning by *Napue* suborner Kurtz to a false/fabricated IL state police "version [of the] booking process." (R2262)  The **"Affidavit of Peter Gakuba Stating That He Gave No Testimonial Evidence or Statements During His November 2006 'Booking Process'"** is conclusive proof. The "version" (R2262) was not a true booking; a mere "report" authored by state police Balsley when O'Brien and Kurtz falsely credited O'Brien as authoring.  This bald lie even trips up the trial court who suborned perjury too.

187.    April 28, 2015 jury trial (R2255-56)—

THE COURT: "If you want to interview the witness [(O'Brien)] ... and share that information? ... **We're gonna do this off the record—out of the well of the court.**"

188.    Before the state formally rested, the trial court wanted "to deal with the admission of [Trial Exhibits ##19-20." (R2257)—

THE COURT: "Ok, 19 &20, again, that was the subject of the objection to trooper Balsley testifying as to the defendant's age.  It was information supplied to the court in order to allow the objection.  And again, it was not substantive evidence [], but I think that there should probably be some record[.]" (R2362-63)

KURTZ:    "I agree."

GUSTAFSON "I agree, Judge, not to be too nit-picky, but it was Sgt. O'Brien not ..."

THE COURT: "I'm sorry, no, you're right [] it was, it was O'Brien.  Nineteen and 20 are offered and admitted for that limited purpose as to what the court examined prior to making its ruling on the objection made by the defense to---what was his name again— O'Brien? [(responses omitted)] Testifying to defendant's age and how he learned of it." (R2363)

189.    In sum, by dismissing unreasonably this post-conviction petition, Gakuba-PC avoids disputing the manifest evidence; undisputed plain record; which overwhelmingly proves this to be a penalty free perjury spree by IL state actors.

190.    In short, the state, and biased IL state courts promote the outlandish claim that O'Brien can be ordered to suppress his memory of Gakuba's birthdate in handwritten notes

(C2204-05) (least O'Brien forget), corroborated by Gakuba's driver's license photocopied (C2366-72; R1448; Trial Exh. #19 p.3) (least O'Brien forget), then, upon forgetting Gakuba's birthdate, instead remembers for nearly nine years Gakuba's birthdate from a "booking process" O'Brien forgot to wright down because it never happened in the first place.  The proverb of law to declare mistrials is "You cannot unring a ringing bell."  If a jury cannot be ordered to forget illegal evidence it was in receipt of, neither can O'Brien—a *Franks* perjurer, and, now, a *Napue* perjurer too.

### 2. Asst. public defender (APD) Shauna Gustafson's failure to investigate, be prepared led to an unreasonable/contrary application of law—see cf. 28 USC §2254(d)(1)

191.    This case's true fact narrative compares closely to *Camfield v. City of Oklahoma City*, 248 F.3d 1214 (10th Cir. 2001) **(near identical fact pattern)**

192.    *Amazon.com LLC v. Lay*,[12] 758 F. Supp. 2d 1154 (W.D. Wash. 2010) controls and is authoritative on Gakuba's statutory right: VPPA, 18 USC §2710(d).  Jane Does 1-6 intervened and obtained injunctive relief.  *Amazon*, at 1160-61, 1170-71.  Contemplated or actual violations of 18 USC §2710 et seq. constitute 1st Amendment violations.  *Id* at 1167-71.

193.    Consequently, it is the identity—not the expressive materials—that mandate suppression.  *Id* at 1162-63.  Further, "personally identifiable information" is broadly defined, including birthdates.  Cf. *Dahlstrom v. Sun-Times Media, LLC*,[13] 777 F.3d 937, 939-43 (7th Cir. 2015) (per the Driver's Privacy Protection Act ("DPPA") 18 USC §2722(a), "personal information" includes "birthdate" (DPPA was modeled—and is often compared to—the VPPA)).

---

[12]  Amazon.com LLC v. Lay, 758 F.Supp.2d 1154 (W.D.Wash., 2010)
[13]  Dahlstrom v. Sun-Times Media, LLC, 777 F.3d 937 (7th Cir. 2015)

194.    In a case of first impression requiring a higher reviewing court to issue a landmark ruling on what effective remedy exists to stop illegally obtained ID-evidence from receipt before a "grand jury" used to establish "absolute 100% probable cause" of an age-dependent crime? Is interlocutory appellate review available when the trial court derides the VPPA a "bizarre thing [it] never heard of," (R736-37) then evades ruling on a VPPA suppression motion for 2.5 years; grants the motion; then returns the ID-evidence back into the proceedings—de facto? (R1239)

195.    Suggested answer: YES.

196.    The illegal 4th Amendment / *Brown* home invasion which immediately followed the VPPA violation, requires that the 4th Amendment / Art. 1 §6 protections fortify—but do not replace—the VPPA's exclusionary authority: 18 USC § 2710(d). See *USA v. Wilson*,[14] 633 Fed. Appx. 750, 753 (11th Cir. 2015) (at 753: "The availability of the suppression remedy for … **statutory**, as opposed to constitutional violations … turns on the provisions of [the statute] rather than the judicially fashioned Exclusionary Rule aimed at deterring violations of the 4th Amendment rights." *USA v. Donovan*, 429 US 413, 432 n.22 (1977) (Stored Communications Act))
*Gakuba-2017* at ¶¶47-52 promotes general legal doctrines: "inevitable discovery" and "independent source" proceeded by citation to irrelevant authority—*Nix v. Williams*, 467 US 431, 443-44 (1984) and *Pennsylvania v. Muniz*, 496 US 582, 601 (1990). *Nix* implicates 6th Amendment protection exceptions. See *Sutton v. Pfister*, 834 F.3d 816, 821-22 (7th Cir. 2016) ('*Nix v. Williams*' is telling in that it also did not involve a straightforward search of a building or place.' Police questioned subject in violation of the 6th Amendment leading to discovery of body). *Muniz* is irrelevant for the same reasons as *Nix*: It implicates 5th Amendment protection exceptions, not an

---

[14]    United States v. Wilson, 633 F. App'x 750 (11th Cir. 2015) ; United States v. Donovan, 429 U.S. 413, 97 S. Ct. 658, 50 L. Ed. 2d 652 (1977)

illegal 4th Amendment / Art. 1 §6 / *Brown* / *Dunaway* home invasion; whereby no sooner is evidence suppressed, the trial court maliciously, mendaciously re-introduces that evidence back into the case—'the stuff from the hotel room was suppressed **but not the driver's license.**' (C291, C2366-72; R2258)"

197.    "The booking process" was not recorded. *Muniz*, 486 US at 582; *People v. Outlaw,* 388 Ill. App. 3d 1072, 1077 (2009) [...] 'The booking process' was done by crime investigator O'Brien (not jailer 'David Huff' (C3258) (FRE 201: docket 04/21/2018)[15]); *Outlaw* at 1077. See *USA v. Sanchez,* 817 F.3d 38, 46 (1st Cir. 2016) (citing *USA v. Reyes,* 225 F.3d 71, 76-77 (1st Cir. 2000)). 'The booking process' extracted answers 'clearly' and 'directly' tied to the 'suspected' criminal activities. *Sanchez* at 46. (C1034-35 cites *USA v. Oscar-Torres,* 507 F.3d 224, 225 (4th Cir. 2007) ('[Where] both investigative and administrative purposes motivated illegal arrest and fingerprinting, suppression of fingerprints and attendant record evidence was required.'))"

198.    Accord *People v. Little,* 51 N.E.3d 1001, 2016 IL App (3d) 140124 ¶47 (all purported inculpatory statements / admissions not audio video recorded are inadmissible[.] 'Similarly, the statutory language does not limit the videotaping requirements to investigations solely related to murder cases.' 725 ILCS 5/103-2-1(b) (Westlaw 2010)—Audio video recordings of custodial interrogations).

199.    "The booking process" was a post hoc fabricated irrationalization to evade enforcing the VPPA's statutory mandate's exclusionary authority.  Accord *USA v. Zapien,* 861 F.3d 971 (9th Cir. 2017) (at 995: "This analysis includes consideration of both the questions and the context. See *USA v. Pacheo-Lopez,* 531 F.3d 420, 424-25 (6th Cir. 2008) ('The location, the nature of the questioning, and the failure to take notes or document the defendant's identity also

---

[15] *People v. Gakuba*, 2006-CF-004324 (17th Cir. Ct., Winnebago Co.)

support our conclusion that the booking exception is not applicable in this case.') In understanding this analysis, courts have looked to a range of particularized circumstances. See e.g. *Mata-Abundiz* 717 F.2d at 1280 (whether the state agency conducting the questioning ordinarily booked suspects); *USA v. Disla,* 805 F.2d 1340, 1347 (9th Cir. 1986) (whether officers knew that the questions were related to an element of the crime); *USA v. Salgado,* 292 F.3d 1169, 1174 (9th Cir. 2002) (whether a 'true booking' had already occurred and the agency therefore already had access to the information); *Foster* 227 F.3d at 1103 (whether the questions were separated in time and place from the incriminating statements)").

200. **A defendant's formal arrest is no intervening event** between an unlawful arrest (the illegal seizure of driver's license) and subsequent van and hotel room searches. *USA v. Ienco,* 182 F.3d 517, 525-29 (7th Cir. 1999). Further, the co-defendant's identity could not have been discovered absent illegal arrest and search. *Id* at 529-30. **"The government did not have an ongoing, independent investigation[.]"** *Id* at 531-32.

201. Here, the invalidation of all three (3) search warrants, invalidated the warrantless arrest. See accord *Burritt v. Ditlefson,* 807 F.3d 239, 254-57 (7th Cir. 2015) (Posner, J. dissenting). Here, illegal probable cause (VPPA, 18 USC §2710(b)(2)(C), §2710(d), §2710(e)) solely underpinned "100%" (R484) the ex post / post hoc backward engineered search warrants that *Franks* violations fraudulently concealed. In ruling that all "personally identifiable information" be suppressed, it vitiated probable cause and rendered both the searches and seizures (arrest) illegal. See Gakuba's opening brief pp.7-12.

202. It is well settled, long established that DNA ID-evidence is comparable to fingerprints. Here, the illegal 4th Amendment / Art. 1 §6 / *Brown* home invasion sought to illegally

obtain both. They are fruit-of-the-poisonous-tree. *Davis v. Mississippi*, 394 US 721 (1969); *Hayes v. Florida*, 490 US 811 (1985); *Maryland v. King*, 569 U.S. 435 (2013).

203. In sum, an unhinged state associate judge (acting as an advocate (and up for reappointment in 2011 and 2013)) *sua sponte* "assume[d]" (R1075-76) an imaginary probable cause supported an imaginary arrest warrant that never issued because there never was any probable cause to do so.

204. Otherwise, state police O'Brien (a "23-year" veteran (R2245)) "helped" (R415-16) by ASA Kurtz (a 13-year veteran; FRE 201—"Kate Kurtz" (LinkedIn)) would have used this ex-post / post hoc fabricated irrationalization in all three 93) real world search warrants instead of criminal *Franks* perjury and obstruction of justice. Thereafter were O'Brien not to commit *Napue* perjury at Gakuba's April 28, 2015 2.5-day jury trial (R2246-69), then **"the million-dollar question"** (R2266-67) meant acquittal of an 8.5 years' long malicious prosecution which a wrongful conviction has now served as a *Heck* affirmative defense by state police and prosecutors in pending *pro se* federal civil suits. Judicial notice (FRE 201): *Gakuba v. O'Brien*, 12-cv-07296 (USDC-ND IL) (ECF 279, ID 1476: "*Heck*" dismissal argument).

205. *Gakuba-2017* ¶¶55-58 asserts Gakuba's citation to *People v. Pendleton*, 75 Ill.App.3d 580 (1979) is misplaced because "Kurtz's consultation with O'Brien occurred with the permission of the trial court[.]" *Gakuba-2017* at ¶55.

206. **Ipse dixit.**

207. However, it omits/disregards the basic right to a public trial and conducting direct examination of the state's key witness **"off the record out of the well of the court,"** (R2254-55) violated that right. See *Waller v. Georgia*, 467 US 39, 49 n.9 (1984). The direct examination of

O'Brien required it be conducted outside the presence of the jury, not the courtroom. Cf *People v. Thompson*, 2016 WL 280716.

208.     *People v. Manuel M. (In re Manuel M.)*, 71 N.E.3d 1131 (Ill. App. Ct. 2017) is on-point. Held: the defendant's federal and state rights to confrontation and public trial were violated when prosecutor was permitted to question police officer outside presence of defendant and lawyer; it constitutes a structural error and necessarily renders a criminal trial fundamentally unfair and unreliable means of determining guilt or innocence. 6th Amendment, U.S. Constitution; Art. 1 § 8, IL Constitution 1970.

209.     *Manuel* at ¶¶22, 24-28: cross examination is principal means by which credibility of a witness is tested; police officer Kush was only witness, and, case rested entirely upon uncorroborated testimony.

210.     *Gakuba-2017* at ¶55: "There is no evidence that O'Brien's testimony was influenced or changed as a result of the discussion between O'Brien and Kurtz."

211.     This is patently false. O'Brien's excited utterance that **"YEAH"** O'Brien used Gakuba's "ID [(driver's license)]" (R2256-57; Trial Exh. #19 p.3) provoked subornation of perjury: "He can't testify to [that] ... if it was obtained during the booking process ... whatever, independently ... **that's the million-dollar question,**" suborned the trial court. (R2266-67)

212.     **On-point** *Owens v. Duncan*, 781 F.3d 360, 362 (7th Cir. 2015) *Id* at 362: "The state trial judge who convicted [Owens] based his decision on evidence that did not exist, thus denying him due process of law in violation of the 14th Amendment. *Holbrook v. Flynn*, 475 US 560, 567 (1986) ('one accused of a crime is entitled to have his guilt or innocence determined solely on the basis of the evidence introduced at trial.' Quoting *Taylor v. Kentucky*, 436 US 478, 485 (1978); *Estelle v. Williams*, 465 US 501, 503 (1976) ('the right to a fair trial is a fundamental liberty

secured by the 14th Amendment. The presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice') (citation omitted); see also *USA v. Moore*, 572 F.3d 334, 341 (7th Cir. 2009) ('guilt beyond a reasonable doubt cannot be premised on pure conjecture'); *USA v. Garcia*, 439 F.3d 363, 366-68 (7th Cir. 2006) ('The presumption [of innocence] is violated when the jury is encouraged (or allowed) to consider facts which have not been received in evidence.'))."

213.    Here, the *sua sponte* "assume[d] booking process" (R1075-76) had no support in the record when announced by the state trial court on July 19, 2013 as an evasive ruling to not suppress all Gakuba's biographical / ID evidence—"PII" 18 USC §2710(a)—illegally obtained in violation of the VPPA then corroborated by an illegal 4th Amendment *Brown / Dunaway* home invasion to seize Gakuba's wallet contents, driver's license.

214.    "April 28, 2015 (jury trial) (R2261)—

THE COURT: Let me add something, the fact he didn't write it in his report, so what? Impeach him on that. I still need to know where he obtained this information.

215.    Of course, the "report" wasn't authored by O'Brien who falsely testified impliedly that it was.

216.    **On-point** *Long v. Pfister*, 874 F.3d 544, 546 (7th Cir. 2017) (*en banc*) (habeas grant reversed, no *Napue* violation)

*Id* at 546: "A state court vacated the conviction because the prosecutor had argued, without support in the record, that the recanting witness feared Long and his friends."

*Id* at 548: "In *Napue* and its successors: (a) the false testimony was elicited by the prosecutor; (b) the truth was unknown to the defense; (c) the prosecutor asked the jury to rely on false testimony; and (d) the jury never learned the truth."

*Id* at 555: "The fact is 'as clear and certain as a piece of crystal or small diamond.' See *Nix v. Whiteside,* 475 US 157, 190 (1986) (Stevens, J. concurring) [] It was not one of those 'mixtures of sand and clay' more familiar to lawyers and judges. See *id.*"

*Id* at 556: "The Supreme Court made the same point more recently. The court explained that due process of law usually relies on the presentation of contradictory evidence, but noted the exception for perjury by prosecution witnesses, where due process calls for much stronger medicine. *Perry v. New Hampshire*[, 565 US 228 (2012).]"

217.    Here, adjudged *Franks* perjurer O'Brien's false / fabricated "booking process – version" (R2262) was in response to suborner Kurtz's leading direct examination. (R2269) See habeas pp. 13-17, 17-26. *USA v. Zapien,* 861 F.3d 971, 975 (9th Cir. 2017) (cites *USA v. Salerdo,* 292 F.3d 1169, 1174 (9th Cir. 2002) (whether a **"true booking"** had already occurred and the agency therefore already had access to the information).

218.    Here, APD Gustafson was unaware of Gakuba's June 5, 2014 "booking process" denial "affidavit" categorically denying making any inculpatory statements. (C2366-72; R1448). Here, ASA Kurtz asked the jury to rely upon O'Brien's false booking process "version" (R2262) and Gakuba's fabricated hearsay response. The jury never learned the truth. See Gakuba's habeas pp. 13-14. This was *Napue* perjury by an adjudged *Franks* perjurer.

219.    Cf. *USA v. Caira,* 737 F.3d 455, 460-61 (7th Cir. 2013) (erroneous ruling was hearsay and would not be admissible without defendant's testimony; although defendant subsequently chose to testify; ruling did not result in 5th Amendment violations; the defendant has the option to refuse testifying and if convicted, obtain appellate correction of the erroneous evidentiary ruling, and with it a new trial).

220.     **On-point** *People v. Kimble,* 86 N.E. 3d 1245, 2017 IL App (2d) 160087 (held: trial judge's communications with deadlocked jury without defendant's presence and participation, then, *sua sponte* declaring a mistrial triggered double jeopardy) *Id* at 1246: "A criminal defendant has a constitutional right to a public trial, and to appear and participate at all proceedings involving his/her substantial rights.  6[th] Amendment."

221.     Here, *Gakuba-2017* at ¶¶55-58 concluded that Kurtz's direct examination of O'Brien "off the record—out of the well of the court" (R2254-2255) as to Gakuba's birthdate— "the million-dollar question" (R2267)—was lawful so long as the trial court permits it.  This same IL Appellate Court – 2nd District ruling in *Kimble* is inapposite to its ruling here.

**Note: *Gakuba-habeas* ignores completely the violation of Gakuba's 6th Amendment right to a public trial.**

222.     **On-point** *USA v. Ienco,* 182 F.3d 517, 525-29 (7th Cir. 1999) (held: formal arrest isn't intervening event to 4th Amendment violation)

*Id* at 529-30: "Further, the co-defendant's identity could not have been discovered absent illegal arrest and search.

*Id* at 531-32: "The government did not have an ongoing, independent investigation.

223.     July 11, 2011 pretrial hearing: (R752)

KURTZ:     "So I argue to the court that it is just he is calling the **formal arrest with a warrant.**"

*Gakuba-2017* at ¶51: "Similarly, the record establishes that defendant's date of birth was discovered by independent means during the routine booking process. **In this regard, the record shows that defendant's interview with police concluded at 8:55 PM.**"

Objectively unreasonable.  See accord *USA v. Zapien,* 861 F.3d 971, 975 (9th Cir. 2017) (cites *Foster*, 227 F.3d at 1103 (**whether the questions were separated in time and place from the incriminating statements**)).

224.    **On-point** *USA v. Hastings,* 246 F.Supp. 3d 1163 (ED. TX 2017) (suppression motion granted: illegal 4th Amendment *Brown / Dunaway* home invasion into hotel room; no warrant; no inevitable discovery)

*Id* at 1168: Magistrate judge recommended that **"all evidence, physical and testimonial, obtained or derived from or through or as a result of the unlawful search, seizure, interrogation, arrest and detention of Hastings be suppressed."**

*Id* at 1167-68: "Inevitable discovery requires proof a substantial alternat line of investigation was actively pursued." Cites *Illinois v. Krull,* 480 US 340, 347 (1987).

*Id* at 1178: Cites *Brown v. Illinois,* 422 US 590 (1975)

*Id* at 1181: Cites *Dunaway v. New York,* 442 US 200 (1979)

225.    Here, no such active alternative investigation was evident.

226.    **On-point** *Dumas v. Marchilli,* 240 F.Supp. 3d 255, 261 (D. MA 2017) (partial habeas grant vacating statutory rape convictions as victim's age not proven; "state law" sufficiency of evidence standard same as federal law)

227.    Here, Gakuba's birthdate requires suppression, first and foremost, per 18 USC §2710(d) followed by 4th Amendment protections then *Franks* 14th Amendment protections. The flagrant systemic misconduct were owing to violating the VPPA, 18 USC §2710 et seq., as fruit-of-the-poisonous-tree. See *USA v. Cordero-Rosario,* 252 F.Supp. 3d 79 (D. PA 2017) (held: poisoned fruit child porn from illegal search; granting establishment of the primary illegality, the evidence has come by exploitation of that illegality).

228.    **End Note:** *Gakuba-2017* contains material misrepresentations and omissions in a reckless disregard for the truth.

229.    *Gakuba-2017* at ¶56: "See *People v. Struck,* 29 Ill.2d 310, 313-15 (1963) (finding

that it was not error to allow state to talk to witness during recess in direct examination where defense counsel given opportunity to cross examination)."

230.    This is a glossy misrepresentation in reckless disregard for the truth. *Struck* at 314:

PROSECUTOR: "Your honor, I believe I could **talk to the witness in open court** or [defense counsel] can sit alongside of me if he wants to …

THE COURT:   "He may accept the offer, if you care to accept that offer [defense counsel]. **You may accompany the witness and the prosecutors, both of them,** where ever they're going, I don't know."

PROSECUTOR: **"We will go right here, your honor."**

231.    Here, the court recesses were to suborn perjury because "that's **the million dollar question**" (R2267), and, "let **[us]** take a short break … **the two of you talk … we're** gonna do this **off the record, out of the well of the court** … and then **we'd** be done," (R2251-57) impliedly meant Kurtz and the trial court, as the record is absent of any participation by appointed counsel who was side-lined, and, lack of *any* cross-examination of O'Brien revealed the futility of an objection that fell on deaf ears. (R2268-69)

B.  <u>ISSUE/ERROR 1-3:</u> **The trial court erred when "assum[ing]" (R1075-76) on June 5, 2013 Gakuba's name and birthdate came from a "routine booking" Q&A resulting in *Napue* violations at Gakuba's jury trial; this identity evidence, illegally obtained in violation of 18 USC §2710(b)(d) corroborated by the illegal seizure of Gakuba's driver's license, also was violative of the 4th Amendment as a *Brown* claim too.[16]**

   1. <u>**28 USC §2254(d)(2):**</u> *Gakuba-habeas,* the state's answer, *Gakuba-2017* ALL resort to consoling illusions because they refuse to face the stubborn facts.

---

[16] Scissor pasted from *Gakuba v. Neese,* 18-3398 (USCA7) (ECF 1: petition for a certificate of appealability (COA))

232.    **Fact #1:** The undisputed plain record shows that on November 4, 2006 between 5:15-6:50 PM state police O'Brien compelled the illegal disclosure of Gakuba's Hollywood Video customer account information such that state police O'Brien (supervised by ASA Kurtz) could be illegally in receipt of Gakuba's "personally identifiable information" ("PII"): name, birthdate, addresses, telephone nos. driver's license information. See 18 USC §§2710(a), (b)(2)(C), (d).

