UNITED STATES DISTRICT COURT
DISTRICT of MASSACHUSETTS

PETER GAKUBA (SORNA Registrant),[1]        )
                                            )
                    Petitioner,             )
    vs.                                     )  Case No.
                                            )
ANDREA J. CAMPBELL (MA AG),                 )  Judge
                                            )  Magistrate
                    Respondent.             )

## PETITIONER'S REQUEST FOR HEARING
### *VOID AB INITIO* CRIMINAL INDICTMENT = NO COURT JURISDICTION (NONE)
### AND
### MEMORANDUM OF LAW

NOW COMES *pro se* indigent Petitioner PETER GAKUBA ("Gakuba"), in this Petitioner's Memorandum of Law in Support of Request for Hearing *Void ab initio* Criminal Indictment = NO Court Jurisdiction (NONE).

**DECLARATORY STATEMENT IN SUPPORT OF PETITIONER'S MEMORANDUM OF LAW IN SUPPORT OF REQUEST FOR HEARING *VOID AB INITIO* CRIMINAL INDICTMENT = NO COURT JURISDICTION (NONE)**

This declaratory statement incorporated herein is in compliance with 28 U.S.C. § 1746 and is consistent with the Fed. R. Civ. Procedures.

DECLARATION UNDER PENALTY OF PERJURY

Peter Gakuba declares:

## I.    Preface

1.    Einstein's parable and definition **of "INSANITY is doing the same thing over and over and expecting a different result."** See Scientific American—Quanta Magazine:

---

[1] *Piasecki v. Court of Common Pleas*, 917 F.3d 161 (3d Cir. 2019) (SORNA registrants qualify as "in-custody" for purposes of habeas law)

"Einstein's    Parable    of    Quantum    Insanity."    cited    sites    11/03/2025)
(https://www.scientificamerican.com/article/einstein-s-parable-of-quantum-insanity/ )

## II.    Overview / Background

2.    This is a **second-in-time** 28 USC §2254 et seq. federal habeas petition.

3.    **See Attachment(s) 1-1 1-2.**

4.    As a matter of law it MUST be GRANTED.

5.    ALL of Gakuba's federal statutory and constitutional rights were violated. Flagrantly and egregiously.

6.    Federal habeas corpus relief is ONLY available while "in custody."

7.    Gakuba is a REGISTERED sex offender.

8.    Here, every single preceding federal and state court  were  flatly *wrong* in ruling there were no constitutional violations in wholly conclusory 2-3 sentence rulings.  Ungoverned by law; unrestrained by the record. *Ipse dixit.*

## A. Illinois' AG SUCCEEDS in Arguing Jurisdiction to Adjudicate is in Maryland; Maryland's AG SUCCEEDS in Arguing Jurisdiction to Adjudicate is in Illinois

9.    **See Attachment(s) 2.**

10.    The Illinois courts AGREE.

11.    The Maryland federal courts AGREE too.

12.    These contrary and diametrically opposed legal postures to be agreed by their respective courts—without any reasoned analysis or citation to any authority (not to mention refusal to hold a full and fair hearing)—was objectively unreasonable.

13.    See 28 USC §2254(d)(1)-(2).

14.    **As a registered sex offender, Gakuba is "in custody" anywhere the SORNA applies—including HERE.**

15.    There is a reason why extradition laws exist.

16.    This is a textbook case why they do: the Illinois courts have blackballed Gakuba in wholly conclusory rulings; rulings that are arbitrary, fanciful, and objectively unreasonable; or rulings that are patently absurd—to the point of being risible deserving of ridicule.

17.    Often laced with the 'dog whistle' of rank bigotry and prejudice.

## B. Dog Whistle Bigotry and Rank Prejudice—Explicitly & Complicity—by ALL Preceding Federal and State Courts

### 1. The 1-Day Jury Trial—*Napue* Trial Perjury by a *Franks* Affiant Perjurer (with a PENDING Fed'l *Pro se* Suit Against Him: IL Police Charles O'Brien)[2]

18.    April 15, 2024 Gakuba was wrongly convicted at a one-day jury trial after he was denied his right to remain *pro se* 3-6 "weeks before trial" when corrupt IL trial judge John R. Truitt ("Truitt") revoked Gakuba's *pro se* right on the basis of Gakuba's demands to subpoena witnesses.

19.    Thus, the corrupt judge violated Gakuba's 6th Amendment right to call witnesses, by committing structural error: denial of the right to self-representation 3-6 "weeks before trial" as a "delay tactic" when the undisputed record plainly shows Gakuba never sought any delay—but the court-appointed public defender did; on the day-of-trial itself by citing ill-preparedness.

---

[2] *Napue v. Illinois*, 360 US 264 (1959) (trial perjury) https://en.wikipedia.org/wiki/*Napue*_v._Illinois
*Franks v. Delaware*, 438 US 154 (1978) (affidavit perjury)
https://en.wikipedia.org/wiki/*Franks*_v._Delaware

Heard and denied.  Thus, were a *pro se* Gakuba to have sought a trial-day continuance due to ill-preparedness, it too would have been denied.

20.    Structural error.  Reversible error—that every preceding malfunctioning court upheld in *ipse dixit* rulings.  Wholly conclusory rulings that rise to the level of irrational.

21.    Rockford, IL is 20% Black.  None of the 50 prospective jurors on the venire panel were Black.  Incredible corruption.  A rigged trial from the get-go.

22.    The court-appointed asst. public defender shoved down an unwilling Gakuba's throat called no witnesses of her own, and conducted no cross-examination whatsoever.  A 6th Amendment violation: ineffective assistance of counsel—proceeding the 6th Amendment structural error: denial of self-representation "weeks before trial."

23.    **The all-WHITE jury convicted in 15-minutes**.

24.    **Gakuba was sentenced to 12-years "discretionary consecutive sentences" when both the plea offer and PSIR augured "probation."  An 8th Amendment violation: Cruel and unusual punishment.**

25.    Cruel and unusual punishment affirmed by malfunctional irrational courts—as jurist nullification—by rejecting Gakuba's *pro se* direct appeal arguments that he had no criminal history and was on a 9-years long $250,000 pretrial bail with conditions tantamount to 'house arrest.'

26.    Punctiliously compliant with all pre-trial bail terms for those 9-years.  **A world record**.  Period.

27.    Instead, the affirmance of this 8th Amendment violation rested solely on the claim it was due to **Gakuba's "character."**  See *People v. Gakuba*, 2017 Ill. App. 2d 150744 (Ill. App. Ct. 2017).  Id. at ¶¶52-56. People v. Gakuba, 2017 WL 1278078 (Ill.App. 2 Dist., 2017)

28.    But what about the character of a Black Ukrainian-Rwandan Tutsi who was accepted as a violinist and pianist to the Peabody Music Conservatory at the age of 10? Johns Hopkins at the age of 13? Stanford at the age of 16?

29.    Who, prior to this legal lynching, had national security clearances as a top energy trader allowing Gakuba access to nuclear power plants and refineries? Along with an intimate knowledge of the power grid? And knowledge of the nuclear-bomb proof bunker PJM (power pool) houses their transmission operations? https://pjm.com/

30.    **This was the racist 'dog whistle' of a malfunctional American judiciary.**

31.    Outrageous and despicable.

32.    All to defend malign and criminal conduct by state and federal police and prosecutors against a ~ \$52 million *pro se* extant (pending) federal lawsuit as a *Heck* affirmative defense.[3]

33.    See on-point: *Baca v. Adams,* 777 F.3d 1034 (9th Cir. 2015).[4]

34.    Like *Baca,* Gakuba's wrongful convictions rest on prosecutorial misconduct by knowingly using false/fabricated evidence and affiant and trial perjury (per *Franks* and *Napue*).

35.    **Like *Baca*, all the preceding courts condone such flagrant and egregious violations of the 5th and 14th Amendments.**

36.    See Above the Law, **"Ninth Circuit Orders Release Of Man Due To Prosecutorial Misconduct. Check out the video; arguing this case probably wasn't fun for the government lawyer."** https://abovethelaw.com/2015/02/ninth-circuit-orders-release-of-man-due-to-prosecutorial-misconduct/

---

[3] Heck v. Humphrey, 512 U.S. 477 (U.S.Ind.,1994)
[4] Baca v. Adams, 777 F.3d 1034 (C.A.9 (Cal.).2015)

37.     Gakuba's cited authorities for the objectively unreasonable application of law were recklessly disregarded, indeed, deliberately ignored.

38.     See on-point (dispositive to Gakuba) *State v. Locklear,* **138 N.C. App. 549, 550 (N.C. Ct. App. 2000)** (held: The trial court erred in a first-degree statutory rape case under N.C.G.S. § 14-27.7A(a) by admitting the investigating officer's testimony of defendant's statement of his date of birth during the booking process without the benefit of the *Miranda* warnings.) (cites *Rhode Island v. Innis,* **446 U.S. 291, 301, 64 L.Ed.2d 297, 308 (1980)** (interrogation under *Miranda* consist of questions "the police should know are reasonably likely to elicit an incriminating response")). State v. Locklear, 138 N.C.App. 549 (N.C.App.,2000)

39.     This was no mere error, but, calculated judicial overreach.

40.     **Jurist nullification.** By all the preceding courts who, like *Baca*, condone the railroading of actually innocent criminal defendants when they should be condemning it.

41.     See *People v. Johnson-DeAngelo*, 208 Ill. 2d 53, 115, 803 N.E.2d 405 (Ill. 2003) ("**It is improper to argue assumptions** or facts not based upon the evidence in the record. *Kliner,* 185 Ill.2d at 151.") (emphasis); accord *Seymour v. Collins,* 2015 IL 118432 ¶50. See also *Owens v. Duncan,* 781 F.3d 360, 362 (7th Cir. 2015) (habeas GRANT: wrongful convictions based "on evidence that did not exist"; 14th Amendments violations).[5]

42.     See *People v. Johnson,* 208 Ill.2d 53, 65 (2003) (citing law articles to expose the problem of prosecutorial misconduct, "a problem that courts across the country have, for the most part, been unable or unwilling to correct."

---

[5] People v. Johnson, 208 Ill.2d 53 (Ill.,2003) ; Seymour v. Collins, 2015 IL 118432 (Ill., 2015) ; Owens v. Duncan, 781 F.3d 360 (C.A.7 (Ill.),2015)

## III.    Issues / Arguments

## A. Jurisdictional Basis

43.    **Challenge to ANY Court's Jurisdiction – See Jurisdiction / Venue Statement -** -- *void* indictment for violations of the **Video Privacy Protection Act** 18 USC §§2710(a), 2710(b)(2)(C), 2710(d), 2710(e); See accord *Amazon.com LLC v. Lay*, 758 F. Supp. 2d 1154 (W.D. Wash. 2010) (VPPA violations by NC attorney general Lay required injunctive and declaratory relief to Doe intervenors per *Ex Parte Young*, 209 US 1123 (1908)).[6]

44.    **Jurisdictional Challenges are ALLOWED ANYTIME, ANYWHERE –** *Void* **Indictment per 18 USC §2710(d)** – essential element(s) of "statutory rape" crime excluded (Gakuba's birthdate) per federal privacy law from receipt as evidence in or before a "grand jury" of the USA and/or a State.

45.    **This is the 1st case ever where the criminal indictment is** *void* **as are the poisoned fruit per 18 USC §2710(d)'s exclusionary mandate.** See accord *In re B.A.*, 562 S.E.2d 605 (N.C. Ct. App. 2002) (juvenile delinquency petition *void* where element of the crime—age / birthdate—are not in the petition resulting in trial court's lack of jurisdiction) In re B.A., 149 N.C.App. 667 (N.C.App.,2002) ; See also *In re Griffin*, 162 N.C. App. 487 (N.C. Ct. App. 2004) (same) In re Griffin, 162 N.C.App. 487 (N.C.App.,2004) .

## 1. Legal Doctrines Divorced from the Facts

46.

UNITED STATES DISTRICT COURT
DISTRICT of MASSACHUSETTS

PETER GAKUBA (SORNA Registrant),[1]      )
                                         )
                    Petitioner,          )
                                         )  Case No.
    vs.                                  )
                                         )
ANDREA J. CAMPBELL (MA AG),              )  Judge
                                         )  Magistrate
                    Respondent.          )

## PETITIONER'S REQUEST FOR HEARING
## *VOID AB INITIO* CRIMINAL INDICTMENT = NO COURT JURISDICTION (NONE)
### AND
### MEMORANDUM OF LAW

NOW COMES *pro se* indigent Petitioner PETER GAKUBA ("Gakuba"), in this

Petitioner's Memorandum of Law in Support of Request for Hearing *Void ab initio* Criminal

Indictment = NO Court Jurisdiction (NONE).

> **DECLARATORY STATEMENT IN SUPPORT OF PETITIONER'S MEMORANDUM OF LAW IN SUPPORT OF REQUEST FOR HEARING *VOID AB INITIO* CRIMINAL INDICTMENT = NO COURT JURISDICTION (NONE)**
>
> This declaratory statement incorporated herein is in compliance with 28 U.S.C. § 1746 and is consistent with the Fed. R. Civ. Procedures.

DECLARATION UNDER PENALTY OF PERJURY

Peter Gakuba declares:

## I.      Preface

1.      Einstein's parable and definition **of "INSANITY is doing the same thing over

and over and expecting a different result."**   See Scientific American—Quanta Magazine:

---

[1] *Piasecki v. Court of Common Pleas*, 917 F.3d 161 (3d Cir. 2019) (SORNA registrants qualify as "in-custody" for purposes of habeas law)

"Einstein's Parable of Quantum Insanity." cited sites 11/03/2025) (https://www.scientificamerican.com/article/einstein-s-parable-of-quantum-insanity/ )

## II. Overview / Background

2. This is a **second-in-time** 28 USC §2254 et seq. federal habeas petition.

3. **See Attachment(s) 1-1 1-2.**

4. As a matter of law it MUST be GRANTED.

5. ALL of Gakuba's federal statutory and constitutional rights were violated. Flagrantly and egregiously.

6. Federal habeas corpus relief is ONLY available while "in custody."

7. Gakuba is a REGISTERED sex offender.

8. Here, every single preceding federal and state court were flatly *wrong* in ruling there were no constitutional violations in wholly conclusory 2-3 sentence rulings. Ungoverned by law; unrestrained by the record. *Ipse dixit.*

### A. Illinois' AG <u>SUCCEEDS</u> in Arguing Jurisdiction to Adjudicate is in Maryland; Maryland's AG <u>SUCCEEDS</u> in Arguing Jurisdiction to Adjudicate is in Illinois

9. **See Attachment(s) 2.**

10. The Illinois courts AGREE.

11. The Maryland federal courts AGREE too.

12. These contrary and diametrically opposed legal postures to be agreed by their respective courts—without any reasoned analysis or citation to any authority (not to mention refusal to hold a full and fair hearing)—was objectively unreasonable.

13. See 28 USC §2254(d)(1)-(2).

14. **As a registered sex offender, Gakuba is "in custody" anywhere the SORNA applies—including HERE.**

15. There is a reason why extradition laws exist.

16. This is a textbook case why they do: the Illinois courts have blackballed Gakuba in wholly conclusory rulings; rulings that are arbitrary, fanciful, and objectively unreasonable; or rulings that are patently absurd—to the point of being risible deserving of ridicule.

17. Often laced with the 'dog whistle' of rank bigotry and prejudice.

## B. Dog Whistle Bigotry and Rank Prejudice—Explicitly & Complicity— by ALL Preceding Federal and State Courts

### 1. The 1-Day Jury Trial—*Napue* Trial Perjury by a *Franks* Affiant Perjurer (with a PENDING Fed'l *Pro se* Suit Against Him: IL Police Charles O'Brien)[2]

18. April 15, 2024 Gakuba was wrongly convicted at a one-day jury trial after he was denied his right to remain *pro se* 3-6 "weeks before trial" when corrupt IL trial judge John R. Truitt ("Truitt") revoked Gakuba's *pro se* right on the basis of Gakuba's demands to subpoena witnesses.

19. Thus, the corrupt judge violated Gakuba's 6th Amendment right to call witnesses, by committing structural error: denial of the right to self-representation 3-6 "weeks before trial" as a "delay tactic" when the undisputed record plainly shows Gakuba never sought any delay— but the court-appointed public defender did; on the day-of-trial itself by citing ill-preparedness.

---

[2] *Napue v. Illinois*, 360 US 264 (1959) (trial perjury) https://en.wikipedia.org/wiki/*Napue*_v._Illinois
*Franks v. Delaware*, 438 US 154 (1978) (affidavit perjury)
https://en.wikipedia.org/wiki/*Franks*_v._Delaware

Heard and denied. Thus, were a *pro se* Gakuba to have sought a trial-day continuance due to ill-preparedness, it too would have been denied.

20. Structural error. Reversible error—that every preceding malfunctioning court upheld in *ipse dixit* rulings. Wholly conclusory rulings that rise to the level of irrational.

21. Rockford, IL is 20% Black. None of the 50 prospective jurors on the venire panel were Black. Incredible corruption. A rigged trial from the get-go.

22. The court-appointed asst. public defender shoved down an unwilling Gakuba's throat called no witnesses of her own, and conducted no cross-examination whatsoever. A 6th Amendment violation: ineffective assistance of counsel—proceeding the 6th Amendment structural error: denial of self-representation "weeks before trial."

23. **The all-WHITE jury convicted in 15-minutes.**

24. **Gakuba was sentenced to 12-years "discretionary consecutive sentences" when both the plea offer and PSIR augured "probation." An 8th Amendment violation: Cruel and unusual punishment.**

25. Cruel and unusual punishment affirmed by malfunctional irrational courts—as jurist nullification—by rejecting Gakuba's *pro se* direct appeal arguments that he had no criminal history and was on a 9-years long $250,000 pretrial bail with conditions tantamount to 'house arrest.'

26. Punctiliously compliant with all pre-trial bail terms for those 9-years. **A world record.** Period.

27. Instead, the affirmance of this 8th Amendment violation rested solely on the claim it was due to **Gakuba's "character."** See *People v. Gakuba*, 2017 Ill. App. 2d 150744 (Ill. App. Ct. 2017). Id. at ¶¶52-56. People v. Gakuba, 2017 WL 1278078 (Ill.App. 2 Dist., 2017)

28.    But what about the character of a Black Ukrainian-Rwandan Tutsi who was accepted as a violinist and pianist to the Peabody Music Conservatory at the age of 10? Johns Hopkins at the age of 13? Stanford at the age of 16?

29.    Who, prior to this legal lynching, had national security clearances as a top energy trader allowing Gakuba access to nuclear power plants and refineries? Along with an intimate knowledge of the power grid? And knowledge of the nuclear-bomb proof bunker PJM (power pool) houses their transmission operations? https://pjm.com/

30.    **This was the racist 'dog whistle' of a malfunctional American judiciary.**

31.    Outrageous and despicable.

32.    All to defend malign and criminal conduct by state and federal police and prosecutors against a ~ $52 million *pro se* extant (pending) federal lawsuit as a *Heck* affirmative defense.[3]

33.    See on-point: *Baca v. Adams,* 777 F.3d 1034 (9th Cir. 2015).[4]

34.    Like *Baca,* Gakuba's wrongful convictions rest on prosecutorial misconduct by knowingly using false/fabricated evidence and affiant and trial perjury (per *Franks* and *Napue*).

35.    **Like *Baca*, all the preceding courts condone such flagrant and egregious violations of the 5th and 14th Amendments.**

36.    See Above the Law, **"Ninth Circuit Orders Release Of Man Due To Prosecutorial Misconduct. Check out the video; arguing this case probably wasn't fun for the government lawyer."** https://abovethelaw.com/2015/02/ninth-circuit-orders-release-of-man-due-to-prosecutorial-misconduct/

---

[3] Heck v. Humphrey, 512 U.S. 477 (U.S.Ind.,1994)
[4] Baca v. Adams, 777 F.3d 1034 (C.A.9 (Cal.),2015)

37.     Gakuba's cited authorities for the objectively unreasonable application of law were recklessly disregarded, indeed, deliberately ignored.

38.     See on-point (dispositive to Gakuba) *State v. Locklear,* **138 N.C. App. 549, 550 (N.C. Ct. App. 2000)** (held: The trial court erred in a first-degree statutory rape case under N.C.G.S. § 14-27.7A(a) by admitting the investigating officer's testimony of defendant's statement of his date of birth during the booking process without the benefit of the *Miranda* warnings.) (cites *Rhode Island v. Innis,* **446 U.S. 291, 301, 64 L.Ed.2d 297, 308 (1980)** (interrogation under *Miranda* consist of questions "the police should know are reasonably likely to elicit an incriminating response")). State v. Locklear, 138 N.C.App. 549 (N.C.App.,2000)

39.     This was no mere error, but, calculated judicial overreach.

40.     **Jurist nullification.** By all the preceding courts who, like *Baca,* condone the railroading of actually innocent criminal defendants when they should be condemning it.