233.    **Fact #2:** O'Brien carefully memorialized Gakuba's "PII" in handwritten police notes least O'Brien forget. (C2804-05)

234.    **Fact #3:** On March 13, 2009 ASA Kurtz excitedly uttered the true fact narrative chronology: First, Gakuba's name and birthdate from Gakuba's Hollywood Video customer account records to, second, obtaining Gakuba's Mariott hotel room number. (R484) It was fruit-of-the-poisonous-tree, and, Gakuba-2017 ¶¶49-50 merely scissor pastes the state's appellee brief's prevarications to the contrary. The state's falsehoods do not cite to the record and are mere arguments discussed as facts. See habeas pp. 3-5, 10, 17-26. Kurtz pleads "100% absolute probable" to be illegally obtaining Gakuba's PII (18 USC §2710(a)) then matching it to Marriott's guest registry to illegally obtain Gakuba's room number. (R484) See *Camfield v. City of Oklahoma City*, 248 F.3d 1214 (10th Cir. 2001) (near identical fact pattern)

235.    **Fact #4:** On November 4, 2006 at 8:00 PM (just prior to Gakuba's illegal *Brown* coerced interrogation never memorialized) O'Brien's superior, Master Sgt. Easton "contacted S.T.I.C. [(Statewide Terrorism & Intelligence Center)] to request information on Peter Gakuba, male, d.o.b.:11/21/1969 reference a criminal sexual assault investigation[.]" Easton believed Gakuba had a criminal history in Indiana and New Jersey. The criminal history from Indiana and New Jersey are not positive hits, "only hits on the date-of-birth." See habeas attachments, reply's exhibit #3.

236.    **Fact #5:** The November 4, 2006 between "9:20 –9:35 PM" IL state police 2-page personal history report authored by state police "Balsley"—not O'Brien—correctly states in "box 70" that "11:52 PM" was the precise time Gakuba was booked into the "Winnebago Co. Jail." (box 68) The problem: like the Franks false affidavits and warrants, it's impossible for a "9:35 PM" report to accurately state the time of a future even. It was an ex-post / post hoc fabrication. Backward engineered. Backdated / timed. (C2369-72)

237.    Further evidence this was a post hoc fabrication: *Gakuba-2017's* reply brief p. 1: "Further, Balsley's 9:20-9:35 PM report plainly shows in 'box 40: social security #' and 'box 41: driver's license no.' Gakuba's "PII" [(18 USC §2710(a))] found now where else. (People's Trial Exhibit #19, p. 3; C8—jail bond sans Gakuba's SS#; C2804-05—O'Brien's notes specifying Gakuba's NY driver's license no. versus the MD license no. correctly stated in 'box 41'; C2370-72—Gakuba's Affidavit exhibits) This confirms Gakuba's name and birthdate were already in investigatory use as Gakuba could not have recalled this information himself [and is absent anywhere else in the record."

238.    **Fact #6:** Adjudged *Franks* perjurer O'Brien "helped" (R415-16) by suborner Kurtz illegally obtained, then proceeded to receive all Gakuba's "PII"—specifically birthdate—in an IL state "grand jury" in violation of 18 USC §2710(d). Not only are the convictions void, so too is the indictment as O'Brien was the sole grand jury witness answering leading questions from Kurtz. (ECF #21—12/29/17 supporting record attachment #3 of 09/26/14 "Defendant's Motion to Dismiss Indictment." (C2849-2873)

239.    **Fact #7:** On November 5, 2006 (the day after Gakuba's illegal search and seizure) Gakuba's Alpine Inn room was residentially burglarized by Kurtz and numerous other rogue state agents. (C2290-2314) They committed *Brady* violations as the first test result of the "SAEK" kit

was "NEGATIVE." (R900-02 and no DNA of any kind—not a drop, spot, smear, or stain—was found at the purported Marriott hotel room crime scene when extensive forensics were done expecting to substantiate MS's sworn statements that there would be DNA at the crime scene. See habeas reply brief pp. 7-10; ECF #21—Attachment #5. See also habeas pp. 51-52: (R1124)

THE COURT: "How is her phone number going to show who entered your room at the Alpine Inn? I'm denying the turnover of her telephone records[...] I'm not involved in this gigantic conspiracy[...] the guts of it really isn't that you're asking that anything at the Alpine Inn be, anything that may have been recovered at the Alpine Inn be suppressed?" (R1124-27, R1135; C2346-70)

240.    **Fact #8:** The state trial court's imaginary probable cause to support an imaginary arrest warrant that never issued because there was no probable cause to do so; otherwise, it would have been incorporated in all three (3) real world search warrants quashed per *Franks*. This imaginary probable cause was opaque, confusing, internally inconsistent.

241.    June 13, 2011 pretrial hearing—argument of *Franks* and *Brown/Dunaway*

suppression motion. (R761)

THE COURT: "The court is of the opinion as well that there was probable cause to arrest based on information provided not only by MS but also by what the officers were able to corroborate during [the] course of this investigation." (R761)

BRINDLEY: "And in the *Franks* motion we alleged there were some statements made in the application for a search warrant that were simply false, statements that MS told them the room no. and name of Peter Gakuba. Your honor found that he didn't tell them that." (R769)

BRINDLEY: "Now the court has ruled that the statements were obtained in violation of the 4th Amendment and cannot be used in a search warrant or for any other purpose. However, your honor, **there is nothing left in the search warrant to identify the name of the person or the room to be searched.**" **(emphasis)** (R770)

242.     October 29, 2013 the trial court grants the June 13, 2011 (2.5-year-old) VPPA, 18 USC §2710(d) suppression motion, only to return Gakuba's "PII" identity information back into the case. The court rules "any personally identifiable information received from the video store is suppressed." (R1238) Having granted the motion, the court then immediately returns Gakuba's identity evidence back into the proceedings.

THE COURT: "The video information was simply corroborating what the police had learned from speaking with the victim, specifically that they had watched movies rented by the defendant." (R1239)

This from an irrationally biased judge, branding the VPPA, 18 USC §2710 et seq. a **"bizarre law."**

THE COURT: "This is **bizarre** [...] I never heard of such a bizarre thing." (R746-37—June 13, 2011 trial hearing)

243.     **Fact #9:** Adjudged *Franks* perjurer O'Brien "helped" in the *Franks* perjury by suborner Kurtz (R415-16), committed *Napue* perjury by falsely testifying in response to the leading questioning by *Napue* suborner Kurtz to a false/fabricated IL state police "version" (R2261) of the "booking process." (R2262) The **"Affidavit of Peter Gakuba stating that he gave no testimonial evidence or statements during his November 2006 'Booking Process'"** is conclusive proof. The "version" (R22620 was not a "true booking,"[17] a mere "report" authored by state police Balsley when O'Brien and Kurtz falsely credited O'Brien as authoring. This bald lie even trips up the trial court who suborned perjury too.

244.     April 28, 2015 jury trial (R2255-56)

THE COURT: "If you want to **interview the witness [O'Brien] and share that information?**

---

[17] See e.g. *Mata-Abundiz* 717 F.2d at 1280 (whether the government agency conducting the questioning ordinarily booked suspects); *USA v. Disla,* 805 F.2d 1340, 1347 (9th Cir. 1986) (whether officers knew that the questions were related to an element of the crime); *USA v. Salgado,* 292 F.3d 1169, 1174 (9th Cir. 2002) (whether a **'true booking'** had already occurred and the agency therefore already had access to the information); *Foster* 227 F.3d at 1103 (whether the questions were separated in time and place from the incriminating statements))[.]"

**[(leading)] if it was obtained [] during the booking process, whatever, independently [...] that's the million-dollar question. <u>We're gonna do this off the record – out of the well of the court.</u>"**[18]

245.    Before the state formally rested, the trial court wanted "to deal with the admission of [trial] exhibits ##19-20. (R2257)

THE COURT: "OK, 19 and 20, again, that was the **subject** of the **objections** to **trooper Balsley** testifying as to the defendant's age. It was information supplied to the court in order to argue the objection. And again, it is not substantive evidence[,] but I think that there should be probably some record[.]" (R2362-63)

KURTZ: "I agree."

GUSTAFSON:"I agree, judge, not to be too nit-picky, but it was **Sgt. O'Brien not –**"

THE COURT: "I'm sorry, no, you're right [] it was, it was **O'Brien.** 19 & 20 are offered and admitted for the limited purpose as to what the court examined prior to making its ruling on the objection made by the defense to—**what was his name again**— O'Brien? [(responses omitted)] testifying to defendant's age and how he learned it." (R2363)

246.    **Fact #10:** There was no probable cause to search—much less seize (arrest)— Gakuba per *Franks*. (R863-808) The *Franks* violations were post hoc coverups of an illegal 4th Amendment *Brown / Dunaway* home invasion whereby Gakuba's wallet contents—especially driver's license—was used to corroborate Gakuba was "who" (R722-24) "rented them [movies]." (R700) State police O'Brien then deceitfully and irrationally testified to "probable cause" at a June 13, 2011 *Franks / Brown* hearing. (C2366-62; R722-24)

O'BRIEN: "No. 1, we had **probable cause** to go in the room to make sure there were no other victims[,] and no. 2, **to identify who was in that room.**"

---

[18] 6th Amendment violation—flagrant and egregious. See *Waller v. Georgia,* 467 US 39, 46 (1984) ("In addition to ensuring **that judge and prosecutor** carry out their duties responsibly, a public trial encourages witnesses to come forward and **discourages perjury.**")

This was objectively unreasonable. So too were all the ex-post / post hoc fabricated irrationalizations to excuse police and prosecutorial misconduct that followed. Probable cause is contemporaneous, not ex post / post hoc.

247.    **Fact #11:** Ex post / post hoc, the trial court persists in wholly conclusory, rote, formulaic legal conclusions as to the existence of a rational "probable cause" basis but evades articulating just what that imaginary probable cause was to issue an imaginary arrest warrant that never issued because there never was any probable cause to do so. Otherwise, O'Brien (a "23- year veteran" (R2245)) "helped" (R415-16) by Kurtz (a 13-year veteran; FRE 201: "Kate Kurtz" on LinkedIn) would have used this post hoc fabricated irrationalization in all three (3) real world search warrants instead of criminal *Franks* perjury and obstruction of justice.

248.    September 20, 2013 pretrial hearing: (R1183)

THE COURT: "That **there was probable cause to arrest, the police simply did not get an arrest warrant.** And because there was probable cause to arrest, the evidence obtained through the booking process—date of birth, fingerprints, and all other information—is appropriate. It is part of the booking process."

Gakuba responds that the record shows probable cause was stated at a December 2008 suppression hearing to be identifying Gakuba as having rented Scary Movie 1, 2, & 3. (R1185-86, R286-87)

THE COURT: "That wasn't the sole basis for probable cause. It wasn't even close." (R1186)
GAKUBA:    "But it was what was in the records." (R1186)
THE COURT: "We're not going to sit here and argue. I've ruled." (R1186)

249.    **Fact #12:** O'Brien as a compulsive pathological liar.  A serial habitual perjurer. At a December 8, 2008 pretrial hearing for $5^{th}/6^{th}$ Amendment violations, O'Brien falsely testified (baldly lied) that:

(1) **Gakuba was not under arrest** (R234);
(2) Gakuba asked if this was something he needed attorney for (R235);
(3) No information supported the belief other minors may be involved (R249-250);

(4) **No memory or recollection of how or who seized Gakuba's NY driver's license** (R255);

(5) Gakuba may / may not have been handcuffed and, if so, "trooper Paulson probably did since he was going in his car." (R257);

(6) Trooper Paulson may / may not have come into the hotel room, but upon assumption, "YES" (R257);

(7) The custodial interrogation went on for an hour and that he has no memory of the hour-long interrogation being interrupted or Easton or himself leaving in the midst of it (R260-61); and

(8) **At its conclusion an offer was made to provide a written statement and Gakuba "refused." (R269-70)**

250.    All these bald lies, false testimony, perjury was rebutted by the truth. Gakuba truthfully testified that:

(1) O'Brien handcuffed Gakuba (false arrest) (R336);

(2) Gakuba did speak to his attorney at midpoint in the illegal custodial interrogation (R330-355); and

(3) **No offer was made for a written statement or one would have been given by Gakuba. (R357)**

251.    Trooper Paulson then truthfully testified that he did not enter the hotel room and "the subject was handcuffed" already. (R313) Lastly, Master Sgt. Easton truthfully testified that:

(1) Gakuba presented his NY driver's license when ordered to by O'Brien (R414);

(2) There was a break to confer with **ASA Kurtz who "helped us to draw up a search warrant"** (R415-16); and

(3) **Gakuba was never offered to give a written statement because state police "got a verbal statement" instead (R422) (never memorialized; a fabrication).**

252.    **Fact #13:** O'Brien was a compulsive pathological liar. A serial perjurer. At the *Franks / Brown* pretrial hearing of June 13, 2011 O'Brien falsely testified (baldly lied) that:

(1)    There was exigency (R696-742) obviating the necessity for a warrant;

(2)    The rental car was identified as being rented by Gakuba on November 4, 2006 prior to the illegal 4th Amendment *Brown / Dunaway* home invasion (R696-742); and

(3)    O'Brien acquired the name "Peter Gakuba" from the hotel desk clerk (having initially lied (perjury) stating complainant MS supplied it. (R696-742)

253.    All these bald lies, false testimony, perjury was rebutted by the truth.  On November 4, 2006 at 6:50 PM an "Illinois State Police Waiver – Consent to Search" form gave consent to search "Room 101" signed by Marriott manager Ronald Rodriguez. (C2369, C2781) Further, at 11:54 PM the rental car was identified as registered to "PV Holdings." (C1095, C1105) Then the next day on November 5, 2006, Easton spoke with "Nicole" at "Budget" who confirmed only that Gakuba reserved the car—as detailed in a November 5, 2006 search warrant. (C44) Finally, Kurtz proclaimed the true fact chronology:

KURTZ:    "Oh Hollywood Video. They [(state police)] went to Hollywood Video. They find out Peter Gakuba rented videos[.] They went to the hotel[.] Hey do you have a guy here by this name[?] Gee, we sure do[.]" (R484)

O'BRIEN: "When I talked to the person working at the time [at Hollywood Video] checked their information, their records upon learning that the movies that they represented [sic] which matched up also **gave me the person** that rented them, **Peter Gakuba**." (R700)

254.    Consequently, the state's case rests entirely upon perjury: false/fabricated hearsay (inadmissible) of witnesses who no record exists that they ever spoke the words attributed to them. (MS—hotel desk clerk) Or worse, the undisputed plain record shows them to have emphatically denied it. (Gakuba) (C2366-72) ("booking process" denial "affidavit")

**2. 28 USC §2254(d)(1):** *Gakuba-habeas*, the state's answer, *Gakuba-2017* refer to irrelevant legal doctrines and cite pointless case laws. This is objectively unreasonable.

255.   **On-point** *Owens v. Duncan*, 781 F.3d 360, 362 (7th Cir. 2015) *Id* at 362: "The state trial judge who convicted [Owens] based his decision on evidence that did not exist, thus denying him due process of law in violation of the 14th Amendment. *Holbrook v. Flynn*, 475 US 560, 567 (1986) ('one accused of a crime is entitled to have his guilt or innocence determined solely on the basis of the evidence introduced at trial.' Quoting *Taylor v. Kentucky*, 436 US 478, 485 (1978); *Estelle v. Williams*, 465 US 501, 503 (1976) ('the right to a fair trial is a fundamental liberty secured by the 14th Amendment. The presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice') (citation omitted); see also *USA v. Moore*, 572 F.3d 334, 341 (7th Cir. 2009) ('guilt beyond a reasonable doubt cannot be premised on pure conjecture'); *USA v. Garcia*, 439 F.3d 363, 366-68 (7th Cir. 2006) ('The presumption [of innocence] is violated when the jury is encouraged (or allowed) to consider facts which have not been received in evidence.'))."

256.   Here, the *sua sponte* "assume[d] booking process" (R1075-76) had no support in the record when announced by the state trial court on July 19, 2013 as an evasive ruling to not suppress all Gakuba's biographical / ID evidence—"PII" 18 USC §2710(a)—illegally obtained in violation of the VPPA then corroborated by an illegal 4th Amendment *Brown / Dunaway* home invasion to seize Gakuba's wallet contents, driver's license.

257.   **On-point** *USA v. Zapien*, 861 F.3d 971, 975 (9th Cir. 2017) Id at 975: cites *USA v. Pacheco-Lopez*, 531 F.3d 420, 424-25 (6th Cir. 2008) ("The location, the nature of the questioning, and **the failure to take notes or document the defendant's identity** also support our conclusion that the booking exception is not applicable to this case.") **(emphasis)**

258.   April 28, 2015 jury trial (sidebar Gakuba was barred from attending): (R2261)

**THE COURT:**      **"Let me add something. The fact he didn't write it in his report, so what? Impeach him on that. I still need to know where he obtained**

**this information."**

Of course, the "report" wasn't authored by O'Brien who falsely testified impliedly that it was. Balsley authored it. (Trial Exhibits ## 19, 20; C2366-62)

259.    **On-point** *Long v. Butler,* 874 F.3d 544, 546 (7th Cir. 2017) (*en banc*) (habeas grant reversed, no *Napue* violation)

Id. at 546: "A state court vacated the conviction because the prosecutor had argued, without support in the record, that the recanting witness feared Long and his friends."

Id. at 548: "In *Napue* and its successors: (a) the false testimony was elicited by the prosecutor; (b) the truth was unknown to the defense; (c) the prosecutor asked the jury to rely on false testimony; and (d) the jury never learned the truth."

Id. at 555: "The fact is 'as clear and certain as a piece of crystal or small diamond.' See *Nix v. Whiteside,* 475 US 157, 190 (1986) (Stevens, J. concurring) [] It was not one of those 'mixtures of sand and clay' more familiar to lawyers and judges. See id."

Id at 556: "The Supreme Court made the same point more recently. The court explained that due process of law usually relies on the presentation of contradictory evidence, but noted the exception for perjury by prosecution witnesses, where due process calls for much stronger medicine. *Perry v. New Hampshire[,* 565 US 228 (2012).]"

260.    Here, adjudged *Franks* perjurer O'Brien's false / fabricated "booking process – version" (R2262) was in response to suborner Kurtz's leading direct examination. (R2269) See habeas pp. 13-17, 17-26. *USA v. Zapien,* 861 F.3d 971, 975 (9th Cir. 2017) (cites *USA v. Salerdo,* 292 F.3d 1169, 1174 (9th Cir. 2002) (whether a **"true booking"** had already occurred and the agency therefore already had access to the information).

261.    Here, APD Gustafson was unaware of Gakuba's June 5, 2014 "booking process" denial "affidavit" categorically denying making any inculpatory statements. (C2366-72; R1448). Here, ASA Kurtz asked the jury to rely upon O'Brien's false booking process "version" (R2262)

and Gakuba's fabricated hearsay response. The jury never learned the truth. See Gakuba's habeas pp. 13-14. This was *Napue* perjury by an adjudged *Franks* perjurer.

262.    **On-point** *Cairel v. Alderden,* 821 F.3d 823 (7th Cir. 2016) *Id* at 829: Witnesses' estimates of age are often imprecise. ***Id* at 830: Affidavits are admissible evidence.**[19]

263.    Here, Gakuba's "booking process" denial "affidavit" is conclusive proof; dispositive evidence requiring Gakuba's wrongful convictions be vacated / reversed outright. (C2366-72) (habeas & reply attachments) (R1484)

264.    **On-point** *USA v. Afyare,* 632 Fed. Appx. 272, 273 (6th Cir. 2013) (held: law enforcement's perception of age inadmissible)

265.    Here, Gakuba's "booking process" denial "affidavit" is conclusive proof; dispositive evidence requiring Gakuba's wrongful convictions be vacated / reversed outright. (C2366-72) (habeas & reply attachments)

266.    **On-point** *People v. Manuel M. (In re Manuel M.),* 71 N.E.3d 1131 (Ill. App. Ct. 2017). See habeas pp. 23-24.

267.    **On-point** *People v. Kimble,* 86 N.E. 3d 1245, 2017 IL App (2d) 160087 (held: trial judge's communications with deadlocked jury without defendant's presence and participation, then, *sua sponte* declaring a mistrial triggered double jeopardy) *Id* at 1246: "A criminal defendant

---

[19] Supra ¶5: Specific factual error (ECF #38, ID 2922): "Petitioner filed an affidavit in the trial court on June 5, 2014 indicating he never told O'Brien his date of birth. **However, this affidavit was not admitted at trial, nor could it have been, and it is therefore irrelevant.**"

This is objectively unreasonable as Gakuba's "booking process" denial "affidavit" is undisputed substantive evidence; dispositive evidence that adjudged *Franks* perjurer IL state police Charles O'Brien falsely testified to a false/fabricated state police "booking process –version" and Gakuba's fabricated hearsay response. (R2362; C2366-72) (habeas attachments; reply attachments)

has a constitutional right to a public trial, and to appear and participate at all proceedings involving his/her substantial rights. 6th Amendment."

268.    Here, *Gakuba-2017* at ¶¶55-58 concluded that Kurtz's direct examination of O'Brien "off the record—out of the well of the court" (R2254-2255) as to Gakuba's birthdate—"the million-dollar question" (R2267)—was lawful so long as the trial court permits it. This same IL Appellate Court – 2nd District ruling in *Kimble* is inapposite to its ruling here.

Note: Gakuba-habeas ignores completely the violation of Gakuba's 6th Amendment right to a public trial.

269.    **On-point** *USA v. Nelson*, 884 F.3d 1103 (11th Cir. 2018) (held: conviction affirmed; discusses 6th Amendment violation—plain, structural error, invited error when Nelson's lawyer during overnight recess sought to discuss with a witness "matters other than testimony" during witnesses' testimony on the stand) *Id* at 1107: "In *Crutchfield* [*v. Wainwright*, 803 F.3d 1103 (11[th] 1986)] a majority of the *en banc* court held that in order to make out a *Ceders* [*v. USA*, 425 USA 80 (1976)] type 6[th] Amendment violation, a criminal defendant must demonstrate that he and his counsel actually intended to confer during the recess and would have done so if not prevented by the district court. As already explained, in that case, the district court directed a defendant's lawyer not to discuss his testimony with him during the court of a mid-trial break."

270.    Here, in mid-trial, mid-examination court recesses were held such that adjudged *Franks* perjurer O'Brien "helped" in the *Franks* perjury by suborner Kurtz (R415-16) could have Kurtz's direct examination of O'Brien "off the record—out of the well of the court" (R2254-55) as to Gakuba's birthdate obtainment—"the million dollar question" (R2267)—conclude with O'Brien committing *Napue* perjury by falsely testifying in response to the leading questioning of *Napue* suborner Kurtz as to a false/fabricated IL state police "version [of the] booking process."

(R2362) If criminal defendants are barred from discussing their trial testimony—like with all witnesses—so too should witnesses for the state.

271.     Here, Gakuba-2017 at ¶¶55-58 asserts Gakuba's citation to People v. Pendleton, 75 Ill. App. 3d 580 (1979) is misplaced because "Kurtz's consultation with O'Brien occurred with permission of the trial court." Gakuba-2017 at ¶55. However, it omits/disregards the basic right to a public trial, and conducting direct examination of the state's key witness "off the record—out of the well of the court" (R2254-55) violated that right. See Waller v. Georgia, 467 US 39, 49 n. 9 (1984). The direct examination of O'Brien required it be conducted outside the presence of the jury, not the courtroom. Cf People v. Thompson, 2016 WL 280716. Habeas pp. 22-24.