41.     See *People v. Johnson-DeAngelo,* 208 Ill. 2d 53, 115, 803 N.E.2d 405 (Ill. 2003) (**"It is improper to argue assumptions** or facts not based upon the evidence in the record. *Kliner,* 185 Ill.2d at 151.") (emphasis); accord *Seymour v. Collins,* 2015 IL 118432 ¶50. See also *Owens v. Duncan,* 781 F.3d 360, 362 (7th Cir. 2015) (habeas GRANT: wrongful convictions based "on evidence that did not exist"; 14th Amendments violations).[5]

42.     See *People v. Johnson,* 208 Ill.2d 53, 65 (2003) (citing law articles to expose the problem of prosecutorial misconduct, "a problem that courts across the country have, for the most part, been unable or unwilling to correct."

---

[5] People v. Johnson, 208 Ill.2d 53 (Ill.,2003) ; Seymour v. Collins, 2015 IL 118432 (Ill., 2015) ; Owens v. Duncan, 781 F.3d 360 (C.A.7 (Ill.),2015)

## III.    Issues / Arguments

## A. Jurisdictional Basis

43.    **Challenge to ANY Court's Jurisdiction – See Jurisdiction / Venue Statement -- **-- *void* indictment for violations of the **Video Privacy Protection Act** 18 USC §§2710(a), 2710(b)(2)(C), 2710(d), 2710(e); See accord *Amazon.com LLC v. Lay*, 758 F. Supp. 2d 1154 (W.D. Wash. 2010) (VPPA violations by NC attorney general Lay required injunctive and declaratory relief to Doe intervenors per *Ex Parte Young*, 209 US 1123 (1908)).[6]

44.    **Jurisdictional Challenges are ALLOWED ANYTIME, ANYWHERE – *Void* Indictment per 18 USC §2710(d)** – essential element(s) of "statutory rape" crime excluded (Gakuba's birthdate) per federal privacy law from receipt as evidence in or before a "grand jury" of the USA and/or a State.

45.    **This is the 1ˢᵗ case ever where the criminal indictment is *void* as are the poisoned fruit per 18 USC §2710(d)'s exclusionary mandate.** See accord *In re B.A.*, 562 S.E.2d 605 (N.C. Ct. App. 2002) (juvenile delinquency petition *void* where element of the crime—age / birthdate—are not in the petition resulting in trial court's lack of jurisdiction) In re B.A., 149 N.C.App. 667 (N.C.App.,2002) ; See also *In re Griffin*, 162 N.C. App. 487 (N.C. Ct. App. 2004) (same) In re Griffin, 162 N.C.App. 487 (N.C.App.,2004) .

## 1. Legal Doctrines Divorced from the Facts

46.    On-point (dispositive to Gakuba) *McGirt v. Oklahoma,* 140 S. Ct. 2452 (2020) (Oklahoma state had NO jurisdiction to try a crime committed in "Indian country"). McGirt v. Oklahoma, 591 U.S. 894 (U.S.Okla., 2020)

---

[6] Amazon.com LLC v. Lay, 758 F.Supp.2d 1154 (W.D.Wash., 2010)

47.    Id. at 2459:

**Since then, he has argued in postconviction proceedings that the State lacked jurisdiction to prosecute him** because he is an enrolled member of the Seminole Nation of Oklahoma and his crimes took place on the Creek Reservation. A new trial for his conduct, he has contended, must take place in federal court. The Oklahoma state courts hearing Mr. McGirt's arguments rejected them, so he now brings them here.

48.    Ibid:

**State courts generally have no jurisdiction to try Indians for conduct committed in "Indian country."** *Negonsott v. Samuels,* 507 U.S. 99, 102–103, 113 S.Ct. 1119, 122 L.Ed.2d 457 (1993).

49.    Id. at 2470:

**To see the perils of substituting stories for statutes,** we need look no further than the stories we are offered in the case before us. Put aside that the Tribe could tell more than a few stories of its own: Take just the evidence on which Oklahoma and the dissent wish to rest their case. First, they point to **Oklahoma's long historical prosecutorial practice of asserting jurisdiction over Indians in state court, even for serious crimes on the contested lands.**

50.    Applying the lower court(s)' fanciful arguments to *McGirt v. Oklahoma* means that Oklahoma had "personal jurisdiction" because McGirt appeared (illegally) before an Oklahoma trial court.

51.    And because McGirt was indicted, tried, and convicted (illegally), "subject matter jurisdiction" occurred too.

52.    The U.S. Supreme Court rejected such "story telling" in *McGirt.*

53.    All the preceding federal and state courts failed to reject these fanciful delusions here, in the instant case.

54.    See e.g. *Gakuba v. Grissom,* 2021-MR-63 (1ˢᵗ Cir Ct., Johnson Co.) (docket history 08/24/2021: "Court advises that there is no jurisdiction over Defendant. Petitioner to file Alias Summons.") (visited    cited    site    on    06/11/2022    (as    with    all    others))

https://www.judici.com/courts/cases/case_history.jsp?court=IL044015J&ocl=IL044015J.2021M R63,IL044015JL2021MR63P1

55.     All the while all the preceding lower courts impliedly argue that IL trial courts have jurisdiction merely by Gakuba forcibly (and illegally) appearing before them, they argue the opposite when Gakuba failed to serve IL malfeasors by sheriff (versus by hand delivery or certified mail).

56.     Rank duplicity.

57.     There was NO jurisdiction over Gakuba.  Period.  Just as the Illinois Dept. of Corrections ("IDOC") in *Grissom*, 2021-MR-63 had IL AAGs *successfully* argue that there was NO jurisdiction over the IDOC when not properly served—despite an IL AAG appearing at the hearing on the IDOC's behalf.

58.     Judicial and equitable estoppel controlled as the IL Prisoner Review Board is an adjunct to the IDOC.

## 2. Federal Law Supersedes State Law.  14th Amendment, U.S. Constitution;  the  Video  Privacy  Protection's  Exclusion Mandate is Omnipotent and Absolute—18 USC §2710(d)

59.     See *McGirt v. Oklahoma,* 140 S. Ct. 2452 (2020) (Oklahoma state had NO jurisdiction to try a crime committed in "Indian country").  McGirt v. Oklahoma, 591 U.S. 894 (U.S.Okla., 2020)

60.     Id. at 2471:

**Start with the State's argument about its longstanding practice of asserting jurisdiction over Native Americans.** Oklahoma proceeds on the implicit premise that its historical practices are unlikely to have **defied the mandates of the federal MCA.** That premise, though, appears more than a little shaky. In conjunction with the MCA, §1151(a) not only sends to federal court certain major crimes committed by Indians on reservations. Two doors down, in § 1151(c), the statute does the same for major crimes committed by Indians on "Indian allotments, the Indian titles of which have not been extinguished." **Despite this direction, however, Oklahoma state courts erroneously entertained prosecutions for major crimes by Indians on Indian allotments for decades,** until state courts finally disavowed the practice in 1989. See *State v. Klindt,* 782 P.2d 401, 404 (Okla. Crim. App. 1989) (overruling *Ex parte Nowabbi,* 60 Okla. Crim. 111, 61 P.2d 1139 (1936) ); see also *United States v. Sands,* 968 F.2d 1058, 1062–1063 (C.A.10 1992). **And if the State's prosecution practices disregarded §1151(c) for so long, it's unclear why we should take those same practices as a reliable guide to the meaning and application of §1151(a).**

61.    See accord *Amazon.com LLC v. Lay,*[7] 758 F. Supp. 2d 1154 (W.D. Wash. 2010) (VPPA violations by NC attorney general Lay required injunctive and declaratory relief to Doe intervenors per *Ex Parte Young,* 209 US 1123 (1908)); cf *Timbs v. Indiana,* 139 S.Ct. 682, 203 L. Ed. 2d 11 (2018) (federal law is binding on states per the 14th Amendment, US Constitution).[8]

62.    **18 U.S. Code § 2710 - Wrongful disclosure of video tape rental or sale records:**

(visited 07/03/2021 as with all the cited sites https://www.law.cornell.edu/uscode/text/18/2710 )

    **(a)**    **Definitions.**—For purposes of this section—
    **(1)**    the term "consumer" means any renter, purchaser, or subscriber of goods or services from a video tape service provider;
    **(2)**    the term "ordinary course of business" means only debt collection activities, order fulfillment, request processing, and the transfer of ownership;
    **(3)**    the term "personally identifiable information" includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider; and
    **(4)**    the term "video tape service provider" means any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audiovisual materials, or any person or other entity to whom a disclosure is made under subparagraph (D) or (E) of subsection (b)(2), but only with respect to the information contained in the disclosure.

---

[7] Amazon.com LLC v. Lay, 758 F.Supp.2d 1154 (W.D.Wash., 2010)
[8] Timbs v. Indiana, 586 U.S. 146 (U.S.Ind., 2019)

**(b)** **Video Tape Rental and Sale Records.—**

**(1)** A video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider shall be liable to the aggrieved person for the relief provided in subsection (d).

**(2)** A video tape service provider may disclose personally identifiable information concerning any consumer—

**(A)** to the consumer;

**(B)** to any person with the informed, written consent (including through an electronic means using the Internet) of the consumer that—

(i) is in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer;

(ii) at the election of the consumer—

(I) is given at the time the disclosure is sought; or

(II) is given in advance for a set period of time, not to exceed 2 years or until consent is withdrawn by the consumer, whichever is sooner; and

(iii) the video tape service provider has provided an opportunity, in a clear and conspicuous manner, for the consumer to withdraw on a case-by-case basis or to withdraw from ongoing disclosures, at the consumer's election;

**(C)** to a law enforcement agency **pursuant to a warrant issued** under the Federal Rules of Criminal Procedure, **an equivalent State warrant, a grand jury subpoena, or a court order**;

**(D)** to any person if the disclosure is solely of the names and addresses of consumers and if—

(i) the video tape service provider has provided the consumer with the opportunity, in a clear and conspicuous manner, to prohibit such disclosure; and

(ii) the disclosure does not identify the title, description, or subject matter of any video tapes or other audiovisual material; however, the subject matter of such materials may be disclosed if the disclosure is for the exclusive use of marketing goods and services directly to the consumer;

**(E)** to any person if the disclosure is incident to the ordinary course of business of the video tape service provider; or

**(F)** pursuant to a court order, in a civil proceeding upon a showing of compelling need for the information that cannot be accommodated by any other means, if—

(i) the consumer is given reasonable notice, by the person seeking the disclosure, of the court proceeding relevant to the issuance of the court order; and

(ii) the consumer is afforded the opportunity to appear and contest the claim of the person seeking the disclosure.

If an order is granted pursuant to subparagraph (C) or (F), the court

shall impose appropriate safeguards against unauthorized disclosure.

**(3)**    Court orders authorizing disclosure under subparagraph (C) shall issue only with prior notice to the <u>consumer</u> and only if the law enforcement agency shows that there is probable cause to believe that the records or other information sought are relevant to a legitimate law enforcement inquiry. In the case of a State government authority, such a court order shall not issue if prohibited by the law of such State. A court issuing an order pursuant to this section, on a motion made promptly by the <u>video tape service provider</u>, may quash or modify such order if the information or records requested are unreasonably voluminous in nature or if compliance with such order otherwise would cause an unreasonable burden on such provider.

**(c)**    **Civil Action.—**

**(1)** Any person aggrieved by any act of a person in violation of this section may bring a civil action in a United States district court.

**(2)** The court may award—

**(A)** actual damages but not less than liquidated damages in an amount of $2,500;

**(B)** punitive damages;

**(C)** reasonable attorneys' fees and other litigation costs reasonably incurred; and

**(D)** such other preliminary and equitable relief as the court determines to be appropriate.

**(3)** No action may be brought under this subsection unless such action is begun within 2 years from the date of the act complained of or the date of discovery.

**(4)** No liability shall result from lawful disclosure permitted by this section.

**(d)**    **Personally Identifiable Information.—**

Personally identifiable information obtained in any manner other than as provided in this section **shall not be received in evidence** in any **trial, hearing,** arbitration, or **other proceeding** in or before any **court, grand jury,** department, officer, agency, regulatory body, legislative committee, **or other authority** of the United States, **a State,** or a political subdivision of a State.

**(e)**    **Destruction of Old Records.—**

A person subject to this section shall destroy <u>personally identifiable information</u> as soon as practicable, but no later than one year from the date the information is no longer necessary for the purpose for which it was collected and there are no pending requests or orders for access to such information under subsection (b)(2) or (c)(2) or pursuant to a court order.

**(f)Preemption.—**

The provisions of this section preempt only the provisions of State or local law that require disclosure prohibited by this section.


63.    *McGirt,* 140 S. Ct. 2452, 2471:


**By Oklahoma's own admission,** then, for decades its historical practices in the area in question **didn't even try to conform to the MCA,** all of which makes the State's past prosecutions a meaningless guide for determining what counted as

Indian country. As it turns out, too, Oklahoma's claim to a special exemption was itself mistaken, yet one more error in historical practice that even the dissent does not attempt to defend.

64.     Ibid: **But all that only underscores further the danger of relying on state practices to determine the meaning of the federal MCA.**

65.     Here, the lower court(s)' impliedly argue that because the IL courts—trial and appellate—have deliberately ignored Gakuba's *federal* statutory and constitutional rights, since the inception of his *void* indictment, their malicious prosecutorial prerogatives trump well established federal statutory law.

66.     Ibid:

Brief for United States as Amicus Curiae in *Carpenter v. Murphy,* O. T. 2018, No. 17–1107, pp. 7a–8a (Letter from Secretary of the Interior, Mar. 27, 1963) (**noting that many States have asserted criminal jurisdiction over Indians without an apparent basis in a federal law).**

67.     Here, the lower court(s) impliedly make the same fanciful arguments as in *McGirt*: that federal law—18 USC §2710(d)'s exclusionary mandate—is extinguished by a state malicious prosecution, as occurred here.

68.     Rather than admitting fault, due to Gakuba's pending *pro se* federal lawsuit seeking $52 million in actual, compensatory and punitive damages, they'd rather double down on their enterprise of mendacity and rank prevarications, than show a slim reed measure of prosecutorial integrity. See IL S. Ct. Rules of Professional Conduct, Art. VIII, Rule 3.8: Special Responsibilities of a Prosecutor (to seek justice, not merely to (wrongly) convict). https://ilcourtsaudio.blob.core.windows.net/antilles-resources/resources/f666b1cf-3509-4cf8-935e-ead5a1bb270d/RULE%203.8.pdf

69.    *McGirt* at 2471: "As we have just seen, Oklahoma's courts acknowledge that the State lacks jurisdiction over Indian crimes on Indian allotments."

70.    "Lacks jurisdiction" says what it means, not means what it says.

71.    It does not require an Oxford don to distill the common meaning of "jurisdiction".

72.    See *Garcia v. Long,* 808 F.3d 771, 777-778 (9th Cir. 2015) (habeas grant: "No" or invocation to have counsel present is the 'right to remain silent' invocation and need not be spoken with the discrimination of an Oxford don).[9]

73.    The subsequent (immediate) violations of federal constitutional law comes as a *secondary* layer of privacy protections. See accord *USA v. Wilson,* 633 Fed. Appx. 750, 753 (11th Cir. 2015) (at 753: "The availability of the suppression remedy for ... **statutory**, as opposed to constitutional violations ... turns on the provisions of [the statute] rather than the judicially fashioned Exclusionary Rule aimed at deterring violations of the 4th Amendment rights." *USA v. Donovan,* 429 US 413, 432 n.22 (1977) (Stored Communications Act)).[10]

74.    **The indictment is *void ab initio*; not *voidable*.**

75.    The lower court(s) deliberately ignore this undisputed fact.

76.    The IL courts lacked jurisdiction—as with *every subsequent one*; and with it, Gakuba's convictions must be vacated; and his immediate release from "in custody" must occur.

77.    The cases cited by them implicate pretrial detainees or prisoners whose imprisonment exceeds any lawful sentence. See cf 28 USC §2241.

78.    Habeas relief is appropriate. As a matter of law, it must be granted due to federal law being deliberately ignored by all preceding IL and federal police and court officers.

---

[9] Garcia v. Long, 808 F.3d 771 (C.A.9 (Cal.), 2015)
[10] U.S. v. Wilson, 633 Fed.Appx. 750 (C.A.11 (Ga.), 2015)

### 3. On-point Statutory Rape Convictions Overturned on Appeal; cite Federal Constitutional Law:
- *State v. Locklear,* 138 N.C. App. 549, 550 (N.C. Ct. App. 2000)
- *In re B.A.,* 562 S.E.2d 605 (N.C. Ct. App. 2002)
- *In re Griffin,* 162 N.C. App. 487 (N.C. Ct. App. 2004) (same)

79.    Nowhere do the lower court(s) attack directly these cited case laws, supra.[11]

80.    Because they are unable to make a convincing argument that they are not on-point.

81.    Instead, they assert that because they originate from North Carolina, they're inapplicable to Illinois.

82.    However, they cannot cite to *any* other case law that rebuts the three (3) cited by Gakuba.

83.    None exists. Not a single one.

84.    As these cited cases reference federal statutory and constitutional law, they're not only on-point, they're case dispositive to Gakuba.

85.    It is illogical to assert that other cases from other geographies are irrelevant. To the contrary, they are wholly relevant. On-point. Determinative in favor of Gakuba.

86.    In fact, state courts cite to federal case laws all the time to affirm or reverse trial court rulings.

87.    "The booking process" was a post hoc fabricated irrationalization to evade enforcing the VPPA's statutory mandate's exclusionary authority. See accord *USA v. Zapien,* 861 F.3d 971 (9th Cir. 2017) (at 995: "This analysis includes consideration of both the questions and the context. See *USA v. Pacheo-Lopez,* 531 F.3d 420, 424-25 (6th Cir. 2008) ('The location, the nature of the questioning, and the failure to take notes or document the defendant's identity also

---

[11] State v. Locklear, 138 N.C.App. 549 (N.C.App.,2000) , In re B.A., 149 N.C.App. 667 (N.C.App.,2002) In re Griffin, 162 N.C.App. 487 (N.C.App.,2004)

support our conclusion that the booking exception is not applicable in this case.') In understanding this analysis, courts have looked to a range of particularized circumstances. See e.g. *Mata-Abundiz* 717 F.2d at 1280 (whether the state agency conducting the questioning ordinarily booked suspects); *USA v. Disla,* 805 F.2d 1340, 1347 (9th Cir. 1986) (whether officers knew that the questions were related to an element of the crime); *USA v. Salgado,* 292 F.3d 1169, 1174 (9th Cir. 2002) (whether a 'true booking' had already occurred and the agency therefore already had access to the information); *Foster* 227 F.3d at 1103 (whether the questions were separated in time and place from the incriminating statements)").

88.     "The booking process" was not recorded. *Muniz,* 486 US at 582; *People v. Outlaw,* 388 Ill. App. 3d 1072, 1077 (2009) […] 'The booking process' was done by crime investigator O'Brien (not jailer 'David Huff' (C3258) (FRE 201: docket 04/21/2018)[12]); *Outlaw* at 1077. See *USA v. Sanchez,* 817 F.3d 38, 46 (1st Cir. 2016) (citing *USA v. Reyes,* 225 F.3d 71, 76-77 (1st Cir. 2000)). 'The booking process' extracted answers 'clearly' and 'directly' tied to the 'suspected' criminal activities. *Sanchez* at 46. (C1034-35 cites *USA v. Oscar-Torres,* 507 F.3d 224, 225 (4th Cir. 2007) ('[Where] both investigative and administrative purposes motivated illegal arrest and fingerprinting, suppression of fingerprints and attendant record evidence was required.'))."

89.     See e.g. *People v. Merritt,* 2017 IL App (2d) 150219 ¶¶1, 26-30, 30-31.[13]

90.     Id. at ¶¶30-31:

Cites *USA v. Wright,* 682 F.3d 1088 (8th Cir. 2012) (trial date *pro se* right allowed; delay denied); cites *USA v. Ware,* 890 F.3d 1008, 1010 (8th Cir. 1989) (trial date *pro se* right allowed; delay denied).[14]

---

[12] *People v. Gakuba,* 2006-CF-004324 (17th Cir. Ct., Winnebago Co.)
[13] People v. Merritt, 2017 IL App (2d) 150219
[14] United States v. Wright, 682 F.3d 1088 ; U.S. v. Ware, 890 F.2d 1008 (C.A.8 (Minn.), 1989)

91.    It is self-evident: the three (3) cited cases by Gakuba are controlling.

## 4. *Void Ab Initio* Indictment—Habeas Grounds

92.    This malicious prosecution resulting in Gakuba's wrongful convictions and, now, false imprisonment, must end with the GRANT of this habeas petition.