272.     **On-point** USA v. Ienco, 182 F.3d 517, 525-29 (7th Cir. 1999) (held: formal arrest isn't intervening event to 4th Amendment violation)

Id at 529-30: "Further, the co-defendant's identity could not have been discovered absent illegal arrest and search.

Id at 531-32: "The government did not have an ongoing, independent investigation."

273.     July 11, 2011 pretrial hearing: (R752)

KURTZ:     "So I argue to the court that it is just he is calling the **formal arrest with a warrant.**"

Gakuba-2017 at ¶51: "Similarly, the record establishes that defendant's date of birth was discovered by independent means during the routine booking process. **In this regard, the record shows that defendant's interview with police concluded at 8:55 PM.**"

Objectively unreasonable. See accord USA v. Zapien, 861 F.3d 971, 975 (9th Cir. 2017) (cites Foster, 227 F.3d at 1103 (**whether the questions were separated in time and place from the incriminating statements**)).

274.     **On-point** USA v. Sanchez, 817 F.3d 38 (1st Cir. 2016) (discusses booking

exceptions)

*Id* at 46: "As a non-member of the team that investigated Sanchez[.] See *Reyes*, 225 F.3d at 77 (finding the booking exception applied [] because (a) 'the booking interview was conducted separate from any substantive interrogation, by a different officer, and in a separate room at a separate time' and (b) the booking officer 'asked only' [] questions 'with no reference whatsoever to the offense for [the arrest.]' Where the police asked questions to extract answers 'clearly' and 'directly' tied to the 'suspected' criminal activities [for example, asking] someone to give his social security number 'might be likely to elicit an incriminating response where the person is charged with social security fraud' presents a closer question on the exception's applicability."

*Id* at 41: "Toledo played no part in the investigation."

275.    Here, assuming arguendo that O'Brien's testimony was true, as a matter of law it fails. 28 USC §2254(d)(1). O'Brien was the lead investigator; sole grand jury witness; primary witness in a December 2008 suppression hearing (R226-288); sole witness in a June 13, 2011 *Franks* / *Brown* hearing; key material witness at Gakuba's 2.5-day jury trial. Impliedly, the state actors participating or presiding in this case allege the "booking process – version" (R2262) occurred immediately after the never memorialized illegal *Brown* interrogation by O'Brien, in the same room no less. (C2366-72: at ~ 8:00 PM Gakuba's birthdate was put to investigatory use) **See supra Fact #4.**

276.    **On-point** *Rivera v. Thompson,* 879 F.3d 7 (1st Cir. 2018) **(habeas granted: ineffective assistance of counsel for failing to move to suppress purported inculpatory statements state claims were part of "routine booking exception").**

*Id* at 15: **"The MA appeals court's conclusion that [police's] questions were not interrogation was clearly contrary to the [US] Supreme Court's definition of**

**interrogation[.]** The only [] reason proffered by [the state] is that [defendant's] counsel reasonably believed that police's questions fell under the 'routine booking' exception[.] that assertion is implausible."

*Id* at 16, fn #5: "There is an exception to the exception for cases in which [the police] have reason to know what routine booking questions may indeed produce inculpatory responses.' *USA v. Scott,* 270 F.3d 30, 43 n. 8 (1st Cir. 2001)."

277.    **On-point** *USA v. Hastings,* 246 F.Supp. 3d 1163 (ED. TX 2017) (suppression motion granted: illegal 4th Amendment *Brown / Dunaway* home invasion into hotel room; no warrant; no inevitable discovery)

*Id* at 1168: Magistrate judge recommended that **"all evidence, physical <u>and testimonial</u>, obtained or derived from or through or as a result of the unlawful search, seizure, interrogation, arrest and detention of Hastings be suppressed."**

*Id* at 1167-68: "Inevitable discovery requires proof a substantial alternat line of investigation was actively pursued." Cites *Illinois v. Krull,* 480 US 340, 347 (1987)

*Id* at 1178: Cites *Brown v. Illinois,* 422 US 590 (1975)

*Id* at 1181: Cites *Dunaway v. New York,* 442 US 200 (1979)

278.    Here, no such active alternative investigation was evident. See habeas p.22.

279.    Here, the undisputed plain record shows *Brown* and *Dunaway* to control. (R742-92); was the reason to exclude/suppress; then shockingly the IL courts ignored those rulings outright. See *Gakuba-2017* state's appellee brief p. 9: "The People argued, and the judge agreed, that there was probable cause to arrest defendant, **even if there was not probable cause to enter the defendant's hotel room without a warrant."** (Emphasis in the original) The state's ex post

/ post hoc fabricated irrationalization to probable cause to arrest—but not search—Gakuba suffers from their having pled themselves out of court when testifying and arguing that Gakuba was "not under arrest" at the time of the illegal 4th Amendment *Brown / Dunaway* home invasion. (R234— 12/08/2008) **See supra ¶¶ 100(1) & 125.**

280.     In fact, Gakuba testified (which the state does not dispute until after a *Brown / Franks* hearing on June 13, 2011 (R693-741)) that Gakuba was told by police to be a material witness per an investigative detention. (R335-357—January 13, 2009) Accord *Burritt v. Dittlefson,* 807 F.3d 239, 254-57 (7th Cir. 2015) (Posner, J. dissenting) *Id* at 255: **"[Police] will say this or that[,] will have no difficulty fabricating probable cause [ex post / post hoc.]"**

281.     **On-point** *USA v. Hastings,* 246 F.Supp. 3d 1163, 1182-83 (ED. TX 2017) *Id* at 1182-83: **"In this case, the officers effectuated an investigatory detainment [] rather than probable cause [or] obtaining a warrant."**

282.     Here, law-of-the-case / estoppel precluded the state from first insisting Gakuba was "not under arrest" (R234—12/08/2008) under a 5th/6[th] Amendments attack on their misconduct to, now, Gakuba was under arrest, and, they had probable cause no less. O'Brien testified to exigency—not probable cause. See supra ¶97, **Fact #10**; C2366-72; R722-24)

283.     July 11, 2011 hearing for argument of *Brown / Dunaway / Franks* violations: (R764-781)

THE COURT: "O'Brien maintains throughout [Gakuba] wasn't under arrest[.] Are you arguing no matter what O'Brien calls it, he's calling it a zebra but it isn't a zebra, it's a donkey. He just is flat out wrong; [] where are you going with this?" (R764-65)

KURTZ: "O'Brien is walking a fine line in terms of semantics. He says arrest. He says he wasn't under arrest[.] I mean he is saying the same thing which is why I think it's semantics[.] O'Brien is drawing a distinction between a formal arrest with a warrant [] but it's just semantics." (R765)

The court suppresses the statements of Gakuba's illegal custodial interrogation per *Brown & Dunaway.* (R781)

284.    **On-point** *USA v. Hastings,* 246 F.Supp. 3d 1163, 1181 (ED. TX 2017)

*Id* at 1181: "See *Brown v. Illinois,* 422 US 590, 602-605 (**following illegal arrest,** no intervening circumstances when police gave Miranda warnings and questioned him before defendant confessed); See also *Dunaway,* 422 US at 218-19 (**following illegal arrest,** no intervening circumstances where defendant was given Miranda warnings and questioned before making incriminating statements)." (**emphasis**)

285.    Here, *Brown* and *Dunaway* were the controlling authorities to suppress all Gakuba's purported custodial interrogation statements. The ex-post / post hoc fabricated irrationalizations to claim Gakuba was under arrest with probable cause was objectively unreasonable, contrary to *Brown* and *Dunaway.*

286.    **On-point** *USA v. Roche-Martinez,* 467 F.3d 591, 593-94 (7th Cir. 2006) (held: ID evidence admissible in spite of illegal 4th Amendment home invasion; *New York v. Harris,* 495 US 14 (1990)] controls, not *Brown*)

*Id* at 593: "This case is governed by *New York v. Harris,* 495 US 14 (1990)[.]"

*Id* at 594: "The [trial] court distinguished *Brown v. Illinois,* 422 US 590 (1975) and its line of cases[.]"

106.    Here, *Brown* and *Dunaway* controls which isn't cited in *Gakuba-habeas's*16-page opinion, nor *Gakuba-2017* and its 58-page opinion. (R742-792)

287.    **On-point contra** *Odom v. Adger,* 716 Fed. Appx. 185, 187 (4th Cir. 2018)(habeas denied, affirmed on appeal: age as element of crime was proven through Odom's authenticated

internet chat transcripts whereby Odom stated to be 40-years old; thus, it was constitutionally harmless error to have unlawfully used Odom's driver's license records in the alternative) (no claim that Odom's age could have "inevitably" been discovered "independently" per Odom's "routine booking")

288.    Here, Gakuba's "booking process" denial "affidavit" is conclusive proof; dispositive evidence requiring Gakuba's wrongful convictions be vacated / reversed outright. (C2366-72; R1484) (habeas and reply attachments)

289.    **On-point** *Dumas v. Marchilli,* 240 F.Supp. 3d 255, 261 (D. MA 2017) (partial habeas grant vacating statutory rape convictions as victim's age not proven; "state law" sufficiency of evidence standard same as federal law)

290.    Here, Gakuba's birthdate requires suppression, first and foremost, per 18 USC §2710(d) followed by 4th Amendment protections then *Franks* 14th Amendment protections. The flagrant systemic misconduct were owing to violating the VPPA, 18 USC §2710 et seq., as fruit-of-the-poisonous-tree. See *USA v. Ordero-Rosario,* 252 F.Supp. 3d 79 (D. PA 2017) (held: poisoned fruit child porn from illegal search; granting establishment of the primary illegality, the evidence has come by exploitation of that illegality).

C.  **ISSUE/ERROR 2-1:** The 6th Amendment ineffective assistance of counsel ("IAC") violation let to—
    The trial court erred when re-admitting Gakuba's DNA profile into evidence after quashing a "buccal swab search/seizure warrant" as *Franks* (and *Brown*) violations; the warrant was functionally an IL S. Ct. Rule 413 motion and the doctrines of estoppel and res judicata controlled.[20]

---

[20] Scissor pasted from *People v. Gakuba*, 2019 IL App (2d) 170794-U (post-conviction petition appeal opening brief)

**1. Asst. public defender (APD) Shauna Gustafson's failure to investigate, be prepared led to clear errors of facts—see cf. 28 USC §2254(d)(2)**

291.    *Gakuba-PC* adopts "full[y]" *Gakuba-2017* at ¶¶67-68: "The record clearly demonstrates that everyone was aware of the facts and circumstances" of Kurtz's second Rule 413 motion supported by a second false affidavit. (The first Rule 413 motion miscaptioned a "warrant" was quashed per *Franks.*) This is patently false; a factual conclusion unsupported by the record—scissor pasted from the state's response-appellee brief p.31.

292.    Had "everyone" known, someone would have 'fact-checked' Kurtz at that time. See Gakuba's post-conviction petition pp.20-21.

293.    *Gakuba-2017* at ¶67: "Everyone" implies the trial court. No court of law that was objectively reasonable would issue a court order to obtain a defendant's "biological standard" after judicially noticing a state crime lab report exhibit (C269-71) that undisputedly shows the state already had that identical ID-evidence. Res judicata; collateral/judicial estoppel. This false factual conclusion was unsupported by the record—scissor pasted from the state's brief at p.31. See *People v. Turner,* 367 Ill.App.3d 490, 493 (2006) ("Because it had sanctioned the state for failing to comply with discovery rules, it was 'not appropriate to undue [sic] what was done by asking permission to now do properly what was done improperly.")

294.    Rule 413 motions for "biological samples" require probable cause. Thus, the *Franks* perjury quashing the Rule 413 "warrant" rendered it violative of Rule 413, and, *Franks* perjury is a far more "nefarious" (state's brief p.31) egregiousness than the misconduct of judge shopping in *Turner. Gakuba-2017* at ¶66.

295.    Kurtz's re-do of the IL S. Ct. Rule 413 "warrant" was objectively unreasonable. It was supported by another false *Franks* affidavit: that there was "a mixture of 2 people" in a state

crime lab report and one was identified as complainant MS with the other a "suspect" DNA profile. (C263-71)

296.    However, the attached "People's Exhibit #2" state crime lab report shows no such "suspect" DNA profile; it shows in "Exhibit #1C1" Gakuba's DNA profile. This is bootstrapping. An illegality.    See *Hamilton v. Village of Oaklawn*, 735 F.3d 967, 970 (7th Cir. 2013) (**"bootstrapping"** illegally obtained evidence as probable cause for lawful arrest is prescribed; cites *Sibron v. NY*, 392 US 40, 62-63 (1968))

297.    *Id* at 970: "To base probable cause justifying a lawful arrest on information obtained from an illegal arrest would be 'bootstrapping.'" A prohibition

298.    At the start of Gakuba's 04/27/2015 2.5 day jury trial, Kurtz tries to 'spin' the facts:

KURTZ:    "That there was a lab report, that the reason it was said that it was an unknown standard is because the court had barred the original buccal swab, **so what we're left with is to assume that** the lab report would have come back with an unknown male's profile, and the defendant's profile [sic], which is why it was argued that way." (R1700) (emphasis added)

299.    See *People v. Johnson,* 208 Ill.2d 53, 115 (**"It is improper to argue assumptions or facts not based upon the evidence in the record.** *Kliner,* 185 Ill.2d at 151.") (emphasis); accord *Seymour v. Collins,* 2015 IL 118432 ¶50. See also *Owens v. Duncan,* 781 F.3d 360, 362 (7th Cir. 2015) (habeas grant: wrongful convictions based "on evidence that did not exist"; 14th Amendment violations).

300.    First, the trial court *sua sponte* "assume[d]" (R1075-76) a "booking process, whatever, independently" (R2267) sourced Gakuba's birthdate.

301.    Here, Gakuba's bootstrapped illegally obtained and tested "biological sample" was "assume[d]" (R700) not to have existed; freeing the state to re-do a "warrant" that was quashed per *Franks.* (R1075-76—June 5, 2013) (R2266-67—April 28, 2015)

302.    Accord *People v. Turner*, 367 Ill.App.3d 490, 497 (2006). *Id* at 497: On appeal, the state asserted that "use of a search warrant is a separate and distinct alternative [to Supreme Court Rule 413] even post-indictment." *Id* at 497. The appellate court disagreed. *Id* at 497. IL S. Ct. Rule 411 controls, and, an order under Rule 413 "is, in essence, the same as a search warrant."

303.    The "probable cause" standard for warrants and IL S. Ct. Rule 413 "warrants" / motions applies with equal force. See e.g. *Dumas v. Marchilli*, 240 F.Supp.3d 255, 261 (D. MA 2017) (partial habeas grant vacating statutory rape convictions as victim's age not proven). *Id* at 261: "state law" sufficiency of evidence standard same as federal law.

### 2. Asst. public defender (APD) Shauna Gustafson's failure to investigate, be prepared led to an unreasonable/contrary application of law—see cf. 28 USC §2254(d)(1)

304.    No court has ever allowed a re-do of a warrant or IL S. Ct Rule 413 motion. *People v. Turner*, 367 Ill.App.3d 490, 493 (2006).

305.    No disinterested ethical prosecutor sought a re-do for a warrant or Rule 413 motion that was quashed. *People v. Lawlor*, 291 Ill.App.3d 97, 101 (1997). Especially where there was a *Franks* violation. *USA v. Brown*, 631 F.3d 638 (3rd Cir. 2011).

306.    An interlocutory appeal occurred after a buccal swab warrant was quashed per *Franks*. *Brown*, 631 F.3d at 650. However, federal law permits collecting DNA samples "from individuals in custody." 42 USC §14135(a). Federal prosecutors did not invoke this statutory mandate as an end-run around the *Franks* violation. They appealed. As did state prosecutors in *Turner* and *Lawlor*.

307.    Here, Gakuba's "biological sample" was illegally obtained, illegally tested by a state crime lab (C267-71) to illegally obtain Gakuba's DNA, used as probable cause for a lawful

court order to re-acquire the exact same evidence legally. This rises to the level of irrational and wholly incredible. It's bootstrapping. A prohibition. See *Hamilton v. Village of Oaklawn*, 735 F.3d 967, 970 (7th Cir. 2013) ("bootstrapping" illegally obtained evidence as probable cause for lawful arrest is prescribed; cites *Sibron v. NY*, 392 US 40, 62-63 (1968))

308.    Lastly, it was Gakuba's "biological sample"—not the swab—that requires suppression. In *Turner*, it was the photographs that were suppressed, not the role of negative film. 367 Ill.App.3d 490 (2006).

309.    It is the "hair sample" not the means or medium used to collect the hair (i.e. comb, brush). It is the blood in the vial, not the vial of blood. It is the "handwriting sample," the script on the paper—not the paper with the script. When statements are suppressed, it is the words that are suppressed—not the recording of those words. Accordingly, a mistake of law occurred when suppressing "the swab" used to collect Gakuba's "biological sample" when the biological sample itself—Gakuba's DNA—requires suppression.

310.    A careful analysis of the statute on par with *Aguilar*, 2013 IL 112116, ¶ 22, 377 Ill.Dec. 405, 2 N.E.3d 321, is necessary in this case.

311.    **Final note:**    Consequently, this triggered a 14th Amendment violation too. See *Knowles v. Muniz,* 228 F.Supp.3d 1009, 1020 (CD. CA 2017) (the 14th Amendment's due process clause protects against arbitrary deprivation of liberty interest to which the defendant is entitled under state law. *Hicks v. Oklahoma,* 477 US 343, 346 (1980); *Carver v. Lehman,* 552 F.3d 869, 872, 874-75 (9th Cir. 2009)). The 14th amendment was violated per *Franks* as Kurtz's bald lie in a second false affidavit to a "suspect' sample when her crime lab report plainly revealed no such thing—just Gakuba's DNA profile illegally obtained and tested—highlights how this proceeding (if not the whole of the case) was ungoverned by law and unrestrained by the record.

D. <u>ISSUE/ERROR 2-2:</u> **The trial court erred when re-admitting Gakuba's DNA profile into evidence after quashing a "buccal swab search/seizure warrant" as** *Franks* **(and** *Brown***) violations; the warrant was functionally an IL S. Ct. Rule 413 motion and the doctrines of estoppel and res judicata controlled.[21]**

1. <u>**28 USC §2254(d)(2):**</u> *Gakuba-habeas*, the state's answer, *Gakuba-2017* ALL resort to consoling illusions because they refuse to face the stubborn facts.

312.    **Fact #1:** Gakuba's "biological sample" was illegally obtained, illegally tested by a state crime lab (C269-71) to illegally obtain Gakuba's DNA, **"bootstrapped"[5]** as probable cause for a lawful court order to re-acquire the exact same evidence legally.

313.    **Fact #2:** Pretrial hearing of September 29, 2011: (R822)

THE COURT: "There is a different basis for the state's request, that being the [SAEK] kit submitted by MS [] the court is granting" the 2nd Rule 413 motion. (R822) This is objectively unreasonable.

314.    **Fact #3:** The "biological sample" mandated suppression, not "the swab" just as a "hair sample" requires suppression not the comb/brush used to sample it.

315.    **Fact #4:** The first (1st) test results were negative (R900); impossibly the second (2nd) positive.

2. <u>**28 USC §2254(d)(1):**</u> *Gakuba-habeas*, the state's answer, *Gakuba-2017* refer to irrelevant legal doctrines and cite pointless case laws. This is objectively unreasonable.

---

[21] Scissor pasted from *Gakuba v. Neese,* 18-3398 (USCA7) (ECF 1: petition for a certificate of appealability(COA))

316.    **On-point** *Quintana v. Hansen,* 733 Fed. Appx. 439, 443 (10th 2012) (COA denied) *Id* at 443 : "A state procedural ground is independent if it rests on state law, rather than federal law, as the basis for the decision, [(citation)] and the ground is adequate if it has been 'applied even handedly in the vast majority of cases.'"

317.    Gakuba finds no case law precedence, nor can anyone participating or presiding over this case, whereby a Rule 413 discovery motion (miscaptioned a warrant) was quashed per *Franks,* resulting in a do-over of the Rule 413 motion bootstrapping as "different" probable cause poisoned fruit from its quashed predecessor. This case is simply unprecedented and inapposite to *Turner,* 367 Ill.App.3d 490 (2006) and *Lawlor,* 291 Ill.App.3d (1997).

318.    **On-point** *USA v. Brown,* 631 F.3d 638, 650 (3rd Cir. 2011) (buccal warrant quashed per *Franks,* no re-do per 42 USC §14135a—test (DNA) upon arrest statute) (quashed warrant upheld on interlocutory appeal) See habeas pp. 27-28.

319.    **On-point** *Hamilton v. Village of Oaklawn,* 735 F.3d 967, 970 (7th Cir. 2013) (**"bootstrapping"** illegally obtained evidence as probable cause for lawful arrest is prescribed; cites *Sibron v. NY,* 392 US 40, 62-63 (1968)).

Id at 970: "To base probable cause justifying a lawful arrest on information obtained from an illegal arrest would be 'bootstrapping.'" A prohibition. See habeas pp. 27-28. See **Facts ##1-4** supra.

320.    **On-point** *Hoefling v. City of Miami,* 811 F.3d 1271, 1277 (11th Cir. 2016) (exhibits control versus pleading's contents).

321.    Here, Kurtz's re-do of the IL S. Ct. Rule 413 "warrant" was fanciful, objectively unreasonable. It was supported by another false *Franks* affidavit claiming a "suspect" DNA profile. "Exhibit #1C1" however shows Gakuba's DNA profile.

322.     **On-point** *Thomas v. Williams,* 719 Fed. Appx. 246, 350, 354, 358 (5th Cir. 2018) (§1983 suit discusses *Franks* violations equals 4th Amendment violation).

*Id* at 350: "In evaluating a qualified immunity defense, this court 'considers only the facts that were knowable to the defendant officers.' *White v. Rauly,* 137 S. Ct. 548, 550 (2017). 'Those **items of evidence that emerge after the warrant is issued have no bearing on whether or not a warrant was validly issued.'** *Maryland v. Garrison,* 480 US 79, 85 (1987)."

*Id* at 354: "It is clearly established that under *Franks v. Delaware,* 438 US 154, 171 (1978), 'an officer is liable for swearing to false information in an affidavit in support of a search warrant, provided that.

(1) The affiant knew the information was false or [acted with] reckless disregard for the truth; and
(2) The warrant would not establish probable cause without the false information.'"

*Id* at 358: "Warrantless security sweeps [...] constitute a 'search' for purposes of 4th Amendment violations. *Maryland v. Buie,* 494 US 325, 335 (1990).

323.     Here, Kurtz's fraudulent "suspect" DNA profile in her *Franks* affidavit supporting a 2nd iteration of a Rule 413 motion (sans the "warrant" miscaption (see IL S. Ct. Rule 411)) plainly was reckless in view of the controlling "Exhibit 1C1" exhibit (C269-271) crime lab report revealing Gakuba's DNA profile already adduced. Any "assum[ptions]" to the contrary (R1700), are proscribed ex-post / post hoc irrationalizations. See supra ¶106: *Owens v. Duncan,* 781 F.3d 360, 362 (7th Cir. 2015) *Id* at 362: "The state trial judge who convicted [Owens] based his decision on evidence that did not exist, thus denying him due process of law in violation of the 14th Amendment."