93.    It is well settled that a *void* indictment divests all jurisdiction from the trial court. Period. A conviction resting upon a *void* indictment is a wrongful conviction.

94.    See *Hoffler v. Bezio,* 726 F.3d 144 (2d Cir. 2013).[15]

95.    Id. at 157: An acquittal before a court having no jurisdiction is, of course, like all

the proceedings in the case, absolutely *void*, and therefore no bar to subsequent indictment and trial in a court which has jurisdiction of the offense. But, although the indictment was fatally defective, yet, *if the court had jurisdiction of the cause and of the party,* its judgment is not *void*, but only *void*able by writ of error. Id. at 669–70, 16 S.Ct. 1192 (emphasis added; citations omitted); see 6 Wayne R. LaFave et al., Criminal Procedure § 25.1(d) (3d ed.2012) (noting that *Ball* rejected broad view of jurisdictional error, instead holding that court needs only "authority ... to render judgment" for jeopardy to attach). Having concluded that the defective indictment rendered the judgment *void*able, but not *void*, the Court held that jeopardy attached at trial and that the government could not retry the defendant for murder. See *Ball v. United States,* 163 U.S. at 670, 16 S.Ct. 1192; accord *Kepner v. United States,* 195 U.S. 100, 130, 24 S.Ct. 797, 49 L.Ed. 114 (1904) ("It is, then, the settled law of this court that former jeopardy includes one who has been acquitted by a verdict duly rendered, although no judgment be entered on the verdict, and it was found upon a defective indictment."); *Illinois v. Somerville,* 410 U.S. 458, 467–69, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973) (concluding jeopardy attached in state trial on defective indictment).

96.    This was in the context of double jeopardy.

97.    Id. at n. 11:

The distinction between *void* and *void*able judgments is of less significance to a defendant initially found guilty because a reversal on either ground will generally

---

[15] Hoffler v. Bezio, 726 F.3d 144 (C.A.2 (N.Y.),2013)

result in his retrial, either because jeopardy never attached, in the rare case of a *void* judgment, or because it never terminated, in the more common case of a *void*able judgment. See *infra* at [159–60]. Thus, the question of whether Hoffler's reversed judgment of conviction was *void* or *void*able is pertinent only insofar as it bears on the issue of whether a reviewing court was obliged to rule on his sufficiency challenge before ordering retrial.

98.      In the context of statutory rape convictions, the legal doctrines are dispositive in Gakuba's favor.

99.      *In re B.A.*, 562 S.E.2d 605 (N.C. Ct. App. 2002)[16]

100.     Id.: Respondent asserts that the petition failed to allege all the essential elements

of the offense, and argues that the petition was fatally defective, did not confer jurisdiction on the trial court, and the trial court erred by not dismissing the petition. We agree.

Respondent did not raise this issue at her adjudication hearing. Where an issue is raised for the first time on appeal, this Court generally reviews only for plain error. *State v. Sams,* ___ N.C. App. ___, 557 S.E.2d 638 (2001). **However, jurisdiction may be challenged at any time, and, if the petition is invalid, it does not confer jurisdiction on the trial court.** *State v. Ackerman,* 144 N.C. App. 452, 464, 551 S.E.2d 139, 147, cert. denied, 354 N.C. 221, 554 S.E.2d 344 (2001) ("where an indictment is alleged to be invalid on its face, depriving the trial court of its jurisdiction, a challenge may be made at any time").

To confer jurisdiction, a charging document must "give defendant sufficient notice of the charge against him, to enable him to prepare his defense, and to raise the bar of double jeopardy in the event he is again brought to trial for the same offenses," and "[a]n indictment not meeting these standards will not support a conviction." *State v. Ingram,* 20 N.C. App. 464, 466, 201 S.E.2d 532, 534 (1974). A juvenile petition is held to the same standard as the charging document in an adult proceeding. *In re Burrus,* 275 N.C. 517, 530, 169 S.E.2d 879, 887 (1969) ("[n]otice must be given in juvenile proceedings which would be deemed constitutionally adequate in a civil or criminal proceeding").

**Where the illegality of sexual activity is based upon the relative ages of the parties, age is an essential element.** *State v. Locklear,* **138 N.C. App. 549, 531 S.E.2d 853, disc. review denied, 352 N.C. 359, 544 S.E.2d 553 (2000) (age of parties essential element of prosecution for statutory rape; new trial awarded where police officer asked defendant his date of birth without being warned of his legal rights).** Failure to allege an essential element renders a juvenile petition invalid, and deprives the trial court of jurisdiction. *State v. Bowen,* **139 N.C. App.**

---

[16]  In re B.A., 149 N.C.App. 667 (N.C.App.,2002) ;  In re Griffin, 162 N.C.App. 487 (N.C.App.,2004)

**18, 533 S.E.2d 248 (2000) (where indictment does not allege that defendant was at least six years older than victim, trial court lacked jurisdiction, and failure to dismiss charge of statutory sexual offense is plain error);** *In re Davis,* 114 N.C. App. 253, 441 S.E.2d 696 (1994) (juvenile entitled to adjudication upon valid petition; subject matter jurisdiction cannot be conferred by invalid charging document, or by waiver, consent, or estoppel).

101.    Here, the undisputed facts are that Gakuba's Hollywood Video rental records established who Gakuba was—including his birthdate.

102.    Any claims to the contrary are patently false.[17]

103.    See *People v. Gakuba,* 2017 Ill. App. 2d 150744 (Ill. App. Ct. 2017).[18]

104.    Id. at ¶¶49-50:

¶49: "We disagree and conclude that defendant's name and age were derived from sources independent of any illegal police conduct."

¶50: "[IL state police] O'Brien testified that [] the hotel advised O'Brien that the room was registered to 'Peter Gakuba.' This occurred prior to O'Brien contacting the video store, entering defendant's hotel room, or interviewing hm at the police station."

105.    March 13, 2009 pretrial hearing, state prosecutor ("ASA") Kate Kurtz proclaimed the true chronology **(Direct Appeal Record: C1006-1009)**:

KURTZ:    **"Oh Hollywood Video. They [(state police)] went to Hollywood Video. They find out Peter Gakuba rented videos. The same videos that [(complainant)] Matthew S. [("MS")] told them he rented. They went to the hotel. Hey, do you have a guy here by this name[?] Gee, we sure do[.] At that point they absolutely 100% had probable cause." (R484)**

106.    January 13, 2007 pretrial hearing **(Direct Appeal Record C1012-1016)**—

KURTZ:    "Just briefly, the defendant [] says his detention and arrest was without probable cause[.] O'Brien went through the details [] after

---

[17] *People v. Gakuba,* 2019 Ill. App. 2d 170794 (Ill. App. Ct. 2019) (post conviction petition appeal; affirms citing *res judicata*).
[18] People v. Gakuba, 2019 WL 320168 (Ill.App. 2 Dist., 2019)

meeting with the victim what he did to confirm. He even went to Hollywood Video, where—" (R291-292)

THE COURT: "Uh-huh." (R291-292)

KURTZ:     "Somebody by the same name as the person renting the hotel room where Matt said this 'Phil' was, had rented the same exact name in Hollywood Video, had rented these videos[.] So there was, in fact, probable cause."

107.    Inverting the chronological sequence of events was no mere error—in light of the overwhelming and undisputed record—but calculated judicial overreach by irrationally biased and prejudiced preceding IL state and federal judges. 5th and 14th Amendments violations.

108.    Likewise, the ruling that the "Evidence that police learned defendant's name and birth date through routine booking process was properly admitted as it was ascertained independently from any illegally obtained evidence" is baseless. *People v. Gakuba,* 2017 Ill. App. 2d 150744 (Ill. App. Ct. 2017) at ¶1.[19]

109.    As a matter of fact, no evidence exists of this delusion. None.

110.    See accord *Whitfield v. Lashbrook,* 2018 US DIST LEXIS 155262 (ND. IL 09/12/2018), *Whitfield v. Lashbrook,* 2018 WL 4352623 (N.D.Ill., 2018) (at 17: Illinois recording law 725 ILCS 5/103.21 mandates that confessions resulting from custodial interrogations are presumptively inadmissible unless they are recorded. *USA v. Thurman,* 889 F.3d 356, 366 (7th Cir. 2018) United States v. Thurman, 889 F.3d 356 (C.A.7 (Ill.), 2018); *USA v. Montgomery,* 309 F.3d 1013, 1017 (7th Cir. 2009) (IL law requires the recording of custodial interrogations.)) U.S. v. Montgomery, 390 F.3d 1013 (C.A.7 (Ill.), 2004) .

111.    See accord *People v. Whitfield,* 78 N.E.3d 1015, 2018 IL App (2d) 140878 ¶¶100-

---

[19] People v. Gakuba, 2017 WL 1278078 (Ill.App. 2 Dist., 2017)

101 (discusses reliability of unrecorded custodial statements) Id at ¶100 (1038): "The evidence on this point was conflicting. [Police] testified that the defendant did make these [incriminating] statements; the defendant denied that."[20]

112.    Id. at ¶101 (1038):

Here[,] the state sought to present evidence of an inculpatory statement allegedly made by the defendant that was unrecorded. **Further, there were no other statements by the defendant to support either the existence or the reliability of the purported statement.** We believe that both of these facts, when coupled with the lack of corroboration of [the police's] testimony, weigh in favor of a conclusion that **the state did not meet its burden under the recording statute to show that the presumption against admitting the purported statement was overcome.**

113.    Citation to *Pennsylvania v. Muniz*, 496 U.S. 582, 601 (1990) is unavailing because Muniz's "booking" was recorded.  Not so here. *Muniz* at 586-86: "Muniz was informed that his actions and voice were being **recorded**."[21]

114.    However, Gakuba's "affidavit" *does* exist categorically denying this false/fabricated "booking process – version" Q&A and Gakuba's fabricated hearsay response. **(Direct Appeal Record C1019-1025).**

115.    On June 5, 2014 it was announced and hand tendered to both the trial judge and prosecutor by *pro se* Gakuba.  **See Attach. 5 (RC193-260).**

116.    It was ignored by everyone, to date.

117.    See *McShane v. Cate,* 636 Fed. Appx. 410, 412 (9th Cir. 2016) ('a state court's fact-finding process is fatally undermined when the court 'has before it, yet apparently ignores, evidence that is highly probative and central to petitioner's claim.' *Milke v. Ryan,* 711 F.3d 998,

---

[20] People v. Whitfield, 2017 IL App (2d) 140878 (Ill.App. 2 Dist., 2017)
[21] Pennsylvania v. Muniz, 496 U.S. 582 (U.S.Pa.,1990)

1008 (9th Cir. 2013); see *Miller-El v. Cockrell,* 537 US 322, 346 (2003) (noting that the state court 'had before it, and apparently ignored,' testimony relevant to the correct inquiry)).[22]

118.    As a matter of law, it fails too.

119.    Gakuba's arrest was illegal; just as the ex post facto / post hoc fabricated search warrants were illegal because they were *Franks* perjury by IL state police O'Brien as a cover-up of the illegal 4th Amendment *Brown / Dunaway* home invasion.

120.    The absurdity that the search of Gakuba was illegal—but not the simultaneous seizure of Gakuba—was an objectively unreasonable assessment of facts.

121.    To date, other than wholly conclusory delusions by preceding police and court officers, no citation to *any* authority exists.

122.    Worse still, these malfeasors recklessly disregard all the on-point dispositive case laws cited by Gakuba.

123.    Specifically, accord *USA v. Hastings,* 246 F. Supp. 3d 1163, 1167-68, 1178, 1181-83 (ED. TX 2017). United States v. Hastings, 246 F.Supp.3d 1163 (E.D.Tex., 2017)

124.    **On-point** *USA v. Hastings,* 246 F.Supp. 3d 1163 (ED. TX 2017) (suppression motion granted: illegal 4th Amendment *Brown / Dunaway* home invasion into hotel room; no warrant; no inevitable discovery). United States v. Hastings, 246 F.Supp.3d 1163 (E.D.Tex., 2017)

125.    Id. at 1168: Magistrate judge recommended that **"all evidence, physical <u>and</u> <u>testimonial</u>, obtained or derived from or through or as a result of the unlawful search, seizure, interrogation, arrest and detention of Hastings be suppressed."**

---

[22] McShane v. Cate, 636 Fed.Appx. 410 (C.A.9 (Cal.), 2016)

126.    And the fantasy that a "booking process" was "independent" evidence is inapposite to all the prevailing case law authorities cited by Gakuba—which nobody disputes—rather they recklessly disregard.

127.    See **on-point** (dispositive to Gakuba) ***State v. Locklear*, 138 N.C. App. 549, 550 (N.C. Ct. App. 2000)** (held: The trial court erred in a first-degree statutory rape case under N.C.G.S. § 14-27.7A(a) by admitting the investigating officer's testimony of defendant's statement of his date of birth during the booking process without the benefit of the *Miranda* warnings.) (cites *Rhode Island v. Innis*, 446 U.S. 291, 301, 64 L.Ed.2d 297, 308 (1980) (interrogation under *Miranda* consist of questions "the police should know are reasonably likely to elicit an incriminating response")). State v. Locklear, 138 N.C.App. 549 (N.C.App.,2000) , In re B.A., 149 N.C.App. 667 (N.C.App.,2002) In re Griffin, 162 N.C.App. 487 (N.C.App.,2004)

128.    18 USC §2710(d) mandates suppression of all Gakuba's "personally identifiable information"—as relevant here, his name and birthdate. In perpetuity.

129.    This includes a "grand jury." Gakuba's indictment is *void ab initio*; permanently incurable.

130.    **The indictment is *void ab initio*.** O'Brien's and Kurtz's receipt of Gakuba's "personally identifiable information" (i.e. name and birthdate) was barred by federal law as the crime investigation was an "other proceeding ... in or before [an] other authority of the United States, [and] a State." 18 USC §2710(d).

131.    And this precedential case of first impression must grant Gakuba's habeas petition.

### 5. Red Herrings and Divagations—*Pro se* Re-Invocation 3-6 "Weeks Before Trial" Denial as a "Delay Tactic" was STRUCTURAL ERROR—Never Upheld by ANY Court of Review ... Until NOW, Here

132. It's well established that challenges to a court's jurisdiction can be made at any time, as occurred here.

133. It is undisputed fact that Gakuba's biographical information—name and birthdate—where illegally obtained in violation of the Video Privacy Protection Act by Illinois police and court officers warranting its exclusion by statute from every proceeding before every authority of the United States or a state. 18 USC §2710(b)(2)(C), 18 USC §2710(d), 18 USC §2710(e).

134. Moreover, it is undisputed fact that all the preceding courts promote a false/fabricated "booking process-version" and Gakuba's fabricated hearsay response which was *Napue* perjury by an adjudge *Franks* search warrant affiant perjurer: Illinois police Charles O'Brien.

135. As a matter of fact if fails. Period.

136. Neither the lower court(s) (much less anyone else) can cite anywhere in the preceding cases or records of this occurrence; all the while deliberately ignoring Gakuba's **"Affidavit of Peter Gakuba Stating That He Gave No Testimonial Evidence or Statements During His November 2006 'Booking Process." (C55-62)**

137. See *Cairel v. Alderson,* 821 F.3d 823, 830 (7th Cir. 2016) (affidavits are admissible evidence); *Figuerra v. Mazza,* 825 F.3d 89, 109 n.15 (2nd Cir. 2016) (affidavits are substantive evidence).[23]

138. On-point: accord *People v. Whitfield,* 2017 IL App (2d) 140878 ¶¶100-101 (all

---

[23] Cairel v. Alderden, 821 F.3d 823 (C.A.7 (Ill.), 2016) ; Figueroa v. Mazza, 825 F.3d 89 (C.A.2 (N.Y.), 2016)

unrecorded hearsay statements police allege defendant made, which defendant denies having made, are inadmissible); see also accord *People v. Little,* 51 N.E.3d 1001, 2016 IL App (3d) 140124 ¶47 (all purported inculpatory statements / admissions not audio video recorded are inadmissible; "Similarly, the statutory language does not limit the videotaping requirements to investigations solely related to murder cases." Cites **725 ILCS 5/103-2.l(b)** (West 2010) (audio video recordings of custodial interrogations-not just murders, mandate recordation)).[24]

139.    Consequently, adjudged *Franks* (affiant search warrant) perjurer O'Brien's grand jury testimony as to Gakuba's name and birthdate were poisoned fruit proscribed by clear federal law: 18 USC §2710(d).

140.    **The resultant indictment is *void* as a result.  Not *void*able—but *void ab initio*.**

141.    Nowhere in the 30-page appellee's response does it cite on-point to where any prior ruling by any prior Illinois state (or federal) court had denied these undisputed facts and application of the law—much less attempted to distinguish with objective reasoning Gakuba's "affidavit" and cited laws—by the U.S. Supreme Court—that a "booking process—version" Q&A specific to the crimes charged is not a 5th Amendment violation, as a matter of law?

142.    Instead, all the preceding courts have deliberately ignored these arguments in a wanton and reckless disregard for the truth.

143.    **Jurist nullification.**

144.    Wrongful convictions are plainly a function of malfunctional courts, as this case illustrates.  The objectively unreasonable factual assessments were used to not apply the law.

> a. **6th Amendment *pro se* right re-invocation 3-6 "weeks before trial" DENIED as a "delay tactic"; objectively unreasonable assessment of the**

---

[24] People v. Whitfield, 2017 IL App (2d) 140878 (Ill.App. 2 Dist., 2017) ; People v. Little, 2016 IL App (3d) 140124 (Ill.App. 3 Dist., 2016)

**facts and application of the law—Structural Error—illustrating the irrational bias and prejudice of all the preceding courts (5th & 14th Amends. viols.—structural error too)**

145.    For example, Gakuba's 6th Amendment *pro se* right re-invocation 3-6 "weeks before trial" was DENIED as a "delay tactic." Structural error.

146.    See *People v. Gakuba*, 2017 Ill. App. 2d 150744 (Ill. App. Ct. 2017).[25]

147.    Id. at *41 / ¶89:

**On March 31, 2015, less than a month before the scheduled trial date of April 27, 2015,** defendant again requested the substitution of counsel. When that request was denied, defendant insisted on representing himself. The trial court denied the request, explaining that it was merely the latest in a series of tactics precipitated by a desire to delay the commencement of defendant's trial. **Given the history of this case, we cannot say that the trial court's conclusion is arbitrary, fanciful, or unreasonable,** or that no reasonable person would take the view adopted by the court. Accordingly, we reject defendant's claim that the trial court abused its discretion in denying his motion to represent himself less than a month prior to the scheduled trial date.

148.    See accord *Tamplin v. Muniz*, 894 F.3d 1076 (9th Cir. 2018) (COA, habeas grant: *pro se* right denied, untimely).[26]

149.    *Tamplin* at 1088-89: "Tamplin made a new request to represent himself [] exactly two weeks before [trial.] Tamplin's request was timely." Id. at 1089: "Even if the state court had relied on untimeliness in denying habeas, we would not give AEDPA deference to that conclusion [due to] clear factual error[.]"

Id. at 1093, n.3: "Footnote in *Faretta* indicates he attempted on three occasions to have the trial court appoint and pay for private counsel for him. 422 US at 808, n.5."

Id. at 1092: **"[Dissenting:] *Faretta* certainly does not preclude the trial court's consideration of the entire record."**

---

[25] People v. Gakuba, 2017 WL 1278078 (Ill.App. 2 Dist., 2017)
[26] Tamplin v. Muniz, 894 F.3d 1076 (C.A.9 (Cal.), 2018)

150.    See *Imani v. Pollard,* 826 F.3d 939, 947 (7th Cir. 2016) (federal habeas relief granted: denial of 6th Amendment *pro se* right four weeks before trial, cites *Faretta v. California,* 422 US 806, 835 (1975) ("weeks before trial" denial of *pro se* right a constitutional error)).[27]

151.    See *State v. Egerson,* 916 N.W.2d 833 (Wis. Ct. App. 2018), (at ¶¶ 20-25—*Imani* cited: "Furthermore, the trial court noted that continued complains about his attorney" would result in waiver of counsel, then self-representation.).[28]

152.    See *People v. Washington,* 2016 IL App (1st) 13198 ¶18 ("100 motions" filed by *pro se* defendant; *pro se* right denial—structural error—reversed and remanded).[29]

153.    This is the FIRST and ONLY post-*Faretta* case of a 6th Amendment *pro se* right violation (as a "delay tactic" (when the record contradicts this objectively unreasonable fact)) in existence. Ever.