324.    Gakuba can find no case law precedence, nor do the actors participating or presiding, of search warrants quashed per *Franks* reincarnated/resurrected with "assume[d]" (R1700) probable cause facts fabricated ex-post / post hoc—much less an imaginary arrest warrant concomitant to the illegal search.

325.    **On-point** *Chapman v. Lampert,* 711 Fed. Appx. 455, 457 (10th Cir. 2017) ("'Liberty interest can either arise from the constitution or be granted by state law.' Cites *Hewitt v. Helms,* 459 US 460, 466 (1983)")

326.    Here, testing illegally Gakuba's "biological sample" for DNA—twice—in violation of *Franks* was not merely fanciful, it was objectively unreasonable. 4th & 14th Amendments violations.

327.    **On-point** *Collins v. Jones,* 664 Fed. Appx. 247, 249 (3rd Cir. 2016) (held : two (2) month old lab report test negative for drug's not relevant to probable cause at time of arrest for malicious prosecution suit).

328.    Here the state seems to stand on the opposite proposition: Gakuba's illegal probable cause-less arrest per *Brown / Dunaway* covered up per *Franks*, is now underpinned post hoc by probable cause "bootstrapped" from illegal forensics testing to acquire illegally Gakuba's DNA profile It is well settled, long established that probable cause is a contemporaneous matter not a post hoc one.

329.    **On-point** *People v. Gempel,* 48 N.E.3d 780, 2016 IL App (3d) 140833 (held: DNA results post-arrest are not intervening event).

E.    **ISSUE/ERROR 3-1:** **The 6th Amendment ineffective assistance of counsel ("IAC") violation let to—**
**The cumulative evidentiary errors by the trial court resulted in Gakuba being wrongfully convicted with legally insufficient evidence; false/fabricated evidence**

(*Napue*); manifestly insufficient evidence; and deprived Gakuba of a fair trial by barring use of impeachment evidence.[22]

### 1. Asst. public defender (APD) Shauna Gustafson's failure to investigate, be prepared led to clear errors of facts—see cf. 28 USC §2254(d)(2)

330.     *Gakuba-PC* adopts "full[y]" *Gakuba-2017* at ¶71: "We interpret this argument to constitute a challenge to the sufficiency of the evidence." This is flatly wrong.  See *People v. Duran*, 2016 IL App (1st) 150768 at ¶11 (the state makes a number of arguments comingled which should have been addressed separately, leaving us to unravel the package and attempt to address each in a logical sequence).

331.     In the interests of fairness and justice, the individual evidentiary errors should have been addressed "each." *Id.*

332.     To illustrate, "People's Exhs. ##9-10: Walmart security surveillance photos" were fruit of the illegal 4th Amendment / Art. 1 §6 / *Brown* home invasion at the Marriott whereby IL state police discovered Gakuba had filled a Walmart pharmacy prescription for pneumonia medicine, and, with prescription in hand (taken from the supposedly quashed search warrant) knew both the time/date and place (which of the 6 Walmarts in Rockford/Rockton) to go to in obtaining those "surveillance photos," (C291; R2258: "The stuff from the hotel room was suppressed but not the driver's license[.]") Judicial Notice (FRE/IRE 201): *Gakuba v. O'Brien*, 12-cv-07296 (USDC-ND IL) (ECF #97: 1st Amend. Compl. names Walmart pharmacist "Kevin Kudelka" as a state actor and violator of HIPAA 164.512).  No "surveillance photos [or videos]" were shown of

---

[22] Scissor pasted from *People v. Gakuba*, 2019 IL App (2d) 170794-U (post-conviction petition appeal opening brief)

the Marriott, Best Buy, or CompUSA; places MS swore to going to with "Phil." (C172, C3257-60)

333.    Further, where Gakuba expressly argued insufficiency of evidence, it was in the context of expecting automatic reversal of the plain structural error: the denial of Gakuba's *pro se* right 3-6 weeks before trial as a "delay tactic." Double jeopardy. *Gakuba-2017* at ¶87 (cites *People v. Hunt,* 2016 IL App (1st) 132979 ¶¶27-28).

334.    Thus, aside from the state's failure to prove Gakuba's birthdate with legal/legally sufficient evidence, they failed to prove "sexual penetration" with manifestly sufficient evidence.

KURTZ:    **"There is no testimony as to where the swabs were taken from.** [] The People submit a different version than counsel submits that Dr. Escarza explained **swabbing around the anus[.]** There is physical evidence[.]  The anal swabs were taken from MS's anus[.]" (R2453) (emphasis)

335.    See accord *People v. Eubanks,* 2014 IL App (1st) 123247-U ¶33: "The state did not present any evidence whether the vaginal swabs were taken from the interior or exterior; at the very least, the evidence raises reasonable doubt regarding the collection of DNA[.]"

336.    *Gakuba-2017* at ¶81 promotes the objectively unreasonable claim that "corroboration with physical evidence is not necessary" in reckless disregard for the manifest record that Kurtz did argue "there is physical evidence." (R2453)

337.    However, that "physical evidence" at best supports "sexual conduct" but not "sexual penetration."

338.    See e.g. *Smith v. Burge,* 222 F.Supp.3d 669, 681 (USDC-ND IL 2016) (cites *O'Gorman v. City of Chicago,* 777 F.3d 885, 889 (7th Cir. 2015) ("A complainant can plead himself out of court by including factual allegations that the plaintiff is not entitled to relief as a matter of law."

339.    Worse still, there were *Brady* violation(s) as the negative test results by the IL state's crime lab of the purported find of Gakuba's DNA on swabs from a SAEK in the state's discovery during state police's and Kurtz's residential burglary of Gakuba's Alpine Inn room. (C2290-2314; R1060-1155, R900-01: On January 13, 2012 Kurtz stated that the state crime lab specialist "said that actually the 1st test was negative" of the anal swabs. Cf. *Mills v. Barnard*, 869 F.3d 473 (6th Cir. 2017) (42 USC §1983 and malicious prosecution suit—DNA test without in sex with 12-year old).

340.    Gakuba diligently pursued his *Brady* claim(s) that Gakuba's DNA was illegally obtained per a residential burglary of his Alpine Inn room by IL state police supervised by ASA Kurtz, and, *pro se* on appeal, Gakuba first discovered Kurtz's admission to negative test results upon receipt of the complete "R"eport of Proceedings then flagged this exculpatory admission by Kurtz at a January 13, 2012 pretrial hearing in Gakuba's opening brief pp.16-17, p.23:

> "No DNA was found at the hotel crime scene when DNA was expected to be found there. (R520-530)  Curiously, missing from MS's trial testimony was his earlier claim Gakuba masturbated. (C172) *Brady v. Maryland*, 373 US 83 (1963)
> Again and again, Gakuba cites the residential burglary of his Alpine Inn Room that coincides with, and overlaps the time period state police were in possession of the SAEK. (C2290-2314, C2908-42)
> The trial court's response is facile. (C2969)
> The state's response is evasive. (C2907; R1545-55)"

341.    July 19, 2013 pretrial hearing—(R1115; C388-402, C665-74)

KURTZ:        **"I have been served with a lawsuit.** Paul Carpenter from my office represents me and is present in court.  But if the court has questions[,] I would defer to Mr. Carpenter." (R1070) (emphasis)

GAKUBA:      "Well it poses the question? How do you have telephone logs fabricated on records that do not exist?" (R1124)

THE COURT:"How is her phone number going to show who entered your room at the Alpine Inn?" (R1124, R1135, R1127)

THE COURT:"I'm denying the turnover of her [(Kurtz's)] telephone records ... I'm not involved in this gigantic conspiracy ... The guts of it really isn't that you're asking that

anything at the Alpine Inn be, anything that may have been recovered at the Alpine Inn be suppressed?"

342.    See *Juniper v. Zook*, 876 F.3d 551 (4th Cir. 2017) (held: habeas petitioner diligently pursued *Brady* claim; (2) state court did not afford petitioner opportunity to develop facts underlying *Brady* claim; (3) withheld evidence was exculpatory; (4) withheld evidence was impeaching; (5) federal district court abused discretion dismissing *Brady* claim without evidentiary hearing).

343.    Moreover, there was no DNA at all on oral swabs; contradicting MS's repeated sworn statements that there would be; the state expecting as much; and no case laws to support the fantastic notion of DNA found where the complainant swore none would be, and, no DNA found where the complainant insists there were copious amounts. (C2290-2314)

344.    Finally, MS was a child pornographer and teleiophile (child attracted to adults) and Gakuba was denied his 6th Amendment (confrontation clause) right to impeach. (C169-76, C552-606, C3155-78 (exhibits sealed)).

**2. Asst. public defender (APD) Shauna Gustafson's failure to investigate, be prepared led to an unreasonable/contrary application of law—see cf. 28 USC §2254(d)(1)**

345.    In *People v. Mpulamaska*, 2016 IL App (2d) 130703 the sexual assault convictions were reversed discrediting the complainant and the physical evidence that was corroborative. *Mpulamaska* at ¶33 (oral, neck swabs positive for saliva); *Id* at ¶87 (vaginal physical injuries state's expert points to rape).  No evidence rape victim was an admitted liar—unlike here.

346.    Here, the oral swabs were negative and the anal swabs were at first negative too. (C2290-2314; R900-01)

347.    However, MS swore to metaphysically impossible anti-climactic sex: ejaculation from oral sex not anal sex. (R2182-87, R2217, R2225)

348.    Worse still, MS admitted to falsely accusing his parents of child abuse. (C169-76; R2209, R2222)

349.    However, subsequent false sexual accusations by a child pornographer and teleiophile (child attracted to adults) will not be impeached. (C169-76, C552-606, C3155-78 (exhibits sealed)).

350.    Had Mpulamaska's merit panel employed the sweeping generic boiler plate language glossing over a detailed analysis of the evidence—as applied here—his convictions should have been affirmed.   Worse still, prosecutorial misconduct—giving closing arguments seated in the witness box—was a standalone error. *Mpulamaska*, 2016 IL App (2d) 130703 at ¶¶103-117.

351.    Here, here was direct examination by a prosecutor of a key police witness "outside the well of the court … off the record."  This has never occurred before because it should never occur.  Accord *People v. Manuel M. (In re Manuel M.)*, 71 N.E.3d 1131 (Ill. App. Ct. 2017); cf *People v. Kimble*, 2017 IL App(2d) 160087.

352.    Exactly on-point is *Gardner v. Holland*, 218 F.Supp.3d 1048 (ND. CA 2016) (at 1056: habeas grant—6th Amendment confrontation clause violation as "evidence of prostitution convictions [and activities] was admissible to impeach Jane Doe's credibility.")

353.    *Gardner* at 1057-58: "The trial court noted that prostitution was a crime of moral turpitude and did relate to honesty, but was not as strongly related to honesty as some other crimes such as theft and forgery[.]  **The trial court concluded that the evidence was not 'particularly strong as it relates to the character trait of honesty or veracity[.]'"**

354.    July 19, 2013 pretrial hearing (R1107):

THE COURT: "I'm not going to allow evidence that this kid had either child pornography or information of solicitation as a prostitute on his computer anyway[.]  **The court's of the opinion that it does not go to his truth or veracity[.]**" (emphasis)

355.    There were 14th Amendment / *Napue* violations when Jeff S. testified falsely to a fax printout of MS's school ID and US Cellular phone records he gave to the police. (C121; R2138-39)  Gakuba was *pro se* and never received them.  Tellingly, Kurtz deceitfully uses a "copy of Matt's school ID" as Trial Exhibit #7.  It was a foil. (R2160-64)

356.    MS falsely testified to this false fax and confirmation telephone calls. (R2160-64) Jeff S. and MS both falsely testified to a loving relationship when MS was a runaway who sought to adopt himself out.  (C3165; R2144-46)

357.    MS testified falsely, and Kurtz used mendaciously, a random "MySpace" profile of an "attractive" white 18-year old.  Kurtz 'authenticates' this Trial Exhibit #6:"That's Phil's MySpace" on the mere 'say-so' **(Ipse Dixit)** of MS.  It was hearsay.  It was disproved by state's discovery subpoenas. (C69-70, C85-86)  So to MS testified falsely to internet chats via "AOL Instant Messenger" as state's "Motion in Limine #7" at ¶8 disproves it too.  (C1411, C1879-81, C2874-78; R2136, R2153-55, R2159-64, R1520-35)

358.    Lastly, it was false/fabricated facts that Gakuba bought video games for MS knowing the state's discovery disproved it: Trial Exhibits ##3-5. (C3257-60)

359.    There were 5th and 14th Amendments / ***Brady*** violations in the alternative.  The fax of MS's school ID—not the insidious lie of a "copy of MS's school ID"—the state was required to remit to Gakuba along with all phone and internet records substantiating what otherwise are false/fabricated facts by an admitted liar: MS. (C169-70, C169-76; R2209, R2222, R2160-64) (Trial Exhibits ##6-7)

360.    So too should be the negative test results by IL state's crime lab of the purported find of Gakuba's DNA on swabs from a SAEK in the state's discovery during state police's and Kurtz's residential burglary of Gakuba's Alpine Inn Room. (C2290-2314; R1060-1155; R900-01)

361.    On January 13, 2012 **Kurtz stated that the state crime lab specialist "said that actually the first test was negative" of the anal swabs.** (R900-01) *Brady v. Maryland,* **373 US 83 (1963)**

362.    There were 5th and 14th Amendments / ***Brady*** violations when on November 5, 2006 upon posting bail, Gakuba was lodged at the Alpine Inn at 4404 E. State St. in Rockford, IL. (C2290-2314)   State police notes reveal that state prosecutor Kurtz and unknown others had obtained the **"keys"** to **"room 427"** from "Brenda Adams, general manager." (C2305-06)

363.    They had **no consent** from Gakuba and **no lawful** purpose to enter Gakuba's lawfully and privately occupied inn room; though a deputy state prosecutor, F. James Brun, would on November 5, 2014 object to Gakuba's characterization as **"residential burglary"** as it was, according to Brun, pursuant to a warrant. (R1569-79, R1572-73)

364.    Aside from a photocopy of a business card Gakuba had made on November 5, 2006, Gakuba believes his DNA was obtained too as no DNA of Gakuba's or MS's was ever found at the purported crime scene: the Marriott hotel room. (C2290-2314, C2908-42, C3195)  No semen was found on MS's clothing, Gakuba's clothing, hotel bedding.  A few hairs "not suitable for microscopic comparisons" were found.  Testing was performed "December 28, 2006." (C2303-04—Exhibit #3)

365.    Judicial Notice (FRE 201): Gakuba filed a detailed "Motion to Compel" the state to make this Brun's false/fabricated "warrant" part of the required appeal record.  (R1572-73) See IL S. Ct. Rule 608(d)(6) "All [] warrants."  The state responded that Brun was not speaking for the

state, but, for Gakuba to clarify Gakuba's legal position.  In an adversarial justice system, one party should not be putting words in the mouth of the opposing party.

366.    Here, this was cumulative evidence of the state's perpetual fraud and perjury: the first being placing the words "Peter Gakuba" and "Room 101" in the mouth of MS as *Franks* perjury, proceeded by *Napue* perjury when the words "November 21, 1969" were placed in the mouth of Gakuba.  Expectantly, a biased IL App. Court sided with state prosecutors.

367.    The federal courts must review all pleadings (i.e. motions) filed in the IL App. Court and IL S. Ct. for completeness.  See accord *Kubsch v. Neal,* 838 F.3d 845 (7th Cir. 2016) (*en banc*) (habeas granted—video evidence exculpatory).

368.    There were 5th and 14th Amendments / ***Brady*** violations when the trial court adamantly refused to order Kurtz to turnover her telephone records corroborating the Alpine Inn burglary.  (C388-402, C665-74; R1121-26, R1124)

**THE COURT:    "I'm denying the turnover of her [(Kurtz's)] telephone records—"**

369.    See *Allen v. Vannoy,* 659 Fed. Appx. 792 **17-21 (5th Cir. 2016) (habeas granted – PD investigator ineffective having failed to obtain "telephone records" from state; ***Brady*** violation).

370.    There were 6th Amendment violations (confrontation clause) as Kurtz was a key material witness and Gakuba's subpoena for Kurtz should not have been quashed.  (C2970-74, C2975; R1580-90, R364065)  See accord *USA v. Bowling,* 770 F.3d 1168 (7th Cir. 2014) (new trial – Indiana – **prosecutor as witness at plea deal in state court**).

371.    There was a 5th and 14th Amendment violation when Kurtz impermissibly used Gakuba's mug shot photo in closing arguments to inflame any racial prejudice of the all-white jury.  (Gakuba's opening brief p.23) See *Bennett v. Sterling,* 842 F.3d 319, 324-27 (4th Cir. 2016)

(prosecutor's racial remarks implying black aggressor against white victim was a due process violation; habeas granted).

372.    There was a 4th Amendment violation when Trial Exhibits ##9-10 (Walmart surveillance photos) were allowed into evidence in spite of being fruit of Gakuba's illegal search and seizure by O'Brien and Kurtz whereby police discovered Gakuba had filled a Walmart pharmacy prescription, and, with prescription in hand (taken from the Marriott illegal search) knew both the time/date and place (which of 6 Walmarts in Rockford/Rockton) to go to in obtaining those "surveillance photos." (C291; R2258—"The stuff from the hotel room was suppressed but not the driver's license[.]"

373.    <u>Judicial Notice (FRE 201)</u>: *Gakuba v. O'Brien et al,* 12-cv-7296 (USDC-ND IL) (1st Amended Complaint naming "Walmart" and  pharmacist "Kevin Kudelka" per §1983 and HIPAA 164.512, ECF #97) (Gakuba's opening brief pp.27-28)

374.    See accord *USA v. Hastings,* 246 F.Supp. 3d 1163 (ED. TX 2017) (suppression motion granted: illegal 4th Amendment *Brown / Dunaway* home invasion into hotel room; no warrant; no inevitable discovery)

*Id* at 1168: Magistrate judge recommended that **"all evidence, physical <u>and testimonial</u>, obtained or derived from or through or as a result of the unlawful search, seizure, interrogation, arrest and detention of Hastings be suppressed."**

*Id* at 1167-68: "Inevitable discovery requires proof a substantial alternat line of investigation was actively pursued."  Cites *Illinois v. Krull,* 480 US 340, 347 (1987)

*Id* at 1178:  Cites *Brown v. Illinois,* 422 US 590 (1975)

*Id* at 1181:  Cites *Dunaway v. New York,* 442 US 200 (1979)

**F.  <u>ISSUE/ERROR 3-2</u>: The cumulative evidentiary errors by the trial court resulted in**

Gakuba being wrongfully convicted with legally insufficient evidence; false/fabricated evidence (*Napue*); manifestly insufficient evidence; and deprived Gakuba of a fair trial by barring use of impeachment evidence.[23]

1. **28 USC §2254(d)(2):** *Gakuba-habeas*, the state's answer, *Gakuba-2017* ALL resort to consoling illusions because they refuse to face the stubborn facts.

375. **Fact #1:** The June 5, 2014 **"Affidavit of Peter Gakuba stating that he gave no testimonial evidence or statements during his November 2006 'booking process'"** is conclusive substantive dispositive evidence in Gakuba's favor. (C2366-72) See habeas attachments.

376. **Fact #2:** The first (1st) test results were negative for DNA. (R900-01)

377. **Fact #3:** "Swabbing around the anus" (R2445, 2453) does not support "sexual penetration." (R2453)

378. **Fact #4:** There was no physical trauma of any kind to a presumptive teen's virgin anus when it was examined 12-20 hours later (well within the time injury would be evident and the state expected to find anal injury). (R2285-86)

379. **Fact #5:** There was no DNA at all on oral swabs (C3195); contradicting MS's repeated sworn statements that there would be (C169-76); the state expecting as much (C2290-2314, C2303-04); and no case laws to support the fantastic notion of DNA found where the complainant swore none would be, and, no DNA found where the complainant insists there were copious amounts. See habeas pp. 35-37.

380. **Fact #6:** MS was a child pornographer and teleiophile; Gakuba was denied his 6th

---

[23] Scissor pasted from *Gakuba v. Neese,* 18-3398 (USCA7) (ECF 1: petition for a certificate of appealability(COA))

Amendment right to impeach per the "confrontation clause." (C552-606, C3155-78 (exhibits sealed))

**2. 28 USC §2254(d)(1):** *Gakuba-habeas*, the state's answer, *Gakuba-2017* refer to irrelevant legal doctrines and cite pointless case laws. This is objectively unreasonable.

381.    **On-point** *Quintana v. Hansen,* 733 Fed. Appx. 439, 443 (10th 2012) (COA denied) *Id* at 443 : "A state procedural ground is independent if it rests on state law, rather than federal law, as the basis for the decision, [(citation)] and the ground is adequate if it has been 'applied even handedly in the vast majority of cases.'"

382.    Gakuba can find no case law precedence, nor can anyone participating or presiding over this case, whereby a *pro se* appellant's issues on appeal are "forfeited" due to deficient briefing per IL S. Ct. Rule 341(h)(7). Worse still, a review of Gakuba's opening brief, objectively, exposes this claim by the IL App. Court to be false: fanciful and conclusory. See habeas pp. 41-42: "**Final note**". Gakuba's success in ***Gakuba v. O'Brien,*** 711 F.3d 751 (7th Cir. 2013) rebuts the objectively unreasonable "forfeit[ure]" conclusion. Gakuba-2017 at ¶45, ¶¶70-71. Gakuba's brief exceeded the briefing standards as it contained 143 cited cases versus the state's mere 26.

383.    **On-point** *Sanders v. Cullen,* 873 F.3d 778 (9th Cir. 2017) (habeas denied: discusses *Napue*, *Brady* in context of *Strickland*)

*Id* at 815: prejudice warranting habeas relief may result from cumulative impact of multiple deficiencies.

384.    Here, it was objectively unreasonable, contrary to the detailed pleading in Gakuba's direct appeal's opening brief of numerous *Napue* and *Brady* violations throughout this 8.5 years malicious prosecution to falsely claim Gakuba's brief on this issue for deficient pleading standards;

treating these well pled individual and cumulative trial court errors as a sufficiency of evidence assessment only.

385.    **On-point** *People v. Mpulamasaka,* 2016 IL App (2d) 130703 ¶¶43, 87 (rape convictions reversed outright in spite of corroborative physical evidence) (¶43: oral, neck swabs positive for saliva) (¶87: vaginal physical injuries state's expert points to rape). **No evidence rape victim was admitted liar.**

386.    Here, the oral swabs were negative and the anal swabs were negative too—at first. (C3195; R900-01) However, MS swore to anti-climactic sex: ejaculation from oral sex not anal sex. (C169-76) Worse still, MS admitted to falsely accusing his parents of child abuse. However, subsequent false accusations by a teleiophile are unimpeachable. See habeas pp. 33, 39-41.

387.    **On-point** *Dumas v. Marchilli,* 240 F.Supp.3d 255, 261 (D. MA 2017) (partial habeas grant: "statutory rape" convictions vacated; victim's age not proven' *Jackson* principle; 14th Amendment; §2254(d)(1)-(2)).

388.    Here, Gakuba's "booking process" denial "affidavit" is conclusive proof; dispositive evidence. (C2366-72) See habeas attachments.