154.    **If the preceding courts cannot be relied upon to reverse structural error, it renders the whole of their opinions untrustworthy and unreliable.**

155.    See accord *McShane v. Cate,* 636 Fed. Appx. 410 (9th Cir. 2016) (habeas grant – ineffective assistance of trial counsel) (at 412: "A state court's fact-finding process is fatally undermined when the court 'has before it, yet apparently ignores, evidence that is highly probative and central to petitioner's claim.' *Milke v. Ryan,* 711 F.3d 998, 1008 (9th Cir. 2013)) (See *Miller-El v. Cockrell,* 537 US 322, 346 (2003) (noting that the state court 'had before it, and apparently ignored' testimony relevant to the correct inquiry)").[30]

---

[27] Imani v. Pollard, 826 F.3d 939 (C.A.7 (Wis.), 2016)
[28] State v. Egerson, 383 Wis.2d 718 (Wis.App., 2018) ; State v. Egerson, 2018 Wl App 49
[29] People v. Washington, 2016 IL App (1st) 131198 (Ill.App. 1 Dist., 2016)
[30] McShane v. Cate, 636 Fed.Appx. 410 (C.A.9 (Cal.), 2016)

156. Consequently, *Milke v. Ryan,* 711 F.3d 998 (9th Cir. 2013) is a near carbon copy to Gakuba's case.[31]

157. Milke was wrongly convicted on the basis of false and fabricated *Napue* trial testimony to Milke's fabricated inculpatory statements. Despite Milke protesting her innocence and denying ever having made any inculpatory statements. The police officer who perjured himself at trial had a history of perjury—just like Gakuba's police officer was adjudged to have been a *Franks* affiant perjurer resulting in all the post hoc / ex post warrants in the case being quashed.

158. All preceding courts affirm the objectively unreasonable factual assessments that Gakuba made inculpatory statements, but, fail to cite anywhere in the record to this—and recklessly disregard Gakuba's affidavit which Gakuba repeatedly had cited to vehemently denying ever making any inculpatory statements at all.

159. Like *Milke*, Gakuba's habeas petition must be granted as a matter of law.

160. Not only for structural error reasons, but, because an adjudged *Franks* perjurer in affidavits was allowed to go sanction free resulting in *Napue* perjury by this same police officer at Gakuba's 2.5 day jury trial. See *Gakuba v. O'Brien,* 711 F.3d 751 (7th Cir. 2013).[32]

161. In conclusion, all Gakuba's state and federal statutory and constitutional rights were violated throughout this malicious prosecution. Structural, plain, and clear errors. 28 USC §2254(d)(1)-(2).

162. Structural error by USDC-ND IL Judge Kapala when he wrongly and unlawfully decided Gakuba's habeas while he presided over Gakuba's extant *pro se* civil suits—in violation of local rules.

---

[31] Milke v. Ryan, 711 F.3d 998 (C.A.9 (Ariz.),2013)
[32] Gakuba v. O'Brien, 711 F.3d 751 (C.A.7 (Ill.), 2013)

163.    Judge Kapala was undisputedly biased and prejudiced as the plain record reveals he upheld another structural error: Gakuba's 6th Amendment violation to proceed *pro se* 3-6 "weeks before trial" as a "delay tactic"; a baseless allegation rebutted by the undisputed record that the only "delay" ever sought was the asst. public defender's day-of-trial continuance motion which was heard and denied.  Thus, so too would have been *pro se* Gakuba's.[33]

164.    The affirmance of these structural, plain, and clear errors by the USCA7 when, in identical habeas cases, they reversed—is no mere error, but, calculated judicial overreach by an irrationally biased and prejudiced federal circuit court.

165.    As the 2020 elections in America revealed, false conclusions about election fraud, without any basis in fact, is flatly wrong.

166.    See *Trump v. Sec'y Pennsylvania*, No. 20-3371 (3d Cir. Nov. 27, 2020).[34]

167.    Id. at *2: Free, fair elections are the lifeblood of our democracy. Charges of unfairness are serious. **But calling an election unfair does not make it so. Charges require specific allegations and then proof. We have neither here.**

168.    See AP News, *"In blistering ruling, judge throws out Trump suit in Pa."* (visited 05/28/22 as with all cited sites in this pleading) https://apnews.com/article/judge-throws-out-trump-suit-pennsylvania-87eaf4df86d5f6ccc343c3385c9ba86c

169.    This case illustrates when federal judges' rulings are say-so denials without "specific[s]"; and worse, contrary to the overwhelming undisputed facts plainly found in the voluminous records in this case.

---

[33] Note: Gakuba re-invoked *pro se* status after seeking the county public defender's office to aid in witness subpoena issuances; which they flatly refused.  Worse still, at the 1-day jury trial for witness testimony, they called no defense witnesses of their own. Ineffective assistance of counsel violation.
[34] https://case-law.vlex.com/vid/trump-v-sec-pennsylvania-885192714
Donald J. Trump for President, Inc. v. Sec'y Pennsylvania, 830 Fed. Appx. 377

170.    USDC-ND IL Judge Alonso's denial of Gakuba's Rule 60(b)(6) motion in *Gakuba*, 17-cv-50337 (USDC-ND IL) fails to specify how Gakuba's flagrant and egregious due process rights' and equal protection rights' by irrationally biased and prejudiced preceding federal district and circuit judges who deliberately ignored the undisputed facts plainly contained in the record, does not constitute the very "extraordinary" circumstance that 5th and 14th Amendments' mandates to fair, impartial judges applying with equal protection the rights of Gakuba under numerous state and federal statutory and constitutional law?  Is not "extraordinary"? Given that it is flagrant and egregious structural errors? Gakuba has diligently—and timely—petitioned and argued for 10+ years now? *Gakuba v. Grissom*, 17-cv-50337 (USDC-ND IL) (ECF 133).

171.    Made worse by the wholly conclusory DENIAL and sanctions by the USCA7 in a facile ruling that neither was thoughtful, fact based, nor had any reasoning whatsoever.

172.    *Ipse dixit.*

173.    Jurist nullification.

174.    Manifest bias and prejudice by malfunctional preceding state and federal courts. Structural error.  5th and 14th Amendments violations.

175.    The very systemic racial injustice that undermines public confidence—much less Gakuba's—in a judiciary that abets the miscarriage of justice by layering one objectively unreasonable factual and legal ruling on top of another; then subsequent courts of review citing to the fatally flawed *ipse dixit* objectively unreasonable ruling for affirmance.

### B. Habeas Due Process Violation on "Mixed" Petition Requires a Re-Do / Do-Over of the Habeas Proceeding per *Sparks v. Dorethy*, 2018 US App. Lexis 32265 (01/09/2018 USCA7) (cites *Rhines v. Weber*, 544 US 269 (2005))[35]

---

[35] Sparks v. Dorethy, 2018 U.S. App. LEXIS 32265 ; Rhines v. Weber, 544 U.S. 269 ; Rose v. Lundy,

## 1. *Sparks v. Dorethy,* 2018 US App. Lexis 32265 (01/09/2018 USCA7)

176.    Gakuba's *pro se* second-in-time petition was thoughtful, fact-based, and well-reasoned having specified that the prior habeas was branded a "mixed" petition and USDC-ND IL Judge Kapala dismissed the "unexhausted" claims while deciding the "exhausted" ones.

177.    This violated ***Rose v. Lundy***, 455 US 509 (1982) and ***Rhines v. Weber***, 544 US 269 (2005). Affirmed by the USCA7. *Gakuba v. Neese*, 18-3398 (USCA7).[36]

178.    Gakuba filed a Fed. R. Civ. P. Rule 60(b) motion per *Gonzalez v. Crosby*, 545 US 524 (2005) to correct the *Rose* and *Rhines* plain errors.[37]

179.    The USCA7 denied relief, then threatened sanctions.  Sanctions were threatened too in 2013-14 when Gakuba was insistent upon enforcement of his rights under the Video Privacy Protection Act, 18 USC §2710(b)(2)(C), §2710(d), §2710(e) and was summarily denied equal protection under the law by an irrationally biased and prejudiced federal judiciary.

180.    All this was detailed in Gakuba's habeas petition and "Jurisdiction / Venue Statement" which Judge Singal plainly did not read one single page of—much less one single word from.

181.    Habeas petitions deal with **FEDERAL** law and venue is where the petitioner is "in custody" which, Gakuba being a parolee and sex offender registrant –allows for the Maine's federal district and circuit court(s) to right this wrong.

182.    A travesty and miscarriage of justice.

---

455 U.S. 509 (U.S.Tenn.,1982)
[36] Rose v. Lundy, 455 U.S. 509 (U.S.Tenn.,1982)
[37] Gonzalez v. Crosby, 545 U.S. 524 (U.S.,2005)

### a. Errors of Fact and Law Mandating Reversal

183.    05/31/2017 Sparks' petition for a certificate of appealability was docketed. *Sparks v. Dorethy,* 17-2135 (USCA7) (ECF 1).

184.    01/09/2018 it was adjudicated.

185.    It preceded Gakuba's own petition for a certificate of appealability filed that year.

186.    01/09/2018 the USCA7 *sua sponte* granted the C.O.A. on the violation of Sparks' habeas due process rights on "mixed" petitions.  (ECF 23)

187.    Moreover, it flagged the habeas due process violation and sought briefing from Sparks who failed to do so.  (ECF 15-21)

188.    Nevertheless, vacatur was the just result.

189.    All the while Gakuba's identical "mixed" habeas petition due process violation was before the USCA7—shortly after ruling on Sparks—the USCA7 deliberately ignores the very same "mixed" habeas due process violation that occurred with Gakuba, that had occurred to Sparks.

190.    *Sparks v. Dorethy,* 2018 US App. LEXIS 32265 **1-3 (01/09/18) (cites *Rhines v. Weber,* 544 US 269 (2005)).[38]

191.    Id at **1-2: "Judge [Kapala] dismissed the unexhausted claims and proceeded to

> decide the rest. The judge did not wait for Sparks [/Gakuba] to decide whether to amend the petition so that it contained only exhausted claims. Instead, the court treated the opportunity extended by **Rhines** as one that can be accepted by the judge. Yet the choice belongs to the petitioner, and failing to protest the judge's decision to proceed is not an effective choice to dismiss the unexhausted claims. Giving the choice about dismissing the unexhausted claims to the judge rather than the litigant would about to overruling **Lundy**, which **Rhines** did not do. Once dismissed, claims cannot be reasserted in a later collateral attack without appellate approval for a 2nd or successive petition. Sparks [/Gakuba] had never manifested his consent to having the unexhausted claims treated that way."

---

[38] Sparks v. Dorethy, 2018 U.S. App. LEXIS 32265 ; Rhines v. Weber, 544 U.S. 269

192. And because every preceding federal district and circuit judge presiding over this case disposed of it in wholly conclusory, boiler plate terms—notably the 6th Amendment structural error of self-representation—the conclusion that there are no "underlying constitutional violations" when Judge Kapala ruled there to be (just he fabricated an opinion using fanciful and objectively unreasonable contrivances of the law), cannot be dismissed as mere error.

193. But calculated judicial overreach by an irrationally biased and prejudiced federal judiciary.

194. *Gakuba v. O'Brien*, 12-cv-7296 and *Gakuba v. Karner*, 12-cv-50218 (USDC-ND IL) are pending *pro se* civil suits which hinge on the vacatur of Gakuba's wrongful convictions.

195. It's a 1st Amendment retaliation violation for IL and federal police and court officers to conspire to deny Gakuba his rights under the U.S. Constitution.

196. And the layering of specious conclusions of law and fact—one adjudication on top of another—when Gakuba had presented detailed pleadings with records and offers of proof for support, plainly reveals IL and federal police and court officers insidiously complicit in this legal lynching.

197. No case exists—none—of a *pro se* criminal defendant being denied his right (to re-invoke no less) *pro se* status 3-6 "weeks before trial" as a "delay tactic" when no delay was ever sought by Gakuba, but by APD Gustafson on the trial date itself.  Heard and denied.

198. But because the preceding presiding judges are abetting a malicious prosecution, Gakuba undoubtedly expects any subsequent federal district or circuit judge to aid in affirming these undisputed wrongful convictions.

199. Rule 60(b)(6) compels adherence to all Gakuba's federal and state constitutional and statutory rights.

200. It was not done here, necessitating Rule 60(b)(6) to correct these flagrant and egregious violations of federal constitution and statutory law.

201. Judicial notice must be made of the detailed prior litigation in the USCA7 and in other federal circuits by *pro se* Gakuba. All have been dismissed in wholly conclusory, boilerplate one to two sentence orders.

202. *Ipse dixit.*

203. See *Spitznas v. Boone*, 464 F.3d 1213, 1215-16 (10th Cir. 2016) (under *Gonzalez v. Crosby*, 545 US 524 (2005) a 60(b) motion is truly such if it "either (1) challenges only a procedural ruling of the habeas court ... or (2) challenges a defect in the integrity of the federal habeas proceeding[.]").[39]

204. See also *Arrieta v. Battaglia*, 461 F.3d 861 (7th Cir. 2006) (*Rhines v. Weber* and *Gonzalez v. Crosby*). *Gakuba*, 20-1137 (USCA7) (ECF 9: memorandum of law, *Arrieta* cited).[40]

205. *Arrieta* at 864: Rule 60 is available to reopen previously dismissed habeas petitions per 28 USC §2254 provided relief sought does not attack resolution of claims on the merits. *Gonzalez v. Crosby*, 125 S.Ct. 2641, 2649 (2005) ("Rule 60(b) has an unquestionably valid role to play in habeas cases.").

206. The undisputed facts are that the 6th Amendment *pro se* re-invocation right by Gakuba 3-6 "weeks before trial" was structural error which the USCA7 granted habeas relief at least four times before denying the identical relief to Gakuba.

207. This was due to their irrational bias and prejudice.

---

[39] Spitznas v. Boone, 464 F.3d 1213 (C.A.10 (Okla.),2006)
[40] Arrieta v. Battaglia, 461 F.3d 861 (C.A.7 (Ill.),2006)

208.    All the preceding courts' (impliedly) wholly conclusory claim that "mixed" habeas petition due process violations are (impliedly) harmless error if there are no underlying constitutional violations, is contrary to *Sparks* which cites *Rose v. Lundy* for support.

## C. Structural Error: N.D. IL Local Rule 40.3(b)(1)(C)-(D) Was Flagrantly and Egregiously Violated by Judge Kapala; Disregarded by Judge Alonso[41]

### 1. N.D. IL Local Rule 40.3(b)(1)(C)-(D)[42]

209.    May 27, 2022 Judge Alonso DENIED Gakuba's Rule 60(b)(6) motion in this first habeas petition case. *Gakuba v. Grissom*, 17-cv-50337 (USDC-ND IL) (ECF 133).

210.    Notable in this denial was the denial to consolidate this habeas petition with a civil case. See *Gakuba v. Maher*, 22-cv-50092 (USDC-ND IL).

211.    Id. at ECF 133 Page ID #10312: With respect to Gakuba's motions to have this case and Case No. 22 C 50092 decided by the same judge, **this Court's local rules direct that cases seeking habeas corpus relief should not be assigned to the same judge presiding over a civil rights case filed by the petitioner, and vice-versa.** See N.D. Ill. Local Rule 40.3(b)(1)(C)-(D); *Glaus v. Anderson*, 408 F.3d 382, 386-89 (7th Cir. 2005) (explaining the difference between cases seeking habeas corpus relief and civil rights cases).[43]

212.    The problem: *this* habeas petition *was* decided and denied by USDC-ND IL Judge Kapala while he *also* presided over Gakuba's "civil rights case[s]." See *Gakuba v. O'Brien*, 12-cv-7296 and *Gakuba v. Karner*, 13-cv-50337 (USDC-ND IL, W. Div.).

213.    Therefore, Gakuba was undisputedly denied his rights under the 5th and 14th Amendments' due process and equal protection clauses.

---

[41] https://www.ilnd.uscourts.gov/LocalRules.aspx
[42] https://www.ilnd.uscourts.gov/LocalRules.aspx
[43] Glaus v. Anderson, 408 F.3d 382 (C.A.7 (Ill.).2005)

214.    Since 2012, Gakuba has "vociferously" and repeatedly argued that the Rockford state and federal judges were irrationally biased and prejudiced against him.

215.    *Gakuba v. O'Brien* was filed in Chicago, IL for that very reason.  On appeal from dismissal of that case, the USCA7 seemingly agreed.  See *Gakuba v. O'Brien,* 711 F.3d 751, 753 (7th Cir. 2013) (venue is "appropriate" in either Chicago or Rockford).[44]

216.    Nonetheless, the case (upon remand) was wrongfully transferred *sua sponte* by USDC-ND IL Judge Castillo when Gakuba filed a substitution of judge motion against Judge Castillo.

217.    *Gakuba v. Rains,* 17-cv-6719 (USDC-ND IL) was Gakuba's initial habeas petition.

218.    It was filed in Chicago.  It contained a "jurisdiction/venue" statement specifically pleading for venue to remain in Chicago due to bias and prejudice Gakuba experienced before the Rockford state and federal judges.

219.    Judge Blakey disregarded this undisputed fact and *sua sponte* transferred the case anyway to the W. Division where it was assigned to Judge Kapala—who also presided over Gakuba's pending civil suits.

220.    That *sua sponte* transferred habeas petition occurred over Gakuba's "vociferous" objections plainly pleading a "jurisdiction / venue" statement.  See *Gakuba,* 17-cv-50337, ECF 1 Page 21 of 92 Page ID #21.

221.    Id. at Page ID #21:

**III.    Jurisdiction / Venue**

The USDC-ND IL, E. Div. (Chicago)

See *Gakuba v. O'Brien,* 711 F.3d 751, 753 (7th Cir. 2013) ("we note that although the district court could have transferred the case to the western division, see 28 USC §1404(a), venue would be proper in either division, see id §1391(b)(2);

---

[44] <u>Gakuba v. O'Brien, 711 F.3d 751 (C.A.7 (Ill.), 2013)</u>

*Graham v. UPS,* 519 F.Supp.2d 801, 809 (USDC-ND IL 2007) (Rockford, IL resident's Chicago venue choice was proper).

Note: On remand, and in response to Gakuba's "Motion to Substitute Judge" for cause, that case's presiding Judge Castillo *sua sponte* ordered that case to be transferred to the W. Division—Rockford citing the mandate of the U.S. Court of Appeals—7th ("USCA7"). Wrong. A vindictive and retaliatory act by a biased and prejudiced federal district judge who denied every single one of Gakuba's motions in that case resulting in appellate review vacating the final judgment.

Rather than ruling on the merits of the substitution of judge motion, Judge Castillo evaded doing so—in violation of the "mandate" rule—by perversely citing the mandate of the USCA7 as its basis. A mandamus writ will be filed in the future to restore justice, law and order.

Worse still, the Rockford, IL federal magistrates and judges had at the inception of this state criminal case rubber-stamped warrants and presided over grand juries (in a concomitant FBI dragnet) that plainly illegally obtained, and, illegally were in receipt of Gakuba's identity evidence. See 18 USC §§2710 (b)(2)(C), (d); *Gakuba v. Karner,* 3:13-cv-50218-FJK (USDC-ND IL, W. Div.); Gakuba's opening brief p.1 n.1.

**Gakuba would object vociferously to any jurisdiction/venue change, consequently.**

222.    Gakuba complained about this *per se* conflict: Judge Kapala's irrational bias and prejudice in his subsequent pleading before the USCA7: "Petition for Rehearing / Hearing En Banc for Certificate of Appealability." See *Gakuba v. Neese,* 18-3398 (USCA7) (ECF 31-1 Page 37 ((21-24) of 304)).

223.    Id. at 21-24 of 304:

**IV.    NEW ISSUE: Structural Error—Federal District Judge Kapala's Irrational Bias and Prejudice**

**A.    Background**

In 2012 Gakuba sued 39 Illinois state and federal law enforcement agents, officers by bringing suit in Chicago versus Rockford. (The majority of these defendants are Rockford-based.) See *Gakuba v. O'Brien,* 12-cv-7296 (USDC-ND IL); 711 F.3d. 751, 753 (7th Cir. 2013). Then USDC-ND IL Judge Castillo denied every *pro se* motion by Gakuba then dismissed without prejudice the 42 USC §1983

claims ignoring altogether the 18 USC §2710, §2721 claims. Judge Castillo then responded to Gakuba's *pro se* motion to substitute judge for cause by *sua sponte* transferring the case to Rockford citing the USCA7's mandate, and, over Gakuba's ad hoc objections.