389.    **On-point** *Harrison v. Tegels,* 216 F. Supp. 3d 956 (WD. WI 2016) (habeas grant: trial lawyer ineffective for neither objecting, cross-examining, nor impeaching sex crime victim's incredible testimony; cumulative errors)

Id at 967: "Declining to impeach the sex crime victim made no sense. If defendant's only theory at trial is that the alleged victim is not credible, then the defendant cannot refrain from attacking the victim's credibility if he wishes to have any chance of success."

390.    Here, MS was a perpetual teen runaway; child pornographer; and teleiophile (gay male teen who is sexually attracted to men in their 20s to 50). (C3155-72) MS had both a motive,

interest to lie. Desperate times by desperate people faced with desperate circumstances leads to desperate acts. (C2150-51: Washington Post—'Virginia mangles justice in wrongful conviction case when a teenage girl invented a story of sexual abuse to deflect her parents anger when they caught her surfing pornography.'") (visited 09/28/2021 as with all cited sites) https://www.washingtonpost.com/opinions/virginia-continues-to-mangle-justice-in-johnathan-montgomery-case/2013/12/26/6dd687a2-6c13-11e3-aecc-85cb037b7236_story.html

391.    **On-point** *Baer v. Neal*, 879 F.3d 769 (9th Cir. 2018) (habeas sentenced reversed)

*Id* at 769: "(6) Defendant was denied a fair trial and was prejudiced by the cumulative effect of counsel's unprofessional errors in consistently not objecting to prosecutor's prolific prejudicial remarks."

*Id* at 782, 786-87: "And prosecutor's use of personal opinion/facts not in evidence."

392.    Here, APD Gustafson's defense was a sham having not even objected to the state prosecutor's direct examination of O'Brien "off the record—out of the well of the court." (R2255-56) Gustafson did not object to Kurtz's perpetual leading questioning.

KURTZ:    "And is the anus, I mean is designed to expand, correct?" (R2286, R2453)

ESCARZA:    "Correct." (R2286, R2453)

393.    **On-point** *Ervin v. Bowersox*, 592 F.3d 979, 982 (8th Cir. 2018) (habeas denied: sufficient evidence for sodomy)

*Id* at 982: "[Victim] had bruising and swelling around rectal area [and] mucosal fissures in the lining of the anus[.] A specialist [] concluded 'injuries consistent with or indicative of penetrating anal trauma.'").

394.    Here, MS made repeated sworn statements to full-blown anal penetration, not mere "slight touching" of the anus as the state falsely argues ex-post / post hoc. However, no physical evidence exists. None. (C169-76; R2280-82)

395.    **On-point** *Rodriguez v. Gossett,* 842 F.3d 531, 534-35 (7th Cir. 2016) (habeas denied: predatory sexual assault convictions) (at 534: evidence of anal penetration injuries) (at 535: semen stains on blanket).

396.    Here no evidence of anal penetration. Not a drop, spot, smear or statin on bedding, clothing. (C2290-2314)

397.    **On-point** *People v. Burhans,* 2016 IL App (3d) 140462 (aggravated criminal sexual abuse conviction affirmed—sexual conduct) (at ¶11: semen found in crotch area of underwear) (at ¶5: over 95% of exams following non-acute disclosures over 72 hours are normal) (at ¶17: Hoffman was a nurse in pediatric nursing).

398.    **On-point** *USA v. Al-Awadi,* 873 F.3d 592, 596 (7th Cir. 2017) (affirmed child sex abuse convictions)

*Id* at 596: "After daycare [] at the hospital, the nurse who examined CV1 noted swelling and several areas of redness that were consistent with digital penetration [of virgin vagina.] A DNA test concluded that Al-Awadi's DNA [was] on CV1's underwear."

399.    Here, it's axiomatic that the absence of physical evidence or contradictory physical evidence, supports exoneration; especially where state misconduct was rife.

400.    **On-point** *Gardner v. Holland,* 218 F.Supp. 3d 1048, 1056-58,1063 (ND. CA 2016)

*Id* at 1056: Habeas grant—6th Amendment confrontation clause violation as "evidence of prostitution convictions [and activities] was admissible to impeach Jane Doe's credibility."

*Id* at 1057-58: "The trial court noted that prostitution was a crime of moral turpitude and did relate

to honesty, but was not as strongly related to honesty as some other crimes such as theft and forgery[.] The trial court concluded that the evidence was not '**particularly strong as it relates to the character trait of honest and veracity[.]**'" (emphasis)

*Id* at 1063: "The precluded cross-examination sufficiently bore on Jane Doe's credibility such that a jury might reasonably have questioned her credibility upon hearing it[.] *Fowler*, 421 F.3d at 1041. See e.g. *Holley v. Yarborough*, 568 F.3d 1091, 1098-99 (9th Cir. 2009) (state court's exclusion of evidence that the child victim of a reported rape had a highly active sexual imagination and was familiar with sexual activities was unreasonable and disproportionate to the purpose of the ruling allowing limitations on cross-examination based on concerns about harassment, prejudice, and issue confusion."

401.    Here, Gakuba properly pleaded a 6th Amendment violation: denial of the right to impeach MS. See habeas pp. 33, 39-41, 45-46.

402.    Pretrial hearing of June 19, 2013: (R1107)

THE COURT: "I'm not going to allow evidence that this kid had either child pornography or information of solicitation as a prostitute on his computer anyway[.] **The court's of the opinion that it doesn't go to his truth or veracity.**" (emphasis)

403.    See habeas pp. 44-47, at 46: "Here, MS was a teen runaway who, not only resorted to selling sex for shelter, but the undisputed plain record shows, sought to adopt himself out. (Gakuba's opening brief p. 19; reply p. 10) The question for any rational trier of fact was: Did Gakuba 'buy' what MS was selling? Obviously not, as the physical evidence—or lack thereof—contradicts MS's fantastic fiction of Gakuba ejaculating semen on MS's face, mouth, cars, clothes and bedsheets. (C169-76) Yet, not a drop, spot, smear, or stain was ever found at the purported crime scene or anywhere else. (C2290-2304) (opening brief pp. 25-26; reply brief pp. 7-8) Se cf *People v. Trotter*, 2013 IL App (2d) 230464 ¶37 (semen stain on bedsheets, just as victim said).

404.     **On-point** *Juniper v. Zook,* 876 F.3d 551 (4th Cir. 2017) (habeas remand)

*Id* at 551: (1) petitioner diligently pursued *Brady* claim; (2) state court did not afford petitioner opportunity to develop facts underlying *Brady* claim; (3) withheld evidence was exculpatory; (4) withheld evidence was impeachment; (5) district court abused discretion dismissing *Brady* claim without evidentiary hearing.

405.     Here, Gakuba was *pro se* from May 2013 to December 2014 and sought discovery unsuccessfully of state police's and prosecutors' residential burglary of Gakuba's Alpine Inn room the week after Gakuba bailed out. (R1115, R1124; C399-402, C665-74) (C2763-2809—**Offer of Proof #1** (birthdate per video records)) (C2891-2981—compel discovery of Alpine Inn break-in including subpoena for desk clerk "Brenda Adams" (defeated by the state, abetted by judge).

406.     This break-in overlapped and coincided with the time period state police were in possession of the SAEK kit. Gakuba believes this was to illegally obtain Gakuba's "biological sample." See habeas p. 34; habeas reply p.4; opening brief pp. 16-17, 23—R520-30; C172; C2290-2314, C2908-42, C2969, C2707) (R1545-45, R1124, R1135, R1127)

407.     **On-point** *Mills v. Barnard,* 869 F.3d 473 (6th Cir. 2017) (42 USC §1983 malicious prosecution suit—DNA test withheld in sex with 12-year-old case).

408.     Here, Gakuba diligently pursued his *Brady* claims that Gakuba's DNA was illegally obtained per a residential burglary of his Alpine Inn room by state police supervised by ASA Kurtz, and, *pro se* on appeal, Gakuba first discovered Kurtz's admission to negative test results upon receipt of the complete "R"eport of Proceedings (transcripts), then flagged the exculpatory admission by Kurtz (at a January 13, 2012 pretrial hearing) in Gakuba's opening brief pp. 16-17, 23. (R900-01)

**KURTZ: "The crime lab said the first (1st) test was negative[.]" (R900-01) (C2810-30—**
                    **Offer of Proof #2)**

409.    See *Gakuba,* 17-cv-50337 (USDC-ND IL) (habeas) ECF #33: "Motion for Court-Recruited Counsel – Hearing Requested"

**G. ISSUE/ERROR 4-1:** The 6th Amendment ineffective assistance of counsel ("IAC") violation let to—
The trial court erred denying Gakuba's 6th Amendment self-right to representation (*pro se*) 3-6 weeks before trial, despite making a record 5-6 months earlier trial court "anticipated" it (R1668-69), and would allow it as a matter of law as Gakuba was *pro se* for some 18 months before being granted appointed counsel at the time the trial court made its anticipatory/prospective ruling known for "the record."[24]

**1. Asst. public defender (APD) Shauna Gustafson's failure to investigate, be prepared led to clear errors of facts—see cf. 28 USC §2254(d)(2)**

410.    *Gakuba-2017* at ¶88: "On the day of trial, defendant sought to have Schafer removed." Omitted/disregarded is the undisputed plain record that Schafer was allowed to withdraw over Gakuba's strident objections. Gakuba was ready to proceed to trial with lawyer(s) the trial court deemed were effective. (C123-132; R573-679)

411.    Worse still, the warrants Schafer failed to get quashed, were later quashed; proving Gakuba was correct—Schafer was ineffective.

412.    By contrast, APD Gustafson refused Gakuba's insistence that she withdraw when the trial court allowed every other lawyer in this case to do so. This prejudiced Gakuba. *USA v. Smith,* 830 F.3d 803, 807-11 (8th Cir. 2016) (public defender made repeated motions to withdraw so defendant could proceed *pro se;* 6th Amendment violations; reversed and remanded).

---

[24] Scissor pasted from *People v. Gakuba,* 2019 IL App (2d) 170794-U (post-conviction petition appeal opening brief)

413.    Also omitted/disregarded is the undisputed record that on the day of trial (04/27/2015) APD Gustafson filed a continuance motion due to ill-preparedness. (C3262-64) DENIED. (R1683-90)

414.    No accusatory / recriminatory criticism towards Gustafson was made of this "delay tactic." Thus, assuming arguendo, a *pro se* Gakuba's continuance would have been denied too.

**2.    Asst. public defender (APD) Shauna Gustafson's failure to investigate, be prepared led to an unreasonable/contrary application of law—see cf. 28 USC §2254(d)(1)**

415.    **On-point** *People v. Merritt,* 2017 IL App (2d) 150219 ¶¶1, 26-30, 30-31

Id at ¶1: Defendant allowed to proceed to trial *pro se* on trial date itself; denied day-of-trial continuance motion.

Id at ¶¶26-30: 6th Amendment, Art. 1 §8 establishes *pro se* right; cites *People v. Woodson,* 2011 IL App (4th) 10023 ¶24 (defendant's *pro se* right untimely (on trial date) when accompanied by additional time to prepare request).

Id at ¶¶26-30: Cites *People v. Garrett,* 104 Ill.App.3d 178, 182 (1982) (trial court need not allow extension of time when allowing defendant to be *pro se*)

Id at ¶26: Defendant delay tactic to be *pro se* on trial date; could have made invocation two (2) months earlier or days before versus trial date itself)

Id at ¶¶30-31: Cites *USA v. Wright,* 682 F.3d 1088 (8th Cir. 2012) (trial date *pro se* right allowed; delay denied); cites *USA v. Ware,* 890 F.3d 1008, 1010 (8th Cir. 1989) (trial date *pro se* right allowed; delay denied).

H. **ISSUE/ERROR 4-2:**  The trial court erred denying Gakuba's 6th Amendment self-right to representation (*pro se*) 3-6 weeks before trial, despite making a record 5-6 months earlier trial court "anticipated" it (R1668-69), and would allow it as a matter of law as Gakuba was *pro se* for some 18 months before being granted appointed counsel at the time the trial court made its anticipatory/prospective ruling known for "the record."[25]

1. **28 USC §2254(d)(2):** *Gakuba-habeas*, the state's answer, *Gakuba-2017* ALL resort to consoling illusions because they refuse to face the stubborn facts.

416.    **Fact #1:** The trial court denied Gakuba's *pro se* right as a "delay tactic"—not for "disruptive [or] obstructionist" conduct.

417.    **Fact #2:** On December 9, 2014 Gakuba plainly stated he sought no trial delay.

GAKUBA:  "But at this stage, with a trial date set, **and a trial date set that I believe we all  can meet,** I'm finding myself in the position where it may be a problem to meet the issue and burden of having the witnesses show up[.]" (R1631) **(emphasis)**

See habeas pp. 47-48

418.    **Fact #3:** In February 2015, Gakuba filed 39 witness subpoenas which Gustafson would not serve which was the purpose of seeking the public defender. This was 60-days from trial. The pretrial hearing of December 9, 2014: (R1596)

THE COURT: "You understand if I do appoint counsel, counsel isn't going to be appointed for the limited purpose in the issuance of subpoenas?"

419.    **Fact #4:** On April 8, 2015 Gakuba "anticipated" being *pro se* at the April 27, 2015 jury trial and filed *pro se* "Defendant's Motion to Introduce Evidence per 720 ILCS 5/111-7(a)(2)" on that basis. (C3155-78 (exhibits sealed)) This motion must be filed at least 14-days before trial.

420.    **Fact #5:** The trial court committed fraud upon Gakuba when it made a "record" (R1591-1604) that Gakuba would have the "option" that "if the public defender were removed at

---

[25] Scissor pasted from *Gakuba v. Neese,* 18-3398 (USCA7) (ECF 1: petition for a certificate of appealability(COA))

your request close to the trial date you would proceed *pro se* [...] because I will absolutely find that to be a delay tactic." (R1597-99)

421.    **Fact #6:** Gakuba never filed *pro se* continuance motions and the February 2014 court's *sua sponte* continuance was due to a substitution of judge motion being delayed. (C1416-17: "Motion to Abbreviate or Shorten Time ..."

422.    **Fact #7:** Gustafson filed a day-of-trial continuance motion citing ill-preparedness. (C3262-64) Denied. (R1683-90) Thus, assuming arguendo, a *pro se* Gakuba's continuance would have been denied too.

2. **28 USC §2254(d)(1):** *Gakuba-habeas*, the state's answer, *Gakuba-2017* refer to
   irrelevant legal doctrines and cite pointless case laws. This is objectively
   unreasonable.

423.    **On-point** *Imani v. Pollard,* 826 F.3d 939, 947 (7th Cir. 2016) (habeas grant: denial of 6th Amendment *pro se* right four (4) weeks before trial, cites *Faretta v. California,* 422 US 806, 835 (1975) ("weeks before trial" denial of *pro se* right a constitutional error))

424.    Here, Gakuba's reinvocation occurred upon Gakuba's substitution of counsel motion being denied on April 8, 2015; filed March 31, 2015. Trial date: April 27, 2015. (C2999-3151) In turn, the substitution of counsel was triggered upon demonstrable incompetence: Gustafson's prosecutor disqualification motion being denied on March 26, 2015, (C2997 (order)) filed March 4, 2015. (C2984-89) As the trial court "anticipated" this in December 9, 2014 it deliberately delayed from March 4, 2015 to march 26, 2015 its predetermined denial—hence 3-6 weeks is the time cited by Gakuba in re-invoking his *pro se* right. (Gustafson was evasive in answering Gakuba's demands to issue 39 witness subpoenas. (See "**conclusion**"—Motion to Substitute Counsel, C2999-3151)

425.    **On-point** *People v. Washington*, 2016 IL App (1st) 13198 ¶18 ("100 motions" filed by *pro se* defendant)

426.    Here, the "50 motions" included reconsideration motions and procedural ones. Hence, at most, 26 substantive motions were filed over 18-months, or, 1.5 motions per month. *Gakuba-2017* at ¶88.

427.    **On-point** *USA v. Smith,* 830 F.3d 803, 810 (8th Cir. 2016) *Id* at 810: "A defendant must be allowed to control the organization and content of his own defense, to make motions, to argue points of law[.] Defendants have a right to present 'unorthodox defenses and argue their theory to the bitter end.' *USA v. Johnson,* 610 F.3d 1138, 1147 (9th Cir. 2010). This may require the trial court to tolerate 'numerous nonsensical pleadings' even 'occasionally wacky' behavior; the proper judicial response is repeated denials and lesser sanctions if necessary. *Id* at 1144." *Smith* at 809: "In this case, we do not review revocation of a defendant's right to be *pro se* for misconduct [as] smith was represented by counsel[.] Thus, the district court's ruling on appeal is the denial of Smith's pretrial request to invoke his constitutional right to be *pro se* at trial [which is] reviewed de novo. See *USA v. Makasin,* 442 F.3d 687, 691 (8th Cir. 2006). Whenever a defendant invokes his constitutional right to be *pro se*, the request must be granted/denied based **on the circumstances at that time.**" (emphasis)

428.    Here, there were no requests for continuances by *pro se* Gakuba; only by appointed counsel which was denied—on the trial date itself.

429.    **On-point** *USA v. Jones,* 844 F.3d 636, 642-43 (7th Cir. 2016) *Id* at 643-643: "Even so, we have previously recognized that requests for new counsel submitted several weeks before a critical proceeding may be timely under the circumstances. Cf *USA v. Zillges,* 978 F.2d 369, 372 (7th Cir. 1992) (requests made one month before trial did not 'represent [] a tactic to secure a

continuance on the eve of trial'), and *USA v. Ryals,* 512 F.3d 416, 419 (7th Cir. 2018) ( three (3) weeks before sentence was timely)).

430.    Here, Gakuba's substitution of counsel motion and reinvocation of his *pro se* right 3-6 weeks before trial were timely, objectively reasonable. 28 USC §2254(d)(2).

431.    **On-point** *USA v. Banks,* 828 F.3d 609, 615 (7th Cir. 2016) (five (5) separate times replaced defense lawyers, the final one (**B.Brindley**) on first (1st) day of trial in order to go *pro se*; cites *USA v. Volpentesta,* 727 F.3d 666, 677-78 (7th Cir. 2013) (defendant's waiver of counsel "was a strategic decision he made so that he could pursue the case as he desired")

432.    Here, Gakuba fired **B.Brindley** three (3) weeks before trial, April 26, 2013 (C361-387). Brindley was a thieving liar held in direct criminal contempt. This was objectively reasonable, and denying Gakuba's *pro se* reinvocation on that basis is inapposite to *Banks.* *Gakuba-17* at ¶88. See habeas pp. 47-50.

433.    **On-point** *Tamplin v. Muniz,* 894 F.3d 1076 (9th Cir. 2018) (COA, habeas grant: pro se right denied, untimely)
*Tamplin* at 1088-89: "Tamplin made a new request to represent himself [] exactly two weeks before [trial.] Tamplin's request was timely." *Id* at 1089: "Even if the state court had relied on untimeliness in denying habeas, we would not give AEDPA deference to that conclusion [due to] clear factual error[.]" Id at 1093, fn #3: "Footnote in *Faretta* indicates he attempted on three occasions to have the trial court appoint and pay for private counsel for him. 422 US at 808, fn #5." *Id* at 1092: "[Dissenting:] *Faretta* certainly does not preclude the trial court's consideration of the entire record."

434.    Here, *Gakuba-2017* at ¶¶88 which is fanciful and conclusory: "Given the history of this case, we cannot say the trial court's conclusion is arbitrary, fanciful, or unreasonable." Nowhere does *Gakuba*-2017 state that APD Gustafson filed a continuance motion on the trial date.

This "delay tactic" was denied. (C3262-64; R1683-90) Thus assuming arguendo, Gakuba's *pro se* motion—were one filed—would be denied too. *Imani* 826 F.3d 939 at 947.

435.    Arbitrariness is proven by the trial court's fraud upon Gakuba when making a "record" that Gakuba would have the "option" to go *pro se* on December 9, 2014. (R1597-99)

436.    **On-point** *People v. Albea,* 95 N.E. 3d 1220, 2017 IL App (2d) 150598 (held: *pro se* right denied; reversed/remanded) *Id* at ¶6: "THE DEFENDANT: 'I tried to get a continuance as far as the trial date is set.'" *Id* at ¶9: "The court asked whether the defendant was prepared for trial tomorrow. When defendant responded that he was not, the court stated, 'Well, how do you think I am going to let you go *pro se?*'" *Id* at ¶18: "The state responds that the trial court properly exercised its discretion, as defendant's request was untimely[.]" *Id* at ¶ 26: "Here, [] defendant made an unequivocal request three (3) weeks before trial."

437.    Here, the same IL App. Court – 2nd District ruled inapposite to *Albea* (and *Merritt* 2-15-0219). This cannot be excused as mere error, but, calculated judicial overreach by an irrationally biased state appellate court

438.    **On-point** *People v. Merritt,* 2017 IL App (2d) 150219 ¶¶1, 26-30, 30-31

Id at ¶1: Defendant allowed to proceed to trial *pro se* on trial date itself; denied day-of-trial continuance motion.

Id at ¶¶26-30: 6th Amendment, Art. 1 §8 establishes *pro se* right; cites *People v. Woodson,* 2011 IL App (4th) 10023 ¶24 (defendant's *pro se* right untimely (on trial date) when accompanied by additional time to prepare request).

Id at ¶¶26-30: Cites *People v. Garrett,* 104 Ill.App.3d 178, 182 (1982) (trial court need not allow extension of time when allowing defendant to be *pro se*)

Id at ¶26: Defendant delay tactic to be *pro se* on trial date; could have made invocation two (2)

months earlier or days before versus trial date itself)

Id at ¶¶30-31: Cites *USA v. Wright,* 682 F.3d 1088 (8th Cir. 2012) (trial date *pro se* right allowed;

delay denied); cites *USA v. Ware,* 890 F.3d 1008, 1010 (8th Cir. 1989) (trial date *pro se* right

allowed; delay denied).

439.    Here, the same IL App. Court –2nd District ruled inapposite to *Merritt*. This cannot

be excused as mere error, but, calculated judicial overreach by an irrationally biased state appellate

court.

I.  **ISSUE/ERROR 5-1:** **The 6th Amendment ineffective assistance of counsel ("IAC") violation let to—**
    **The trial court erred in denying motions to disqualify ASA Kurtz by Gakuba and Gakuba's retained and appointed counsel; erred in denying Gakuba's motion for a special prosecutor; and erred when allowing the illegal appointment of Kurtz as a "special ASA" per 55 ILCS 5/4-2003.[26]**

    1. **Asst. public defender (APD) Shauna Gustafson's failure to investigate, be prepared led to an unreasonable/contrary application of law—see cf. 28 USC §2254(d)(1)**

440.    *Gakuba-PC* adopts "full[y]" *Gakuba-2017* at ¶98: "*Woodall* is misplaced as that

case involved the appointment of an appellate prosecutor, not the appointment of an ASA from

another county."

---

[26] Scissor pasted from *People v. Gakuba*, 2019 IL App (2d) 170794-U (post-conviction petition appeal opening brief)

441.    This is a sophistic analysis of law as *Woodall* draws no distinction on the background/CV of the candidate who fills the role: "position of 'special [ASA].'" *People v. Woodall,* 333 Ill.App.3d 1146, 1153-56 (2002).