In 2017 Gakuba filed his 28 USC §2254 *pro se* habeas in Chicago. *Gakuba v. Rains*, 17-cv-6719 (USDC-ND IL). The 60-page habeas contained a "jurisdictional statement" that Gakuba would vociferously object to a *sua sponte* venue change citing to *Gakuba,* 711 F.3d at 753.

Six weeks later, the assigned Chicago judge *sua sponte* transferred the case to Rockford. Habeas cases being ostensibly time critical, Gakuba forwent an appeal that would have let to delay and may have proven fruitless.

Commendably, Judge Kapala found merit in short order: a couple weeks, November 2017. Briefing concluded in February 2018. *Gakuba v. Brannon,* 17-cv-50337 (USDC-ND IL). Then the wait began for a decision. Every 60-days Gakuba requested a decision, status report per Local Rule 78.5. All were ignored. Yet, in *Gakuba v. O'Brien,* status reports had been required every 90-days.

After six months of waiting yielding nothing, Gakuba's August 2018 "Motion to Lift Stay" in *Gakuba v. O'Brien* was granted. An aggressive litigation schedule was set. In a September 2018 ruling on Gakuba's August 2018 motions, Magistrate Johnston's "Report and Recommendation" ("R&R") denied Gakuba's "Motion for Equitable Relief—TRO, preliminary and permanent injunction, declaratory judgment"—then denied Gakuba's "Motion for Change of Venue from Rockford to Chicago" in the opposite order Gakuba requested in a letter to the court clerk to file first the venue change motion such that Gakuba could immediately appeal the denial. While Gakuba was denied any say in the *sua sponte* Chicago to Rockford transfers, Judge Kapala *sua sponte* ordered the defendants to respond to Gakuba's venue transfer motion. *Heck* was invoked by Magistrate Johnson to deny all equitable relief. Only Rockford federal prosecutors and a Rockford state judge (Schafer) responded. Largely, they parroted the R&R's *Heck* rubric which IL state defendants invoked in 2015 to get the case dismissed. *O'Brien,* 12-cv-7296 (USDC-ND IL) (ECF #279, ID 1476—"*Heck*" defense dismissal argument).

October 2018 Judge Kapala issued a 16-page habeas ruling that scissor pasted wholesale the state's 16-page habeas answer/response. No independent review of the state appeal's record was made, and it ignored completely Gakuba's 6th Amendment public trial right addressed by the IL App. Court and Gakuba's habeas. *Gakuba-2017* at ¶56. Habeas petition pp. 24-25. This was no mere error but calculated judicial overreach by irrationally biased and prejudiced judges.

**B.    Discussion**

It is well established that *Heck* bars civil suits against government malfeasors and tortfeasors as proof of such in a civil suit necessarily impinges upon the integrity of the criminal conviction which the wrongly convicted challenge. Also, it is well established that magistrates serve as proxies for judges. In Rockford, there is only one magistrate answering to one judge. They do not work independently. Rather, they are interdependent. So much so that Gakuba finds that it rarely happens that magistrate and judge fail to see eye-to-eye on pending cases.

As Gakuba complained in *pro se* filings in August 2012 thru October 2013 in *O'Brien,* 12-cv-7296 that the magistrate's R&R invoking *Heck* foreshadowed prejudgment in the then ostensibly pending habeas petition, *Brannon,* 17-cv-50337, those fears and suspicions became reality as the habeas was denied, and, so too a certificate of appealability ("COA").

Simply stated, the totality-of-the-circumstances of both these interrelated cases reveals rank bias and prejudice. By concluding, prejudging Gakuba's guilt in Gakuba's pending civil suit—*O'Brien,* 12-cv-7296—it rendered the habeas denial and denial of a COA a mere formality. And as history played out, indeed it was. Structural error. See accord *Franklin v. McCaughtry,* 398 F.3d 955, 961 (7th Cir. 2005) (habeas grant—judge bias) (at 961: despite using "alleged" exemplifying Franklin's case for recidivism, trial judge "prejudged Franklin's case" and presumed guilt).[45]

Here, the "alleged" is the magistrate's R&R. But because Judge Kapala knew of and approved of its findings by ordering defendants' response, it was merely the fig leaf of cover for the formality of denying habeas/COA and concurrence in all respects with the magistrate's R&R.

Gakuba finds no case law precedence of a federal judge presiding over a civil suit holding liable numerous small town government actors—the judge's hometown which he resides in retirement—then being the same judge over a federal habeas writ, which if granted, would result in substantial monetary damages (already a $52 million default judgment awaits) against many many government agents whom Judge Kapala presumptively regards highly through his working relationships as a former IL App. Court – 2nd District appellate judge (where Gakuba's direct appeal failed); and former Rockford circuit and associate judge, and preceding that, a former Rockford prosecutor. These relationships span a lifetime and were Gakuba's wrongful convictions vacated—as they should by law, 14th Amendment fabrications—then this "not from our community" aggrieved party prevailing in a malicious prosecution puts at risk the jobs and law careers of said Rockford tort- and malfeasors according to the (retired) trial judge—as advocated—when vouching for police and prosecutors. See Issue #6—habeas petition.

---

[45] <u>Franklin v. McCaughtry, 398 F.3d 955 (C.A.7 (Wis.),2005)</u>

THE COURT: "Why is everyone out to get you? **Why you as opposed to me or anyone else on the face of earth?** What's your theory that [] **Ms. Kurtz has targeted you as the one who she is willing to risk her law license and her entire career over?** I just have a hard time wrapping my head around that? And every, **why every police officer would be willing to risk their career to get you[?]**" (emphasis)

July 19, 2013 pretrial hearing, pp. 57-58.[46]

Should the USCA7 deny Gakuba justice by denying a COA then it should transparently do so in a thoughtful, fact-based, well-reasoned ruling, citing every case whereby the presiding federal district judge in a habeas writ was one-and-the-same judge presiding over a pending civil suit which wholly depended on that habeas being granted.

Moreover, to remove even the slightest appearances of judge bias and prejudice, remand the case for a thorough and independent review of the state direct appeal's record consistent with *Nasby v. McDaniel,* 853 F.3d 1049, 1052 (9th Cir. 2017) with reassignment to a judge not presiding over the civil case. Circuit Rule 36. Accord *USA v. El-Bey,* 873 F.3d 1015 (7th Cir. 2017) (the judge's bias was structural error for, no matter the degree of guilt, due process dictates fairness).[47,48]

224.    Yet, despite the self-evident *per se* conflict of interest and violation of local rules barring federal district judges from presiding over Gakuba's *pro se* civil suits (extant)--all the while determining Gakuba's *pro se* habeas petition (which those civil suits' standing hinged upon)—none of the preceding federal district nor circuit judges acknowledged it.

225.    See *McShane v. Cate,* 636 Fed. Appx. 410, 412 (9th Cir. 2016) ('a state court's fact-finding process is fatally undermined when the court 'has before it, yet apparently ignores, evidence that is highly probative and central to petitioner's claim.' *Milke v. Ryan,* 711 F.3d 998,

---

[46] *Gakuba v. Neese,* 18-3398 (USCA7) (ECF 31-2 Pages: 267 (139 of 304)
[47] Nasby v. McDaniel, 853 F.3d 1049 (C.A.9 (Nev.), 2017)
[48] United States v. El-Bey, 873 F.3d 1015 (C.A.7 (Ill.), 2017)

1008 (9th Cir. 2013);[49] see *Miller-El v. Cockrell,* 537 US 322, 346 (2003) (noting that the state court 'had before it, and apparently ignored,' testimony relevant to the correct inquiry).[50]

226.    Here, Judge Alonso—like all the preceding federal district and circuit judges before him—"has before [him], yet apparently ignores, evidence that is highly probative and central to [Gakuba's] claim." See *Milke,* 711 F.3d at 1008.

227.    This deliberate ignorance of the facts has continually led now to an objectively unreasonable application of the law. Once again. 5th and 14th Amendments violations.

228.    And, despite citing to the correct and controlling case law authorities, Judge Alonso's denial is wholly conclusory and contrary to those cited laws' mandates.

229.    Mandates which were flagrantly and egregiously violated.

230.    Violations which were no mere error, but calculated judicial overreach by irrationally biased and prejudiced state and federal trial and appeals court judges. 5th and 14th Amendments violations. Structural error.

231.    Consequently, as a matter of law, having malfunctional preceding courts cite the correct laws, misstate the facts—when they're not deliberately ignoring them—to then deny justice in wholly conclusory legal conclusions which are contrary to the controlling laws' mandates', is truly "extraordinary."

## 2. Structural Error—Irrationally Biased and Prejudiced Federal Judges; Deliberate Ignorance of the Facts—Objectively Unreasonable, Contrary Applications of the Law

232.    Were Judge Alonso, or any other federal judge, to continually deny Gakuba justice in objectively unreasonable assessments of facts and applications of laws—or contrarily so—then

---

[49] Milke v. Ryan, 711 F.3d 998 (C.A.9 (Ariz.),2013)
[50] McShane v. Cate, 636 Fed.Appx. 410 (C.A.9 (Cal.), 2016)

they should cite to other cases in the USDC-ND IL whereby a federal district judge presiding over extant *pro se* civil suits by a *pro se* wrongfully convicted person, had also ruled on that *pro se* person's habeas petition too? A "mixed" habeas petition at that.

233.    Note: subsequent to Judge Alonso's denial, Rockford, IL Judge Kapala's successor (former Magistrate) Judge Johnston and semi-retired Judge Reinhard had both recused themselves from Gakuba's 2022 *pro se* civil suits and this Rule 60(b) motion when it was transferred from Chicago back to Rockford; hence, how it came before Judge Alonso for disposition.

234.    FRE 201: see *Gakuba v. Maher*, 22-cv-50092 (USDC-ND IL) (ECF 22) (Judge Johnston's recusal)

235.    FRE 201: see *Gakuba v. Neese*, 17-cv-50337 (USDC-ND IL) (ECF 129) (Judge Reinhard's recusal)

236.    Consequently, Judge Alonso's denial's citation relies on dictum.  See ECF 133 Page 2 of 3 Page ID #10311, ¶4.

237.    Id. at Page ID #10311, ¶4: "Relief under Rule 60(b)(6) requires a showing of

> 'extraordinary circumstances' justifying the reopening of a final judgment and '[s]uch circumstances will rarely occur in the habeas context.'" *Arrieta v. Battaglia*, 461 F.3d 861, 865 (7th Cir. 2006).

238.    It deliberately ignores the cited decisions' *gravitas*.

239.    Gravitas cited by Gakuba in his Rule 60(b) motion. See ECF 107 Page 9 of 14 Page ID #3552, ¶¶60-61.

240.    Id. at ¶¶60-61:

> ¶60.    See also *Arrieta v. Battaglia*, 461 F.3d 861 (7th Cir. 2006) (*Rhines v. Weber* and *Gonzalez v. Crosby*).  *Gakuba*, 20-1137 (USCA7) (ECF 9: memorandum of law, *Arrieta* cited).[51]

---

[51] Arrieta v. Battaglia, 461 F.3d 861 (C.A.7 (Ill.),2006)

¶61. *Arrieta* at 864: **Rule 60 is available to reopen previously dismissed habeas petitions per 28 USC §2254 provided relief sought does not attack resolution of claims on the merits.** *Gonzalez v. Crosby,* 125 S.Ct. 2641, 2649 (2005) ("Rule 60(b) has an unquestionably valid role to play in habeas cases.").

241.  And be it Rule 60(b)(6) or, more generally, any of the other subsections of this controlling authority, Gakuba's *pro se* pleading is to be liberally construed.

242.  Gakuba raised his 5th and 14th Amendments violations to be free from an irrationally biased and prejudiced federal district judge repeatedly. Rockford federal district judges.

243.  First, in his "jurisdiction/venue" statement of the original petition. See supra ¶12.

244.  Then, in his appeal's pleading: "Petition for Rehearing / Hearing En Banc for Certificate of Appealability." See *Gakuba v. Neese,* 18-3398 (USCA7) (ECF 31-1 Page 37 ((21-24) of 304)).

245.  Now, undisputedly, the Rockford federal district judges implicitly concede their bias and prejudice (at a minimum *per se* conflict) pursuant to "local rules [which] direct that cases seeking habeas corpus relief should not be assigned to the same judge presiding over a civil rights case filed by the petitioner, and vice-versa. *See* N.D. Ill. Local Rule 40.3(b)(1)(C)-(D); *Glaus v. Anderson,* 408 F.3d 382, 386-89 (7th Cir. 2005) (explaining the difference between cases seeking habeas corpus relief and civil rights cases)." **See Attachment(s) 1-1 & 1-2.**

246.  It is no wonder that public confidence in the justice system is low given the history of injustice in America's apartheid of treating black and brown people like "trash"—according to USCA7 Judge Richard Posner (retired). See accord ABA Journal, "Posner: Most judges regard *pro se* litigants as 'kind of trash not worth the time'" (visited 10/13/2021 https://www.abajournal.com/news/article/posner_most_judges_regard_pro_se_litigants_as_kind_of_trash_nor_worth_the_t )

247.   In short, the IL state courts—and especially, now, federal judiciary—have delivered the ultimate sanction: **jurist nullification.**

248.   Grant this appeal, expedite briefing and re-assign this case before a fair-minded, impartial judge who does not illustrate the very claim by Judge Posner (supra ¶14) that *pro se* litigants are treated like "trash" by a federal judiciary such as this one and, frankly, every one Gakuba has been a *pro se* litigant in or before.

## D. *In re Torrence,* 828 Fed. Appx. 877, 881-82 (4th Cir. Oct. 2020)[52]

249.   **This is not a "second / successive" habeas petition, but a second-in-time one.**

250.   It must be granted without further delay.  By an impartial, fair-minded judge.

251.   In the district Gakuba is "in custody"—this one.

252.   See *In re Torrence,* 828 Fed. Appx. 877, 881-82 (4th Cir. Oct. 2020).

253.   *Id.* at 881-882:

Torrence diligently attempted to a*void* piecemeal litigation by including all of his claims in his first §2254 petition and moving for a stay and abeyance. In these circumstances — where the parole eligibility claim did not ripen until 2004, the claim may be meritorious, and it was promptly included in the initial § 2254 petition — the district court likely erred in denying the stay-and-abeyance motion. Accordingly, we are satisfied that Torrence has not abused the writ and that his second-in-time petition *882 is not "second or successive" within the meaning of § 2244(b)(3). Cf. *Martinez-Villareal,* 523 U.S. at 644, 118 S.Ct. 1618 ("[N]one of our cases ... have ever suggested that a prisoner whose habeas petition was dismissed for failure to exhaust state remedies, and who then did exhaust those remedies and returned to federal court, was by such action filing a successive petition."). Torrence therefore does not need this Court's authorization to file the § 2254 petition, and his § 2244(b) motion is unnecessary.

---

[52] <u>In re Torrence, 828 Fed. Appx. 877</u>

254.    Cf. *Slack v. McDaniel,* **529 U.S. 473, 485–86 (2000)** (holding that a 'habeas petition filed in the district court after an initial habeas petition was unadjudicated on its merits and dismissed for failure to exhaust state remedies is not a second or successive petition')."[53]

## E. *Slack v. McDaniel,* **529 U.S. 473, 485–86 (2000)**[54]

255.    Consequently, the conclusory ruling cited in the lower court's dismissal illustrates the irrational bias and prejudice manifested in the malfunctional Illinois courts.

256.    The problem: none of the federal courts ever disputed Gakuba's first habeas petition was a "mixed" one.  Instead, they simply ignored its substance and analyzed the pleading under the criteria of 28 USC §2844 et seq.

257.    Thus, Judge Singal was well within his discretion to rule on *this* habeas petition's merits; GRANTING habeas relief must occur as soon as possible—as a matter of law.

## 1.  Venue HERE Before an Impartial Judge—not Jurist Nullification

258.    This does not augur to transfer the case to Illinois for adjudication.

---

[53] Slack v. McDaniel, 529 U.S. 473 (U.S.,2000)
[54] Slack v. McDaniel, 529 U.S. 473 (U.S.,2000)

259. Rather, it is dispositive proof that the furtherance of justice mandates that the merits of Gakuba's second-in-time federal habeas petition be decided by a fair and impartial judge.

260. Cf. **Slack v. McDaniel, 529 U.S. 473, 485–86 (2000)** (holding that a 'habeas petition filed in the district court after an initial habeas petition was unadjudicated on its merits and dismissed for failure to exhaust state remedies is not a second or successive petition')."[55]

261. This is objectively reasonable as habeas corpus procedures requires **only U.S. Supreme Court precedence to control**—not that of wholly conclusory *ipse dixit* denials by a wrathful and irrationally biased and prejudiced USCA7.

## IV. Gakuba is Blackballed / Blacklisted by ALL Preceding Courts: Bigotry—by Irrationally Biased and Prejudiced State and Federal Courts. Structural Error. 5th & 14th Amendments Violations

### A. Affirmation of Structural Error: the 6th Amendment *pro se* right DENIED 3-6 "weeks before trial" as a "delay tactic" (baseless)

262. And because Gakuba has been blackballed / blacklisted by the malfunctional Illinois state and federal courts, it would be objectively unreasonable to pursue justice before them.

263. Courts which denied Gakuba's 6th Amendment right to be *pro se* 3-6 "weeks before trial" as a "delay tactic" when Gakuba sought no delay; but asst. public defender Shauna Gustafson did citing ill-preparedness—on the day-of-trial, no less. Heard and denied. Thus, had *pro se* Gakuba sought a day-of-trial continuance, it too would have been denied.

264. **Structural error.**

265. <u>Note</u>: Gakuba was *pro se* for 18-months during the nine-year pendency of his criminal case—a record in the United States—and only sought the assistance of the public defender

---

[55] <u>Slack v. McDaniel, 529 U.S. 473 (U.S.,2000)</u>

for witness subpoena summonses (which the corrupt public defender refused to do (as they refused Gakuba's repeated demands that they withdraw from the case).

266.     Despite these undisputed facts, all the malfunctional Illinois courts—state and federal—affirmed **structural error** in wholly conclusory rulings that cited *dicta* in their legal authorities when the holdings of those citations was that the habeas petitioner's 6th Amendment right to be *pro se* at trial was violated.  See *Imani v. Pollard,* 826 F.3d 939, 946-47 (7th Cir2016).

267.     See accord *Tamplin v. Muniz,* 894 F.3d 1076 (9th Cir. 2018) (COA, habeas grant: *pro se* right denied, untimely).[56]

268.     *Tamplin* at 1088-89: "Tamplin made a new request to represent himself [] exactly

two weeks before [trial.] Tamplin's request was timely." Id. at 1089: "Even if the state court had relied on untimeliness in denying habeas, we would not give AEDPA deference to that conclusion [due to] clear factual error[.]"

Id. at 1093, n.3: "Footnote in *Faretta* indicates he attempted on three occasions to have the trial court appoint and pay for private counsel for him. 422 US at 808, n.5."

Id. at 1092: **"[Dissenting:]** *Faretta* **certainly does not preclude the trial court's consideration of the entire record."**

269.     Cf. *People v. Gakuba,* 2017 Ill. App. 2d 150744 (Ill. App. Ct. 2017).[57]

270.     Id. at *41 / ¶89:

**On March 31, 2015, less than a month before the scheduled trial date of April 27, 2015,** defendant again requested the substitution of counsel. When that request was denied, defendant insisted on representing himself. The trial court denied the request, explaining that it was merely the latest in a series of tactics precipitated by a desire to delay the commencement of defendant's trial. **Given the history of this case, we cannot say that the trial court's conclusion is arbitrary, fanciful, or unreasonable,** or that no reasonable person would take the view adopted by the court. Accordingly, we reject defendant's claim that the trial court abused its discretion in denying his motion to represent himself less than a month prior to the scheduled trial date.

---

[56] Tamplin v. Muniz, 894 F.3d 1076 (C.A.9 (Cal.), 2018)
[57] People v. Gakuba, 2017 WL 1278078 (Ill.App. 2 Dist., 2017)

271. Since 2017, while Gakuba's first-in-time *pro se* habeas was pending the U.S. Court of Appeals—7th Circuit GRANTED four (4) habeas petitions on this structural error: the 6th Amendment *pro se* right violation.