442.    Winnebago County SA Joseph Bruscato created an illegal position: the special ASA.

443.    *Woodall* at 1154-55: "The use of special prosecutors is limited by statute. They

can be appointed by circuit court order only [in accordance with] 55 ILCS 5/3-4008 (Westlaw 1998)  Furthermore, state's attorneys are not at liberty, as a matter of course, to create ASA positions.  The counties code provides as follows: 'Where ASAs are required in any county, the number of such assistants shall be determined by the county board[,] 55 ILCS 5/4-2003 (West 1998)'."

444.    *Gakuba-2017* at ¶98 further mistake the "plain language of 55 ILCS 5/4-2003" as the county SA is circumscribed to the "supervision" of those ASAs that the county board designates for that county.

445.    *Gakuba-2017* at ¶98: "The SA of each county [has] the discretion to appoint his or her ASAs [from the pool/roster/payroll of that county.]"

446.    This is an unreasonable/contrary application of *Woodall* at 1154: "An SA, who, for whatever reason, did not want to perform the duties of office could simply commandeer anyone with a law license to take over."

447.    This is the only case that former Winnebago Co. ASA, now Macon Co. ASA, as "special ASA" Kurtz chose to prosecute in Winnebago Co. This in spite of Kurtz's +100 sex crimes cases being re-assigned to other Winnebago Co. ASAs upon Kurtz's involuntary job separation. Many of these other cases involved small children and Class X &/or Class 1 sexual assaults. Kurtz has a personal interest in this case because Gakuba has a *pro se* pending federal lawsuit which a lengthy prison sentence could derail, and, the now wrongful conviction Kurtz seeks to use as a

*Heck* affirmative defense.　<u>Judicial Notice (FRE 201)</u>: *Gakuba v. O'Brien,* 12-cv-7296 (USDC-ND IL) (ECF #279, ID 1476—"*Heck*" dismissal argument).

448.　　This lawsuit's success could spell the end of Kurtz's law career.　See *People v. Lang,* 346 Ill.App.3d 677, 684-86 (2004) (The SA's office was obsessed in obtaining a conviction at all costs.).

449.　　The trial court impliedly takes judicial notice of this *Gakuba,* 711 F.3d 751 (7th Cir. 2013) lawsuit and the jeopardy/peril to Kurtz's law career.

THE COURT: "Why is everyone out to get you? **Why you as opposed to me** or anyone else on the face of earth? What's your theory that [] **Ms. Kurtz** has targeted you as the one who **she is willing to risk her law license and her entire career over?** I just have a hard time wrapping my head around that? And every, **why every police officer would be willing to risk their career to get you[?]**" (R1116-17) (emphasis)

450.　　See *USA v. Spiker,* 649 Fed. Appx. 770, 773 (11th Cir. 2016) *Id* at 771: convictions reversed where defendant threatened that case's prosecutor and later attempted murder of that prosecutor. Removal of a prosecutor was mandated. It would be plain error to allow prosecutor to remain. *Id* at 772-73: A prosecutor should not participate in a case if it results in a personal conflict or the appearance thereof. *Young v. USA ex rel. Vuitton SA,* 481 US 787, 807 (1987). The prosecutor in Spiker acted alone and primary. *Id* at 773: "Given the far-reaching effect of an interested prosecutor [...] as well as defendant's high-end guidelines sentence, we find this error affected substantial rights."

451.　　Gakuba's threat to Kurtz is to her livelihood which she has treated as a grave threat, indeed.

452.　　Lastly, Kurtz was a witness and Gakuba's subpoena for Kurtz should not have been quashed. (C2970-74, C2975; R1580-90, R364-65)　Cf. *People v. Wiggins,* 2013 IL App (1st)

133033 ¶¶ 4, 8, 13-14, 49: "The judge's second *sua sponte* objection arose during cross examination of [the crime investigation] ASA."

453.    See accord *USA v. Bowling*, 770 F.3d 1168 (7th Cir. 2014) (new trial – Indiana – **prosecutor as witness at plea deal in state court)**.

454.    **End Note:** Ancillary record cites.

455.    July 19, 2013 pretrial hearing:

KURTZ:    **"I have been served with a lawsuit.** Paul Carpenter from my office represents me and is present in court. But if the court has questions[,] I would defer to Mr. Carpenter." (R1070) (emphasis)

456.    (R1115; C388-402, C665-74)

GAKUBA:    "Well it poses the question? How do you have telephone logs fabricated on records that do not exist?"

457.    (R1124)

THE COURT: "How is her phone number going to show who entered your room at the Alpine Inn?"

458.    (R1124, R1135, R1127)

THE COURT: "I'm denying the turnover of her [(Kurtz's)] telephone records ... I'm not involved in this gigantic conspiracy ... The guts of it really isn't that you're asking that anything at the Alpine Inn be, anything that may have been recovered at the Alpine Inn be suppressed?"

459.    September 20, 2013 pretrial hearing:

KURTZ:    "That's correct judge. I will not speak to the defendant. He will have to get that through my office. **He is, again, suing me, so I won't be speaking with him."** (R1211) (emphasis)

460.    **Final Note:** There was a 14th Amendment violation as Kurtz was unauthorized by state law to be a "special ASA." See 55 ILCS 5/4-2003. See *Knowles v. Muniz*, 228 F.Supp.3d 1009, 1020 (CD. CA 2017) (the 14th Amendment's due process clause protects against arbitrary

deprivation of liberty interest to which the defendant is entitled under state law. *Hicks v. Oklahoma,* 477 US 343, 346 (1980); *Carver v. Lehman,* 552 F.3d 869, 872, 874-75 (9th Cir. 2009)).

**J. ISSUE/ERROR 5-2: The trial court erred in denying motions to disqualify ASA Kurtz by Gakuba and Gakuba's retained and appointed counsel; erred in denying Gakuba's motion for a special prosecutor; and erred when allowing the illegal appointment of Kurtz as a "special ASA" per 55 ILCS 5/4-2003.[27]**

**1. 28 USC §2254(d)(1):** *Gakuba-habeas,* the state's answer, *Gakuba-2017* refer to irrelevant legal doctrines and cite pointless case laws. This is objectively unreasonable.

461.     **On-point** *Quintana v. Hansen,* 733 Fed. Appx. 439, 443 (10th 2012) (COA denied) *Id* at 443 : "A state procedural ground is independent if it rests on state law, rather than federal law, as the basis for the decision, [(citation)] and the ground is adequate if it has been 'applied even handedly in the vast majority of cases.'"

462.     Gakuba can find no case law precedence, nor can anyone participating or presiding over this case, whereby a "special assistant state's attorney" was successfully appointed to a case over defendant's strident objections. A "special ASA" is pure fiction, unlawful. This case stands inapposite to the holding in *People v. Woodall,* 333 Il. App.3d 1146, 1153-56 (2002). Accord *Hewitt v. Helms,* 459 US 460, 466 (1983) ("liberty interest can either arise from the Constitution or created by state law").

463.     **On-point** *People v. Allard,* 99 N.E. 124, 2018 IL App (2d) 160927 (held: assistant state's attorney (ASA) "was not properly designated as authorized applicant to sign wiretap application under state wiretap law because here was no showing that SA was absent or disabled.

---

[27] Scissor pasted from *Gakuba v. Neese,* 18-3398 (USCA7) (ECF 1: petition for a certificate of appealability(COA))

ASA was not designated to act in his place, and even if ASA had the authority to make the application, nothing in the state wiretap law gave him the power to further relegate that authority, especially to any ASA who was not identified by SA in his purported designation letter. 725 ILCS 5/1088-2)

464.    Here, the same IL App. Court – 2nd District ruled inapposite to *Woodall*, 333 Ill.App.3d 1146, 1153-57 (2002). *Id* at 1155: "State's Attorneys are not at liberty as a matter of course, to create ASA positions"; only the county board can.

465.    By comparison, the state appellate court ruled inapposite to Allard. See opening brief pp. 30-31. (R1647-63) ("legal standard")

466.    **On-point** *USA v. Arpaio*, 887 F.3d 979, 984 n. 2 (9th Cir. 2018) (discusses disinterested prosecutor) (at 984, fn#2: "Amici represented President Trump's political rival, Hilary Clinton[;] their possible opposing interests should at least preclude them from appointment as special counsel[.] *Young* [*v. USA ex rel. Vuitton SA*, 481 US 787] at 811: "Appointment of an interested prosecutor creates an appearance of impropriety that diminishes faith in the fairness of the criminal justice system[.]"

467.    Here, ASA Kurtz was an interested prosecutor, as Macon Co. ASA, this was the only case among +100 cases Kurtz, was an illegally appointed "special ASA" in Winnebago Co. The reason: Gakuba is "suing" Kurtz. (R1211) *Gakuba v. O'Brien*, 12-cv-7296 (USDC-ND IL); *Gakuba v. Kurtz*, 523 Fed. Appx. 402 (7th Cir. 2013).

468.    **On-point** *USA v. Spiker*, 649 Fed. Appx. 770, 773 (11th Cir. 2016) *Id* at 771: convictions reversed where defendant threatened that case's prosecutor and later attempted murder of that prosecutor. Removal of a prosecutor was mandated. It would be plain error to allow prosecutor to remain. Id at 772-73: A prosecutor should not participate in a case if it results in a

personal conflict or the appearance thereof. *Young v. USA ex rel. Vuitton SA,* 481 US 787, 807 (1987). The prosecutor in *Spiker* acted alone and primary. Id at 773: "Give the far-reaching effect of an interested prosecutor [...] as well as defendant's high-end guidelines sentence, we find this error affected substantial rights."

469.    Here, Gakuba was sentenced (by a complicit judge) to 12-years (4-years x 3-counts) "discretionary consecutive" sentencing when "probation" was both the government's plea offer and PSI report recommendation.

470.    Here, Gakuba's threat to her is to her livelihood which she's treated as a grave threat, indeed.

471.    Here, the trial court impliedly takes judicial notice of this lawsuit and the jeopardy / peril to Kurtz's career. See habeas pp. 51-52

> THE COURT: Why is everyone out to get you?  What's your theory that [] **Ms. Kurtz** has targeted you as the one who **she is willing to risk her law license and her entire career over? (emphasis)**

K. <u>**ISSUE/ERROR 6-1:**</u>  **The 6ᵗʰ Amendment ineffective assistance of counsel ("IAC") violation let to—**
   **The trial court erred in denying Gakuba's "Motion to Substitute Judge for Cause" (first), then, denied Gakuba's "Motion to Substitute" the chief judge for cause himself; before denying Gakuba's "2ⁿᵈ Motion to Substitute" the trial judge for cause resulting in Gakuba being tried/convicted before a biased trial judge as advocate.[28]**

   1. **Asst. public defender (APD) Shauna Gustafson's failure to investigate, be prepared led to clear errors of facts—see cf. 28 USC §2254(d)(2)**

---

[28] Scissor pasted from *People v. Gakuba*, 2019 IL App (2d) 170794-U (post-conviction petition appeal opening brief)

472.    *Gakuba-PC* adopts "full[y]" *Gakuba-2017* at ¶¶100-108 which omits/disregards several material facts.

473.    First, the trial court's irrational animus.

474.    December 9, 2014 pretrial hearing: (R1598)

GAKUBA:    "And Mr. Brindley, just to clarify for the record is under a 5-count federal indictment for suborning perjury and obstruction of justice."
THE COURT: "So what? It had nothing to do with your case."
GAKUBA:    "My—"
THE COURT: "And supposedly some of these things he was doing back at the time you retained him, **so you retained a lawyer you knew was engaged in alleged criminal activity—**"
GAKUBA:    "My—"
THE COURT: "—So that's on you, that's on you!"
GAKUBA:    **"But I wasn't—"**
THE COURT: "Now. No, no. Now you listen[.]" (emphasis)

475.    By the trial court demonstrating a wanton and reckless disregard for the truth by substituting its subjective personal beliefs in lieu of the facts underscores its bias and actual prejudice. "Prejudice is defined as 'animosity, hostility, ill-will, or distrust towards the defendant." *Gakuba-2017* ¶102 (citing *People v. Patterson*, 192 Ill.2d 93, 131 (2000)).

476.    Second: extra-judicial factor.

477.    On June 5, 2013 the trial court denies Gakuba's "Motion to Compel State's Discovery": the telephone records of O'Brien and Kurtz leading to the illegal 4th Amendment / *Brown* home invasion on November 4, 2006 and the surreptitious residential burglary at Gakuba's Alpine Inn room. (C388-402, C665-74; R1121-26)

478.    The trial court's reason—

KURTZ:    "It's the People's position that this is an attempt to do discovery in a federal case the defendant has [*Gakuba v. O'Brien*, 711 F.3d 751 (7th Cir. 2013)]"

479.    Then, to avoid complying with a 2.5-year old court order quashing the Marriott search warrant, returning originals to Gakuba and destroying any/all copies (C291; R1223) the

trial court permits Kurtz to allow assistant attorney general ("AAG") Diane Moshman—who was a non-party, non-intervenor, and non-witness—to address the court, falsely argue she represents state police in *Gakuba*, 711 F.3d 751 and falsely claim a "federal law [requires state police to preserve] any relevant documents."

480. Thus, *Brady* occurred on the basis discovery in *Gakuba-2017* will be shared with Gakuba, 711 F.3d 751, only for this federal suit to be cited as the reason not to return all Gakuba's stolen property per a bogus search warrant quashed per *Brown* and *Franks*.

481. Third: Prejudgment. On October 29, 2013 the trial court denied Gakuba's "Motion to Reduce Bond" on the **"likelihood of the state prevailing" in convicting Gakuba.** (C1061-70, C1071; R1243)

482. Fourth: The trial court's credibility vouching of *Franks* perjurers O'Brien and Kurtz. This trial judge when not hectoring or mocking Gakuba *pro se* by falsely claiming Gakuba "knew [Brindley] was engaged in alleged criminal activity" four (4) years before anyone else did "so that's on you. That's on you" (R1598) was credibility vouching for *Franks* perjurers O'Brien and Kurtz.

THE COURT: "Why is everyone out to get you? **Why you as opposed to me** or anyone else on the face of earth? What's your theory that [] **Ms. Kurtz** has targeted you as the one who **she is willing to risk her law license and her entire career over?** I just have a hard time wrapping my head around that? And every, **why every police officer would be willing to risk their career to get you[?]**" (R1116-17) (emphasis)

483. See *USA v. Betts-Gaston,* 860 F.3d 525, 536 (7th Cir. 2017) (cites *USA v. Fry,* 304 F.2d 296, 298 (7th Cir. 1962) ("tended to ridicule the defendant and witnesses").

## 2. Gustafson's ineffectiveness led to an unreasonable / contrary application of law which occurred here.

484. Credibility vouching usually is discussed in the context of prosecutorial misconduct; in this case, it's the trial judge doing it—as a 5th And 14th Amendments due process violation. See accord *Jordan v. Hepp*, 831 F.3d 837, 846-849 (7th Cir. 2016) (habeas corpus denied on 6th Amendment *pro se* violation; prosecutor credibility vouching (defendant's lawyer objection failure) merits evidentiary hearing on ineffective assistance of counsel. Credibility vouching is subject to plain error review. *Jordan* at 847 (cites *USA v. Young*, 470 US 1, 18 (1985); *Berger*, 295 US 86-88).

485. Accord *People v. Jones,* 2016 IL App (1st) 141008 ¶38 (judge's comments violated code of conduct Rule 63(A)(3))

486. *Gakuba-2017* ¶¶105-108 rules that the "Motion to Substitute Judge for Cause"—Chief Judge McGraw—was not supported by affidavit and was untimely because it was filed just prior to McGraw's ruling on summarily denying Gakuba's second motion to substitute trial Judge Truitt for cause. All Gakuba's motions were per 735 ILCS 5/1-109 which is an accepted alternative to an affidavit. (C865-904, C1170-1277, C1582-1689, C2677-2751)

487. Further, Gakuba's two (2) motions to substitute Judge Truitt both were filed when Judge Truitt was ready to rule on pretrial motions, but had to stop the proceedings and send the SOJ motion to Judge McGraw. This is in accord with the law and what occurred in other cases.

488. See accord *People v. Marissa Brown,* 2010-cf-0543 (17th Cir. Ct.) (docket 03/14/2014: **"Hearing Result: Cause comes on for Hearing on Motion to Substitute Judge. Cause Continued and set before Judge Truitt for Decision on Motion to Substitute Judge."**)

489. See also *People v. Cody Walsh,* 2012-cf-2614 (17th Cir. Ct.) (docket 11/18/2013: **"Motion for Change of Judge Instanter."**)

490.    The Motion to Substitute Judge McGraw's merits: February 7, 2014 an evidentiary hearing was held before Judge McGraw on Gakuba's second motion to substitute Judge Truitt. (C1582-1689)

491.    Gakuba called his ex-Rockford lawyers claiming they told Gakuba Judge Truitt was "itching" to imprison Gakuba to 5-years and presumed Gakuba guilty. (R1332-94)

492.    Gakuba objected 51 times; Kurtz objected 49 times. All Kurtz's objections were sustained. Gakuba's objections—49 of 51—were overruled. Including objections to plainly hearsay questions by Kurtz. (C2677-2751; R1345)

493.    This statistical improbability could not have been the result of mere error. (C2677-2751; R1332-94)

494.    See *USA v. Onyeabor,* 649 Fed. Appx. 442 (9th Cir. 2016) (trial judge excessive intervention warranted reversal and reassignment; mistrial denied on basis of judicial overreach) (see also n.3: *Liteky v. USA,* 510 US 540, 556 (1994)) (at 555: judge conduct – 28 USC § 455(a)) (at 445: court admonished defense counsel 39 times, prosecutor 4) (see n.4: court sustained all of government's objections, 1/3 for appellant – at 445 ¶2)

495.    **End Note:** Ancillary record cites.

496.    July 19, 2013 pretrial hearing: (R1103)

THE COURT: "I'm going to cut right to the chase[.] This is absolutely non-meritorious. You are making references to the Aaron Oetting case. You are so far off the mark that if a lawyer filed this motion, I would be inclined to turn him in to the A.R.D.C. [(Illinois' lawyer bar association (Attorney Registration Discipline Commission))]. The point that you are completely missing is [] when the defense of self-defense is raised, the victim's aggressive and violent character is relevant to show who the aggressor is[.] Comparing a victim's aggressive and violent character in an aggravated battery case [] I'm just not going to deal with it in any more detail[.]" (R1103)

497.    <u>Judicial Notice (FRE 201):</u> Aaron Oetting video mauling a 14-year old boy simply trying to not miss being late for class, only for Oetting to slam him to the concrete floor resulting in a concussion.  See *Rockford Register: "Video shows violent struggle between Guilford teacher, student."* (visited 07/21//2021 https://www.rrstar.com/article/20121015/NEWS/310159867 )

498.    The video is uncontroverted; the 14-year old boy suffered a concussion, and Oetting was fired as of 2015 from his teaching job.  See accord *Underwood v. Barrett,* 924 F.3d 19, 20 (1st Cir. 2019) (district court failed to apply video evidence authenticity unquestioned that contradicts plaintiff's version; see *Scott v. Harris,* 350 US 372, 380-81 (2007) ("when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of facts [.]")

499.    October 29, 2013 pretrial hearing: (R1240)

THE COURT: **"I'm not finding a 4th Amendment violation."**  (inapposite to the conclusion that there was an illegal 4th Amendment / *Brown* home invasion quashing all three (3) real world search warrants but not an imaginary arrest warrant that purportedly proceeded them.  Disturbing (R693-815)

500.    October 29, 2013 pretrial hearing: (R1245)

THE COURT: I take exception with the reply that the court is "muscling through a trial, is angry insisting on a trial" or that I want a trial.  I don't want anything other than finality. **Where I'm sure the defendant may take exception,** clearly the defendant has rights, **but the court's of the opinion that the victims have rights too.  They have a right to a trial; they have a right to see that they have their day in court.** (R1245)

501.    **Final Note:** The 14th Amendment was violated by a partial and biased judge, acting as advocate at trial.

502.     **On-point** *McKernan v. Superintendent Smithfield Sci*, 849 F.3d 557 (3d Cir. 2017) (habeas granted – biased judge who, among many improprieties, met individually with victim's proponents and defendant in chambers)

503.     *McKernan* at 565: "The Supreme Court has held that allegations of bias rise to the level of a constitutional deprivation when there is a 'probability of unfairness' and there exists 'a possible temptation to the average man as a judge not to hold the balance nice, clear and true between the state and the accused.' *In Re Murcaison*, 349 US 133, 136 (1955); *Mayberry v. Pennsylvania*, 400 US 455, 460-62 (1971)."

504.     Here, the biased judge gave standing to "the victim" when this is a criminal case whereby it's the state and the accused as sole proper parties. Cf. *Hudson v. Lashbrook*, 863 F.3d 652 (7th Cir. 2017) (state judge's refusal to accept plea offer legitimate; judge was not a party to the habeas case).

505.     February 4, 2014 pretrial hearing: (R1409-10)

GAKUBA:     "So, I'm [] objecting to the reassignment to another judge because if that was the ultimate end result, then these delays [] benefited the state, because they had [] the resources and the time and the discovery in their hands. As opposed to me getting the discovery in December and the in limines in January."

THE COURT: "Except you would have got exactly what you wanted, and that was another judge because I'm too prejudiced. So you would have gotten exactly what you wanted."

GAKUBA:     "But if that were to be the case then the court [] should have simply recused itself."

THE COURT: "No, I wasn't going to recuse myself because I hold no animosity or ill will. Why would I recuse myself? I'm telling you that you would get the benefit of the different judge in spite of your motion being denied [] so [] you would have received the benefit of a new judge, even though there was no merit to your request that you obtain a new judge. So you win in spite of losing." (R1409-10, R1412)

506.    Accord *McKernan v. Superintendent Smithfield Sci,* 849 F.3d 557, 566 (3d Cir. 2017) ("in the instant matter [the judge] admitted to her belief that she had been slandered and indicated [] she was determined to prove them wrong.").

L.    **ISSUE/ERROR 6-2: The trial court erred in denying Gakuba's "Motion to Substitute Judge for Cause" (first), then, denied Gakuba's "Motion to Substitute" the chief judge for cause himself; before denying Gakuba's "2ⁿᵈ Motion to Substitute" the trial judge for cause resulting in Gakuba being tried/convicted before a biased trial judge as advocate.**[29]

   1.    **28 USC §2254(d)(1):** *Gakuba-habeas,* the state's answer, *Gakuba-2017* refer to irrelevant legal doctrines and cite pointless case laws. This is objectively unreasonable.

507.    **On-point** *Quintana v. Hansen,* 733 Fed. Appx. 439, 443 (10ᵗʰ 2012) (COA denied) *Id* at 443 : "A state procedural ground is independent if it rests on state law, rather than federal law, as the basis for the decision, [(citation)] and the ground is adequate if it has been 'applied even handedly in the vast majority of cases.'"

508.    Gakuba can find no case law precedence, nor can anyone participating or presiding over this case, whereby an IL state judge denied his own substitution motion himself. It happened here. A first in criminal cases. Cf. *People v. Brown,* 2015 Ill. App. 2d 140809 (Ill. App. Ct. 2015) (same chief judge (McGraw) does NOT rule on own motion to substitute him—reassigns it to Gakuba's trial judge (Truitt)).