272. **One.** See *Freeman v. Pierce,* 878 F.3d 580, 588 (7th Cir. 2017) ("'Nothing in *Faretta* or its progeny allows the judge to require the defendant to prove he is making the choice for a reason the judge finds satisfactory.' *Imani,* 836 F.3d at 945.").[58]

273. **Two.** *State v. Egerson,* 916 N.W.2d 833 (Wis. Ct. App. 2018) (at ¶¶ 20-25—*Imani* cited: "Furthermore, the trial court noted that continued complains about his attorney" would result in waiver of counsel, then self-representation.).[59]

274. **Three.** See *Imani v. Pollard,* 826 F.3d 939, 947 (7th Cir. 2016) (federal habeas relief granted: denial of 6th Amendment *pro se* right four weeks before trial, cites *Faretta v. California,* 422 US 806, 835 (1975) ("weeks before trial" denial of *pro se* right a constitutional error)).[60]

275. **Four.** *People v. Washington,* 2016 IL App (1st) 13198 ¶18 ("100 motions" filed by *pro se* defendant).[61]

276. **Contra** *USA v. Banks,* 828 F.3d 609, 615 (7th Cir. 2016) (five (5) separate times replaced defense lawyers, the final one (B.Brindley) on first (1st) day of trial in order to go *pro se*; cites *USA v. Volpentesta,* 727 F.3d 666, 677-78 (7th Cir. 2013) (defendant's waiver of counsel "was a strategic decision he made so that he could pursue the case as he desired").[62]

---

[58] Freeman v. Pierce, 878 F.3d 580 (7th Cir. 2017)
[59] State v. Egerson, 383 Wis.2d 718 (Wis.App., 2018) ; State v. Egerson, 2018 WI App 49
[60] Imani v. Pollard, 826 F.3d 939 (7th Cir. 2016)
[61] People v. Washington, 2016 IL App (1st) 131198, 64 N.E.3d 28
[62] United States v. Banks, 828 F.3d 609 (7th Cir. 2016)

277.    Note: *USA v. Volpentesta,* 727 F.3d 666, 677-78 (7th Cir. 2013) affirmed Volpentesta's *pro se* right (appealed as erroneous) by USDC-ND IL Judge Kapala—the same federal district judge whose *per se* conflict-of-interest was manifest in objectively unreasonable assessments of fact, contrary to his own *pro se* rights' case precedence, much less that of every other federal circuit court too.[63]

## B. *Franks* adjudged affiant perjurer—Illinois police O'Brien—then committed *Napue* trial perjury as to a false/fabricated "booking process—version" and Gakuba's fabricated hearsay response

### 1. On-Point: *Milke v. Ryan,* 711 F.3d 998 (9th Cir. 2013)[64]

278.    No prior state or federal court dares to dispute Gakuba's facts or legal citations.

279.    Instead, they recklessly disregard them.

280.    See accord *McShane v. Cate,* 636 Fed. Appx. 410 (9th Cir. 2016) (habeas grant – ineffective assistance of trial counsel) (at 412: "A state court's fact-finding process is fatally undermined when the court 'has before it, yet apparently ignores, evidence that is highly probative and central to petitioner's claim.' *Milke v. Ryan,* 711 F.3d 998, 1008 (9th Cir. 2013)) (See *Miller-El v. Cockrell,* 537 US 322, 346 (2003) (noting that the state court 'had before it, and apparently ignored' testimony relevant to the correct inquiry)").[65]

281.    Consequently, *Milke v. Ryan,* 711 F.3d 998 (9th Cir. 2013) is a near carbon copy to Gakuba's case.[66]

---

[63] United States v. Volpentesta, 727 F.3d 666 (7th Cir. 2013)
[64] Milke v. Ryan, 711 F.3d 998 (C.A.9 (Ariz.),2013)
[65] McShane v. Cate, 636 Fed.Appx. 410 (C.A.9 (Cal.), 2016)
[66] Milke v. Ryan, 711 F.3d 998 (C.A.9 (Ariz.),2013)

282.     Milke was wrongly convicted on the basis of false and fabricated *Napue* trial testimony to Milke's fabricated inculpatory statements.  Despite Milke protesting her innocence and denying ever having made any inculpatory statements.  The police officer who perjured himself at trial had a history of perjury—just like Gakuba's police officer was adjudged to have been a *Franks* affiant perjurer resulting in all the post hoc / ex post warrants in the case being quashed.

283.     All preceding courts affirm the objectively unreasonable factual assessments that Gakuba made inculpatory statements, but, fail to cite anywhere in the record to this—and recklessly disregard Gakuba's affidavit which Gakuba repeatedly had cited to vehemently denying ever making any inculpatory statements at all.

284.     Like *Milke*, Gakuba's habeas petition must be granted as a matter of law.

285.     Not only for structural error reasons, but, because an adjudged *Franks* perjurer in affidavits was allowed to go sanction free resulting in *Napue* perjury by this same police officer at Gakuba's 2.5 day jury trial.  See *Gakuba v. O'Brien*, 711 F.3d 751 (7th Cir. 2013).[67]

## 2. On-Point: *Baca v. Adams*, 777 F.3d 1034 (9th Cir. 2015)[68]

286.     Like Baca, Gakuba's wrongful convictions rest on prosecutorial misconduct by knowingly using false/fabricated affiant and trial witness testimony as *Franks* and *Napue* violations.

287.     **Like Baca, all the preceding courts condone such flagrant and egregious violations of the 5th and 14th Amendments.**

---

[67] Gakuba v. O'Brien, 711 F.3d 751 (C.A.7 (Ill.), 2013)
[68] Baca v. Adams, 777 F.3d 1034 (C.A.9 (Cal.),2015)

288.    See Above the Law, "Ninth Circuit Orders Release Of Man Due To Prosecutorial Misconduct. Check out the video; arguing this case probably wasn't fun for the government lawyer."        https://abovethelaw.com/2015/02/ninth-circuit-orders-release-of-man-due-to-prosecutorial-misconduct/

289.    Gakuba's cited authorities for the objectively unreasonable application of law were recklessly disregarded—if not deliberately ignored.

290.    See **on-point** (dispositive to Gakuba) *State v. Locklear*, **138 N.C. App. 549, 550 (N.C. Ct. App. 2000)** (held: The trial court erred in a first-degree statutory rape case under N.C.G.S. § 14-27.7A(a) by admitting the investigating officer's testimony of defendant's statement of his date of birth during the booking process without the benefit of the *Miranda* warnings.) (cites *Rhode Island v. Innis*, 446 U.S. 291, 301, 64 L.Ed.2d 297, 308 (1980) (interrogation under *Miranda* consist of questions "the police should know are reasonably likely to elicit an incriminating response")). State v. Locklear, 138 N.C.App. 549 (N.C.App.,2000) , In re B.A., 149 N.C.App. 667 (N.C.App.,2002) In re Griffin, 162 N.C.App. 487 (N.C.App.,2004)

291.    This was no mere error, but, calculated judicial overreach.

292.    **Jurist nullification.**  By all the preceding courts who, like Baca, condone railroading of actually innocent criminal defendants when they should be condemning it.

293.    See *People v. Johnson*, 208 Ill.2d 53, 115 ("**It is improper to argue assumptions or facts not based upon the evidence in the record.** *Kliner*, 185 Ill.2d at 151.") (emphasis); accord *Seymour v. Collins*, 2015 IL 118432 ¶50. See also *Owens v. Duncan*, 781 F.3d 360, 362 (7th Cir. 2015) (habeas grant: wrongful convictions based "on evidence that did not exist"; 14th Amendment violations).

294.    See *People v. Johnson*, 208 Ill.2d 53, 65 (2003) (citing law articles to expose the problem of prosecutorial misconduct, "a problem that courts across the country have, for the most part, been unable or unwilling to correct.").

## C. Prosecutorial Misconduct—Spoliation of ALL Discovery

295.    In April 2021, Gakuba paroled from prison and immediately sought ALL the discovery in his case.

296.    Both the public defenders and prosecutors refused to give them to him.

297.    Worse still, they now have submitted sworn affidavits that ALL the discovery in the case was ORDERED by them to be destroyed in 2018—despite state law banning it, and, there being *Brady* and *Giglio* violations. **See Attachment(s) 3.**

298.    It's an undisputed conscience of guilt.

299.    Both a cover-up and undisputed evidence that the judiciary was rigged from the get-go; as they only could have destroyed ALL the discovery (while Gakuba's post conviction collateral attacks were pending) if they were assured by conspiratorial state and federal judges that there would be no re-trial of Gakuba.

300.    Indeed, thus far, all the preceding courts have engaged in rank jurist nullification. Stonewalling. Objectively unreasonable factual assessments used to not enforce the law.  28 USC §2254(d)(1)-(2).

301.    Yet, despite their false affidavit stating that ALL Gakuba's discovery was destroyed in 2018, Gakuba's state court docket plainly reveals that in 2020 these very same malign and

criminally minded prosecutors had sought to civilly commit Gakuba as a violent sex offender—permanently.[69]

| | *DATE ▸ 06/22/2021 | *JUDGE ▸ Maher, Brendan | MICROFILM NUMBER ▸ |
|---|---|---|---|
| ☐ | SEALED ▸ | CODE ▸ CT DDDD | |
| | *TEXT ▸ Document Filed by Defense: Expedited Motion for Discovery per IL S. Ct. Rule 412 as a Digital File- Hearing Requested filed by Peter Gakuba | | |
| | *DATE ▸ 06/22/2021 | *JUDGE ▸ Maher, Brendan | MICROFILM NUMBER ▸ |
| ☐ | SEALED ▸ | CODE ▸ CT DDDD | |
| | *TEXT ▸ Document Filed by Defense: Expedited Motion for Fee-Free Appellate Record as a Digital File- Hearing Requested filed by Peter Gakuba | | |
| | *DATE ▸ 06/22/2021 | *JUDGE ▸ Maher, Brendan | MICROFILM NUMBER ▸ |
| ☐ | SEALED ▸ | CODE ▸ CT DDDD | |
| | *TEXT ▸ Document Filed by Defense: Notice of Address Change filed by Peter Gakuba | | |
| | *DATE ▸ 10/28/2020 | *JUDGE ▸ Maher, Brendan | MICROFILM NUMBER ▸ |
| ☐ | SEALED ▸ | CODE ▸ CT EMAIL | |
| | *TEXT ▸ Email Notification Sent: S/A Andrew Fisk / copy of SOE file stamped 06/29/2015 is ready for pick-up | | |
| | *DATE ▸ 10/27/2020 | *JUDGE ▸ Maher, Brendan | MICROFILM NUMBER ▸ |
| ☐ | SEALED ▸ | CODE ▸ CT ORDE | |
| | *TEXT ▸ Document Filed: Order / Re: SOE | | |
| | *DATE ▸ 05/09/2019 | *JUDGE ▸ Maher, Brendan | MICROFILM NUMBER ▸ |
| ☐ | SEALED ▸ | CODE ▸ AP ORAF | |
| | *TEXT ▸ Document Filed: Appellate Court Second District Mandate filed, Trial Court Judgment Affirmed | | |

302.    No prior state nor federal criminal conviction ever has affirmed so many violations of federal statutory and constitutional law.

303.    This Court must condemn such flagrant and egregious miscarriages of justice—and GRANT Gakuba's *pro se* federal habeas petition as a matter of law.

304.    The venue of conviction for habeas proceedings is foreclosed by the history of Gakuba's fruitless efforts in seeking equal protection, equal justice under the law.

## V.    Jurist Nullification—like *Baca v. Adams*—Mandates the GRANT of Gakuba's *pro se* Federal Habeas Petition by a Fair and Impartial Jurist. 5th and 14th Amendments

305.    Having ANY IL federal or state court be the venue for this habeas petition is akin to releasing Christina Eilman "into the lions' den at the Brookfield Zoo." (The California woman

---

[69]

https://fce.wincoil.us/fullcourtweb/partyCasesSearchResults.do?searchType=subjectDetail&searched=false&TotalRecords=0&PageNumber=0

who jumped out of a housing project to a*void* being raped by gang members in 2006.) See

*Kathleen ex rel. Estate of Eilman v. Cason*, No. 10-1487 (7th Cir. Apr. 26, 2012) at **15-16.[70]

306.    *Kathleen* at *16: See *Bowers v. DeVito*, 686 F.2d 616, 618 (7th Cir. 1982) (**"throwing someone into a snake pit would violate the due process clause"**).[71]

307.    Three (3) undisputed structural errors occurred here: the 6th Amendment public trial right violation, the 6th Amendment *pro se* re-invocation 3-6 "weeks before trial" violation, by bigoted IL federal and state court officers (5th and 14th Amendments violations).

308.    **The history of Gakuba's legal travails show state and federal appeals courts threatening sanctions upon Gakuba for zealous *pro se* advocacy; proceeded by the ultimate sanction: jurist nullification.**

309.    For the above stated reasons, Gakuba's first habeas petition was *void ab initio* for calculated judicial overreach—denying Gakuba even elementary habeas due process procedure per *Rose* and *Rhines*.

310.    For the simple fact that he is black—and **zealously *pro se*.**

311.    This was the very irrational bias and prejudice retired U.S. Court of Appeals –7th (USCA7) Circuit Judge Richard Posner complained of when he outted the federal judiciary for treating *pro se* litigants like "trash." A 5th and 14th Amendment violation.[72]

312.    See accord ABA Journal, "Posner: Most judges regard *pro se* litigants as **'kind of trash          not          worth          the          time.'"**

---

[70] Paine v. Cason, 678 F.3d 500 (C.A.7 (Ill.), 2012)
[71] Bowers v. DeVito, 686 F.2d 616 (C.A.7 (Ill.), 1982)
[72] See accord *USA v. El-Bey*, 873 F.3d 1015, 1019 (7th Cir. 2017) (Judge Posner presides over a tax fraud case whereby he shows irritation and hostility towards the *pro se* defendant, ironic; reversed and remanded) United States v. El-Bey, 873 F.3d 1015 (C.A.7 (Ill.), 2017)

https://www.abajournal.com/news/article/posner_most_judges_regard_pro_se_litigants_as_kind
_of_trash_nor_worth_the_t )

313.    The federal judiciary's means to that "trash[y]" end is via the scissor pasting of lawyers' pleadings, thereby adopting it wholesale as their own.

314.    See Prison Legal News, "Former Seventh Circuit Judge Posner Founds Short-Lived Project to Help *Pro se* Litigants": "The former jurist said he retired from the bench because the

> justice system was far from just when it came to *pro se* litigants. He explained that **judges** would **often copy and paste** from briefs submitted by seasoned lawyers when writing their opinions, giving *pro se* litigants the impression their motions were not independently analyzed and emphasizing the power imbalance between *pro se* litigants and opposing counsel, which is an abdication of the judge's official duty          as          a          neutral          arbiter."
> https://www.prisonlegalnews.org/news/2020/jan/9/former-seventh-circuit-judge-posner-founds-short-lived-project-help-pro-se-litigants/

## VI.    Conclusion

315.    In conclusion, federal district courts may grant petitions for writs of habeas corpus "within their respective jurisdictions." 28 U.S.C. § 2241(a). The Supreme Court has interpreted this phrase to require "nothing more than that the court issuing the writ have jurisdiction over the custodian" of the petitioner. ***Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 494-95 (1973)** ("The writ . . . does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody."). Thus, a court's jurisdiction to consider a habeas petition may be predicated on the location of the petitioner's custodian, not only on the location of the petitioner himself. *Id.* at 495. Indeed, "it is now clear that a habeas corpus petition may be brought in any court with jurisdiction over the prisoner or [his] custodian." *Smart v. Goord*, 21 F. Supp.2d 309 (S.D. NY) (at 314: (citing *Fest v. Bartee*, 804 F.2d 559, 560 (9th Cir. 1986))).[73]

---

[73] https://en.wikipedia.org/wiki/Braden_v._30th_Judicial_Circuit_Court_of_Kentucky

316.    The factors that a court considers in determining whether or not to transfer a case to another district include: (1) the locus of operative facts; (2) the location of relevant documents and ease of access to proof; (3) the forum court's familiarity with the governing law; (4) whether a change will result in more efficiency and justice; (5) the convenience of the witnesses and parties; (6) the availability of process to compel witness testimony; (7) the petitioner's choice of forum; and (8) the relative means of the parties. See, e.g., *Smart*, 21 F. Supp.2d at 315; *Balboa v. Sizer*, 899 F. Supp. 186, 187 (S.D.N.Y. 1995) (citations omitted); see also *Braden*, 410 U.S. at 493-94.[74]

317.    Generally, **motions to transfer venue** lie within the "discretion of the district court and **are determined upon notions of convenience and fairness on a case-by-case basis.**" *Balboa*, 899 F. Supp. at 187 (quoting *In re: Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992)).

318.    It would be shear madness—**insanity**—to allow the very malfunctional IL state and federal courts who denied substantive "mixed" habeas petition due process rights, much less numerous clear, plain, and structural errors (notably the 6th Amendment *pro se* right denial 3-6 "weeks before trial" as a "delay tactic" when the only delay-er was Gakuba's appointed lawyer via a day-of-trial continuance motion (citing ill-preparedness) heard and denied ... thus ... assuming arguendo, a *pro se* "delay" would have been denied too) to then adjudge the very habeas petition that was denied summarily in wholly conclusory rulings.

319.    ***Ipse dixit*** rulings rise to the level of irrational and wholly incredible.

320.    Insanity.

321.    The lodestar of this entire case rests solely on enforcement of well settled, long established federal privacy law: the Video Privacy Protection Act.

---

Fest v. Bartee, 804 F.2d 559
[74] Balboa v. Sizer, 899 F. Supp. 186  Braden v. 30th Judicial Circuit Court, 410 U.S. 484

322.    To date, not a single malfunctional state nor federal court will enforce (equally) Gakuba's 14th Amendment right to equal protection and enforcement of his rights under federal statutory and constitutional law.

323.    Federal laws are best decided by federal courts—which is the sole passport for federal habeas relief (not violations of state law).

324.    Again, here, this deliberate ignorance / reckless disregard for Gakuba's rights 'shocks the conscience'—explaining why states imposed extradition procedures to bar the malicious prosecution of citizens by bigots—as occurred here. Calculated judicial overreach by irrationally biased and prejudiced state and federal judges.

325.    Gakuba must be allowed to vindicate his innocence in this second-in-time habeas petition and be afforded a thoughtful, fact based, and well-reasoned review by an impartial federal judiciary.

326.    To do otherwise will be confirmation that systematic racial injustice is America's apartheid.

327.    Violations that span structural, plain, and clear errors. 28 USC §2254(d)(1)-(2).

328.    Blackballing / blacklisting an 'uppity' black man is the travesty of justice that the history of American jurisprudence is rife with.[75]

---

[75] In fact, like slavery, the educated and literate ones were especially condemned—indeed, targeted for death—because they were "uppity Blacks." (See Mike Lee, US Senator for Utah https://www.lee.senate.gov/2023/5/he-left-s-radical-policy-agenda-on-the-american-people-by-judicial-fiat#:~:text=Justice%20Thomas%20described%20his%201991,than%20hung%20from%20a%20tree.%E2%80%9D )

I declare under penalty of perjury under the laws of the United States, that the foregoing is true and correct.

Executed: May 04, 2026

Respectfully Submitted,

Peter Gakuba, Petitioner - *pro se*
c/o Law Offices of David B. Shapiro
58 W. Biddle St.
Baltimore, MD 21201
(202) 630-1774
courts.usdc.all@gmail.com

## PROOF OF FILING and SERVICE

On May 04, 2026 PETER GAKUBA hereby certifies USPS postal mailing or hand delivering or using the Court's Electronic Document Submission System (EDSS) or CM/ECF as the means to filing this pleading which, in turn, upon docketing, will cause it to be served upon all parties in this case pursuant to the district court's ECF system as to ECF filers in accordance with Fed. R. Civ. P. 5, LR 5.5 and the General Order on Electronic Case Filing (ECF).

s/ *Peter Gakuba*
PETER GAKUBA

𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 ℭ𝔬𝔲𝔯𝔱 𝔬𝔣

For the Seventh Circuit

Chicago, Illinois 606

January 9, 2018

Before

FRANK H. EASTERBROOK, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

No. 17-2135

MICHAEL L. SPARKS,
    *Petitioner-Appellant,*

    *v.*

STEPHANIE DORETHY,
    *Respondent-Appellee.*

> Gakuba is "in custody" as a sex offender registrant.
>
> Denial of Gakuba's venue choice was neither thoughtful, fact based, nor well reasoned. See *In Re Hall*, 988 F.3d 376 (7th Cir. 2021).
>
> *Ipse dixit.*
>
> Venue in any IL state or federal court is flatly wrong; Gakuba has been blackballed.
>
> The USCA7's failure to afford equal protection by sua sponte vacating an identical habeas "mixed" petition violation per *Rose v. Lundy* and *Rhines v. Weber* -- all the while deliberately ignorant of Gakuba's "mixed" petition is self-evident bigotry.
>
> See *Gakuba*, 18-3398 + 20-1137 (USCA7).