509.    *People v. Walsh,* 2012-CF-02614 (17ᵗʰ Cir. Ct., Winnebago Co.) FRE/IRE 201: Docket—12/18/2013: "Motion for Change of Judge" instanter.

---

[29] Scissor pasted from *Gakuba v. Neese,* 18-3398 (USCA7) (ECF 1: petition for a certificate of appealability(COA))

510.    **On-point** *Ralston v. Cannon,* 884 F.3d 1060, 1064 fn #4 (10ᵗʰ Cir. 2018) ("The complaint (which is sworn under penalty of perjury and is, thus, treated as an affidavit) provides a fairly detailed timeline[.]")

511.    Here, all Gakuba's pleadings undisputedly were sworn "under penalty of perjury"; all claims to the contrary are objectively unreasonable on matters of fact and law. *Gakuba-2017* at ¶¶ 105-108.

512.    **On-point** *USA v. El-bey,* 873 F.3d 1015, 1019, 1022 n.1 (7ᵗʰ Cir. 2017) (reversed/remanded: biased trial judge (Richard Posner, 7ᵗʰ Cir.) *Id* at 1022: "Here, the district court's deprecatory and often antagonistic attitude toward the defendant is evident in the record from the very beginning[.] [(citation)]" *Id* at fn #1: "Outside the presence of the jury, [the judge] made several comments conveying his dissatisfaction with El-Bey's self-representation, and repeatedly remarked that El-Bey did not know what he was doing[.]

513.    Here, the trial judge credibility vouched for police and prosecutors. (R1116-17) He called "crazy" Gakuba's pleadings. (C698-754; R2252)

514.    Here, Gakuba pled the operative facts and cited to *People v. Wiggins,* 2015 IL App (1st) 133033 ¶¶4, 8, 13-14, 43-44, 49 (reversed/remanded, structural error: biased judge "as advocate"). See also *Jordan v. Hepp,* 831 F.3d 839, 847 (7ᵗʰ Cir. 2016) *Id* at 847: Credibility vouching is subject to plain error review.

515.    **On-point** *Echavarria v. Filson,* 896 F.3d 1118, 1128-29 (9ᵗʰ Cir. 2018) *Id* at 1029: habeas grant—state court adjudicated actual bias of judge claim but not "risk of bias."

516.    Here, the record overwhelmingly shows the trial judge's "risk of bias."

517.    **On-point** *Commonwealth Corp. v. Casualty Co.,* 393 U.S. 145, 150 (1968) ("Any tribunal permitted by law to try cases and controversies not only must be unbiased but also not

even allow the appearance of bias.")

518.    Here, the record overwhelmingly shows the trial judge's apparent bias.

M. **ISSUE/ERROR 7-1:**  The 6th Amendment ineffective assistance of counsel ("IAC") violation let to—
The trial court abused its discretion when sentencing Gakuba to 12-years (4-years x 3-counts) "discretionary" consecutive prison terms when the presentence report counseled probation, the state's plea offer had always been probation for the 8.5 years pendency of this case, and Gakuba was capable of rehabilitation regardless of his failure to admit guilt.[30]

1. **Asst. public defender (APD) Shauna Gustafson's failure to investigate, be prepared led to an unreasonable/contrary application of law—see cf. 28 USC §2254(d)(1)**

519.    *Gakuba-PC* adopts "full[y]" *Gakuba-2017* ¶¶116-119 which conflates the discretion to impose a guidelines sentence with the heightened requirements to impose consecutive sentences "to protect the public from further criminal conduct by the defendant."  730 ILCS 5/5-8-4(b) (West 2016).

520.    Completely omitted is Gakuba's undisputed great rehabilitation potential having no criminal history of any kind and being fully compliant, punctiliously so, for near 9-years of pretrial probation terms.  See *People v. Rivera,* 212 Ill.App.3d 519, 527 (1991) ("A trial court can properly consider defendant's conduct while on probation to assess 'rehabilitation potential.'") .

521.    Accord *People v. Harris,* 2016 IL App (1st) 14794 ¶40 (the mandate that all criminal penalties be determined "with objective of restoring the offender to useful citizenship" is no less a requirement than the rest of the section: Art. 1 §11 (IL Const., 1970); 8th Amend. (U.S. Const.)).

---

[30] Scissor pasted from *People v. Gakuba,* 2019 IL App (2d) 170794-U (post-conviction petition appeal opening brief)

522.    The nature and circumstances of the offense is the primary bases in in sentencing. Thus, Gakuba was sentenced to 12-years (3-counts x 4-years) "discretionary consecutive" sentences on a Class 2 felony—720 ILCS 5/12-16(d), aggravated criminal sexual abuse—for one instance ("lasting less than 30 minutes" (R2187-88)); one victim; no criminal history; and probation was the PSI report's finding as was the state's plea offer. cf. *People v. Ostrowski*, 394 Ill.App.3d 82, 83 (2009) (aggravated criminal sexual abuse counts merged/grouped for sentence of 36 months' probation).

523.    *People v. Busse*, 2016 IL App (1st) 142941 is instructional whereby a 12-year sentence was excessive; reduced to 6-years; when the 40-year old vagrant stole $44 from a school vending machine, had 24 non-violent convictions—17 prison terms, and committed the crime while on parole (MSR). *Busse* at ¶42.

524.    "In fashioning the appropriate sentence, the most important factor is the seriousness of the crime. (citation) ... the statute stems from the IL Const. 1970, Art. 1 §11.  Though Busse has not challenged his sentence on constitutional grounds, the principle that 'penalties must be determined by the seriousness of the offense guides [us foremost]." *Busse* at ¶28.

525.    "There are not many such cases where a reviewing court has held such sentence excessive.  See e.g. *People v. Stacey*, 190 Ill.2d 203, 210-11 (2000) (25-year sentence for grabbing breasts of clothed women excessive[,] too severe for offense(s)) but the trial court's discretion is not 'totally unbridled.' *Brown*, 2015 IL App (1st) 13048 ¶42." *Buse* at ¶33.

526.    "There are not many such cases where a reviewing court has held such sentence excessive.  See e.g. *People v. Stacey*, 190 Ill.2d 203, 210-11 (2000) (25-year sentence for grabbing breasts of clothed women excessive[,] too severe for offense(s)) but the trial court's discretion is not 'totally unbridled.' *Brown*, 2015 IL App (1st) 13048 ¶42." *Buse* at ¶33.

527.    *Gakuba-2017* ¶¶116-119 promotes a sophistic analysis of law at odds with other Illinois appellate courts.  See *People v. Busse,* 2016 IL App (1st) 142941 ¶27 ("while the trial court's discretion is neither absolute nor unlimited, all too often reviewing courts defer to trial courts by repeating boiler plate language").

528.    The trial court reasoned that because Gakuba depicts the police and prosecutors as corrupt, judges don't know the law, and his lawyers are ineffective, Gakuba is likely to commit another crime. (R2573)  This was an averment to Gakuba's *pro se* federal suit. *Gakuba v. O'Brien,* 711 F.3d 751 (7th Cir. 2013).  This was an improper aggravating factor reviewed de novo. *People v. Pace,* 2015 IL App (1st) 110415 ¶103.

529.    Gakuba has a constitutional right to petition/sue the government for redress of grievances/injury.  See e.g. *USA v. Taylor*, 833 F.3d 795, 796 (7th Cir. 2016) (litigious defendant's sentence excessive; 2nd reversal of appealed sentence).

530.    Finally, *Gakuba-2017* ¶¶116-119 invokes "forfeiture" to evade any remarks/disputes of on-point case law authorities.  It cites a civil case as its reason: *Gakuba v. Kurtz,* 2015 IL App (2d) 140252 ¶ 19.

531.    But this is a criminal case where the requirement is to reach a just result. See *People v. Horta,* 2016 IL App (2d) 140714 ¶34 n.1 ("it could be argued (though the state does not) that defendant has forfeited his request that we reduce his sentence[.]  Nonetheless, we choose to disregard any forfeiture based on our overriding concern with reaching a just result in a criminal case[,] involving a lengthy sentence and also on the state's failure to raise any claim of forfeiture.").

532.    No Class 2—aggravated criminal sexual abuse case survived appellate review involving "discretionary consecutive sentences." See *People v. M.H.,* 2014 IL App (3d) 1300831

¶14 ("The state argues that defendant's psychosexual evaluation, which placed her in a high-risk category of re-offending supports the notion that the public must be protected[.]") Consecutives sentencing modified to concurrent, citing *People v. Cameron,* 2012 IL App (3d) 110020. *M.H.* at ¶16. See *People v. Lezine,* 2012 IL App (2d) 100798-U ¶10 (consecutive sentences modified to concurrent: "The trial court did not give a specific rationale to support making two of the aggravated criminal sexual abuse sentences consecutive. Rather, the court noted the record, the updated PSI report, along with evidence defendant was deemed a good and loving person[.] In *People v. Span,* 387 Ill.App.3d 239, 241 (2003) ... the record demonstrates that defendant had not cause problems while incarcerated.") cf. *People v. Ostrowski,* 394 Ill.App.3d 82, 83 (2009) (aggravated criminal sexual abuse counts merged/grouped for sentence of 36 months' probation).

533.     See *USA v. Natal,* 549 F.3d 530, 534-35 (2nd Cir. 2017) (A trial court has abused its discretion on an erroneous view of the law, error of evidence, facts, or rendered a decision that cannot be located within a range of permissible decisions) (at 538: procedural reasonableness of sentence reviewed for abuse of discretion; application of sentencing law reviewed de novo).

534.     *Natal* at 538-39:  Defendant's conviction of three (3) counts of being accomplice based on assistance to son who started arson fire resulting in deaths of three (3) victims involved essentially the same harm—should be grouped together. Cf *People v. Ostrowski,* 394 Ill.App.3d 82-83 (2009) (counts of aggravated criminal sexual abuse merged/grouped for sentence of 36 months' probation).

535.     *Gakuba-PC* adopts "full[y]" *Gakuba-2017* at ¶116 which cites for support—solely—People v. Buckner, 2013 IL App (2d) 130083 ¶¶38-40 (consecutive sentences by record "conduct was ongoing, extensive, and not likely to end").

536.    *Buckner* at ¶38-39: The defendant's "behavior was 'not evidence to any great potential for rehabilitation, [having] provided false information in the [] presentence report [and] attempting to evade custody.'" *Buckner* is inapposite to the instant case.

537.    Finally, *Gakuba-2017* at ¶117 affirms solely on the basis that "in exercising its discretion to impose consecutive sentences, the trial court considered the **character of the defendant.**" This is unreasonable, and a contrary application of law. See *People v. Wilson,* 2016 IL App (1ˢᵗ) 140163 ¶ 15 (affirm 15-year sentence for Class X sentence—drug trafficking).

538.    *Wilson* at ¶15: "**The trial court could not discern** whether defendant's **'character and attitude'** indicated he was likely to commit another crime, but noted that his 'past behavior' suggested that his conduct 'will likely recur.' Moreover, the trial court stated that defendant had a **'very significant history of prior delinquency'** … defendant's 14 prior felony convictions **'weighed very, very significantly[.]'**" (emphasis)

539.    Here, the factual findings were that Gakuba self-diagnosed his "Asperger's Syndrome [but] was vague and evasive [] about his erectile dysfunction and being 'asexual'." (R2570-71) In sum, the trial court did not align the factors of 730 ILCS 5/5-8-4(b) with Gakuba's situation. Indeed, based it on shear speculation. See *USA v. Bradley,* 628 F.3d 394, 400 (7ᵗʰ Cir. 2010) ("due process requires the sentencing determinations be based on reliable evidence, not speculation or unfounded allegations." Quoting *USA v. England,* 555 F.3d 616, 622 (7ᵗʰ Cir. 2007)).

540.    Accord *USA v. Henshaw,* 880 F.3d 392, 396 (7ᵗʰ Cir. 2018) (not fully explained drug trafficking sentence of "probation" versus guidelines 151 months imprisonment, unreasonably lenient) (at 396: "factors under 18 USC §3553(a) include, as relevant here: (1) the nature and circumstances of the offense **and** the history **and** characteristics of the defendant […]

(6) the need to avoid unwarranted sentence disparities among defendants with similar records []

found guilty of similar conduct."). (emphasis)

541.    See *USA v. Taylor*, 883 F.3d 795, 796 (7th Cir. 2016) (a 300 months sentence for

gun charge, excessive).

542.    *Taylor* at 796: "The judge did cite 18 USC §3553(a) which specifies factors a judge

must consider in deciding what sentence to impose, but he did not align the factors with the

defendant's situation ... §3553(c) to protect the public from further crimes of the defendant[.]"

543.    *Taylor* at 796: "In sum, the judge did not adequately justify the sentence imposed,

indeed based it on shear speculation ... the judge refused to take the advice of the USAO &

Probation Service on two (2) grounds: (1) the gravity of the defendant's criminal history, and (2)

the fact that the defendant, who never threatened any officials, had filed complaints (and one civil

suit) critical of judicial behavior by Judge Reinhard and other judges and alleging conspiracies

linking judges and various other officials to grievances defendant suffered. Conceivably, Reinhard

supposed, defendant might follow up the complaints with criminal harassment upon release. The

judge thought these two (2) grounds predictive of a likelihood defendant might follow up the

complaints with criminal harassment upon release. These were flimsy grounds."

544.    *Taylor* at 796: "As for pestering federal judges (including the author of this opinion!

[(Posner, J.)]) with seemingly groundless complaint about how he's been treated by the criminal

justice system, he has a constitutional right to petition the government for redress of grievances,

though if he becomes an utter nuisance his petition activity can be reined in. He has not threatened

anybody with violence or other criminal harm and the judge offered no adequate reason for

inferring recidivism from the contents of his complaints. [(citations)]

545.    Gakuba's 12-year sentence for aggravated criminal sexual abuse (class 2—probationable) (720 ILCS 5/12-16(d)) was beyond reason.  Ungoverned by law and unrestrained by the record.  See e.g. *People v. Wilson,* 2016 IL App (1t) 141063 ¶27 ("average sentence for more heinous crimes, including criminal sexual assault (9.7), predatory criminal sexual assault (10.8).") (sentence excessive)

546.    Accord *USA v. Jenkins,* 854 F.3d 181, 188 (1st Cir. 2017) ("the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, 18 USC §3353(e)(1)-(6)") (360 months sentence for child porn possession excessive)

547.    *Jenkins* at 192: "We also disagree with the district court's conclusion that Jenkins lack of respect makes him 'a very high risk to offend.' (citation)  The district court's conclusion ignores widely available, definitive research demonstrating that recidivism substantially decreases with age.  See e.g. US Sentencing Guidelines 8 (weblink).  That research documents that offenders with a criminal history category I between ages 41-50 have a 6.9% recidivism rate, as opposed to 29.5% for under 21[.]  Although it would be well within a district court's discretion to increase a sentence based on a likelihood of re-offending, there must be some support in the record, such as previous convictions.").

548.    Cf. *USA v. Smith,* 860 F.3d 508 (7th Cir. 2017) (Indiana police sentenced to 14 months below guidelines sentence; government appealed) *Smith* at 518: "But in light of his prior conduct ... of his history of violence ... there is no basis in the record ... to reduce Smith's sentence on the ground that he is unlikely to re-offend."

**N.  <u>ISSUE/ERROR 7-2</u>: The trial court abused its discretion when sentencing Gakuba to 12-years (4-years x 3-counts) "discretionary" consecutive prison terms when the**

**presentence report counseled probation, the state's plea offer had always been probation for the 8.5 years pendency of this case, and Gakuba was capable of rehabilitation regardless of his failure to admit guilt.[31]**

1. **28 USC §2254(d)(1):** *Gakuba-habeas*, the state's answer, *Gakuba-2017* refer to irrelevant legal doctrines and cite pointless case laws. This is objectively unreasonable.

549.    **On-point** *USA v. Niggeman*, 881 F.3d 976, 981 (7th Cir. 2018) (affirmed mandatory 15-year sentence for child porn on 67-year-old with priors) *Id* at 981: 8th Amendment cruel and unusual punishment controls. *Id* at 20: See also *Ewing v. California*, 538 US 11, 20, 23 (2009). *Id* at 23: Extreme sentences that are disproportionate to the crime" will not violate proportionality principle. *Id* at 22: "Three (3) factors are relevant: (1) the gravity of the offense and harshness of the penalty; (2) the sentences imposed on other criminals in the same jurisdictions, and (3) the sentences imposed for commission of the same crime in other jurisdictions." See also *Solem v. Helm*, 463 US 277, 292 (1983).

550.    Here, the offense was a "Class 2, probationable" crime which was the sentence offered per plea and recommended per the PSI report. Here, no other case exists in Illinois of discretionary consecutive sentences surviving appellate review. The only three (3) all were reduced to concurrent: *People v. M.H.*, 2014 IL App (3d) 130083-U; *People v. Cameron*, 2012 IL App (3d) 110020; *People v. Lezine*, 2012 IL App (2d) 10078-U.

551.    This case is simply unprecedented. 8th Amendment violation.

552.    Compare *People v. Smith*, 2015 IL App (2d) 120631-U ¶¶1, 9 (same judge—associate state Judge John R. Truitt—imposes 5 years concurrent); *People v. Morger*, 2016 IL App (4th) 140521 (180-days suspended; aggravated criminal sexual abuse; brother on sister; multiple

---

[31] Scissor pasted from *Gakuba v. Neese*, 18-3398 (USCA7) (ECF 1: petition for a certificate of appealability(COA))

times, years); *People v. Gacierz,* 98 N.E. 3d 406, 2017 IL App (2d) 161102 ¶16 (child slavery; travel sex with minor; Class X & 1 crimes). *Id* at ¶26: "6-years prison term, concurrent, 2-years prison term."

553.    Here, Gakuba pled all the operative facts of an 8th Amendment violation. See *Gakuba*-2017's *pro se* reply brief, pp.16-17: "Finally, it was impermissible to sentence Gakuba for his litigation tactics (averred to all through the government's brief). See *USA v. Lewis,* 817 F.3d 1054, 1055 (7th Cir. 2015) (*pro se* defendant's litigation tactics cannot serve as a basis for [consecutive] sentences). See R1533-34."

554.

555.    **On-point:** *People v. Johnson,* 87 N.E. 3d 1073, 2017 IL App (4th) 160920 *Id* at ¶55(1086): "Despite defendant's failure to fully develop his plain error argument, we are persuaded the rules of forfeiture should be relaxed in this particular situation[,] the consideration of multiple improper factors raises the seriousness of the court's error. It appears from the record these improper factors impacted the court's decision, which, in turn, affected the fairness of defendant's sentencing hearing, as the court's consideration of these factors was unlawful. Cf *People v. Maggio,* 2017 IL App (4[th]) 150287 ¶15 (concluding trial court's consideration and reliance on improper sentencing factors was second prong plain error)."

556.    Here, *Gakuba-2017* at ¶119 rules inapposite to Johnson by invoking "forfeiture" then citing to a related civil case for authority: *Gakuba v. Kurtz* 2015 IL App (2d) 140252 ¶19, when no other IL state criminal case has ever invoked forfeiture by citation to a civil case law. Objectively unreasonable.

557.    Worse still, Gakuba 2019 / Gakuba 2017 at ¶117 recites wholly conclusory, rote, formulaic legal conclusions justifying discretionary sentences: **"The trial court considered the character of the defendant." (emphasis)** That's it

558.    However, it is "the history **and** character" not "**or**." Cf *USA v. Henshaw*, 280 F.3d 392, 396 (7th Cir. 2018) ("Factors under 18 USC §3553(a) include) [...] the history and characteristics of the defendant.")

559.    Sentencing Gakuba solely on "**character**" was the racist dog whistle of pervasively biased IL courts (Gakuba is Black, everyone else is white). See Gakuba v. Neese, 17-cv-50337, (USDC-ND. IL) (habeas petition at pp. 54-55 "end note: 'Comparing a victim's aggressive and violent character is relevant to show who the aggressor is[.]' (R1203) The case: *People v. Aaron Oetting* (since expunged); see   https://www.rrstar.com/article/20121018/NEWS/3101898951 ; teacher slams 14-year old Black boy to the concrete floor for being late for class and trying to walk around Oetting who was obstructing his path—all on video, no less.  IL associate state Judge Truitt brands the 14-year old Black boy the "aggressor" all the while ignoring the undisputed plain fact, here, that the 14-year old white MS was a child pornographer and teleiophile (gay teen attracted only to 20s-50s year old men) who had a motive to lie. (C3105-78 (Exhs. Sealed))  Accord *USA v. Robinson*, 829 F.3d 878, 881 (7th Cir. 2016) (sentencing error, inflammatory judge's remarks).

*Id* at 881: "Lack of meaningful explanation undermines perception of fairness." FRE 201: e.g. *USA v. Vastis*, 1:14-cr-00486 (USDC-ND IL) (gay teen child pornographer fingers middle school teacher Vastis in bid for leniency). Objectively unreasonable.

## IX.    <u>NEW ISSUE 8-1</u>: Structural Error—Federal District Judge Kapala's Irrational Bias and Prejudice.[32]

---

[32] Scissor pasted from *Gakuba v. Neese*, 18-3398 (USCA7) (ECF 31-33: petition for rehearing,

## A. Background

560.    In 2012 Gakuba sued 39 Illinois state and federal law enforcement agents, officers by bringing suit in Chicago versus Rockford. (The majority of these defendants are Rockford-based.) See *Gakuba v. O'Brien,* 12-cv-7296 (USDC-ND IL); 711 F.3d. 751, 753 (7th Cir. 2013). Then USDC-ND IL Judge Castillo denied every *pro se* motion by Gakuba then dismissed without prejudice the 42 USC §1983 claims ignoring altogether the 18 USC §2710, §2721 claims. Judge Castillo then responded to Gakuba's *pro se* motion to substitute judge for cause by *sua sponte* transferring the case to Rockford citing the USCA7's mandate, and, over Gakuba's ad hoc objections.

561.    In 2017 Gakuba filed his 28 USC §2254 *pro se* habeas in Chicago. *Gakuba v. Rains* 17-cv-6719 (USDC-ND IL). The 60-page habeas contained a "jurisdictional statement" that Gakuba would vociferously object to a *sua sponte* venue change citing to *Gakuba,* 711 F.3d at 753.

562.    Six weeks later, the assigned Chicago judge *sua sponte* transferred the case to Rockford. Habeas cases being ostensibly time critical, Gakuba forwent an appeal that would have let to delay and may have proven fruitless.

563.    Commendably, Judge Kapala found merit in short order: a couple weeks, November 2017. Briefing concluded in February 2018. *Gakuba v. Brannon,* 17-cv-50337 (USDC-ND IL). Then the wait began for a decision. Every 60-days Gakuba requested a decision, status report per Local Rule 78.5. All were ignored. Yet, in *Gakuba v. O'Brien,* status reports had been required every 90-days.