Illinois.

No. 14-cv-1044-MJR-CJP
Michael J. Reagan,
*Chief Judge.*

### Order

The district court's opinion in this collateral attack under 28 U.S.C. §2254 states that petitioner Michael Sparks presented twelve claims, five of which are exhausted and seven not. The judge resolved the exhausted claims and entered judgment against Sparks, who has appealed.

The district court's procedure is not compatible with *Rose v. Lundy*, 455 U.S. 509 (1982), which requires mixed petitions to be dismissed. The Supreme Court added in *Rhines v. Weber*, 544 U.S. 269 (2005), that a district judge may allow the petitioner to dismiss the unexhausted claims, and the warden contends that the judge followed that procedure, but this is not what occurred. Instead the judge

dismissed the unexhausted claims and proceeded to decide the rest. The judge did not wait for Sparks to decide whether to amend the petition so that it contained only exhausted claims. Instead the court treated the opportunity extended by *Rhines* as one that could be accepted by the judge. Yet the choice belongs to the petitioner, and failing to protest the judge's decision to proceed is not an effective choice to dismiss the unexhausted claims. Giving the choice about dismissing the unexhausted claims to the judge rather than the litigant would amount to overruling *Lundy*, which *Rhines* did not do. Once dismissed, claims cannot be reasserted in a later collateral attack without appellate approval for a second or successive petition. Sparks has never manifested his consent to having the unexhausted claims treated that way.

*Rhines* gives a district judge two options that can be exercised without the petitioner's affirmative consent. First, the judge can dismiss the whole petition under *Lundy* and leave it up to the petitioner whether to delete the unexhausted claims and refile. Second, the judge can stay the proceeding while the petitioner exhausts his remaining state remedies. *Rhines* adds that the district judge should use the second option "if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." 544 U.S. at 278.

We issue a certificate of appealability, vacate the district court's decision, and remand so that the judge may dismiss the mixed petition, allow Sparks to decide whether to dismiss the unexhausted claims, or stay proceedings if *Rhines*'s criteria are met.

Gakuba is "in custody" as a sex offender registrant.
See *In Re Hall*, 988 F.3d 376 (7th Cir. 2021).

Denial of Gakuba's venue choice was neither thoughtful, fact based, nor well reeasoned.

*Ipse dixit.*

Venue in any IL state or federal court is flatly wrong; Gakuba has been blackballed.

The USCA7's failure to afford equal protection by sua sponte vacating an identical habeas "mixed" petition violation per *Rose v. Lundy* and *Rhines v. Weber* -- all the while deliberately ignorant of Gakuba's "mixed" petition is self-evident bigotry.
See *Gakuba*, 18-3398 + 20-1137 (USCA7).

Attachment #1-1 pp.2/2

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS**

Peter Gakuba,

            *Petitioner,*

v.

Christine Brannon,

            *Respondent.*

```
)
)
)
)
)
)
)
)
)
```

Judge Frederick J. Kapala

> Judge Kapala **also** presided over Gakuba's extant pro se civil rights suit *(Gakuba,* 12-cv-7296 & 13-cv-50217) ...
> USDC-ND IL Local Rule 40.3(b)(1)(C)-(D) **forbids** a judge from presiding over both.
>
> Structural Error: per se **conflict-of-interest.** 5th & 14th Amends. viols.

## ORDER

Petitioner's motion to proceed in forma pauperis [3] is granted. Grounds five through seven are dismissed without prejudice. Respondent is directed to answer or otherwise respond to the remaining claims within 30 days. Petitioner's reply, if any, to be filed within 30 days of the response.

> "Mixed" petition contrary to Sparks v. Dorethy, 2018 US App Lexis 32265 **1-3 (01/09/2018 USCA7) (cites Rose v. Lundy, 455 US 509 (1982); Rhines v. Weber, 544 US 269 (2005))

## STATEMENT

    Following a jury trial in the Seventeenth Judicial Circuit, Winnebago County, Illinois, petitioner, Peter Gakuba, was convicted of three counts of aggravated criminal sexual abuse and was sentenced to four years' imprisonment on each count with the sentences to run consecutively. On direct appeal, the Illinois Appellate Court, Second District, rejected the following seven arguments and affirmed petitioner's conviction and sentence: (1) the trial court erred in allowing Sergeant O'Brien to testify regarding petitioner's name and birth date; (2) the trial court erred in granting the State's motion to take a buccal sample of petitioner; (3) the evidence was insufficient to sustain his convictions; (4) that his Sixth Amendment right to self-representation was violated when his request to proceed to trial pro se was denied; (5) the trial court erred in denying his motions to disqualify the assistant state's attorney; (6) the trial court erred in denying his motions to disqualify two judges; and (7) the trial court erred in sentencing him to a term of imprisonment rather than probation and in imposing consecutive sentences. People v. Gakuba, 2017 IL App (2d) 150744-U, ¶ 47. Petitioner's petition for leave to appeal was denied. People v. Gakuba, No. 122289, 2017 WL 4386407 (Ill. Sept. 27, 2017).

    Petitioner presents the same seven contentions as his grounds for relief under § 2254. Petitioner also states in his petition that he has pending before the Illinois Appellate Court an appeal of the trial court's dismissal of his post-conviction petition in which he has raised the ineffective assistance of trial counsel. See People v. Gakuba, No. 2-17-0744.

    Rule 4 of the Rules Governing § 2254 Cases requires prompt examination by the court and provides, "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify

the petitioner." A claim must be presented as a federal constitutional claim in the state court proceedings in order to be exhausted. See Duncan v. Henry, 513 U.S. 364, 365-66 (1995). It is clear from the record that petitioner's § 2254 grounds five through seven were not presented to the Illinois courts as federal constitutional claims and, therefore, are not exhausted. See People v. Gakuba, 2017 IL App (2d) 150744-U.

In particular, with regard to ground five, the Illinois Appellate Court rejected petitioner's contention that the trial court erred in denying his motions to disqualify the assistant state's attorney because it abused its discretion under the standard delineated in Marshall v. County of Cook, 2016 IL App (1st) 142864, ¶ 22, and violated the Illinois Counties Code, 55 ILCS 5/4-2003. Gakuba, 2017 IL App (2d) 150744-U, ¶¶ 91-99. As for ground six, the Illinois Appellate Court rejected petitioner's contention that the trial court erred in denying his motions to substitute two judges pursuant to 725 ILCS 5/114-5. The Court held that the trial court's finding that there was no indicia of judicial prejudice against petitioner was not against the manifest weight of the evidence as that standard has been articulated by the Illinois Supreme Court in People ex rel. Baricevic v. Wharton, 136 Ill. 2d 423, 439 (1990), and People v. Patterson, 192 Ill. 2d 93, 131 (2000). Id. ¶ 102. With respect to ground seven, in rejecting petitioner's sentencing arguments, the Illinois Appellate Court held that the trial court did not abuse its discretion under Illinois law in choosing incarceration over probation, id. ¶ 115, or in imposing consecutive sentences under 730 ILCS 5/5-8-4(b), id. ¶ 117.

Thus, the record is clear that grounds five through seven were not presented as federal constitutional claims nor decided as such. Those grounds are dismissed without prejudice for failure to exhaust. Con.

Date: 11/20/2017                          ENTER:

                                          FREDERICK J. KAPALA

                                          District Judge

---

"Mixed" petition contrary to Sparks v. Dorethy, 2018 US App Lexis 32265 **1-3 (01/09/2018 USCA7) (cites Rose v. Lundy, 455 US 509 (1982); Rhines v. Weber, 544 US 269 (2005))

2

Attachment #1-2  pp.2/2

IN THE
CIRCUIT COURT OF COOK COUNTY, ILLINOIS

PETER GAKUBA,                          )
                                       )
              Plaintiff,               )
         v.                            )
                                       )    No. 2020 CH 6427
ILLINOIS PRISONER REVIEW BOARD,        )
                                       )
              Defendant                )

**MOTION TO DISMISS**

Defendant moves to dismiss plaintiff's habeas corpus complaint without prejudice because petitioner is not eligible to seek habeas relief in Illinois while he is in currently in another state's custody. In the alternative, if this Court finds that plaintiff can seek habeas relief in Illinois, defendant moves under 735 ILCS 5/2-104(b) to transfer plaintiff's habeas corpus complaint to Winnebago County, Illinois.

Plaintiff was convicted in the Circuit Court of Winnebago County for aggravated criminal sexual abuse with the victim between 13 and 18 years old and sentenced to four years in prison. *See* Compl. and Ill. Dept. of Corr. (IDOC) website, search for plaintiff's IDOC number, M52946, available at http://www2.illinois.gov/idoc/Offender/Pages/InmateSearch.aspx (last visited August 2, 2021); *People v. Gipson*, 2015 IL App (1st) 122451, ¶ 66 (court may take judicial notice of information on IDOC website).

Attachment #2 pp.1/7

Illinois has pleaded themselves out-of-court by arguing persuasively that Gakuba must seek habeas relief in the state he is "in custody" which, according to illinois is MARYLAND.

→ Plaintiff was paroled from Vienna Correctional Center on April 27, 2021, under the Interstate Compact Agreement with the State of Maryland, where he is now supervised by that state. Exh. A at ¶¶ 2-3 (Affidavit of Joan Coons). Plaintiff confirmed on April 28, 2021 with Illinois parole officials that he is in Maryland. *Id.* at ¶ 4. Plaintiff has no parole agent in Illinois at this time and is not currently in custody in Cook County or anywhere in Illinois, and will not be assigned a parole agent until he returns to the state. *Id.* at ¶ 5.

→ This Court should dismiss the complaint without prejudice because plaintiff has has no jurisdictional ties to Illinois. Because a complaint for habeas corpus is literally a request for the production of the body, the term "custody" as used in Illinois's habeas statute refers to physical control or possession and is not susceptible to a constructive definition. *See People ex rel. Petraborg v. Fields*, 14 Ill. App. 1025, 1027 (1st Dist. 1973). Here, petitioner is plainly in the custody — the physical control and possession — of Maryland because he is in Maryland and is supervised by Maryland authorities. Consequently, a writ of habeas corpus is not an available remedy until he returns to Illinois and is assigned a parole agent, at which point he will be in Illinois custody. *See also People ex rel. Williams v. Morris*, 44 Ill. App. 39, 40 (3d Dist. 1976) (for purposes of Habeas Corpus Act, actual custody or imprisonment is required for habeas relief). Accordingly, he is currently ineligible for habeas relief and the complaint should be dismissed without prejudice.

In the alternative, if this Court finds that Illinois does retain custody over plaintiff, this cause should be transferred to the Circuit Court of Winnebago County,

2

Attachment #2 pp.2/7

the county of conviction, for all further proceedings. *See* 735 ILCS 5/10-103 (application for habeas relief shall be made to the circuit court of the county in which the applicant is imprisoned or restrained, or to the circuit court of the county from which such person was sentenced or committed).

A habeas complaint "shall be made" in one of two places: (1) the circuit court of the county where the plaintiff is "imprisoned or restrained" or (2) the circuit court "from which [the plaintiff] was sentenced or committed." 735 ILCS 5/10-103. The only option here is the Circuit Court of Winnebago County — where plaintiff was sentenced — because he is not currently imprisoned or restrained in *any* Illinois county. Venue is not proper in this Court because Cook is neither the county of imprisonment nor conviction. *See People ex rel. Richeson v. Sheriff of Coles County*, 44 Ill. 2d 20, 22 (1969) (circuit court lacked "statutory authority" to adjudicate habeas corpus complaint where plaintiff was neither convicted nor imprisoned in county of filing); *see also Gakuba v. Brown*, No. 19 C 05429, 2020 WL 8970581, *3 (Plaintiff has no constitutional right to file a habeas corpus petition in the state court of his choosing; Cook County inappropriate venue for plaintiff's state habeas case).

Accordingly, if this Court holds that plaintiff can move forward with a habeas complaint, it should transfer the complaint under section 5/2-104(b) to Winnebago County, Illinois for further proceedings.

Attachment #2 pp.3/7

## CONCLUSION

This Court should dismiss plaintiff's habeas corpus complaint without prejudice as he is not in Illinois custody. In the alternative, if it finds that plaintiff is in Illinois custody, it should transfer the cause to Winnebago County, Illinois, the county of conviction, for further proceedings.

August 20, 2021

Respectfully submitted,

KWAME RAOUL
Attorney General of Illinois

By:    <u>s/ Russell K. Benton</u>
RUSSELL K. BENTON
Illinois Bar No. 6203142
Assistant Attorney General
100 West Randolph Street, 12th Floor
Chicago, Illinois 60601-3218
(312) 814-2113
eserve.criminalappeals@atg.state.il.us

Attachment #2 pp.4/7

# EXHIBIT A

### AFFIDAVIT

Now comes, Joan Coons, after being duly sworn under oath does hereby state as follows:

1. Joan Coons, Office Specialist Interstate Compact Office IDOC.

2. Peter Gakuba (Inmate number M52946) was paroled from the Vienna Correctional Center on April 27, 2021.

3. He was paroled under an Interstate Compact Agreement with the State of Maryland. Under the Interstate Compact Agreement, Gakuba is supervised by the State of Maryland.

4. Gakuba contacted Illinois parole on April 28, 2021 to inform parole that he was at his host site in Maryland.

5. Gakuba does not have an Illinois parole agent at this time nor has he had one since April 2021. He has no connection through parole with any county in the State of Illinois including Cook County. He will not be assigned an agent unless and until Gakuba returns to Illinois.

The undersigned states that the statements set forth above are true and correct to the best of her knowledge.

Joan Coons
Office Specialist

7/21/21

Cynthia A. Miller
Notary Public in the
state of Illinois, county
of Sangamon.
My commission expires on:
12/18/2024

> OFFICIAL SEAL
> **CYNTHIA A. MILLER**
> NOTARY PUBLIC, STATE OF ILLINOIS
> MY COMMISSION EXPIRES 12-18-2024

Attachment #2 pp.5/7

## CERTIFICATION

Under penalties as provided by law pursuant to section 1-109 of the Code of Civil Procedure (735 ILCS 5/1-109), I certify that the above statements are true to the best of my knowledge and belief.

s/ Russell K. Benton
RUSSELL K. BENTON

## CERTIFICATE OF FILING AND SERVICE

Under penalty of law as provided in 735 ILCS 5/1-109, the undersigned certifies that the statements set forth in this instrument are true and correct.  On August 20, 2021, the foregoing **Motion to Dismiss** was electronically filed with the Clerk of the Circuit Court of Cook County, Illinois, and one copy was electronically served upon the following at the email address listed on the complaint:

Peter Gakuba
58 West Biddle Street, Apt. 103
Baltimore, MD 21201
pgakuba@gmail.com

s/Russell K. Benton
RUSSELL K. BENTON
Illinois Bar No. 6203142
Assistant Attorney General
100 West Randolph Street, 12th Floor
Chicago, Illinois 60601-3218
(312) 814-2113
eserve.criminalappeals@atg.state.il.us

Attachment #2 pp.7/7

**ELECTRONICALLY FILED**
DOC ID: 20301718
CASE NO: 2021-MR-0001036
DATE: 11/15/2022 9:26 AM
BY: J P, DEPUTY

## STATE OF ILLINOIS
### IN THE CIRCUIT COURT OF THE 17ᵀᴴ JUDICIAL CIRCUIT
### COUNTY OF WINNEBAGO

PETER GAKUBA,                          )
                                       )
           Plaintiff,                  )
                                       )
v                                      )      Case No. 21 MR 1036
                                       )
                                       ) ┌─────────────────────────────────────┐
WINNEBAGO COUNTY PUBLIC                ) │ Spoliation of ALL criminal discovery by Ordering
DEFENDER'S OFFICE; WINNEBAGO           ) │ its DESTRUCTION in 2018 while post-conviction
COUNTY STATE'S ATTORNEY'S OFFICE;      ) │ collateral attacks were ongoing.
WINNEBAGO COUNTY SHERIFF,              ) │
                                       ) │ 14th Amendment violation.  False/Fabricated
           Defendants.                 ) │ Evid.
                                         └─────────────────────────────────────┘

### AFFIDAVIT

I, SHERRY K. ZACK, state the following:

1.  I am currently employed as an Assistant State's Attorney in Winnebago County, Illinois, and have been since May, 2021.

2.  During the time I have been so employed, I have had occasions to search for old and/or closed files.

3.  In addition, I have learned from colleagues about the method of storage for closed files at the Winnebago County State's Attorney's Office.

4.  I have also asked those with specific knowledge of Mr. Gakuba's case(s) and FOIA requests.

5.  Based upon my knowledge and experience, I am qualified to execute this Affidavit regarding the storage procedures utilized by the Winnebago County State's Attorney's Office.

6.  The Winnebago County State's Attorney's Office is located on multiple floors in the Winnebago County Courthouse in Rockford, Illinois.

7.  Each floor of the State's Attorney's Office has its own storage room where closed files are kept.

## Attachment #3 pp.1/4

IN THE
CIRCUIT COURT OF COOK COUNTY, ILLINOIS

PETER GAKUBA,                                )
                                             )
            Plaintiff,                       )
      v.                                     )
                                             )    No. 2020 CH 6427
ILLINOIS PRISONER REVIEW BOARD,              )
                                             )
            Defendant                        )

## MOTION TO DISMISS

Defendant moves to dismiss plaintiff's habeas corpus complaint without prejudice because petitioner is not eligible to seek habeas relief in Illinois while he is in currently in another state's custody.  In the alternative, if this Court finds that plaintiff can seek habeas relief in Illinois, defendant moves under 735 ILCS 5/2-104(b) to transfer plaintiff's habeas corpus complaint to Winnebago County, Illinois.

Plaintiff was convicted in the Circuit Court of Winnebago County for aggravated criminal sexual abuse with the victim between 13 and 18 years old and sentenced to four years in prison.  *See* Compl. and Ill. Dept. of Corr. (IDOC) website, search for plaintiff's IDOC number, M52946, available at http://www2.illinois.gov/idoc/Offender/Pages/InmateSearch.aspx (last visited August 2, 2021); *People v. Gipson*, 2015 IL App (1st) 122451, ¶ 66 (court may take judicial notice of information on IDOC website).

Attachment #2 pp.1/7

Illinois has pleaded themselves out-of-court by arguing persuasively that Gakuba must seek habeas relief in the state he is "in custody" which, according to illinois is MARYLAND.

Plaintiff was paroled from Vienna Correctional Center on April 27, 2021, under the Interstate Compact Agreement with the State of Maryland, where he is now supervised by that state. Exh. A at ¶¶ 2-3 (Affidavit of Joan Coons). Plaintiff confirmed on April 28, 2021 with Illinois parole officials that he is in Maryland. *Id.* at ¶ 4. Plaintiff has no parole agent in Illinois at this time and is not currently in custody in Cook County or anywhere in Illinois, and will not be assigned a parole agent until he returns to the state. *Id.* at ¶ 5.

This Court should dismiss the complaint without prejudice because plaintiff has has no jurisdictional ties to Illinois. Because a complaint for habeas corpus is literally a request for the production of the body, the term "custody" as used in Illinois's habeas statute refers to physical control or possession and is not susceptible to a constructive definition. *See People ex rel. Petraborg v. Fields*, 14 Ill. App. 1025, 1027 (1st Dist. 1973). Here, petitioner is plainly in the custody — the physical control and possession — of Maryland because he is in Maryland and is supervised by Maryland authorities. Consequently, a writ of habeas corpus is not an available remedy until he returns to Illinois and is assigned a parole agent, at which point he will be in Illinois custody. *See also People ex rel. Williams v. Morris*, 44 Ill. App. 39, 40 (3d Dist. 1976) (for purposes of Habeas Corpus Act, actual custody or imprisonment is required for habeas relief). Accordingly, he is currently ineligible for habeas relief and the complaint should be dismissed without prejudice.

In the alternative, if this Court finds that Illinois does retain custody over plaintiff, this cause should be transferred to the Circuit Court of Winnebago County,

2

the county of conviction, for all further proceedings.  *See* 735  ILCS 5/10-103

(application for habeas relief shall be made to the circuit court of the county in

which the applicant is imprisoned or restrained, or to the circuit court of the county

from which such person was sentenced or committed).