---

hearing *en banc*)

564.    After six months of waiting yielding nothing, Gakuba's August 2018 "Motion to Lift Stay" in *Gakuba v. O'Brien* was granted.  An aggressive litigation schedule was set.  In a September 2018 ruling on Gakuba's August 2018 motions, Magistrate Johnston's "Report and Recommendation" ("R&R")  denied Gakuba's "Motion for Equitable Relief—TRO, preliminary and permanent injunction, declaratory judgment"—then denied Gakuba's "Motion for Change of Venue from Rockford to Chicago" in the opposite order Gakuba requested in a letter to the court clerk to file first the venue change motion such that Gakuba could immediately appeal the denial. While Gakuba was denied any say in the *sua sponte* Chicago to Rockford transfers, Judge Kapala *sua sponte* ordered the defendants to respond to Gakuba's venue transfer motion.  *Heck* was invoked by Magistrate Johnson to deny all equitable relief.  Only Rockford federal prosecutors and a Rockford state judge (Schafer) responded.  Largely, they parroted the R&R's *Heck* rubric which IL state defendants invoked in 2015 to get the case dismissed. *O'Brien*, 12-cv-7296 (USDC-ND IL) (ECF #279, ID 1476—"*Heck*" defense dismissal argument).

565.    October 2018 Judge Kapala issued a 16-page habeas ruling that scissor pasted wholesale the state's 16-page habeas answer/response.  No independent review of the state appeal's record was made, and it ignored completely Gakuba's 6th Amendment public trial right addressed by the IL App. Court and Gakuba's habeas. *Gakuba-2017* at ¶56. Habeas petition pp. 24-25.  This was no mere error but calculated judicial overreach by irrationally biased and prejudiced judges.

## B. Discussion

566.    It is well established that *Heck* bars civil suits against government malfeasors and tortfeasors as proof of such in a civil suit necessarily impinges upon the integrity of the criminal conviction which the wrongly convicted challenge.  Also, it is well established that magistrates

serve as proxies for judges. In Rockford, there is only one magistrate answering to one judge. They do not work independently. Rather, they are interdependent. So much so that Gakuba finds that it rarely happens that magistrate and judge fail to see eye-to-eye on pending cases.

567.    As Gakuba complained in *pro se* filings in August thru October 201 in *O'Brien*, 12-cv-729 that the magistrate's R&R invoking *Heck* foreshadowed prejudgment in the then ostensibly pending habeas petition, *Brannon* 17-cv-50337, those fears and suspicions became reality as the habeas was denied, and, so too a certificate of appealability ("COA").

568.    Simply stated, the totality-of-the-circumstances of both these interrelated cases reveals rank bias and prejudice. By concluding, prejudging Gakuba's guilt in Gakuba's pending civil suit—*O'Brien* 12-cv-7296—it rendered the habeas denial and denial of a COA a mere formality. And as history played out, indeed it was. Structural error. See accord *Franklin v. McCaughtry,* 398 F.3d 955, 961 (7th Cir. 2005) (habeas grant—judge bias) (at 961: despite using "alleged" exemplifying Franklin's case for recidivism, trial judge "prejudged Franklins case" and presumed guilt).

569.    Here, the "alleged" is the magistrate's R&R. But because Judge Kapala knew of and approved of its findings by ordering defendants' response, it was merely the fig leaf of cover for the formality of denying habeas/COA and concurrence in all respects with the magistrate's R&R.

570.    Gakuba finds no case law precedence of a federal judge presiding over a civil suit holding liable numerous small town government actors—the judge's hometown which he resides in retirement—then being the same judge over a federal habeas writ, which if granted, would result in substantial monetary damages (already a $52 million default judgment awaits) against many many government agents whom Judge Kapala presumptively regards highly through his working

relationships as a former IL App. Court – 2nd District appellate judge (where Gakuba's direct appeal failed); and former Rockford circuit and associate judge, and preceding that, a former Rockford prosecutor. These relationships span a lifetime and were Gakuba's wrongful convictions vacated—as they should by law, 14th Amendment fabrications—then this "not from our community" aggrieved party prevailing in a malicious prosecution puts at risk the jobs and law careers of said Rockford tort- and malfeasors according to the (retired) trial judge—as advocated—when vouching for police and prosecutors. See Issue #6—habeas petition.

THE COURT: "Why is everyone out to get you? **Why you as opposed to me** or anyone else on the face of earth? What's your theory that [] **Ms. Kurtz** has targeted you as the one who **she is willing to risk her law license and her entire career over?** I just have a hard time wrapping my head around that? And every, **why every police officer would be willing to risk their career to get you[?]**" (emphasis)

July 19, 2013 pretrial hearing, pp. 57-58.

571.    Should the USCA7 deny Gakuba justice by denying a COA then it should transparently do so in a thoughtful, fact-based, well-reasoned ruling, citing every case whereby the presiding federal district judge in a habeas writ was one-and-the-same judge presiding over a pending civil suit which wholly depended on that habeas being granted.

572.    Moreover, to remove even the slightest appearances of judge bias and prejudice, remand the case for a thorough and independent review of the state direct appeal's record consistent with *Nasby v. McDaniel,* 853 F.3d 1049, 1052 (9th Cir. 2017) with reassignment to a judge not presiding over the civil case. Circuit Rule 36. Accord *USA v. El-Bey,* 873 F.3d 1015 (7th Cir. 2017) (judge bias is structural error for no matter the degree of guilt, due process dictates fairness).

## X.    Conclusion[33]

573.    Pre-criminal direct appeal, the IL App. Court – 2nd district admonished Gakuba not to file anymore appeals then proceeded to sanction Gakuba per a past appeal. *Gakuba v. Kurtz,* 2015 IL App (2d) 140252. It's subsequent rejection of numerous plain and structural errors— including the 6th Amendment *pro se* right denial "weeks" before trial that it reversed in every single case but this one is egregious and vindictiveness. Rank bias and prejudice. 1st, 5th and 14th Amendments violations.

574.    Here too, the USCA7 threatened sanctions against Gakuba as he vainly sought a legal mechanism that would spare him a malicious prosecution, and, now, false imprisonment of 12-years when the PSI report and plea offer were "probation." All to obstruct *Gakuba v. O'Brien,* 12-cv-7296 (USDC-ND IL). 1st, 5th and 14th Amendments violations. This pending federal *pro se* suit is impossible to litigate while in prison due to the incompetent prison "law library" and unreasonably strict limitations on its use. Gakuba averaged 2-3 hours per week.

575.    As stated in the "Legal Standards," since 2015 the USCA7 has granted a COA and/or habeas no fewer than four (4) times on the structural error: 6th Amendment *pro se* right denial "weeks" before trial, among other bases.

576.    No *pro se* right denial, as a "delay tactic," when no delay/continuance ever was sought was upheld on appeal. Not one. Or, federal district Judge Kapala would have cited one. Instead, dicta are cited in *Imani v. Pollard* when the facts, and, thus, holding are identical to this case. When there is a "record" of multiple motions, cycling through lawyers, then, "waiver of counsel" and compelled self-representation is the black letter law.

---

[33] Scissor pasted from *Gakuba v. Neese,* 18-3398 (USCA7) (ECF 31-33: petition for rehearing, hearing *en banc*)

577. A COA must issue as Gakuba has overwhelmingly met the threshold standard: the federal district court's citation to Imani dicta when the facts and holding are on-point, here, per se shows that the federal district court was flatly wrong. See *Buck v. Davis,* 139 S.Ct. 759, 773 (2017) (quoting *Miller-El v. Cockrell,* 537 US 322, 327 ("At the COA state, the only question is whether the applicant has shown that jurist of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.")).

When Beau Brindley was sanctioned by the USCA7, nonetheless he was acquitted later at a bench trial of suborning perjury and obstruction of justice. *USA v. Britton,* 731 F.3d 745 (7th Cir. 2013). In a swearing contest, the trial judge credited Brindley's denials versus the government's witnesses' testimony. There were no structural errors. Brindley got a fair trial resting solely on evidence before a fair, impartial and reasonable judge. *USA v. Brindley,* 1:14-cr-0468 (USDC-ND IL).

578. In stark contrast, Gakuba's wrongful convictions rest solely on words placed in his mouth for which there is no record he ever spoke, just as Gakuba's *pro se* 6th Amendment right was denied on motives places in his mind which he never thought. These fabrications of inculpatory statements or intents are rank due process violations. 14th Amendment.

579. Gakuba's "booking process" denial "affidavit" is deliberately and recklessly ignored by all the state actors participating or presiding. Judge Kapala's judicial fiat—ipse dixit— falsely decrees it "irrelevant." Judge Kapala goes on to rule that Gakuba has not proven a satisfactory motive to his or any other court's liking. Never mind that every trial and appeals lawyer withdrawal did so to allow Gakuba to proceed *pro se.* See *Freeman v. Pierce,* 878 F.3d 580, 588 (7th Cir. 2017) ("'Nothing in *Faretta* or its progeny allows the judge to require the

defendant to prove he is making the choice for a reason the judge finds satisfactory.' *Imani*, 836 F.3d at 945.").

580.    Then, Judge Kapala cites Imani dicta to support the denial of Gakuba's *pro se* right when every other judge cited Imani for its holding.  See *State v. Egerson*, 916 N.W.2d 833 (Wis. Ct. App. 2018) (at ¶¶ 20-25—*Imani* cited: "Furthermore, the trial court noted that continued complains about his attorney" would result in waiver of counsel, then self-representation.).

581.    Judge Kapala was flatly wrong as is now the USCA7 on this structural error.  This "error" seriously affected the "fairness, integrity, and public reputation of these judicial proceedings."  Puckett v. USA, 556 US 129, 135 (2009).

582.    Judge Kapala's fiat—ipse dixit—to decree inadmissibility at trial as the predicate to the relevance of Gakuba's "booking process" denial "affidavit" was both flatly wrong and inapposite to well established Illinois law.  For it was adjudged *Franks* perjurer O'Brien's *Napue* perjury to a fabricated hearsay response falsely attributed to Gakuba.  28 USC §§ 2254(d)(1)-(2). See accord *Whitfield v. Lashbrook,* 2018 US DIST LEXIS 155262 (ND. IL 09/12/2018) (at 17: Illinois recording law 725 ILCS 5/103.21 mandates that confessions resulting from custodial interrogations are presumptively inadmissible unless they are recorded.  *USA v. Thurman,* 889 F.3d 356, 366 (7th Cir. 2018); *USA v. Montgomery,* 309 F.3d 1013, 1017 (7th Cir. 2009) (IL law requires the recording of custodial interrogations.)).

583.    Muniz's "booking" was recorded; Gakuba never was booked by any state police— equals—no record.[34]  This shouldn't be the 21st Century's *Scott v. Sanford,* 60 US 393 (1856) case, where the honest words of a poor innocent Black are inferior to a lying corrupt white cop.  Or has

---

[34] The teenager complainant—Matthew S.—had his multiple sworn statements recorded by the very same state (and federal) police who deliberately evaded recording Gakuba's purported false/fabricated inculpatory ones.

Jon Burge's legacy been forgotten? See *USA v. Burge,* 711 F.3d 803 (7th Cir. 2013) (Burge convicted of civil perjury for lying about the brutality and torture he committed as a Chicago corrupt cop for over 20 years).

584.    Beau Brindley received justice as should Gakuba.  28 USC §2253, §2254(d)(1)-(2), §2254(e).

I declare under penalty of perjury under the laws of the United States, that the foregoing is true and correct.

Executed: May 04, 2026

Respectfully Submitted,

Peter Gakuba, Petitioner - *pro se*
c/o Law Offices of David B. Shapiro
58 W. Biddle St.
Baltimore, MD 21201
(202) 630-1774
courts.usdc.all@gmail.com

## PROOF OF FILING and SERVICE

On May 04, 2026 PETER GAKUBA hereby  certifies USPS postal mailing or hand delivering or using the Court's Electronic Document Submission System (EDSS) or CM/ECF as the means to filing this pleading which, in turn, upon docketing, will cause it to be served upon all parties in this case pursuant to the district court's ECF system as to ECF filers in accordance with Fed. R. Civ. P. 5, LR 5.5 and the General Order on Electronic Case Filing (ECF).

s/ *Peter Gakuba*
PETER GAKUBA



**Peter Gakuba – Federal Habeas – 2nd-in-Time (not 2nd/succesive)**

https://drive.google.com/drive/folders/1rf_hOcvOkHZm22vgOt84ziDbUrPPB9ve?usp=sharing

Attachment #1 pp.1/1

𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 ℭ𝔬𝔲𝔯𝔱 𝔬[...]

For the Seventh Circu[...]
Chicago, Illinois 606[...]

January 9, 2018

Before

FRANK H. EASTERBROOK, *Circu*[...]

ILANA DIAMOND ROVNER, *Circ*[...]

No. 17-2135

MICHAEL L. SPARKS,
    *Petitioner-Appellant,*

*v.*

STEPHANIE DORETHY,
    *Respondent-Appellee.*

> Gakuba is "in custody" as a parolee and sex offender registrant -- State of NY.
>
> Denial of Gakuba's venue choice was neither thoughtful, fact based, nor well reeasoned. See *In Re Hall*, 988 F.3d 376 (7th Cir. 2021).
>
> Ipse dixit.
>
> Venue in any IL state or federal court is flatly wrong; Gakuba has been blackballed.
>
> The USCA7's failure to afford equal protection by sua sponte vacating an identical habeas "mixed" petition violation per *Rose v. Lundy* and *Rhines v. Weber* -- all the while deliberately ignorant of Gakuba's "mixed" petition is self-evident bigotry.
>
> See *Gakuba*, 18-3398 + 20-1137 (USCA7).

Illinois.

No. 14-cv-1044-MJR-CJP
Michael J. Reagan,
*Chief Judge.*

**Order**

The district court's opinion in this collateral attack under 28 U.S.C. §2254 states that petitioner Michael Sparks presented twelve claims, five of which are exhausted and seven not. The judge resolved the exhausted claims and entered judgment against Sparks, who has appealed.

The district court's procedure is not compatible with *Rose v. Lundy*, 455 U.S. 509 (1982), which requires mixed petitions to be dismissed. The Supreme Court added in *Rhines v. Weber*, 544 U.S. 269 (2005), that a district judge may allow the petitioner to dismiss the unexhausted claims, and the warden contends that the judge followed that procedure, but this is not what occurred. Instead the judge

Attachment #1 pp.1/2

dismissed the unexhausted claims and proceeded to decide the rest. The judge did not wait for Sparks to decide whether to amend the petition so that it contained only exhausted claims. Instead the court treated the opportunity extended by *Rhines* as one that could be accepted by the judge. Yet the choice belongs to the petitioner, and failing to protest the judge's decision to proceed is not an effective choice to dismiss the unexhausted claims. Giving the choice about dismissing the unexhausted claims to the judge rather than the litigant would amount to overruling *Lundy*, which *Rhines* did not do. Once dismissed, claims cannot be reasserted in a later collateral attack without appellate approval for a second or successive petition. Sparks has never manifested his consent to having the unexhausted claims treated that way.

*Rhines* gives a district judge two options that can be exercised without the petitioner's affirmative consent. First, the judge can dismiss the whole petition under *Lundy* and leave it up to the petitioner whether to delete the unexhausted claims and refile. Second, the judge can stay the proceeding while the petitioner exhausts his remaining state remedies. *Rhines* adds that the district judge should use the second option "if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." 544 U.S. at 278.

We issue a certificate of appealability, vacate the district court's decision, and remand so that the judge may dismiss the mixed petition, allow Sparks to decide whether to dismiss the unexhausted claims, or stay proceedings if *Rhines*'s criteria are met.

Gakuba is "in custody" as a parolee and sex offender registrant -- State of NY.  See *In Re Hall*, 988 F.3d 376 (7th Cir. 2021).

Denial of Gakuba's venue choice was neither thoughtful, fact based, nor well reeasoned.

Ipse dixit.

Venue in any IL state or federal court is flatly wrong; Gakuba has been blackballed.

The USCA7's failure to afford equal protection by sua sponte vacating an identical habeas "mixed" petition violation per *Rose v. Lundy* and *Rhines v. Weber* -- all the while deliberately ignorant of Gakuba's "mixed" petition is self-evident bigotry.

See *Gakuba*, 18-3398 + 20-1137 (USCA7).

Attachment #1 pp.2/2



# United States District Court
## Northern District of Illinois

> *Sua sponte* recusal by a federal district judge with a history and reputation of brazen hostility to poor Black men -- comprising the majority of the prison population in the United States.  Disturbing.
>
> See *Greyer v. IL Dept. of Corr.*, 933 F.3d 871 (7th Cir. 2019) (prisoners sanctioned with lawsuit dismissal; reversed and remanded; unreasonably biased-and-prejudiced federal district judge.
>
> https://casetext.com/case/greyer-v-ill-dept-of-corr

In the matter of

Peter Gakuba

        v.

Michelle Neese

Case No. 17-CV-50337

Designated Magistrate Judge:  Lisa A. Jensen

## TRANSFER OF A CASE TO THE EXECUTIVE COMMITTEE FOR A REASSIGNMENT

I recommend to the Executive Committee that the above captioned case be reassigned to another district judge by lot in the Eastern Division. The reason for my recommendation is indicated below.

Date: May 11, 2022        By: *Philip G. Reinhard*
                                      Philip G. Reinhard
                                      United States District Judge

---

## ORDER OF THE EXECUTIVE COMMITTEE

IT IS HEREBY ORDERED that the above captioned case be reassigned by lot to the calendar of an individual judge in the Eastern Division.

### ENTER

### FOR THE EXECUTIVE COMMITTEE

**Chief Judge Rebecca R. Pallmeyer**

Date: May 12, 2022

Attachment #2 pp.1/6

**Reason(s) For Recommendation:**

Judge Reinhard exercises his authority not to take this case pursuant to 28 U.S.C. 294(b).  Judge Johnston is currently assigned to 3:13-cv-50218 and pursuant to Local Rule 40.3(1)(c) this case must be assigned by lot to the next available District Judge in the Eastern Division.

Attachment #2 pp.2/6

Case: 3:22-cv-50092 Document #: 22 Filed: 04/05/22 Page 1 of 1 PageID #:152



# United States District Court
# Northern District of Illinois

> *Sua Sponte* recusal by an undisputedly biased-and prejudiced federal district judge.
>
> Prior to appointment to the federal judiciary, Iain D. Johnston was the defense lawyer for the worst case of wrongful conviction ever -- according to the USCA7.
>
> See *Whitlock v. Brueggemann*, 682 F.3d 567 (7th Cir. 2012) (worst case of a 'frame job' ever)  https://casetext.com/case/whitlock-v-brueggemann

In the matter of

Peter Gakuba

             v.

Maher et al

Case No. 22-CV-50092

District Judge Iain D. Johnston

## TRANSFER OF A CASE TO THE EXECUTIVE COMMITTEE FOR A REASSIGNMENT

     I recommend to the Executive Committee that the reference above captioned case be reassigned to another district judge by lot in the Eastern Division. The reason for my recommendation is indicated below.

Date: April 4, 2022

By: _____

Iain D. Johnston
United States District Judge

---

## ORDER OF THE EXECUTIVE COMMITTEE

    IT IS HEREBY ORDERED that the above captioned case be reassigned by lot to the calendar of an individual judge in the Eastern Division.

### ENTER

### FOR THE EXECUTIVE COMMITTEE

_____

**Chief Judge Rebecca R. Pallmeyer**

Date: April 5, 2022

## Reason(s) For Recommendation:

- In accordance with 28 U.S.C. § 455(a) I recuse myself from this case assigned to my calendar for the reasons specifically set forth below: recusal is warranted pursuant to 28 U.S.C. § 455(a). Judge Reinhard is assigned to the habeas corpus case 3:21-cv-50383, pursuant to Local Rule 40.3(1)(c) this case should be assigned by lot to the next available judge in the Eastern Division.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

PETER GAKUBA,                          )
                                       )
                    Plaintiff,         )
                                       )    No. 12 C 7296
          v.                           )
                                       )    Judge Iain D. Johnston
CHARLES O'BRIEN, et al.,               )    (Magistrate Judge Schneider)[1]
                                       )
                    Defendants.        )

**STATUS REPORT**

The federal defendants,[2] defendants Debra Diane Schafer, Daniel Cain, and Sreenen &

Cain, P.C., defendants Walmart Inc. and Kevin Kudelka, defendant Courtyard Management

Corporation (incorrectly sued as Marriott Hotel Corporation), and the Illinois State Police

Defendants submit this status report.

**Habeas Litigation**

On October 24, 2018, plaintiff

§ 2254(1) was denied. *Gakuba v. Nee*

for a certificate of appealability was

September 4, 2019, plaintiff was denied authorization to proceed with a second or successive

former fed'l Rockford prosecutor turned magistrate Judge Schneider RECUSED herself due to her prior investigation of Gakuba; her colleague--now IL circuit Judge Brendan Maher was required to recuse himself too; but did not as rank judicial overreach by an irrationally biased and prejudiced Rockfordian who denied Gakuba's state post-conviction petition employing objectively unreasonable factual determinations and applications of law. Objectionable.

---

[1] Counsel for the federal defendants notifies the parties to this case that prior to her appointment as a magistrate judge, Magistrate Judge Margaret J. Schneider was the supervising attorney in the United States Attorney's Office, Western Division, and supervised counsel.

[2] The federal defendants in this matter according to plaintiff's First Amended Complaint are Mark Karner, "Ronnie", Timothy Simon, Susan Hanson, James Coleman, Melissa Hendrickson, and Rosemary Hollinger. Plaintiff's newly filed Second Amended Complaint names as additional federal defendants the United States Department of Justice, Federal Bureau of Investigation, Commodities Futures Trading Commission, United States Attorney General Loretta Lynch (in her official capacity), and 100,000 unknown federal law enforcement agents (in their individual capacities).

Attachment #2 pp.4/6

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# ORDER OF THE EXECUTIVE COMMITTEE

It appearing that 12 CV 7296, Gakuba v. O'Brien et al is  currently assigned to the Hon. Iain D. Johnston and designated to Magistrate Judge Margaret J. Schneider; and

It further appearing that Magistrate Judge Schneider has recused herself from being the designated Magistrate Judge in case 12 CV 7296, Gakuba v. O'Brien et al pursuant to I.O.P. 13(f)(2)(c); therefore

It is hereby ordered that another Magistrate Judge shall be designated by lot in 12 CV 7296, Gakuba v. O'Brien et al.

ENTER:

FOR THE EXECUTIVE COMMITTEE

Chief Judge Rebecca R. Pallmeyer

Dated at Chicago, Illinois this 10th day of March, 2021.

former fed'l Rockford prosecutor turned magistrate Judge Schneider RECUSED herself due to her prior investigation of Gakuba; her colleague--now IL circuit Judge Brendan Maher was required to recuse himself too; but did not as rank judicial overreach by an irrationally biased and prejudiced Rockfordian who denied Gakuba's state post-conviction petition employing objectively unreasonable factual determinations and applications of law.  Objectionable.

Attachment #2 pp.5/6

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# ORDER OF THE EXECUTIVE COMMITTEE

It appearing that 12 CV 7296, Gakuba v. O'Brien et al is currently assigned to the Hon. Iain D. Johnston and designated to Magistrate Judge Margaret J. Schneider; and

It further appearing that Magistrate Judge Schneider has recused herself from being the designated Magistrate Judge in case 12 CV 7296, Gakuba v. O'Brien et al pursuant to I.O.P. 13(f)(2)(c); therefore

It is hereby ordered that another Magistrate Judge shall be designated by lot in 12 CV 7296, Gakuba v. O'Brien et al.

ENTER:
FOR THE EXECUTIVE COMMITTEE


Chief Judge Rebecca R. Pallmeyer

Dated at Chicago, Illinois this 10th day of March, 2021.

Attachment #2 pp.6/6