A habeas complaint "shall be made" in one of two places:  (1) the circuit

court of the county where the plaintiff is "imprisoned or restrained" or (2) the

circuit court "from which [the plaintiff] was sentenced or committed."  735 ILCS

5/10-103.  The only option here is the Circuit Court of Winnebago County —

where plaintiff was sentenced — because he is not currently imprisoned or

restrained in *any* Illinois county.  Venue is not proper in this Court because

Cook is neither the county of imprisonment nor conviction.  *See People ex rel.*

*Richeson v. Sheriff of Coles County*, 44 Ill. 2d 20, 22 (1969) (circuit court lacked

"statutory authority" to adjudicate habeas corpus complaint where plaintiff was

neither convicted nor imprisoned in county of filing); *see also Gakuba v. Brown*,

No. 19 C 05429, 2020 WL 8970581, *3 (Plaintiff has no constitutional right

to file a habeas corpus petition in the state court of his choosing; Cook County

inappropriate venue for plaintiff's state habeas case).

Accordingly, if this Court holds that plaintiff can move forward with a

habeas complaint, it should transfer the complaint under section 5/2-104(b) to

Winnebago County, Illinois for further proceedings.

3

Attachment #2 pp.3/7

## CONCLUSION

This Court should dismiss plaintiff's habeas corpus complaint without prejudice as he is not in Illinois custody. In the alternative, if it finds that plaintiff is in Illinois custody, it should transfer the cause to Winnebago County, Illinois, the county of conviction, for further proceedings.

August 20, 2021

Respectfully submitted,

KWAME RAOUL
Attorney General of Illinois

By:    s/ Russell K. Benton
RUSSELL K. BENTON
Illinois Bar No. 6203142
Assistant Attorney General
100 West Randolph Street, 12th Floor
Chicago, Illinois 60601-3218
(312) 814-2113
eserve.criminalappeals@atg.state.il.us

4

Attachment #2 pp.4/7

# EXHIBIT A

## AFFIDAVIT

Now comes, Joan Coons, after being duly sworn under oath does hereby state as follows:

1.  Joan Coons, Office Specialist Interstate Compact Office IDOC.

2.  Peter Gakuba (Inmate number M52946) was paroled from the Vienna Correctional Center on April 27, 2021.

3.  He was paroled under an Interstate Compact Agreement with the State of Maryland.  Under the Interstate Compact Agreement, Gakuba is supervised by the State of Maryland.

4.  Gakuba contacted Illinois parole on April 28, 2021 to inform parole that he was at his host site in Maryland.

5.  Gakuba does not have an Illinois parole agent at this time nor has he had one since April 2021.  He has no connection through parole with any county in the State of Illinois including Cook County.  He will not be assigned an agent unless and until Gakuba returns to Illinois.

The undersigned states that the statements set forth above are true and correct to the best of her knowledge.

7/21/21

Cynthia A. Miller
Notary Public in the
State of Illinois, County
of Sangamon.
my commission expires on:
12/18/2024

_____
Joan Coons
Office Specialist

OFFICIAL SEAL
CYNTHIA A. MILLER
NOTARY PUBLIC, STATE OF ILLINOIS
COMMISSION EXPIRES 12-18-2024

Attachment #2 pp.5/7

## CERTIFICATION

Under penalties as provided by law pursuant to section 1-109 of the Code of Civil Procedure (735 ILCS 5/1-109), I certify that the above statements are true to the best of my knowledge and belief.

s/ Russell K. Benton
RUSSELL K. BENTON

Attachment #2 pp.6/7

## CERTIFICATE OF FILING AND SERVICE

Under penalty of law as provided in 735 ILCS 5/1-109, the undersigned certifies that the statements set forth in this instrument are true and correct.  On August 20, 2021, the foregoing **Motion to Dismiss** was electronically filed with the Clerk of the Circuit Court of Cook County, Illinois, and one copy was electronically served upon the following at the email address listed on the complaint:

Peter Gakuba
58 West Biddle Street, Apt. 103
Baltimore, MD 21201
pgakuba@gmail.com

<u>s/Russell K. Benton</u>
RUSSELL K. BENTON
Illinois Bar No. 6203142
Assistant Attorney General
100 West Randolph Street, 12th Floor
Chicago, Illinois 60601-3218
(312) 814-2113
eserve.criminalappeals@atg.state.il.us

Attachment #2 pp.7/7

**ELECTRONICALLY FILED**
DOC ID: 20301718
CASE NO: 2021-MR-0001036
DATE: 11/15/2022 9:26 AM
BY: J P, DEPUTY

STATE OF ILLINOIS
IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
COUNTY OF WINNEBAGO

PETER GAKUBA, )
)
Plaintiff, )
)
v )   Case No. 21 MR 1036
)
WINNEBAGO COUNTY PUBLIC )
DEFENDER'S OFFICE; WINNEBAGO )
COUNTY STATE'S ATTORNEY'S OFFICE; )
WINNEBAGO COUNTY SHERIFF, )
)
Defendants. )

> Spoliation of ALL criminal discovery by Ordering its DESTRUCTION in 2018 while post-conviction collateral attacks were ongoing.
>
> 14th Amendment violation.  False/Fabricated Evid.

## AFFIDAVIT

I, SHERRY K. ZACK, state the following:

1.  I am currently employed as an Assistant State's Attorney in Winnebago County, Illinois, and have been since May, 2021.

2.  During the time I have been so employed, I have had occasions to search for old and/or closed files.

3.  In addition, I have learned from colleagues about the method of storage for closed files at the Winnebago County State's Attorney's Office.

4.  I have also asked those with specific knowledge of Mr. Gakuba's case(s) and FOIA requests.

5.  Based upon my knowledge and experience, I am qualified to execute this Affidavit regarding the storage procedures utilized by the Winnebago County State's Attorney's Office.

6.  The Winnebago County State's Attorney's Office is located on multiple floors in the Winnebago County Courthouse in Rockford, Illinois.

7.  Each floor of the State's Attorney's Office has its own storage room where closed files are kept.

Attachment #3 pp.1/4

IN THE
CIRCUIT COURT OF COOK COUNTY, ILLINOIS

| | |
|---|---|
| PETER GAKUBA, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) No. 2020 CH 6427 |
| ILLINOIS PRISONER REVIEW BOARD, | ) |
| | ) |
| Defendant | ) |

## MOTION TO DISMISS

Defendant moves to dismiss plaintiff's habeas corpus complaint without prejudice because petitioner is not eligible to seek habeas relief in Illinois while he is in currently in another state's custody.  In the alternative, if this Court finds that plaintiff can seek habeas relief in Illinois, defendant moves under 735 ILCS 5/2-104(b) to transfer plaintiff's habeas corpus complaint to Winnebago County, Illinois.

Plaintiff was convicted in the Circuit Court of Winnebago County for aggravated criminal sexual abuse with the victim between 13 and 18 years old and sentenced to four years in prison.  *See* Compl. and Ill. Dept. of Corr. (IDOC) website, search for plaintiff's IDOC number, M52946, available at http://www2.illinois.gov/idoc/Offender/Pages/InmateSearch.aspx (last visited August 2, 2021); *People v. Gipson*, 2015 IL App (1st) 122451, ¶ 66 (court may take judicial notice of information on IDOC website).

Attachment #2 pp.1/7

> Illinois has pleaded themselves out-of-court by arguing persuasively that Gakuba must seek habeas relief in the state he is "in custody" which, according to illinois is MARYLAND.

→ Plaintiff was paroled from Vienna Correctional Center on April 27, 2021, under the Interstate Compact Agreement with the State of Maryland, where he is now supervised by that state. Exh. A at ¶¶ 2-3 (Affidavit of Joan Coons). Plaintiff confirmed on April 28, 2021 with Illinois parole officials that he is in Maryland. *Id.* at ¶ 4. Plaintiff has no parole agent in Illinois at this time and is not currently in custody in Cook County or anywhere in Illinois, and will not be assigned a parole agent until he returns to the state. *Id.* at ¶ 5.

→ This Court should dismiss the complaint without prejudice because plaintiff has has no jurisdictional ties to Illinois. Because a complaint for habeas corpus is literally a request for the production of the body, the term "custody" as used in Illinois's habeas statute refers to physical control or possession and is not susceptible to a constructive definition. *See People ex rel. Petraborg v. Fields*, 14 Ill. App. 1025, 1027 (1st Dist. 1973). Here, petitioner is plainly in the custody — the physical control and possession — of Maryland because he is in Maryland and is supervised by Maryland authorities. Consequently, a writ of habeas corpus is not an available remedy until he returns to Illinois and is assigned a parole agent, at which point he will be in Illinois custody. *See also People ex rel. Williams v. Morris*, 44 Ill. App. 39, 40 (3d Dist. 1976) (for purposes of Habeas Corpus Act, actual custody or imprisonment is required for habeas relief). Accordingly, he is currently ineligible for habeas relief and the complaint should be dismissed without prejudice.

In the alternative, if this Court finds that Illinois does retain custody over plaintiff, this cause should be transferred to the Circuit Court of Winnebago County,

2

Attachment #2 pp.2/7

the county of conviction, for all further proceedings. *See* 735 ILCS 5/10-103 (application for habeas relief shall be made to the circuit court of the county in which the applicant is imprisoned or restrained, or to the circuit court of the county from which such person was sentenced or committed).

A habeas complaint "shall be made" in one of two places: (1) the circuit court of the county where the plaintiff is "imprisoned or restrained" or (2) the circuit court "from which [the plaintiff] was sentenced or committed." 735 ILCS 5/10-103. The only option here is the Circuit Court of Winnebago County — where plaintiff was sentenced — because he is not currently imprisoned or restrained in *any* Illinois county. Venue is not proper in this Court because Cook is neither the county of imprisonment nor conviction. *See People ex rel. Richeson v. Sheriff of Coles County*, 44 Ill. 2d 20, 22 (1969) (circuit court lacked "statutory authority" to adjudicate habeas corpus complaint where plaintiff was neither convicted nor imprisoned in county of filing); *see also Gakuba v. Brown*, No. 19 C 05429, 2020 WL 8970581, *3 (Plaintiff has no constitutional right to file a habeas corpus petition in the state court of his choosing; Cook County inappropriate venue for plaintiff's state habeas case).

Accordingly, if this Court holds that plaintiff can move forward with a habeas complaint, it should transfer the complaint under section 5/2-104(b) to Winnebago County, Illinois for further proceedings.

3

Attachment #2 pp.3/7

## CONCLUSION

This Court should dismiss plaintiff's habeas corpus complaint without prejudice as he is not in Illinois custody. In the alternative, if it finds that plaintiff is in Illinois custody, it should transfer the cause to Winnebago County, Illinois, the county of conviction, for further proceedings.

August 20, 2021                          Respectfully submitted,

                                         KWAME RAOUL
                                         Attorney General of Illinois

                              By:    s/ Russell K. Benton
                                     RUSSELL K. BENTON
                                     Illinois Bar No. 6203142
                                     Assistant Attorney General
                                     100 West Randolph Street, 12th Floor
                                     Chicago, Illinois 60601-3218
                                     (312) 814-2113
                                     eserve.criminalappeals@atg.state.il.us

4

Attachment #2 pp.4/7

# EXHIBIT A

## AFFIDAVIT

Now comes, Joan Coons, after being duly sworn under oath does hereby state as follows:

1. Joan Coons, Office Specialist Interstate Compact Office IDOC.

2. Peter Gakuba (Inmate number M52946) was paroled from the Vienna Correctional Center on April 27, 2021.

3. He was paroled under an Interstate Compact Agreement with the State of Maryland. Under the Interstate Compact Agreement, Gakuba is supervised by the State of Maryland.

4. Gakuba contacted Illinois parole on April 28, 2021 to inform parole that he was at his host site in Maryland.

5. Gakuba does not have an Illinois parole agent at this time nor has he had one since April 2021. He has no connection through parole with any county in the State of Illinois including Cook County. He will not be assigned an agent unless and until Gakuba returns to Illinois.

The undersigned states that the statements set forth above are true and correct to the best of her knowledge.

_Joan Coons_
Joan Coons
Office Specialist

7/21/21

_Cynthia A. Miller_
Notary Public in the State of Illinois, County of Sangamon.
My commission expires on: 12/18/2024

```
OFFICIAL SEAL
CYNTHIA A. MILLER
NOTARY PUBLIC, STATE OF ILLINOIS
COMMISSION EXPIRES 12-18-2024
```

Attachment #2 pp.5/7

## CERTIFICATION

Under penalties as provided by law pursuant to section 1-109 of the Code of Civil Procedure (735 ILCS 5/1-109), I certify that the above statements are true to the best of my knowledge and belief.

s/ Russell K. Benton
RUSSELL K. BENTON

Attachment #2 pp.6/7

## CERTIFICATE OF FILING AND SERVICE

Under penalty of law as provided in 735 ILCS 5/1-109, the undersigned certifies that the statements set forth in this instrument are true and correct. On August 20, 2021, the foregoing **Motion to Dismiss** was electronically filed with the Clerk of the Circuit Court of Cook County, Illinois, and one copy was electronically served upon the following at the email address listed on the complaint:

Peter Gakuba
58 West Biddle Street, Apt. 103
Baltimore, MD 21201
pgakuba@gmail.com

s/Russell K. Benton
RUSSELL K. BENTON
Illinois Bar No. 6203142
Assistant Attorney General
100 West Randolph Street, 12th Floor
Chicago, Illinois 60601-3218
(312) 814-2113
eserve.criminalappeals@atg.state.il.us

Attachment #2 pp.7/7

**ELECTRONICALLY FILED**
DOC ID: 20301718
CASE NO: 2021-MR-0001036
DATE: 11/15/2022 9:26 AM
BY: J P, DEPUTY

## STATE OF ILLINOIS
### IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
### COUNTY OF WINNEBAGO

PETER GAKUBA,                                    )
                                                 )
      Plaintiff,                            )
                                                 )
v                                                )    Case No. 21 MR 1036
                                                 )
                                                 )    Spoliation of ALL criminal discovery by Ordering
WINNEBAGO COUNTY PUBLIC                           )    its DESTRUCTION in 2018 while post-conviction
DEFENDER'S OFFICE; WINNEBAGO                      )    collateral attacks were ongoing.
COUNTY STATE'S ATTORNEY'S OFFICE;                 )
WINNEBAGO COUNTY SHERIFF,                         )    14th Amendment violation.  False/Fabricated
                                                 )    Evid.
      Defendants.                           )

### AFFIDAVIT

I, SHERRY K. ZACK, state the following:

1. I am currently employed as an Assistant State's Attorney in Winnebago County, Illinois, and have been since May, 2021.

2. During the time I have been so employed, I have had occasions to search for old and/or closed files.

3. In addition, I have learned from colleagues about the method of storage for closed files at the Winnebago County State's Attorney's Office.

4. I have also asked those with specific knowledge of Mr. Gakuba's case(s) and FOIA requests.

5. Based upon my knowledge and experience, I am qualified to execute this Affidavit regarding the storage procedures utilized by the Winnebago County State's Attorney's Office.

6. The Winnebago County State's Attorney's Office is located on multiple floors in the Winnebago County Courthouse in Rockford, Illinois.

7. Each floor of the State's Attorney's Office has its own storage room where closed files are kept.

## Attachment #3 pp.1/4

8.  Closed files were then transferred to the 9th floor of the Winnebago County Courthouse. The 9th floor is only used for file storage.

9.  When Mr. Gakuba submitted his FOIA request, dated June 30, 2021, the Records Division of the Winnebago County State's Attorney's Office was notified so Gakuba's criminal file(s) could be located and reviewed in order to respond appropriately.

10. On July 8, 2021, our office requested an extension after Mr. Gakuba's file(s) could not be located within the original five (5) day timeframe required under FOIA.

11. The timeframe was extended for an additional five (5) business days pursuant to ILCS 140/3 (e)(vi) of FOIA.

12. However, even after the ten (10) day search, Mr. Gakuba's files could not be located.

13. On July 14, 2021, a written response was submitted to Mr. Gakuba indicating the result of the search.

14. Closed files will eventually be disposed of pursuant to our office's approved Records Disposal Certificate issued by the State of Illinois.

15. The Records Disposal Certificate dated June 10, 2021 and received in Springfield on June 14, 2021, was located showing records that can be disposed of by our office (See attached).

16. That Certificate does not specify which exact files can be disposed, only the inclusive dates and volumes.

17. I do not have personal knowledge whether or not Mr. Gakuba's closed criminal files were disposed of as provided by the Certificate.

18. However, Mr. Gakuba's files were unable to be located after a reasonable search over a year ago when the POIA request at issue was received by the State's Attorney's Office.

FURTHER AFFIANT SAYETH NAUGHT.

DATE: November 14, 2022

Sherry K. Zack

Spoliation of ALL criminal discovery by Ordering its DESTRUCTION in 2018 while post-conviction collateral attacks were ongoing. 14th Amendment violation. False/Fabricated Evid.

Attachment #3 pp.2/4

Signed and Sworn to Before me this 14th day of November, 2022.


_____
Tammy Watford
Notary Public

My Commission Expires:


Sherry K. Zack
Assistant State's Attorney
Winnebago County-Civil Bureau
400 W. State Street, Room 804
Rockford, IL  61101
(815)319-4799
(815)319-4798 fax
szack@sao.wincoil.gov


Attachment #3 pp.3/4

# RECORDS DISPOSAL CERTIFICATE ~~RECEIVED~~

JUN 14 2021

LOC. REC. COMM.

APPLICATION #: 21:048

COUNTY: Winnebago

FROM: Winnebago County State's Atty.
(Agency Division)

ADDRESS: 400 W. State St. Suite 619
(Street, P.O Box)
Rockford, IL 61101
(City, ZIP Code)

CONTACT TELEPHONE: ( 815 ) 319-4700

CONTACT EMAIL: gtarara@wincoil.us

**TO:** Local Records Commission
Margaret Cross Norton Building
Springfield, IL 62756
217-782-7075

**Directions:**
1. Fill in all blanks and columns
2. Application item numbers must be listed in numerical order
3. Record series titles must be listed as they appear on application
4. Sign and send certificate to above address sixty (60) days prior to disposal date
5. Retain records until approved copy is returned.
6. This form can be found online at http://www.cyberdriveillinois.com/

| APPLICATION ITEM NO. | RECORD SERIES TITLE | INCLUSIVE DATES (MONTH/YEAR) | VOLUME OF RECORDS (Cu. Ft. or MB/GB) |
|---|---|---|---|
| 2 | Admin files, misc correspondence, including email classified as general correspondenc & not related to another records series, reference materials, publications | 1981-2019 | 251.5 Cu. Ft. & 3GB |
| 3 | Civil case files | 1968 - 2018 | 121.5 Cu. Ft. |
| 4 | Felony Case Files | 1946 - 2018 | 4,132.75 Cu. Ft. |
| 5 | Financial admin records (dept copies of: paid bills and invoices, cash receipts, financial reports, etc | 1981 - 2019 | 3 Cu. Ft. |
| 6 | Freedom of Information Act requests and denials | 2004 - 2019 | 6 Cu. Ft. |
| 7 | Grand Jury case files | 1980 - 2019 | 139 Cu. Ft. |
| 8 | Grant records | 1986 - 2018 | 10 Cu. Ft. |
| 9 | Investigative files and complaint files | 1999 - 2018 | 27 Cu. Ft. |
| 10 | Juvenile cases | 1999 - 2018 | 316 Cu. Ft. |
| 11 | Misdemeanor and Traffic case files | 2013 - 2021 | 759.75 Cu. Ft. |

## DISPOSITION APPROVE

As Amended

Total Volume from all pages

Cu. Ft. 5767

MB/GB 3

If any of the above records are microfilmed, I hereby certify that they have been reproduced in compliance with standards given in Sections 4000.50 and 4500.50 of the Regulations of the Local Records Commissions.
If the records are digitized, I certify that they have been reproduced in compliance with standards given in Sections 4000.70 / 4500.70 and will be maintained in compliance with standards given in Sections 4000.80 / 4500.80 of the Regulations of the Local Records Commissions.

_____
(Signature required only if records have been microfilmed or digitized)

I hereby certify that, in compliance with authorization received from the Local Records Commission, the records listed above will be disposed of on or after.

Date: 7/16/21
Signature

Approved by ILSOS
Date: 6/10/2021

J. Hanley, Winnebago County State's Attorney
Print name and title on line above

Prepared by: Gina Tarara - Office Administrator

Printed by authority of the State of Illinois. December 2018 — 1M — LR 4-14

Attachment #3 pp.4/4